ELDRIDGE HAWKINS, LLC
60 Evergreen Place, Suite 510
East Orange, NJ 07018
Attorney ID No. 214731967
(973) 676-5070 Fax: (973) 676-7356
hwklaw@aol.com

| | |
|---|---|
| **IN THE MATTER OF CECILE DELROSE PORTILLA, ESQUIRE**<br><br>**AN ATTORNEY AT LAW OF THE STATE OF NEW JERSEY**<br><br>**(0121212005)** | **UNITED STATES DISTRICT COURT DISTRICT OF NEW JERSEY**<br><br>**Civil Action No. 8:26-cv-09035-RMB** |

**APPENDIX OF RESPONDENT IN SUPPORT OF ORDER TO SHOW CAUSE WHY RECIPROCOL DISCIPLINE SHOULD NOT BE IMPOSED**

**VOLUME TWO OF FIVE (Ra177-Ra365)**

_

**APPENDIX INDEX**

Certification of service of Suspension Order
dated July 14, 2026……………………………………………………………Ra001

Order of Suspension dated July 9, 2026…………………………………….Ra002

Alexandra Gitter's Notice of Motion for leave to file a
Reply June 18, 2026………………………………………………………… Ra004

Certification of Alexandra Gitter in Support of Motion to
to file a Reply Brief June 17, 2026…………………………………………….Ra005

Reply Brief of Alexanda Gitter dated June 18, 2026……………………….Ra007

Email advising that Copy of Respondent' Opposition to OAE's
Petition for medical Exam was delivered to OAE and will be
Forwarded to DRB dated December 22, 2025……………… ……………..Ra025

June 10, 2025 letter with HIPAA form from OAE advising of
referral from the Supreme Court related to motions filed
on behalf of Lopez and Faulknor………………………………………....Ra027

July 2, 2025 letter from Hawkins to Ms. Gitter advising her that he
represents Respondent…………………………………………………..…Ra032

July 2, 2025 letter from Gitter to Hawkins acknowledging ……..…(same)Ra032

receipt of his letter of representation.

August 6, 2025 Email entitled 'Interview' from Attorney Hawkins to Alexanda Gitter requesting copies of the Faulknor and Lopez Motion documents to determine if Respondent Authored them……………Ra034

August 7, 2025 email from Gitter to Hawkins advising him that the documents are the same as those available to Ms. Portilla on eCourts and to feel free to compare them to Ms. Portilla's Original documents w/o OAE printing hundreds of pages……………………………Ra036

August 14, 2025 letter to Ms. Gitter requesting discovery and advising that he needed discovery for substantive due process and that he did not know what he is defending officially………………………..Ra036

August 18, 2025 email form Gitter to Hawkins advising him that Respondent is being Investigated for Paranoia………………………………Ra037

Alexandra Gitter's December 2, 2025 Petition for relief for medical and mental health examination and records…………………..…….Ra038

Certification of Chopra 11/26/2025 with *attachments*..…………………………………………..………………..Ra041

*<u>Attached</u> Request for **Accommodation** in Upchurch and for Judicial Notice of previous July 2024 Appendices due to interference with current Appendices filed **2/27/2025** (See Ra570)*

*<u>Attached</u> Notice of Motion for **Accommodation** in Upchurch to paper file documents on eCourts filed 4/25/2025(See.Ra576)*

*<u>Attached</u> Notice of Motion to hold Faulknor's Petition in Abeyance Until the third Party Upload of Documents was properly investigated 2/13/25 (See Ra644)*

*Attached Certification in Faulknor's case in Support of Motion for Accommodation in the Supreme Court to paper file Faulknor's documents on eCourts 4/29/2025 (See Ra646)*

*Attached Complaint Against Essex County Prosecutor's Office FACS/Cyber Crime unit for Conversion and denial of equal Protection (See Ra815)* that *had Old NOC to show that six years SOL was met. Old NOC also had disclosures related to historical therapy for trauma caused by the cyber harassment that EPCO failed to investigate as agreed to do ECOP was not sued for the mental trauma as it did not cause my trauma (Ra842)*

*Alleged Transcripts of OAE Dec 11, 2025 interview – (Not attached as we were not allowed to record the interview And taping was done on Chopra's personal Device and no neutral Court reporter was present)*

*Attached* Report of Dr. Ejiofor dated June 28, 2025 (See Ra170)

Certification of Cecile D. Portilla, Esquire in response to Chopra's Certification dated 12/09/2026……………………………….Ra071

****Certification of Dr. Ejiofor, APN regarding Cybercrimes affecting his practice, phones being controlled by others and tampering of his clients' prescriptions to different dosages including life threatening dosages……(**Ra805 replaced Ra152)**………..Ra152

Certification of Eldridge Hawkins, Esquire dated June 12, 2025……….. Ra156

Certification of Mario Portilla dated Nov 26, 2017……………………... Ra162

Certification of Ronald Morrison dated December 2, 2025…..…………….Ra166

Report of Dr. Ejiofor, APN stating that not only is Ms. Portilla Mentally competent, she is diligent and purposeful in her career dated 6/28/25………………………………..……...Ra170

Certification of Latoya Borum dated June 28, 2025…………,,………..…..Ra171

Witness Statement on behalf of Eldridge Hawkins sent to
the OAE September 28, 2025…………………………………..…..…..…..Ra177

Report of Computer Expert Richard Douglas
October 10, 2016……………………………………………………………Ra168
.
Certification of Richard Douglas 10/10/2016…………………….……… ….Ra197

Certification of Adam Portilla Feb 25,2026………………………… …….Ra198

..*Attachment 1*-to Certification of Adam Portilla
Upside down Appellate Brief of Keri Payne………… ……………..… …...Ra201

*Attachment 2*-to Certification of Adam Portilla Cover Page
Of Appendix of Carol Jakson demonstrating lack of active
Hyperlink first Appendix Cover page …………..……..…………….… .Ra204

*Attachment 3*-to Certification of Adam Portilla Cover Page
Of Appendix of Carol Jakson demonstrating active
Hyperlink triggered (little hand) on eCourts……………………………Ra207

*Attachment 4*-to Certification Geek Squad customer receipt
Wherein Geek quad Agent states he cannot see any active Hyperlinks
in Appendix in his computer while document is in the store……………....Ra210

Order by Timothy Ellis compelling exam and examination by
Medical doctor to determine Respondent's ability to
Practice law signed January 5, 2026……………………………………Ra212

Email to Ms. Gitter and Mr. Chopra January 14, 2026………… ………Ra214

March 19, 2026 letter from Ms. Gitter to Benjamin with
proposed Order requesting that she assign counsel to
respondent………………………………………………………..…..Ra216

*Attached* Proposed Order……………….…………………….….……Ra218

Letter from Respondent to Judge Benjamin with copy
of Expert report of Dr. Ejiofor APN attached dated
March 19, 206 declining new counsel. ………………..………………..Ra219

*Exhibit A* to letter-Expert Report of Dr. Ejiofor

to letter from Respondent …………………………………………….……..Ra222

Order signed by Judge Benjamin on April 4, 2026
Appointing counsel to Respondent………………………………….…. .Ra224

Brief[1] of Jay Rice asserting ADA Gateway factors
dated May 12, 2026……………………………………………… ..Ra225

Petition for Certification of Angel Lopez
filed October 24, 2024………………………………….………… ...Ra231

Order denying Lopez Petition dated January 28,2025………………... .Ra258

Certification of Cecile D. Portilla filed in the Appellate
Division dated August 15, 2024 with concerns that Lopez
documents were rotating sideways/upside down and seeking relief
filing certain documents outside of the Appendices…… ….……Ra259

Appellate Order denying relief regarding Lopez
documents dated August 29, 2024………………………… ..…………..…Ra264

Order dismissing Lopez Appeal dated September 17, 2024…….………… ..Ra265

[1] **Brief of Nagel Rice, Esq attached to show that he asserted federal defenses of Portilla to the OAE and advised the OAE of need to Comply with the ADA.**

Letter to Supreme Court Case manager in Lopez case dated October 17, 2024 advising that documents had to be filed under miscellaneous as options for proper filing was not available…………………………………………….Ra266

Petition for Certification of Dr. Faulknor dated January 16, 2025……………………………………………………Ra268

Order denying Judge D'Elia's recusal on 8/6/21 uploaded to the Supreme Court on January 31, 2025 by third party marked "**submitted in error"** by the Supreme Court Clerk"……………………………………………..…Ra297

Order denying reconsideration by Judge D'Elia on 8/6/21 uploaded to the Supreme Court on January 31, 2025 by third party marked "**submitted in error**" by the Supreme Court Clerk"……………. ……………………………………………... Ra298

Amended Petition of Dr. Mavis Faulknor June 6, 2025……………………………………………………..… Ra300

Appellate Motion brief on behalf of Dr. Faulknor advising clerk of documents turning sideways and upside down in the Appellate division and requesting relief Sept 30, 2022.…………….… Ra334

Supplemental Certification of Dr. Faulknor advising Appellate Clerk of the problems with documents on eCourt filed September 30, 2022…………………………………………………. Ra350

Copy of the Faulknor Certification Appellate Certification that was filed Attached to Lopez motion brief filed on May 25, 2025………………………………………………………Ra357

Order dated November 12, 2025 denying Faulknor's petition……………..Ra363

Letter to Appellate Clerk advising that Sutton's documents
were turning sideways and upside down on eCourt and
asking for relief March 13, 2022……………………………,,,….. ……Ra364

Appellate Order dismissing Faulknor and not
mentioning Rule 1:13-1 June 6, 2025…………………………...……….Ra366

Lopez Rule 4:50-1 Motion Brief with exhibits to Vacate and
Reconsider-uploaded Feb 2025, Amend April 2025
filed May 30,2025……………………………………………………  …..Ra380

Opposition brief to Partial Summary Judgment in
matter of Upchurch v City filed February 19, 2025……………………  ..Ra563

Screen shot of Appendices noted on eCourts in Upchurch
matter with names that Respondent did not give to documents
indicating unlawful interference dated Feb 19,2025…………………  ….Ra568

Screen shot of Previously filed Appendices dated 7/10/2024
with names given to past and then present
Upchurch Appendices……………………………..…………………..Ra569

Request for **Accommodation** in Upchurch and for Judicial
Notice of previous July 2024 Appendices due to interference[2]
with current Appendices filed **2/27/2025**………………………………… Ra570

Notice of Motion for **Accommodation** in Upchurch to paper
file documents on eCourts filed 4/25/2025…………………………..……...Ra576

Certification of Respondent in support of Request in Upchurch

[2] The Volumes of Appendices had different names from the names that were given to them on upload to eCourts.

for **Accommodation** to paper file documents on eCourts……………….Ra578

Request for **Accommodation** to OAE and DRB to allow
the Constitutional Issues to be resolved via Judicial review
Prior to surrendering sensitive medical information Feb 8, 2026 ……….**Ra589**

Proposed changes to the Workers' Compensation act
by Cecile D. Portilla, Esquire 9/12/24...................................................**Ra597**

Substantial Compliance by DSM-5-Turnover 2/17/26 Ra609

Exhibit B-Collateral witness list………………………………..……… **Ra612**

Amended Complaint filed against the Essex County
Prosecutor's Office dated September 16, 2025
(NO EMOTIONAL DISTRESS DAMAGES SOUGHT)
by Respondent……………………………………………………… Ra614

Certification of Cecile D. Portilla against Essex County
Prosecutor's Office July 7, 2025……………………………….………..Ra640

Notice of Motion to hold Faulknor's Petition in Abeyance
Until the third Party Upload of Documents
was properly investigated 2/13/25……………………………….…….. Ra644

Certification in Support of Motion for Accommodation in the
Supreme Court to paper file Faulknor's documents on eCourts
4/29/2025……………………………………..…………………Ra646

Email to case manager in Lopez regarding problem with
Upload and intent to make **motion to vacate** and reconsider
Feb 11, 2025…………………………………………………………..Ra659

Certification allegedly of Portilla with the
word "CERTIFIED" not written by her regarding the petition
intent to reconsider the denial of Angel Lopez's petition

dated April 21, 2025……………………………………..……………..Ra660

*Exhibit* A- Supreme Court Case jacket……………………..…………..Ra665

*Exhibi*t B-Certification in support of Request
for Accommodation Request April 21, 2025
in Lopez case…………………………..……………….…………….Ra667

Email communication dated February 19, 2025 from
Paige Ennis advising Respondent that letter and copies
of documents were given to the Supreme Court Clerk…………………Ra679

Email communication from Respondent to Paige Ennis
advising of issues with the Lopez filing dated
February 20, 2025……………………………………………………….Ra681

January 9, 2025 communication to Judge Garder regarding
lack of receipt of Court Notifications after
Notice of Appearance filed……………………………………………..Ra683

March 7, 2025 email from defense Counsel in Respondent's
case against Comcast showing that defense Counsel who
was formerly receiving Court Notification suddenly
stopped receiving Court Notifications…………………………..……..…...Ra685

Judge D'Elias decision in Faulknor v Hudson County
dated June 3, 2021 reflecting that he overlooked
(however caused or engineered) six notices of Claims
and Faulknor's CV ……………………………………………….……..Ra687

Cross Motion for Summary Judgment filed 3/30/2021……….….……..Ra691

Six Notices of Claims that Hawkins filed on 3/30/2021
on behalf of Faulknor in opposition to
Summary Judgment ……….. …………………… …………..…Ra695-709

Cover letter to CV that Faulknor sent to the County on
September 2, 2014……………………………………………….……Ra710

Faulknor's CV that was filed in support of Summary
Judgment on 3/30/2021 that Judge D'Elia
could not see……………………………………...………...…Ra711

APN Act upside down ……………………………..……..…....Ra728

Certification of Eldridge Hawkins in
support of motion for Reconsideration in Faulknor………………..… Ra731

Six Notices of Claims filed on behalf of Faulknor in Support
of Motion for Reconsideration on 7/1/2021……………………..……Ra738-750

Hawkins letter communication to
Judge D'Elia on June 14, 2021Requesting that the
Order dismissing case on summary Judgment be filed
so that he can file his motion for reconsideration……………………Ra751

Order denying Reconsideration by Judge

D'Elia in Faulknor dated 8/6/2021………………………………..…Ra752

Order denying recusal of Judge D'Elia dated

August 6, 2021……………………………………………………….….Ra754

Order denying Hawkins Motion to Transfer Venue
in Faulknor matter September 24, 2021……………………......…..Ra755

Order denying reconsideration of All Judge D' Elia's
prior rulings dated August 30, 2021……………………..….………..Ra758

Police report #14045086 related to
the Respondent's home dated 12/11/2014…………………………… Ra762

Grievance and Request for Stay Pending Appeal
to Third Circuit Jan 28, 2026……………………………………………Ra764

Substantial Compliance of DSM-5 Turnover
letter Feb 17, 2026 ……………………………………………………Ra769
Attachment with List of names (See Ra612

Respondent's letter to Former Health +Care Employer
To discharge Patients to other agency for their safety 9/8/2013………..Ra772

Respondent's email letter to Former Health Care
Area Supervisor with concerns for Patient safety 4/30/2013……….……Ra775

Respondent's written Whistle Blower Complaint Against Maxim
to the OIG 9/23/2013……………………………………………………..Ra776

Respondent's letter to OIG with Concerns related to Maxim
and Agent to assigned to investigate Maxim 12/10/2013…………………Ra785

Letter to Police Officer Romano regarding errors in police
report 7/16/2014………………………………………………………… Ra787

Proof of service to Officer Ramano 7/16/17………………………………Ra790

Mario Portilla's documents related to
early observations 8/7/2014……………………………...…………Ra791

Letter from Eldridge Hawkins to US
Attorney's Office August 29, 2014……………………………………………Ra796

Response to Respondent Portilla from USPS
Regarding mail theft and tampering January 20, 2015……………..…… Ra797

DOF Justice News- Maxin to pay $150 million for
false billings related to 2011 common practice false billing……………. .Ra798

Response from US DOJ to Respondent
with info for FBI with info for FBI related to
wiretaps, stalking hacking of computers and
mail tampering February 10, 2016……………………………………………Ra804

Certification of Dr. Ejiofor stating that his office phone and
Records were hacked and his phone fully controlled after he
Assisted Portilla 12/02/2025…………………………….……………………Ra805

Letter from Portilla to US Attorney Dec 6, 2015 related
to wiretaps and And cyber harassment December 6, 2015…………………..Ra808

Proof of Service of Correspondence with Police Report
To Captain Sanabria on 11/29/21………………………………………….Ra810

Letter to Captain Sanabria from Portilla requesting
Status of Computers November 28 2021………………………………….. Ra811

Letter to Captain Sanabria seeking to know
status of computers……..10/18/16……………………………………… Ra814

****Correct March 3, 2025 copy of Portilla's
Complaint against the ECPO (replacement for Ra614)………………… ..Ra815

*****Note that plaintiff Portilla accused the ECPO
***of abandoning its rescue efforts* causing the cyber
crimes to worsen *making them liable***

********Portilla did not accuse the ECPO of the actual cyber crimes.She accused the EPCO of allowing it to happen by failing to act.***

**Portilla did not sue the ECOP for any emotional distress damages because in 2025 when the suit was brought she had no issues with emotional distress She sued the ECPO for injuries to her DAMAGED rights from the Denial of equal protection and related claims**

*******This OLD Notice of Claim dated April 2022*** was attached to the Amended Complaint solely to show that the 6 years SOL for conversion was satisfied against the County of Essex that *Chopra secretly retrieved* and attached to his certification. Chopra did not ask for explanations of statements made in the Notice of claim. He simply wrote parts of statements and came to conclusions………………Ra842

**CECILE D. PORTILLA, ATTORNEY AT LAW LLC**
**7 Glenwood Avenue, Suite 400**
**East Orange, NJ 07017**
**Phone (973) 419 2325 Fax (973) 669 3268**
**Attorney Id: 021212005**
**Portillalaw@Gmail.com**

September 28, 2025

Mr. Daniel Davis, Deputy Ethics Counsel
Office of Attorney Ethics
840 Bear Taven Road, Suite 1
Ewing, New Jersey 08628

**RE: [redacted]e**

**Witness Statement of Cecile D. Portilla, Esquire i[redacted]**

Dear Mr. Davis:

I am an attorney at Law of the State of New Jersey. I write this letter as a **witness** to the above-mentioned matter. So that you know that I am not mentally ill I have enclosed my mental Health Report as Exhibit 1. **(Exhibit 1)**

I am the co-author of the brief on the matter of State of New Jersey v Tia C. Roulhac (ESX-25-001949). I am currently assisting Attorney Hawkins on the matter of Rupert Calvin Bell and Kyle Nelson v Township of Maplewood et al. (ESX-L- 8545-21). Copies of documents related to those two cases were forwarded to Mr. Hawkins with questions regarding his competency.

I have the answer to most of your concerns regarding documents as I have been assisting Eldridge Hawkins with many of his documents since 2015.

Please review that packet that I sent to Michelle M. Smith (Clerk of the Superior Court) dated September 5, 2025, requesting an investigation. **(Exhibit 2)** The entire packet is attached as Exhibit 2 with Exhibits A-J inside. **(Exhibit 2).** As previously explained to the Court administration and the Office of Attorney Ethics, I am a 2013 whistle Blower against an FBI Agent. The FBI Agent threatened to destroy my law practice, to make me work for free and to make me a former attorney.

Mr. Hawkins came to my rescue and like me became a victim of outrageous acts of retaliation. I have been reaching out to Court administration over the years and reporting outrageous acts of tampering and interference with documents filed on eCourts by me and on behalf of Eldridge Hawkins, Esquire.

I believe that in all ***fairness,*** Ms. Smith's response to my September 5, 2025, communication requesting an investigation regarding tampering and interference of documents on eCourts, should be utilized in answering your questions to Eldridge Hawkins related to some of the documents attached to your letter to him on September 12, 2025.

Enclosed in the packet to Ms. Smith dated September 5, 2025, is a copy of a brief on the matter of Morrison v Township of Irvington et al (ESX-L-2562-22) identified as Exhibit A. I specifically pointed out to Ms. Smith the strange changes in the font size of the words on various pages of Mr. Morrison's brief. I explained to her that **ALL** citations to exhibits in the brief under the point heading for invasion of privacy went missing after the Morrison brief was uploaded to eCourts!! **(Exhibit 2-** A).

Mr. Morrison is represented by attorney Hawkins and me.

The font size of the in Limine Motion document in the Bell matter that you sent to Mr. Hawkins, clearly shows that ***someone also*** reduced the font size of the words in that documents to a size 4 or 6 to make it IMPOSSIBLE for Judge Lynott to read!

Mr. Hawkins DID NOT do that! !!

Please compare the reduced font size of the words on **page 26 -27 (the invasion of privacy point heading)** of the Summary Judgment opposition Brief in the Morrison matter that was sent to Michelle M. Smith, with the font size of the words in the Bell in Limine Motion document. Upon comparison you will immediately see the similarities. The font sizes in the Morrison's brief and the Bell document were intentionally and maliciously reduced to a very small size by someone! (See **Exhibit 2-A**).

The in Limine document in the Bell matter was NOT uploaded in that condition. Additionally, whenever I am at Mr. Hawkins' office assisting him with typing or review any word or PDF document, he always asks me to "make it bigger" so that he can see what he is reading. Thus, it is crystal clear we DID NOT upload the Bell in Limine document in such a fine print to eCourts.

Note also, that I explained to Michelle Smith in my September 5, 2025 letter, that in June 2025, upon filing the documents in the Bell case, I received an alert from eCourts that the case management system was unavailable. All documents related to the alert are attached as Exhibit G inside the packet to Ms. Smith. ( **Exhibit 2-G**). As explained to Ms. Smith, after the receipt of the alert, the documents were not visible on eCourts until the

next day. As previously told to Court administration, the alert is inconsistent and seems to be document specific. When ever that alert is received from eCourts, the documents cannot be seen. They are not viewable on eCourts for multiple hours to days. When they become viewable, they are NOT in their pre upload condition. Simply put, they are noted in tampered condition when they reappear!

The packet to Ms. Smith also has a copy of attorney Hawkins' Certification stating his observations regarding problems on eCourts. (Exhibit J). Even more significant is **Exhibit 3** attached. **Exhibit 3** is a letter that was **hand** delivered to the offices of Attorney Ethics on October 19, 2023. Page three of the letter discusses our inability to see documents after they are uploaded to eCourts and specifically states in part as follows:

> "***While the documents are not viewable on ecourts***, *the Federal Agents then engage in hacking of eCourts to delete paragraphs from our briefs, removing and switching exhibits, inserting false facts, wrong statutes, wrong dates, wrong dates, wrong rules, grammatical errors, scrambling words, fading and redacting pdf pages and removing names of defendants from ecourts.*"

**(Exhibit 3)**

The letter was sent as the undersigned's Grievance to the Office of Attorney Ethics, so that the Ethics Committee would communicate to Court authorities that these things were happening directly on the Court site, and possibly send out a bulletin to protect all attorneys. The letter dated October 19, 2023, specifically requested an "Intervention" from the Office of Attorney Ethics. **(See Exhibit 3-last paragraph)**

Despite the October 19, 2023 letter telling the Office of Attorney Ethics that these things were occurring on eCourts and asking the Office of attorney Ethics for an intervention, it is confusing to me that you are asking Mr. Hawkins to explain that which I asked the ethics committee to investigate almost two years ago? It is clear that any wrong citations in the Roulhac brief that I co-authored were placed there *intentionally* to make us look incompetent.

Attached as **Exhibit 4** is a Notice of Motion for a Venue Change in the matter of Angel Lopez, Kazue Koizumi v The Palisades et. Al. **(BER-L-3575-22) (See Exhibit 4).** The ***wrong Court Rules*** were intentionally and maliciously placed in the right side of the caption to humiliate me. **(Exhibit 4).** Mr. Hawkins and I also share the Lopez, Koizumi case.

Many of the things that are happening on eCourts are being done by persons who have clearly gained unlawful ADMINISTRATIVE ACCESS to the Court site. Many of the things that I describe in **Exhibit 5** cannot be done from an attorney's ordinary access code! These acts include removal of my name from case jackets and sending out *multiple failures* to prosecute notifications. Cases filed by attorney Hawkins against Essex County Prosecutor's Office are given the ***most hostile acts of interference!***

The document attached as Exhibit 5 will provide most of the information that you need. As Exhibit 5 shows, I have complained to the Trial, Appellate and Supreme Court that documents that I have uploaded on behalf of Eldridge Hawkins and myself are being given interference, such as removal or adding wrong exhibits, blackening or blurring of words, deleting of paragraphs, creating hyperlinks, turning documents sideways or upside

down. **(Exhibit 5).** It is clear that these things are being done not only to sabotage our matters, but also to make us look incompetent.

The outrageous acts of tampering are malicious efforts to defame Attorney Hawkins and the undersigned lawyers as incompetent lawyers.

As the document attached here as Exhibit 6 shows, I was recently forced to contact the Appellate Division about a tampered brief on a case that I share with attorney Hawkins. As shown, I told the Appellate Case Manager in part ***" I try not to read my submissions [after they are uploaded] because I do not want to see the changes that are being made by others over which I have no control."*** **(Exhibit 6)**

I am a published Author and a Poet. I have always been proud of my writing. Since the harassment began, my documents on eCourts have been filled with outrageous typos, spelling errors, grammar errors, patois and Ebonics to make me look illiterate. I am ASHAMED and cannot read them after they are filed!!

I have enclosed a packet identified as **Exhibit 7. Exhibit 7 is a collection of** adjournment requests and communications regarding the Municipal Court matter of <u>State v Jamar Mayers</u>. **(Exhibit 7).** I am putting you on notice that someone may call the Office of attorney Ethics to make a false complaint that Mr. Hawkins is so negligent that he NEVER attended to his matters in the Mayers case and NEVER communicated with the Court. The Judge in the <u>Mayers</u> matter told me that she **<u>never</u>** received any of the attached communications and never received any type of communications from Mr. Hawkins regarding ANY of his adjournments. **(See Exhibit 7).**

As you can see, these communications were sent to the Court. NONE of these

documents were ever received! I also called Edison Municipal Court regarding Mr. Hawkins' adjournments. Another person assisting Mr. Hawkins called and faxed a communication to the Edison Court. As told to me, NO communication was ever received by Edison Municipal Court prior to September 24, 2025 on behalf of Mr. Hawkins, even through persons claiming that they worked for the Edison Court answered our calls! Prior to the September 15th court date, the Municipal Judge gave Mr. Hawkins **one last chance to attend to the Mayers matter** stating that there were multiple "no shows" in her computer. Upon Mr. Hakins putting a packet together to show that he had *never been a no show,* but had submitted proper adjournments requests, the packet did not make its way to the Edison Court. His call to Edison explaining that he had *never been a no show,* was not recorded, as the person who answered the Court phone line clearly was not a Court employee.

On September 15, 2025, I appeared by Zoom on the Mayers matter on behalf of attorney Hawkins, since he was also scheduled to attend to the Roulhac matter on that date. On September 15, 2025, the Municipal Court Judge in Mayers, instructed that Mr. Hawkins MUST appear **in person** before her on September 24, 2025. As perceived by me, someone wanted that Judge to call the Ethics Committee to complain about Attorney Hawkins.

I have attached **Exhibit 8**, which is a Notice of Claim that was sent to the FBI so that you can understand that my concerns are real and that they also affect Mr. Hawkins. **(Exhibit 8).** This particular Notice of Claim (NOC) was sent back to me as undeliverable. We still intend to send it to one of the other addresses. I have been filing notices of Claim against the FBI since 2022. I am not sure if the FBI has decided that I have sent them too

many. However, I know the law. Each new act allows me to file a New Notice of Claim against my violators.

Dr. Ejiofor (as identified on **Exhibit 1**), who prepared the mental health report in response my own ethics matter, is being subjected to egregious acts of retaliation for preparing the report. Person who seem to believe that the New Jersey CONSTITUTION DOES NOT MATTER, are now ***tampering and making changes to prescriptions*** that Dr. Ejiofor writes on behalf of his patients. One prescription written by Dr. Ejiofor for a patient was maliciously changed to a different drug that Dr. Ejiofor has *never prescribed, with an excessive dose!* I told Dr. Ejiofor to go to the police.

While I perceive that the plan by those who are tampering Dr. Ejiofor' prescriptions is to eventually turn the tampered prescriptions turned over to his licensing board to show how *incompetent and negligent he is,* these persons clearly have NO concerns that a patient could actually die from an excessive dose of the drug or die from an allergic reaction to the wrong medication. Dr. Ejiofor's phones and surveillance camera are being hacked and tampered in retaliation for writing the mental health report advising the ethics committee that I am competent.

As stated by Dr. Ejiofor, "THOSE PEOPLE ARE VERY EVIL!" Dr Ejiofor understands evil. After Dr. Ejiofor assisted me the first time, perceived FBI Agents communicated to Medicaid that he was engaging in Medicaid fraud and had overbilled Medicaid by over half a million dollars. Regardless of any billing error, when Medicaid descended upon his office, they came specifically looking for over half a million dollars of stolen Medicaid monies in response to a *Medicaid fraud tip* by suspected persons.

When Medicaid did not find the half a million dollars that Dr. Ejoifor allegedly stole from Medicaid, these persons, pretending to be unsatisfied patients, made multiple calls to his licensing Board complaining about him, seeking to have his license to practice taken away. Mr. Hawkins talks about God as often as Dr. Ejiofor does. They have to !

As also stated in one of my letters, perceived FBI Agents also placed a multimillion write off in my tax documents. Had my accountant not caught it, I would possibly be in prison at this time.

When I became a victim of crime related to my Whistle Blowing against the FBI, I sought help from multiple attorneys. Upon showing them my screen shots, they all found me credible. One lawyer wanted over $50,000.00 to get forensic evidence that I could not afford. Another lawyer sent me to another lawyer that he believed could help me. One lawyer told me to buy a gun. What I really saw was fear.

It was Mr. Hawkins firm belief in God's goodness that allowed him to assist me with my issues when other attorneys cowered in fear!! While he did not understand that they were FBI Agents at the time, he knew that they were government Agents who were unlawfully violating me. **(See Exhibit 9).**

Whenever I mention the name "FBI" in Mr. Hawkins' presence, Mr. Hawkins tells me to "**rebuke**" them! Mr. Hawkins is very spiritual and believes God is in the midst of everything. He held that belief when he worked as a New Jersey Legislator. **(Exhibit 10).** Mr. Hawkins did not start talking about God in his old age. He has always talked about God. He believes that it was God who gave him the wisdom to draft New Jersey's

criminal code. **(Exhibit 10).** Mr. Hawkins believes that he lives to do God's work and that he must obey God. I feel compelled to echo his "Amen."

I have been blocked and locked out of eCourts many times. The persons who are doing these things to us have indicated falsely that they are working with the ETHICS COMMITTEE and the SUPREME COURT! They were very convincing in the beginning, especially since they knew when attorney Hawkins would be audited **"randomly"** by the Office of Attorney Ethics.

I explained to Ms. Gitter, Deputy Ethics Counsel (assigned to my investigation) the methods used by my harassers to communicate with me. While I was too uncomfortable to ask Ms. Gitter this question, I now feel compelled to ask "how do these people who are committing these outrageous **FEDERAL CRIMES** know the exact actions to be taken by the Office of Attorney Ethics?" These persons who are harassing me, who I perceive to be FBI Agents, KNEW that I would be sent a communication from the Office of Attorney Ethics in July 2023. How did they know? As I told Mr. Hawkins, I saw investigator Chopra's name pop up on my computer even before I knew that he was assigned to investigate my Ethics matter!

The persons harassing me have blocked me from filing documents on eCourts and blocked me from my annual attorney registration. I had to drive to Trenton where I met with Paige Ennis from the Appellate Division who advised me that there should be no reason why I cannot register.

Since this is about Mr. Hawkins, I have enclosed a document identified as **Exhibit 11. Exhibit 11** is a certification prepared by Tia Roulhac. **(Exhibit 11).** This should put to

rest **your contention that Ms. Roulhac wanted to plead guilty.** Simply put, any contention that Ms. Roulhac wanted to plead guilty is totally false!

Since I am assisting attorney Hawkins with the Roulhac case, I believe that I should state that I have concerns with the handling of that case. There were no videos or statement from any witness witnesses' indicating that ANYONE identified Ms. Roulhac as the shooter, or that anyone saw **her** under the porch WITH a gun. According to the witnesses, the shooter was a man.

The only conclusive statement that Ms. Roulhac was **seen under the porch WITH a gun** is contained in the prosecutor's brief. Most would argue that since the prosecutor is the only one with that knowledge, that makes her a witness who should take the witness stand. While the police report was ambiguous and artfully written, it **does not** say the words contained in the prosecutor's brief. When Prosecutors are NOT truthful, Grand Jurors have no choice but to indict.

While I do not know much about Judge Kahn, I can truly say that I was very disappointed when she simply wrote on her Order in a prior case, that the prosecutor said *no* to a motion for reconsideration in another matter. We spent many hours drafting the brief. Simply put, we are required to spend multiple hours drafting briefs, while lawyers who work for the State can respond **verbally** to a motion. There is no way to show that the lawyer who produced an Oral brief, cited an incorrect statute or an incorrect case law while our briefs are allowed to be scrutinized.

Regarding the Bell trial that was adjourned, I say without any reservation that attorney McManus was **LOSING** the case of Bell v Township of Maplewood when he asked for the mistrial in April of this year. Upon the Jurors submitting their questions to Judge Lynot, all questions were in the plaintiff's favor. The jurors were basically accusing the defendants of discriminating against our plaintiffs.

Upon the Jurors being dismissed, I observed them outside engaged in an angry discussion accusing Judge Lynott of aborting the trial because he did not want Mr. Hawkins to win. Judge Lynott thought that he was doing the right thing after Mr. McManus complained about the delays. As shown, the jury disagreed. As humans, we all perceive things differently.

During the trial, one defense witness could not meaningfully answer several of Mr. Hawkins' questions. Attorney MacManus took the witness outside. When the witness returned to the witness stand his memory was miraculously restored and he could answer the questions!

Mr. MacManus stated before the trial started that he knows that Mr. Hawkins takes a long time with witnesses on the witness stand. Thus, Mr. MacManus knows that Mr. Hawkins asks many questions NOT because he is incompetent but because he is very thorough.

Mr. Hawkins responded to Mr. McManus' Motion for sanctions (for Hawkins allegedly not complying with the Judge Lynott's Pre Trial Order in the Bell matter) that was filed on September 5, 2025, by only explaining the error related to his corrected

witness list. Neither Mr. Hawkins nor I knew that the document with the Jury instructions that *we worked on* was missing from eCourts. We don't know why it is missing! Additionally, we had a Courier hand deliver the trial binder to Mr. McManus' Office at the precise address on his letterhead. The delivery was timely.

The staffer at Mr. McManus's Office who signed for the binder, did not tell our Courier that he was at the wrong address. We accept fault only for the wrong version of the witness list in the binder, which is a harmless error. An error in the witness list is not a valid reason for holding Mr. Hawkins in Contempt, or for canceling the trial. Plaintiffs Bell and Nelson have complete faith in Mr. Hawkins and are anxious to have their matter completed. Note that Mr. McManus was trying to have the trial adjourned (which was denied) **before** he filed the motion for sanctions.

I must end my statement by talking about Eldridge Hawkins, Esquire, the person. Mr. Hawkins helped me to really understand the New Jersey Constitution. Mr. Hawkins told me that he read the entire constitution in order to draft New Jersey's criminal code. He firmly believes that ALL persons including government **must** comply with the Constitution. Because of Eldridge Hawkins, I am NOT afraid to fight back against the FBI.

As I perceive, because of Mr. Hawkins' strong belief that people must speak truthfully and that all persons are entitled to due process of laws, and his strong sense of advocacy, he has conflicts with certain Judges. He told me years ago that two Judges in Essex County told him that certain Judges do not like him. Because of that he has sought recusal in certain cases. He sent a letter to the Supreme Court asking for assistance. He stated that the Justices never responded to his letter.

The people who are harassing me know that Mr. Hawkins has problems with certain judges, such as Judge Sules, and are using that to their advantage. For example, upon Mr. Hawkins filing a recent complaint and Jury demand, someone caused Judge Sules' name to POP UP in the eCourts filing system prior to the completion of the filing of the complaint to harass him.

I was the one who told Mr. Hawkins that Judge Sules strangely became assigned to a case filed by Crown View against his wife (Linda Hawkins) more than two years into the litigation, after he complained about Judge Sules. (See ESXL-1803-22). Mr. Hawkins represented his wife on that matter.

Judge Sules came into the Crown View case just in time to decide the Summary Judgment motion. The Crown View complaint was filed on **3/21/2022** and assigned to Judge Stetcher. The case was somehow reassigned to Judge Sules on **7/17/2024.** Even though Judge Sules was reassigned to the case on **7/17/2024**, Judge Spencer wrote Orders on the Crown View case on **8/20/2024** and **9/13/2024**. The only Orders written by Judge Sules on the Hawkins' matter were: Order granting Summary Judgment against Linda Hawkins and entering Judgment against Linda Hawkins on **4/4/2025**. Judge Sules also signed an Order on **4/4/2025** denying Mr. Hawkins Counter claims. Judge Sules then denied Reconsideration and denied the Motion to Vacate Judgment and Execution on 5/9/2025.

The circumstances of the reassignment of the Hawkins' matter to Judge Sules TWO YEARS into the litigation AFTER he complained about Judge Sules may be considered very strange by reasonable persons!

I have brought it to the attention of the Appellate Division that documents filed by the undersigned, or on behalf of Attorney Hawkins, are being blocked on eCourts from Judges and their staff. On several occasions, Mr. Hawkins was accused of not filing documents that were right there on eCourts. I have also observed Mr. Hawkins trying to file an opposition to a Motion for Summary Judgment and was blocked from doing so. On that occasion, although he had $500.00 in his account, the eCourt system gave an alert that he had insufficient funds and *blocked him* from opposing the motion. When I went before the Court with him to explain what I witnessed, the Judge really had no interest in hearing such an explanation.

Mr. Hawkins also could not understand why Judge D'Elia accused him of not filing any notices of claims in the Faulknor v County of Hudson matter and threw out multiple counts of a complaint on that basis alone. Mr. Hawkins filed six notices of claims in opposition to Summary Judgment on the Faulknor case, that were previously filed and refiled thirty seven times (37) on the Court site. The Judge could not see any of them and stated in his opinion that ***none*** were filed. Mr. Hawkins logically came to the conclusion that Judge D'Elia was biased.

In my letter dated January 10, 2025, to Michelle M. Smith with concerns, I explained to her that I believed that someone was trying to convey falsely to others that Mr. Hawkins was deficient. **(Exhibit 12).** Mr. Hawkins did not create the email address identifying himself as **hwklaw (NULL).** One client found the "NULL" added to Mr. Hawkins' email address by these persons who hate him to be very disrespectful. (See **Exhibit 13).**

Mr. Hawkins at 85 years of age, is one of New Jersey's **brightest minds.** I sincerely believe that he is the best trial attorney in New Jersey. I have seen him in action. He is NOT the type of lawyer who uses cue cards and stumbles along. He speaks endlessly without looking at any notes.

In 2023, upon one defense Counsel offering one of my clients $18,000.00 to settle a personal injury case, Mr. Hawkins offered to try the case for me. He received a jury verdict in the amount of $650,000.00. The defense lawyer, after losing the case, asked that the verdict be documented as a settlement. Mr. Hawkins graciously said yes. He is that type of person!

Mr. Hawkins is exceptionally gifted at trying cases which I perceive to be the reason why other lawyers try to get Judges to cancel his trials and allow them to file summary judgment.

As lawyers we were taught that an important part of statutory interpretation includes understanding the legislative intent. Well, Attorney Hawkins is the former Legislator who drafted the criminal codes of New Jersey. What was his legislative intent when he drafted certain provisions?

Mr. Hawkins sincerely believes that the Citizens of New Jersey who are exposed to the criminal justice system as it exists are being denied substantive due process. Mr. Hawkins believes that the New Jersey Supreme Court is at fault. He was very upset when one Municipal Prosecutor stated that he does not allow any defendant to leave his Court room *without being charged with something.*

Mr. Hawkins is a dedicated advocate for the people of New Jersey.

IMPORTANT POINTS

1. The Office of Attorney Ethics has reason to know the answers to almost all the questions related to the documents that they sent to Attorney Hawkins, because Whistle Blower Cecile Portilla, Esquire sent the Office of Attorney Ethics a **Grievance** letter dated 10/19/2023 asking for intervention related to unlawful interference with the documents filed on eCourts. **(Exhibit 3)**
2. In her **Grievance** letter, Ms. Portilla advised the Ethics Committee, that Eldridge Hawkins, who assisted her with matters related to her whistle blowing, was also being subjected to acts of retaliation and that his documents were noted upside down on eCourts, hadfalse and wrong information injected in them, as well as scrambled words and grammatical errors etc. **(Exhibit 3)**
3. Ms. Portilla sent a hand delivered letter to Michelle M. Smith dated January 10, 2025 that stated as follows in part *"Eldridge Hawkins who assisted (sic) with the whistle blowing against the FBI has become a target of FBI harassment who is being subjected to audits believed to be orchestrated by the FBI who has been soliciting complainants trying to label him as incompetent."* **(Exhibit 13)**
4. Ms. Portilla sent the document dated 10/19/2023 to the Office of Attorney Ethics because the persons who are harassing her, ***communicated to her*** that they were somehow acting with **authority** and that the SUPREME COURT and the OFFICE

OF ATTORNEY ETHICS knew what they were doing to her and Attorney Hawkins.

5. The letter dated 10/19/2023 was **hand delivered** to the Office of Attorney Ethics by a Courier.

6. Ms. Portilla felt *compelled* to send the letter to the Office of Attorney Ethics to put them on Notice that she was being violated by perceived FBI Agents who were planning to use the Office of Attorney Ethics to try and secure her demise.

7. Ms. Portilla felt that in the same manner that individuals believed to be FBI Agents called Medicaid with false information seeking to get Dr. Ejiofor prosecuted for Medicaid Fraud for assisting her, and had MULTIPLE fake patients call Dr. Ejiofor's Licensing Board with false information to sabotage his license to practice, they had a similar plan to destroy her credibility.

8. As late as September 5, 2025, Ms. Portilla sent a communication to Michelle M. Smith, asking for an investigation of the same issues related to documents outlined in the letter from the Office of Attorney Ethics to Eldridge Hawkins. **(Exhibit 2 - with exhibits A through J).**

9. Not much was done by Court Administration, the State of New Jersey or the Office of Attorney Ethics since the undersigned placed them on NOTICE of tampering and interferences of documents filed on eCourts by her and Attorney Hawkins.

10. On September 19, 2025, the undersigned who is represented by Eldridge Hawkins, Esquire in a lawsuit against Essex County Prosecutor's Office and its Cyber

FACTS Unit, assisted Eldridge Hawkins in filing a motion to amend her Complaint docked at ESX-L-1684-25.

11. After uploading all her documents on 9/19/2025, and pressing the submit button, the eCourts system gave an alert that the Case Management system was not available, and that an email will be forwarded to my address when the system processed the filing. **(Exhibit 14)**

12. After the alert, the documents in support of the motion to amend the complaint could not be viewed on eCourts, for days. **(Exhibit 15)**

13. When the documents appeared for viewing days later on **9/22/025,** the proposed Amended Complaint in my matter docketed at ESX-L-1684-25 was NOT formatted the way that it was formatted prior to being uploaded to eCourts.

14. An **incomplete sentence** was immediately noticed in the proposed Amended Complaint that was NOT there when the undersigned uploaded the proposed Amended Complaint. I did not read through the entire document to see any other changes that were made.

15. Simply put, SOMEONE ***tampered and changed*** the proposed 2nd Amended complaint that was filed on 9/19/2025 against the Essex County's Prosecutor's Office that was prepared by Eldridge Hawkins, Esquire and last reviewed by me.

As a WITNESS, I strongly believe that it is very unfair to ask my attorney and Colleague Eldridge Hawkins to explain that which I have been asking the State of New Jersey to *investigate and prevent since 2022.*

In my travels to various places over the years to get answers regarding the outrageous acts on courts, I spoke to individuals who disclosed that the things that are happening on eCourts are NOT new. As perceived, the State of New Jersey knows that eCourts is vulnerable to these types of attacks and has failed to take the necessary steps to protect attorneys and other citizens.

Upon the undersigned opining that eCourts should be dismantled and paper filing resumed, my harassers (who are also harassing Eldridge Hawkins to punish him for assisting me), communicated to me that *I am the one who will be dismantled.*

**JOURNAL TECHNOLOGIES**, the developer of eCourts, should be consulted about steps that can be taken (if that possibility exists) to protect eCourts, so that Eldridge Hawkins, Esquire, his client and colleague Cecile D. Portilla, Esquire, and New Jersey residents are not forced to use a court site that allows interference with substantive due process.

I respectfully request that my letter receive appropriate consideration during your investigation of Eldridge Hawkins, Esquire.

Thank you.

Respectfully submitted,

/s/ Cecile D. Portilla
CECILE D. PORTILLA, ESQUIRE

Enclosures

Cc: Michelle M. Smith, Clerk of the Superior Court.

October 10th, 2016

To whom it may concern

CERTIFICATION OF RICHARD DOUGLAS

I Richard Douglas hereby certify that I am a trained certified computer professional. I have worked in this area for approximately 20 years. I have assisted Cecile Portilla on several occasions with the various problems with her computers between 2015 to 2016. I have employed several tools to help determine unauthorized intrusion which included remote access to her computers. One of these tools were wire shark to help see packets/data to and from her Computer.

Based on the information gathered, I am able to state with a reasonable degree of professional certainty that her computers are being hacked although I am unable to say who the hackers were.

I certify that the above statement made by me are true. I am aware that if any of the above statement made by me are willfully false I am subject to punishment.

SINCERELY

RICHARD DOUGLAS
3DS NETWORK MANAGEMENT AND DESIGN
56 WASHINGTON ST., EAST ORANGE ORANGE NJ 07018

55 Washington St | East Orange | NJ 07017

Adam Portilla
3 Ardmore Road
West Orange, NJ 07052

I, Adam Portilla of full age certify as follows:

1. I am the son of Cecile D. Portilla, Esquire.
2. I have assisted my mother on several occasions with efiling on eCourts.
3. I help her to prepare appendices and tables of contents for briefs and Appendices.
4. I have observed my mother being disconnected from eCourts on multiple occasions with the alert of "system error exceptions" after which she repeatedly logs in and upload documents intermittently.
5. I am aware that she has called the police on multiple occasions in the past due to harassment.
6. In 2023, I assisted her with filing an Appellate motion brief. I uploaded the brief while she observed.
7. She later showed me the brief that I uploaded. It was upside down on the Appellate Court site as shown by the location of the automatic date and case number stamped on the document. **(See Attachment 1)**
8. In 2024, My mother wanted me to bear witness to the fact that active hyperlinks were being activated in her documents on eCourts after her documents are uploaded to eCourts.
9. She said that the Appellate Court would not accept the appendices with active hyperlinks.

10. On one occasion I used the pdf app and checked to make sure that there were no hyperlinks in any of her Appendices.

11. I tested the Appendices myself and showed her that no hyperlinks were active while the documents were in her computer.

12. I took a picture to show her that the little hand was not present on her document, meaning that there were no active hyperlinks in her Appendices prior to filing. **(See Attachment 2)**

13. I then uploaded the appendices to the court site. After I upload the Appendices to the Appellate court site, the hyperlinks became active as shown by the presence of the little hand appearing on the document after we uploaded them. **(See Attachment 3)**

14. I took a picture for her so that she would have proof that the hyperlinks were being created on the court site. **(See Attachment 3)**

15. I told her that there was nothing that I could do to fix that problem because the hyperlinks were being activated only on eCourts.

16. My mother advised me that she would go to Geek Squad for help because the Appellate Court would not accept her documents with active hyperlinks.

17. Upon returning from the Geek Squad store she showed me the attached document. **(See Attachment 4).** According to the Geek Squad Agent he could not remove links as they were not seen as links within the program. **(See Attachment 4)**

18. We also could not see any links to remove in our program as the links only became active on the Court site.

I certify that the above statements made by me are true. I am aware that if any of the foregoing statements are willfully false that I am subject to punishment.

ADAM PORTILLA

Dated: February 25, 2026

# ATTACHMENT 1

**ELDRIDGE HAWKINS LLC**
**Attorney At Law**
**Attorney ID No. 214731967**
60 Evergreen Place, Suite 510
East Orange, New Jersey 07018
Tel: (973) 676-5070
Fax: (973) 676-7356
Attorney for: **PLAINTIFF, KERI PAYNE**

| | |
|---|---|
| **KERI PAYNE,**<br><br>**PLAINTIFF**<br><br>**v.**<br><br>**CITY OF ORANGE TOWNSHIP, CAPTAIN VITIELLO, CAPTAIN CHRISTOPHER DUNN, SERGEANT STEFANELLI, TODD WARREN, B.A. CHRISTOPHER HARTWYK , SGT RENE WILSON , HEAD DOE, JOHN DOES (1-10) STATE OF NEW JERSEY, HARRY ROES (1-10)**<br><br>**DEFENDANTS** | SUPERIOR COURT NEW JERSEY<br>APPELLATE DIVISION:AM0057-23<br><br>SAT BELOW:<br>Hon. Cynthia D Santomauro, JSC<br>**ESX-L-6850-22**<br><br><u>Civil Action</u><br><br>**Submitted: 10/16/2023** |

# BRIEF IN SUPPORT OF MOTION FOR LEAVE TO FILE AN INTERLOCUTORY APPEAL

*On the Brief:*
Eldridge Hawkins, Esquire- ID No. 214731967
Cecile D. Portilla, Esquire-ID No. 021212005

## TABLE OF CONTENTS


Page

PRELIMINARY STATEMENT 1

PROCEDURAL HISTORY 3

STATEMENT OF FACTS 4

STANDARD OF REVIEW 6

POINT I:
DISALLOWING PLAINTIFF'S COUNSEL FROM CLARIFYING AN ORDER BEFORE THE COURT AFTER THE JUDGE FAILED TO COMPLY WITH RULE 1:7-4 IS A FUNDAMENTAL PROCEDURAL PROBLEM AND AN ACT OF INJUSTICE 6

POINT II:
THE JUDGE'S DISALLOWING OF PLAINTIFF'S COUNSEL FROM CLARIFYING HER ORDERS IS AN UNCONSTITUTIONAL DENIAL OF PLAINTIFF'S ACCESS TO THE COURTS 8

POINT III:
PUNITIVE DAMAGES ARE NOT APPLICABLE ONLY TO NJLAD VIOLATIONS BUT ALSO APPLIES IN CASES WHERE THERE ARE ALLEGATION OF HIDING OF EVIDENCE 9

POINT IV:
THE COURT ALSO ENGAGED IN ABUSE OF DISCRETION BY DECIDING A CONSOLIDATION MOTION THAT WAS NOT BEFORE HER, DISALLOWING PLAINTIFF FROM SEEKING FURTHER RELIEF AND BY FAILING TO STATE HER RULE 1:7 REASONS OF LAW AND FACTS OF HER ORDER ON DEFENDANTS MOTION TO DISMISS 12




-FILED, Clerk of the Appellate Division, October 16, 2023, AM-000057-23, M-000618-23, AMENDED

# ATTACHMENT 2

Gmail

Cecile Portilla <portillalaw@gmail.com>

## No Hyoerlink

1 message

**Cecile Portilla** <portillalaw@gmail.com>
To: Cecile Portilla <portillalaw@gmail.com>

Mon, Mar 2, 2026 at 11:39 AM


Volume 1 Carol Appendix (com...
Volume 2 Carol Appendix (com...
Volume 3 Carol Appendix.pd
ll tools
Edit
Convert
E-Sign
ELDRIDGE HAWKINS L
Attorney At Law
Attorney ID No. 21473196
60 Evergreen Place, Suite 5
East Orange, New Jersey 07
Tel: (973) 676-5070 Fax: (9
hwklaw@aol.com
CECILE D. PORTILLA, ATT
7 Glenwood Avenue, Suite 40
East Orange, NJ 07017
Phone (973) 676-5072 Fax (8
Attorney Id: 021212005
Portillalaw@comcast.net
Portillalaw@Gmail.com
On the Brief:
Cecile D. Portilla, Esquire

# ATTACHMENT 3

Gmail

Cecile Portilla <portillalaw@gmail.com>

# Hyperlink Triggered

1 message

**Cecile Portilla** <portillalaw@gmail.com>
To: Cecile Portilla <portillalaw@gmail.com>

Mon, Mar 2, 2026 at 11:38 AM

tal.njcourts.gov/webe12/aspsoft/HandlerDocument.ashx?rnd=0.8030551304499041&document_enptid=368f7a68-36

Ask Copilot

1 of 180

| | |
|---|---|
| CAROL JACKSON<br><br>PLAINTIFF-APPELLANT<br><br>v.<br><br>RUTGERS UNIVERSITY, KENNETH COP, MICHAEL REIN<br><br>DEFENDANTS-RESPONDENTS | SUPERIOR COURT<br>APPELLATE DIVIS<br><br>Civil A<br><br>Sat Below<br>HON. THOMAS H. M<br>SUPERIOR COURT O<br>LAW DIVISION-ESSE<br>DOCKET NO.: ESX-L-<br><br>Submitted: January 27 |

**CONFIDENTIAL APPENDIX OF CAROL JACKS**
**VOLUME 1 of 1 (CPa001-CPa115)**


ELDRIDGE HAWKINS LLC
Attorney At Law
Attorney ID No. 214731967
60 Evergreen Place, Suite 510
East Orange, New Jersey 07018
Tel: (973) 676-5070 Fax: (973) 676-7356
hawklaw@aol.com

CECILE D. PORTILLA, ATTORNEY AT LAW LLC
7 Glenwood Avenue Suite 400
East Orange, NJ 07017
Phone (973) 676 5072 Fax (862) 520 3433
Attorney Id: 021212005
Portillalaw@comcast.net
Portillalaw@Gmail.com


*On the Brief:*
*Cecile D. Portilla, Esquire*

# ATTACHMENT 4

Service Order Receipt

Client Copy

Geek SQUAD

EAST HANOVER NJ 00473
410 State Route 10
East Hanover, NJ 07936
(973) 515-4994

Service Order: 00473-350233907
01/28/2025

If you have any questions about the work performed on your product, please contact your local Precinct.

## Client Information

**Service Owner:**
**Name:** CECILE PORTILLA
**Address:** 3 ARDMORE RD WEST ORANGE, NJ 07052-4718
**Primary Phone:** (973) 419-2325
[Anytime]
**Ship To:**
00473 EAST HANOVER NJ (973) 515-4994

## Product Information

**MFG:** GEEK SQUAD
**Description:** GEEK SQUAD CONSULTATION
**Model:** GS-CONSULT **SKU:** 5628289 **Serial:** na
**Purchased:** 01/28/2025
**Physical Appearance:** N/A
**Accessories:** None **Plan Type:** Tech Support
**Plan ID:** MBRTOT2412985127546 **Expires:** 12/21/2025
**Labor Coverage:** Tech Support **Parts Coverage:** COD

## Service Information

**Confirmation Number:** N551071D
**Repair Comments:**
was unable to remove links beacuse they where not seen as links within the program. client needs to edit the text to remove this links.||-wk
**Agent Notes at Check-In:** client came in with an issue with her pdf. client was trying to get rid of links within her documents.

## Fees and Payments

| Qty | Part Number / SKU | Description | | Price Each | Adjustment | Total |
|---|---|---|---|---|---|---|
| | 4740131 | | Total Parts: | | | $0.00 |
| | | | Total Labor: | $0.00 | $0.00 | $0.00 |
| | | | Sales Tax: | | | $0.00 |
| | | | **Total Repair Cost:** | | | **$0.00** |
| | | | Deposit: | | | $0.00 |
| | | | Total Service Fee: | | | $0.00 |
| | | | Service Fee Paid: | | | $0.00 |
| | | | Adjusted Service Fee Paid: | | | $0.00 |
| | | | Additional Payments: | | | $0.00 |
| | | | **Balance Due:** | | | **$0.00** |

**Actual Tax will be calculated at the time of Payments**

## Disclaimer

***It is Geek Squad policy to recommend changing your current password after we have completed our repairs.***

## Terms and Conditions

I, CECILE PORTILLA, Recognize that repairs have been performed in a manner that is satisfactory to me.

Client Signature ____ Date ____ Agent Signature [signature] Date 1/28/25

An estimate as required (Section 9844 of California Business and Professions Code) for repairs shall be given to the client by the service dealer in writing, and the service dealer may not charge for work done or parts supplied in excess of the estimate without prior consent of the client. Where provided in writing, the service dealer may charge a reasonable fee for services provided in determining the nature of the malfunction in preparation of a written estimate or repair. For more information, contact the Bureau of Electronic and Appliance Repair, Department of Consumer Affairs, Sacramento, CA 94814. California Master Registration Number: E 81713. Geek Squad, 7601 Penn Avenue South, Richfield, MN 55423-3645. Contact Geek Squad at 1-800-GEEK SQUAD (433-5778).

Supreme Court of New Jersey
Disciplinary Review Board
Docket No. DRB 25-304
District Docket No. XIV-2025-0257E

In the Matter of :

Cecile Delrose Portilla :

An Attorney at Law :

ORDER (SEALED)

THIS MATTER having come before the Disciplinary Review Board (the Board) on a motion for emergent relief filed by the Office of Attorney Ethics (the OAE), pursuant to R. 1:20-12(b), seeking an order (1) directing respondent to submit to an expedited medical examination by a licensed medical doctor, selected and approved by the OAE, at the OAE's expense, and for the OAE to obtain a report from that doctor, to determine respondent's ability to practice law and to adequately defend herself in her pending ethics matters, and (2) recommending to the Court that respondent be immediately transferred to disability inactive status (DIS), until further Order of the Court, if the examining doctor's report indicates that respondent is not fit to practice law;

And good cause having been shown;

IT IS on this 5th day of January, 2026, ORDERED that respondent shall submit forthwith to an expedited medical examination by a licensed medical doctor selected, approved, and paid for by the OAE; and it is further

ORDERED that, if respondent fails to submit to the medical examination as scheduled by the OAE, or fails to promptly produce all medical records requested by the OAE or its examining doctor, the OAE shall promptly apply for respondent's immediate temporary suspension, pursuant to the New Jersey Court Rules; and it is further

ORDERED that, pursuant to R. 1:20-12(c), and in the interests of justice, respondent be appointed counsel, and that the OAE shall promptly provide this order to the Assignment Judge of the Superior Court of New Jersey, Essex County, and request the expedited assignment of counsel; and it is further

ORDERED that the OAE's request that the Board recommend to the Court that respondent immediately be transferred to DIS is denied, without prejudice.

Disciplinary Review Board
Hon. Mary Catherine Cuff, P.J.A.D. (Ret.),
Chair

*/s/ Timothy M. Ellis*

By: ______________________________
Timothy M. Ellis
Chief Counsel

Gmail

Cecile Portilla <portillalaw@gmail.com>

## Re: Office of Attorney Ethics v. Cecile D. Portilla, Esq. - Docket No. XIV-2025-0257E

3 messages

**Eldridge Hawkins, Esq.** <hwklaw@aol.com> Wed, Jan 14, 2026 at 8:31 AM
To: Tania Zastocki <tania.zastocki@njcourts.gov>
Cc: Alexandra Gitter <alexandra.gitter@njcourts.gov>, "rustyreevesmd@gmail.com" <rustyreevesmd@gmail.com>, Rajesh Chopra <rajesh.chopra@njcourts.gov>

DEAR ALL INVOLVED
It is not with pleasure that I ADVISE EACH AND ALL OF YOU that you are all involved in an unconstitutional attempt to deprive Ms Portilla of her rights, with regard primarily to have a jury trial with regard to your unlawful invasion of her privacy (article 1,par 1)to attempt to declare her incompetent . I suggest you read the N.J. Constitution . Article 1, par 9 , in toto. If you do not understand that same means that what you are doing outside of a jury determination is also Criminal , I SUGGEST you look at MY PRIOR COMMUNICATION OF AUGUST 17, wherein I MENTION a federal criminal statute that DAVID DANIELS seemingly used as evidence of the undersigned's incompetence , along with making statements like "MAKE MY DAY" . We all deserve what we get out of this earthly plain. When someone gives a warning which is not heeded, people should start ducking., The LEGISLATURE did NOT give authority to the ETHICS COMMITTEE TO DETERMINE HER INCOMPETENCY ; EXPRESSIO UNIUS , EST EXCLUSIO ALTERIUS .

EH
On Tuesday, January 13, 2026 at 08:29:20 AM PST, Tania Zastocki < > wrote:

Dear Mr. Hawkins:

Please see attached correspondence with regard to the above captioned matter.

Tania Zastocki

Judiciary Secretary 1

Office of Attorney Ethics

of the Supreme Court of New Jersey

P.O. Box 963

Trenton, NJ 08625

609-403-7800 ext. 34117

**Eldridge Hawkins, Esq.** <hwklaw@aol.com> **Wed, Jan 14, 2026 at 3:06 PM**
To: Cecile Portilla <portillalaw@gmail.com>

[Quoted text hidden]

**Eldridge Hawkins, Esq.** <hwklaw@aol.com> Fri, Jan 16, 2026 at 5:19 PM
To: Tania Zastocki <tania.zastocki@njcourts.gov>
Cc: Alexandra Gitter <alexandra.gitter@njcourts.gov>, "rustyreevesmd@gmail.com" <rustyreevesmd@gmail.com>, Rajesh Chopra <rajesh.chopra@njcourts.gov>

Dear Ms. Gitter:

OFFICE OF ATTORNEY ETHICS
OF THE
SUPREME COURT OF NEW JERSEY
P.O. BOX 963
TRENTON, NEW JERSEY 08625
PHONE: (609) 403-7800
FAX: (609) 403-7802

JOHANNA BARBA JONES
*DIRECTOR*

JASON SAUNDERS
*FIRST ASSISTANT ETHICS COUNSEL*

March 19, 2026

The Honorable Avion Benjamin, A.J.S.C.
Essex County Superior Court
Dr. Martin Luther King Jr. Justice Bldg.
495 Dr. Martin Luther King Jr. Blvd. – Floor 3
Newark, New Jersey 07102

**Re: In the Matter of Cecile D. Portilla, Esq.**
**Docket No. 25-304**
**OAE Docket No. XIV-2025-0257E**

Dear Judge Benjamin:

On behalf of the Office of Attorney Ethics (OAE), I am writing to Your Honor to follow up on prior correspondence directed to Judge Venable's attention prior to Her Honor's retirement. In that regard, enclosed please find the following:

1. Correspondence to Judge Venable dated January 9, 2026;
2. Order (Sealed) entered by the Supreme Court of New Jersey, Disciplinary Review Board (the Board), on January 5, 2026 regarding the above-named attorney, Cecile D. Portilla, Esq. (Respondent); and
3. Proposed form of Order for the appointment of an attorney to facilitate this request.

In accordance with the enclosed Order, the OAE provides same to Your Honor and respectfully requests the expedited assignment of counsel for Respondent pursuant to R. 1:20-12(c).

Should Your Honor have any questions, I can be reached at (609) 403-7800 ext. 34133 or alexandra.gitter@njcourts.gov.

Thank you for your courtesy and consideration in this matter.

Respectfully submitted,
*Alexandra J. Gitter*
Alexandra J. Gitter
Deputy Ethics Counsel

AJG/tlz
Enclosures
c: Eldridge Hawkins, Esq., counsel of record for Respondent, (w/encl. via regular mail and email)
Rajesh Chopra, Disciplinary Investigator, OAE

**SUPREME COURT OF NEW JERSEY**
**LAW DIVISION: ESSEX COUNTY**

**Docket No. DRB 25-304**
**District Docket No. XIV-2025-0257E**

**In the Matter of**

**CECILE D. PORTILLA,**

**An Attorney at Law**

**ORDER APPOINTING REPRESENTATION [R. 1:20-12(c)]**

**THIS MATTER** having been brought before the Court at the request of the Office of Attorney Ethics, for the appointment of counsel under R. 1:20-12(c), and it appearing that Cecile D. Portilla, Esq., an Attorney at Law of the State of New Jersey, has been ordered by the Disciplinary Review Board to submit to an expedited medical examination pursuant to R. 1:20-12(b), and that the expedited appointment of counsel is required in the interests of justice;

IT IS on this _______ day of ____________ 2026,

1. ORDERED that ________________________________, an Attorney at Law of the State of New Jersey, having offices at ________________________________________________, be and hereby is appointed as counsel for Cecile D. Portilla;

2. ORDERED that the Appointed Attorney shall take such other action as may be necessary to fulfill the requirements of R. 1:20-12(c); and

3. ORDERED that a copy of this Order be served upon the above-named Appointed Attorney and other persons required by R. 1:20-12(c) by first-class mail.

Dated: ______________

_________________________________
**Honorable Avion Benjamin, A.J.S.C.**
**Superior Court of NJ, Essex County**

CECILE D. PORTILLA, ATTORNEY AT LAW LLC
7 Glenwood Avenue, Suite 400
East Orange, NJ 07017
Phone (973) 419 2325 Fax (973) 669 3268
Attorney Id: 021212005
portillalaw@gmail.com

March 19,, 2026

Hon. Avion Benjamin, Assignment Judge
Superior Court of New Jersey
495 Dr. MKL. Jr. Blvd.
Newark, New Jersey 070102

**RE: In the Matter of Cecile D. Portilla, Esquire**
**Docket No. DRB 25-304**
**District Docket No. XIV-2025-0257E**

**UNEQUIVOCAL REFUSAL OF COUNSEL TO PROVIDED BY THE OAE**

**Dear Judge Benjamin:**

I write to advise the Court that I am unequivocally exercising my constitutional and statutory right to refuse any counsel selected or imposed by the Office of Attorney Ethics ("OAE"). My refusal is knowing, voluntary, and firmly supported by the report of Dr. Udika Ejiofor, APN, PhD, who confirmed my full mental competence. **(Exhibit A).** I have complete confidence in my current counsel of choice and require no substitute.

As a civil rights attorney, I have spent years advocating for individuals who suffered discrimination at the hands of employers, agencies, and public officials. I believed I understood their pain. But I now recognize that one cannot truly grasp the weight of discrimination until one becomes its target. The OAE's actions have placed me in precisely that position.

The OAE predicates its intrusion on the fact that, four years ago, I disclosed experiencing trauma arising from sustained harassment and severe cyber intrusions following my 2013 whistleblowing activity. These statements appeared in an old Notice of Claim dated April 2022 (NOC) attached to active litigation against the Essex County Prosecutor's Office ("ECPO") for conversion of my business computers and denial of Equal Protection and

Public Accommodation. The OAE investigator accessed the **NOC** (attached to my active litigation) mischaracterized it as a "**letter,**" and ignored the fact that I did **not** claim emotional distress damages—reflecting that I no longer suffered any such symptoms.

My husband and I obtained treatment years ago for the harassment we endured from a perceived FBI Agent and recovered, and have lived stable, productive lives ever since. There is no evidence—let alone clear and convincing evidence—of incapacity, impairment, or misconduct, as required by N.J.S.A. 30:4-27.1 before the State may intrude upon a person's bodily integrity or mental autonomy.

Despite this, Deputy Ethics Counsel Alexandra Gitter now seeks to compel me to undergo an expedited involuntary psychiatric examination by a psychiatrist of her choosing and ten years of my medical records to determine whether I am competent to practice law. She also wants to impose unwanted counsel upon me against my will.

The order compelling an involuntary psychiatric examination was signed not by a judge, but by the Chief Ethics Counsel, in violation of Article VI, §1 of the New Jersey Constitution, which vests judicial power exclusively in the courts. The order further states that the OAE's contracted psychiatrist will determine my capacity to practice law—an authority reserved exclusively to the Judiciary under Article I, ¶9 and N.J.S.A. 2A:67-28. The order is therefore ultra vires and constitutionally void.

Both federal and New Jersey law recognize a fundamental right of self-representation or the right to choose one's own attorney.

I am represented by Eldridge Hawkin, Esquire. That right to represent one's self applies with special force to attorneys, who are presumed competent to manage their own legal affairs unless and until a **court**—not an administrative agency—makes a formal finding of incapacity. The United States Supreme Court has held that a competent individual has a constitutional right to represent herself and cannot be forced to accept counsel. *Faretta v. California*, 422 U.S. 806, 819–20 (1975). My provider has expressed that I am competent. **(Exhibit A).** Even where self-representation may be unwise, respect for individual autonomy requires that the choice remain with the litigant. *Id.* at 849.

New Jersey law is equally clear. In *In re S.L.*, 94 N.J. 128, 137–38 (1983), the Court held that liberty cannot be curtailed absent clear and convincing evidence of incapacity or dangerousness. In *In re M.R.*, 135 N.J. 155, 176 (1994), the Court held that even individuals with diminished capacity retain the right to make their own legal decisions unless formally adjudicated incompetent. And in attorney-discipline matters, only the

Judiciary—with proper procedural safeguards—may determine incapacity, not a doctor. *In re Greenfield*, 85 N.J. 565 (1981).

Forcing an attorney to undergo a psychiatric examination by the OAE's hand-picked doctor while simultaneously imposing unwanted counsel creates:

- a structural conflict of interest
- a coercive and prejudicial environment
- a presumption of impairment without evidence
- a process designed to produce a predetermined outcome

A licensed attorney who has not been ***adjudicated*** incompetent retains the constitutional right to represent herself and cannot be forced to accept appointed counsel. My refusal of counsel imposed by the OAE is lawful, competent, and constitutionally protected.

A court has no obligation to ratify an unlawful or ultra vires action by an administrative agency.

Respectfully submitted,

/s/ Cecile D. Portilla
CECILE D. PORTILLA, ESQUIRE

CC:

Johanna Barba, Director, OAE

Alexandra Gitter, Deputy Ethics Counsel

Timothy Ellis, Chief Ethics Counsel

# EXHIBIT A

# J.U. Ejiofor, Ph.D., MSN, APN

A Psychiatric Mental Health Provider

Dear Sir/Madam:

I am the Director of Luminous Cares, LLC – A Psychiatric Mental Health Provider. I am a licensed Mental Health Provider, professional.

I have been asked by Ms Portilla to prepare a letter regarding her mental competency.

I have known Ms Portilla for many years. In fact, after she advised me in approximately 2020 that the West-Orange Police was refusing to provide her with assistance regarding her concerns that she was being harassed by government agents regarding her whistle-blowing activities, and trying to suggest that she was mentally incompetent, and by dint of my professional expertise I offered to go to the police station with her in her defense. I called the West Orange Police Station line many times for this purpose, but no one neither picked up nor returned my calls.

Not only is Ms Portilla mentally competent, she is diligent and purposeful in her professional career as a black woman.

I am convinced that Ms Portilla, in fact, made all the observations that she has reported over the years.

Should you have any questions, please feel free to reach me at 862-930-0740.

[signature]

J. U. Ejiofor, CEO
Ph.D., MBA, MSN, PMHNP-BC
6/28/2025

Luminous Cares, LLC

p | 862.233.2133
f | 862.233.2043
e | luminouscares@yahoo.com

134 Evergreen Place
Suite 801
East Orange, NJ 07018

**SUPREME COURT OF NEW JERSEY**
**LAW DIVISION: ESSEX COUNTY**

**Docket No. DRB 25-304**
**District Docket No. XIV-2025-0257E**

**In the Matter of**

**CECILE D. PORTILLA,**

**An Attorney at Law**

**ORDER APPOINTING REPRESENTATION**
**[R. 1:20-12(c)]**

**THIS MATTER** having been brought before the Court at the request of the Office of Attorney Ethics, for the appointment of counsel under R. 1:20-12(c), and it appearing that Cecile D. Portilla, Esq., an Attorney at Law of the State of New Jersey, has been ordered by the Disciplinary Review Board to submit to an expedited medical examination pursuant to R. 1:20-12(b), and that the expedited appointment of counsel is required in the interests of justice;

IT IS on this 1st day of April 2026,

1. ORDERED that Jay J. Rice, Esq., an Attorney at Law of the State of New Jersey, having offices at Nagel Rice LLP, 103 Eisenhower Parkway, Roseland, New Jersey 07068, be and hereby is appointed as counsel for Cecile D. Portilla, Esq.;

2. ORDERED that the Appointed Attorney shall take such other action as may be necessary to fulfill the requirements of R. 1:20-12(c); and

3. ORDERED that a copy of this Order be served upon the above-named Appointed Attorney and other persons required by R. 1:20-12(c) by first-class mail.

Dated: 4.1.26

**Honorable Avion M. Benjamin, A.J.S.C.**
**Superior Court of NJ, Essex County**

NAGEL RICE, LLP
COUNSELLORS AT LAW
103 EISENHOWER PARKWAY
SUITE 103
ROSELAND, NEW JERSEY 07068
(973) 618-0400
FAX: (973) 618-9194
WWW.NAGELRICE.COM

230 PARK AVENUE
NEW YORK, NY 10169
(212) 551-1465
PLEASE REPLY TO
ROSELAND OFFICE

BRUCE H. NAGEL*
JAY J. RICE*
ROBERT H. SOLOMON
DIANE E. SAMMONS°
LORI I. MAYER°
ANDREW L. O'CONNOR
GREG M. KOHN°
SUSAN F. CONNORS*
BRADLEY L. RICE°
MICHAEL J. PARAGANO°

HARRY A. MARGOLIS
1928-2002

ANDREW I. PEPPER
MEGHAN C. TARINO

SENIOR COUNSEL
S.M. CHRIS FRANZBLAU◊

COUNSEL
DAVID DiSABATO
LISA CONSIDINE°

*CERTIFIED BY THE SUPREME COURT OF NEW JERSEY AS A CIVIL TRIAL ATTORNEY
°MEMBER OF NJ & NY BARS
◊MEMBER OF NJ, NY & DC BARS

May 12, 2026

**<u>VIA Messenger Service</u>**
Supreme Court Clerk's Office
Richard J. Hughes Justice Complex
25 Market Street
Trenton, New Jersey 08625

**Re: In the Matter of Cecile D. Portilla, Esq., Attorney at Law**
**Docket No. XIV-2025-0257E**

The undersigned is the court-appointed attorney for Respondent, Cecile D. Portilla, Esq. ("Respondent"). Please accept this letter brief in opposition to the Petition for Temporary Suspension under Rule 1:20-11 and Rule 1:20-3(g)(4).

On May 4, 2026, the Office of Attorney Ethics ("OAE") filed a Petition for Temporary Suspension from the practice of law of Cecile D. Portilla, Esq., due to Respondent's refusal to cooperate with the production of medical and mental health information and a signed HIPPA authorization form for each provider in connection with the Disciplinary Review Board's ("DRB") Order ("Order") directing Respondent to cooperate in undergoing medical examination to determine her capacity to practice law.

By way of procedural background, on or about April 1, 2026, the Honorable Avion M. Benjamin, A.J.S.C., appointed Jay J. Rice, Esq., as counsel for Cecile D. Portilla, Esq., pursuant to R. 1:20-12(b). Mr. Rice met with Respondent on or about April 6, 2026. Following this meeting, on April 7, 2026, Mr. Rice emailed Alexandra Gitter, Martin Min, Gabriella Oliveria, Anna Lis and Suzette Horniacek, requesting an additional thirty (30) days to comply with the OAE's Order. On April 8, 2026, Alexandra Gitter denied Mr. Rice's request, explaining that Respondent has had ample time to comply with the Order. Mr. Rice responded, noting that while he appreciates the OAE's prior communications and requests to Respondent, he has only been on the case for seven (7) days and additional time is necessary to comply with the Order. Nevertheless, Ms. Gitter stated if Respondent does not comply by April 24, 2026, a motion for temporary suspension will follow.

As an initial matter, the OEA predicates its intrusion on the fact that four years ago Respondent disclosed experiencing trauma arising from sustained harassment and severe cyber intrusions following her 2013 whistleblowing activity. These statements appeared in an old Notice of Claim dated April 2022 (NOC) attached to active litigation against the Essex County Prosecutor's Office ("ECPO") for alleged conversion of Respondent's business computers and denial of Equal Protection and Public Accommodation.

The OAE investigator accessed the NOC, mischaracterized it as a "letter," and ignored the fact that Respondent did not claim emotional distress damages, which reflects that Respondent is no longer experiencing any such symptoms. Respondent and her husband obtained treatment years ago for the harassment they endured from a perceived FBI Agent and recovered, and have lived stable, productive lives ever since.

Despite this, Deputy Ethics Counsel Alexandra Gitter has sought to compel Respondent to undergo an expedited involuntary psychiatric examination by a psychiatrist of her choosing and

produce ten years of medical records to determine whether Respondent is competent to practice law. Ms. Gitter has also imposed unwanted counsel upon Respondent against her will.

Respondent contends that the Order violates New Jersey law, the Americans with Disabilities Act ("ADA"), and infringes on her federal constitutional rights under the First, Fourth, and Fourteenth Amendments. As held by the Supreme Court in Norton v. Shelby County,

> An unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed.

Norton v. Shelby Cnty., 118 U.S. 425, 442, 6 S. Ct. 1121, 1125, 30 L. Ed. 178 (1886).

The Order, compelling an involuntary psychiatric examination, was signed not by a judge, but by the Chief Ethics Counsel, in violation of New Jersey Constitution Article VI, §1, ¶ 1, which vests judicial power exclusively in the courts. See N.J. Const. art. VI, 1, ¶ 1. The order further states that the OAE's contracted psychiatrist will determine Respondent's capacity to practice law, an authority reserved exclusively to the Judiciary under N.J. Const. art. I, ¶ 9 and N.J.S.A. 2A:67-28.

Further, the Order violates the First Amendment of the United States Constitution. The First Amendment states that,

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

U.S. Const. amend. I.

The OAE's Order is based on statements Respondent made against a government agency and operates to penalize her for such statements by holding her license to practice law hostage and compelling her to a psychiatric examination and to produce a decade's worth of medical records. The Order punishes Respondent for her protected speech and thus is in violation of the First

Amendment right to free speech. Accordingly, the Order is void, as unconstitutional order "imposes no duties," and is "as inoperative as though it had never been passed." Norton, 118 U.S. at 442.

Moreover, both federal and New Jersey law recognize a fundamental right of self-representation or the right to choose one's own attorney. The United States Supreme Court has held that a competent individual has a constitutional right to represent themselves and cannot be forced to accept counsel. Faretta v. California, 422 U.S. 806, 836, 95 S. Ct. 2525, 2541, 45 L. Ed. 2d 562 (1975). New Jersey's Supreme Court in Matter of M.R., held that even individuals with diminished capacity retain the right to make their own legal decisions. 135 N.J. 155, 177 (1994). If a conflict arises between that person's preferences and best interests, the attorney may inform the court of the possible need for a guardian *ad litem*. Id. at 178. The Court emphasized its "endeavor is to respect everyone's right of self-determination, including the right of the developmentally disabled." Id. The OAE has violated this right by forcing counsel upon Respondent, and disregarding the fact that Respondent is already represented by her counsel of choice, Eldridge Hawkin, Esquire.

Nevertheless, Respondent *is* competent and is fully capable to represent herself and make her own legal decisions. Respondent has already provided several certifications which both advocate for her mental competency and the veracity of her claims of harassment and severe cyber intrusions following her 2013 whistleblowing activity. These certifications are authored by Respondent's employee, a client, an attorney, a trained certified computer professional, and even a psychiatric mental health provider, Dr. Udoka Ejiofor, MSN, APN. See Exhibit A. Indeed, Dr. Ejiofor's certification, and his psychiatric report, deems Respondent mentally competent. However, his certification and report have been largely overlooked in this action. Worse, the OAE

has disregarded that Dr. Ejiofor's certification, as with the other certifications, state his belief that Respondent *is* being harassed, and through his association with Respondent, he has experienced similar harassment. In his certification, Dr. Ejiofor explains that after writing his report for Respondent he started having unexplainable and "strange problems" with his business phone, surveillance camera and cell phone. Id. Dr. Ejiofor further states that someone was tampering with the prescriptions he wrote for other patients. Id. Dr. Ejiofor explains that he had never previously experienced such issues. Id. He continues, concluding that "[i]t is my firm belief that whomever is harassing Ms. Portilla is also trying to interfere with my practice to try and scare me." Id.

Nonetheless, since the OAE has already deemed Respondent mentally ill due to her disclosures, the OAE now must comply with the Americans with Disabilities Act ("ADA") and the New Jersey Law Against Discrimination ("NJLAD"). In Supreme Court of Virginia v. Consumers Union, 446 U.S. 719 (1980), the Supreme Court held that a state supreme court's attorney-disciplinary rule was unconstitutional under the First Amendment in light of Bates v. State Bar of Arizona, 433 U.S. 350 (1977). Crucially, the court held that when a state supreme court *enforces* disciplinary rules, it acts not as a legislature, but as an enforcement agency, and therefore is not immune from suit under 42 U.S.C. § 1983. Id. at 720.

On remand, the district court held that the justices of the Virginia Supreme Court, in their institutional enforcement capacity, were liable for attorney's fees under 42 U.S.C. § 1988 because they had retained and enforced an unconstitutional rule and had stubbornly refused to amend it even after Bates made its invalidity clear. Consumers Union of U.S., Inc. v. Am. Bar Ass'n, 505 F. Supp. 822, 824 (E.D. Va. 1981), aff'd in part, rev'd in part sub nom. Consumers Union of U.S., Inc. v. Virginia State Bar, 688 F.2d 218 (4th Cir. 1982). Thereafter, the Fourth Circuit affirmed

the District Court's award of attorney's fees against the Virigina Court. Consumers Union of U.S., Inc. v. Virginia State Bar, 688 F.2d 218, 222 (4th Cir. 1982).

Respondent refuses to comply with what she believes to be an Order in violation of the United States Constitution, the ADA and NJLAD. Evidence of Respondent's mental competency and harassment claims has been blatantly overlooked. Similarly, Respondent's Constitutional rights have been utterly disregarded. The OAE's Order forces Respondent to undergo a psychiatric examination by its hand-picked doctor while simultaneously imposing unwanted counsel. As a result, the Order creates a structural conflict of interest, a coercive and prejudicial environment, a presumption of impairment without evidence, and a process designed to produce a predetermined outcome. A licensed attorney who has not been adjudicated incompetent retains the constitutional right to represent herself and cannot be forced to accept appointed counsel. Respondent's refusal of counsel imposed by the OAE is lawful, competent, and constitutionally protected. Respondent's refusal to comply with the Order is also lawful, competent, and constitutionally protected.

A court has no obligation to ratify an unlawful or *ultra vires* action by an administrative agency. For the reasons stated above, Respondent respectfully requests that the OAE's Petition for Temporary Suspension from the practice of law of Cecile D. Portilla, Esq., be denied.

Respectfully submitted,

s/ Jay Rice
JAY J. RICE

JJR:
Attachments

cc: All Counsel of Record

FILED, Clerk of the Supreme Court, 17 Oct 2024, 089878

**SUPREME COURT OF NEW JERSEY- NO:.**

| | |
|---|---|
| Angel Lopez<br><br>Plaintiff<br><br>v<br><br>The Palisades LLC, Mr. Handyman, Inc, RSP Enterprises NJ, LLC., and ABC Corporation 1-10 (Fictitious Corporations)<br><br>Defendants | **Superior Court of New Jersey Appellate Division-A-001267-23**<br><br>On Petition for Certification of the Final Judgment of the Appellate Division Issued on **September 17, 2024**<br><br>Sat Below: Hon Peter G. Geiger, JSC<br>Superior Court of New Jersey<br>Law Division: Bergen County<br>Docket NO: BER-L-5926-20 |
| Angel Lopez, Kazue Koizumi<br>Plaintiff<br><br>Edward Pec, The Palisades LLC, Mr. Handyman, INC., RSP Enterprises NJ, L.L.C., and ABC Corporation 1-10 (Fictitious Corporation(s).<br>Defendants | **Superior Court of New Jersey Appellate Division-A-001267-23**<br><br>On Petition for Certification of the Final Judgment of the Appellate Division Issued on **September 17, 2024**<br><br>Sat Below: Hon Peter G. Geiger, JSC<br>Superior Court of New Jersey<br>Law Division: Bergen County<br>Docket NO: BER-L-3575-22<br><br>**Date Submitted: September 30, 2024** |

## PETITION FOR CERTIFICATION OF ANGEL LOPEZ

Cecile D. Portilla, Attorney at Law LLC, Attorney Id :021212005
7 Glenwood Avenue, Suite 400
East Orange, NJ 07017
Phone (973) 676 5072 Fax (862) 520 3433 Email: Portillalaw@comcast.net

Eldridge Hawkins LLC, Attorney at Law, Attorney ID No. 214731967
60 Evergreen Place, Suite 510
East Orange, New Jersey 07018
Tel: (973) 676-5070 Fax: (973) 676-7356 -Email: hwklaw@aol.com

*On the Brief: Cecile D. Portilla, Attorney at Law*

FILED, Clerk of the Supreme Court, 17 Oct 2024, 089878

# TABLE OF CONTENTS

STATEMENT OF THE MATTER INVOLVED 1

REASONS WHY CERTIFICATION SHOULD BE ALLOWED 4

QUESTIONS PRESENTED 7

ERRORS COMPLAINED OF 7

COMMENTS WITH RESPECT TO THE APPELLATE DIVISION DECISION 8

1. THE APPELLATE DIVISION DEPRIVED THE PLAINTIFF OF HIS CONSTITUTIONAL RIGHT TO APPEAL AS STATED IN ARTICLE VI SECTION V SUBPART 2 OF THE NEW JERSEY CONSTITUTION (Pa007, Psa010, Pa012, Psa008, Psa013) 8

2. THE APPELLATE COURT DENIED THE PLAINTIFF OF HIS SUBSTANTIVE DUE PROCESS RIGHTS BY DISMISSING HIS APPEAL AFTER PROVIDING HIM WITH CONTRADICTORY NOTICES (Pas007, Psa008, Psa010-Psa013) 12

FILED, Clerk of the Supreme Court, 17 Oct 2024, 089878

3. **THE APPELLATE DIVISION ERRED BY FAILING TO CORRECT AN ERROR THAT AFFECTED FAIRNESS, INTEGRITY AND THE REPUTATION OF JUDICIAL PROCEEDINGS** (Pa007, Pa008, Pa0010-0012, Pa013) 14

4. **THE PROCEDURE UTILIZED BY THE APPELLATE DIVISION DURING LITIGATION OF PLAINTIFF'S APPEALS WAS UNCONSTITUTIONAL** (Psa007, Psa008, Pa010-Psa013, Psa014 ) 16

**CONCLUSION** 18

FILED, Clerk of the Supreme Court, 17 Oct 2024, 089878

# TABLE OF AUTHORITIES

## CASES

Berger v. Paterson Veterans Taxi Serv.,
244 N.J. Super. 200, 205-206 (App. Div. 1990) 13

Connally v. General Construction Co.,
269 U. S. 385, 391 (1926) 16

Doe v. Poritz,
142 N.J. 1, 106 (1995) 12

Franzblau Dratch, PC v. Martin,
452 N.J. Super. 486, 491 (App. Div. 2017) 12

Giaccio v. Pennsylvania,
382 U. S. 399, 402-404 (1966) 16

Grayned v. City of Rockford,
408 U. S. 104, 108-109 (1972) 16

Johnson v. Mountainside Hosp., Resp. Disease Asso.,
199 N.J. Super. 114, 120 (App. Div. 1985) 5

Kolender v. Lawson,
461 U. S. 352, 357-358 (1983) 16

Linden v. Gleffi,
6 N.J. 246, 252 (1951) 13

Logan v. Zimmerman Brush Co. et al.,
455 U.S. 422 (1982) 11

FILED, Clerk of the Supreme Court, 17 Oct 2024, 089878

Markmann v. DeStefano,
185 N.J. Super. 411, 420 (App. Div. 1982) 5

Mathews v. Eldridge,
424 U.S. 319, 335 (1976) 9

Morrissey v. Brewer,
408 U.S. 471, 481 (1972) 9, 10, 13

Mullane v. Central Hanover Bank & Trust Co.,
339 U.S. 306, 314 (1950) 5, 12, 13

Peralta v. Heights Med. Ctr., Inc.,
485 U.S. 80, 84, 108 S.Ct. 896, 899, 99 L.Ed.2d 75, 81 (1988) 12

Rosales-Mireles v. United States,
138 S. Ct. 1897, 1906 (2018) 15

Rosenberg v. Bunce,
214 N.J. Super. 300, 518 A.2d 1134 (App. Div. 1986) 12

State v. Bianco,
103 N.J.383, 391 (1986) 9

State v. Gaitan,
209 N.J. 339 (2012) 12

FILED, Clerk of the Supreme Court, 17 Oct 2024, 089878

State v Macon,
57 NJ 325 (1971) 15

State v. Williams, 93 N.J. 39, 62, (1983) 13

## NEW JERSEY COURT RULES

Rule 1:1-2 (a) 4, 5

Rule 1:1-2 8

Rule 2:10-2 14

## NEW JERSEY CONSTITUTION

Article VI section V subpart 2 7, 8

## ORDERS, JUDGMENT, AND RULINGS

Order Dismissing Appeal 9/17/2024 Pa008

FILED, Clerk of the Supreme Court, 17 Oct 2024, 089878

# TABLE OF CONTENTS TO APPENDIX


| | |
|---|---|
| Notice of Petition for Certification<br>(Court generated Copy) filed 9/19/2024 | Psa001 |
| Original Notice of Petition for Certification | Psa002 |
| Certification of Service of Notice of Petition dated 9/19/2024 | Psa005 |
| Excerpt of Appellate Court Jacket | Psa007 |
| Order Dismissing Appeal dated<br>Signed by Joseph Orlando, Clerk dated 9/17/2024 | Psa008 |
| Deficiency Notice signed by Joseph Orlando<br>Allowing 15 days to file brief/Appendices<br>dated 9/4/2024 (04:05PM) | Psa010 |
| Order by Court to file Brief and Appendix by<br>9/16/24 dated 9/4/2024 (12:37PM) | Psa013 |
| Article by Robert J. Norcia, former Appellate Clerk<br>*Preventing Deficiencies Notices from the*<br>*New Jersey Appellate Division* | Psa014 |

FILED, Clerk of the Supreme Court, 17 Oct 2024, 089878

## STATEMENT OF THE MATTER INVOLVED

The Appellate Court has a procedure whereby it allows its Clerk Joseph Orlando to sign off on Notices and Court Orders that are provided to litigants. The Appellate Division Judges and Clerks apparently have no proper system whereby they uniformly agree as to the precise Notice that the litigant is expected to comply with. Litigants are expected guess at what they are expected to comply with ***and differ as to interpretation.***

Plaintiff's Counsel has filed many Appeals before the Appellate Division. However, the undersigned has encountered several somewhat strange filling issues on the current matter that has caused the plaintiff's brief and Appendices at issue to be found deficient on several occasions.

On September 4, 2024, at 12:37 PM, the Appellate Division filed an Order **(notice)** that identified the Court as the filing party. **(Psa013, Psa007).** The Order advised plaintiff that he had until September 16, 2024, to correct and refile his brief and appendices. **(Psa013, Psa007)**

*Later that same day (September 4, 2024)* at 4:05 PM, the Appellate Division filed a Deficiency Letter **(notice)** that identified the Court as the ***filing party*** of the deficiency letter, that was signed by Joseph Orlando. **(Psa0010, Psa012, Psa007).** The Deficiency notice advised the plaintiff as follows:

FILED, Clerk of the Supreme Court, 17 Oct 2024, 089878

> "For the brief/appendix to be filed, the following noted deficiencies must be corrected within 15 days, or the appeal may be subject to dismissal."

**(Psa010).**

The 15 days time frame set forth in the deficiency notice filed by the Court and signed by Joseph Orlando would allow plaintiff to file his brief on September 19, 2024. **(Psa010)**

The deficiency letter (2nd **notice)** that was signed by Joseph Orlando, was detailed and specifically advised the plaintiff of each area of the brief and Appendices that required correction. **(Psa010).** It also identified the type of correction that was required. **(Psa010-Psa012).** The first Notice (the Order) that was *filed by the Court* had no meaningful instructions as to the specific corrections that were to be made to the brief and appendices. **(See Psa013).**

Here, Plaintiff reasonably believed that the Second document *filed by the Court* (the deficiency Notification letter) properly apprised him of the correct date on which his brief and appendices were to be filed. **(Psa010-Psa012).** Unlike the first Order **(the first notice)** *filed by the Court*, the deficiency letter **(the second notice)** also *filed by the Court* but signed by Joseph Orlando, was the only one of the two documents that had step by step instructions that were reasonably calculated to produce a perfected brief and Appendices. **(Psa010-Psa012, Psa007).** The 15

FILED, Clerk of the Supreme Court, 17 Oct 2024, 089878

days' time frame specified in the Second document *filed by the Court* (the deficiency letter) would allow plaintiff to be heard in a meaningful manner. **(Pas010-Psa012)**

On September 17, 2024, while plaintiff worked to correct the errors, the Appellate division dismissed plaintiff Appeal. **(Psa008, Psa007).** Pursuant to the Order of dismissal

> This matter being opened to the Court on its own motion and it appearing that the appellant has failed to file a timely, conforming brief;
> It is HEREBY ORDERED that the above appeal is dismissed.
> WITNESS, the Honorable Thomas W. Sumners, Jr., Chief Judge of the Appellate Division, at Trenton, this 17th day of September, 2024.
>
> s/JOSEPH H. ORLANDO
> JOSEPH H. ORLANDO
> CLERK OF THE APPELLATE DIVISION

**(Psa008)**

This dismissal of the Appeal took place on September 17, 2024, which was two days before the expiration of the 15 days. **(Psa010).** Like the deficiency **notice** that was *issued last in time and identified on the case jacket as filed by the Court, giving plaintiff 15 days* (that would have expired on 9/19/2024) in which to correct his brief and Appendices, the Order dismissing plaintiff's Appeal *prior to the expiration of the 15 days* was also signed by Joseph Orlando. **(Psa008, Psa010, Psa012)**

FILED, Clerk of the Supreme Court, 17 Oct 2024, 089878

The plaintiff was not served with a third due process notice correcting the two prior notices (i.e. the Order and the Deficiency letter) prior to dismissing his Appeal.

## REASONS WHY CERTIFICATION SHOULD BE ALLOWED

This case presents a substantial Constitutional question that has not been the subject of a prior Appellate decision. This matter also presents a question of general public importance which has not been previously addressed in this State.

The doctrine of Procedural due process requires government officials to follow fair procedures before depriving an Appellant of his substantive due process rights. In cases of procedural irregularities, especially where the Appellate Court itself provides confusing defective notice to the public, the Court has a duty to right its own wrongs to prevent denial of due process to litigants who rely on its directives. See Bank of America, N.A. v. Viola Stephens(Unpublished Opinion attached, **(Psa024)**

On September 17, 2024, the Appellate Court failed to comply with the Supreme Court's administrative directives outlined in Part II of the New Jersey Rules of Court when it dismissed the plaintiff's Appeal. Rule 1:1-2 (a) provides that [the rules of Court] shall be construed to secure a just determination, simplicity in procedures, [and] fairness in administration. By hastily dismissing plaintiff's Appeal

FILED, Clerk of the Supreme Court, 17 Oct 2024, 089878

without providing proper due process notice, based on an arbitrary time frame despite the Appellate Court and Joseph Orlando being at fault for creating the confusion by providing the plaintiff with contradictory notices, the Appellate Division failed to consider Rule 1:1-2 (a).

The Appellate Court also failed to consider the guiding principle set forth in Markmann v. DeStefano, that the aim of our rules of procedure "is to better serve the cause of justice." 185 N.J. Super. 411, 420 (App. Div. 1982). As stated by the Supreme Court "justice is the polestar and our procedures must ever be molded and applied with that in mind." Johnson v. Mountainside Hosp., Resp. Disease Asso., 199 N.J. Super. 114, 120 (App. Div. 1985), quoting N.J. Highway Authority v. Renner, 18 N.J. 485, 495 (1955). On September 17, 2024, justice was not served by the Appellate Division when it dismissed plaintiff's Appeal prior to September 19, 2024.

Many Courts have emphasized the importance of providing proper due process notice to litigants. In Mullane v. Central Hanover Bank & Trust Co., the United States Supreme Court held that notice must be "reasonably calculated, under ALL the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." 339 U.S. 306, 314 (1950). As clearly illustrated in Mullane, inadequate notice violates the Due Process rights of litigants.

**FILED**, Clerk of the Supreme Court, 17 Oct 2024, **089878**

In the case at bar, our plaintiff was not provided with due process notice that was reasonably calculated to protect his interests, because the notices provided by Appellate Division to the Plaintiff were contradictory and as such defective.

The last communication (***the second Notice***) signed by Joseph Orlando and *filed on September 4, 2024 at 4:05 PM by the Court* allowing *more time to plaintiff to file his documents*, was made *after* the first Order (**Notice**) that gave less time. **(Psa0013, Psa0010, Psa012).**

The Appellate Division then contradicts itself by allowing Joseph Orlando (the same Clerk) that signed the deficiency letter **(the second notice)** that have given plaintiff more time to file his brief and Appendices, to then sign an Order on September 17, 2024, dismissing Plaintiff's Appeal and accuse him of not complying with the reduced *time outlined in the order (the first notice) filed on September 4, 2024 at 12:37 pm.* **(Psa007, Psa008, Psa010-Psa012, Psa013).**

Because plaintiff was provided with defective Notice due to the contradictions in the various documents provided by the Appellate Division, the Supreme Court should grant certification and reverse the Appellate Court's dismissal of the plaintiff's appeal and waive any refiling costs.

## QUESTIONS PRESENTED

1. Whether the Appellate Division erred by failing to have a proper system in place that allowed issuance of contradictory defective Notices to the plaintiff.
2. Whether the Appellate Orders and Deficiency notices with contradictory requirements issued by the Court and signed by the same Court Clerk failed to provide reasonable clarity that prevented plaintiff from guessing at their meaning and differing as to their application.
3. Whether a conflict between a Deficiency Notice issued later in time giving plaintiff more time to file his appeal that was signed by the same Clerk who signed an Order dismissing his appeal for noncompliance with a different time frame in an earlier Order, failed to provide proper notice and deprived the appellant of his substantive due process rights.
4. Whether The Appellate Division departed from the Rules of Court by failing to correct an error that produced an unjust result that "seriously affected the fairness, integrity, or public reputation of the judicial proceeding."
5. Whether the Appellate Court failed to Comply with N.J. Constitution Article VI, Section V Subpart 2 thusly denying the plaintiff of his substantive due process right to file his Appeal.

## ERRORS COMPLAINED OF

1. The Appellate Division erred by failing to have a proper system in place that allowed the issuance of contradictory defective Notices to the Plaintiff that resulted in the denial of his substantive due process rights.
2. The Appellate Court failed to Comply with N.J. Constitution Article VI, Section V Subpart 2, by denying the plaintiff of his substantive right to file his Appeal.

3. The Appellate Division departed from the Rules of Court by failing to correct a plain error that "seriously affected the fairness, integrity, or public reputation of a judicial proceeding.

4. The Appellate Court failed to Comply with Rule 1:1-2 that requires construction of Rules to allow a Just Determination and Fairness in Administration.

5. The Appellate Court's utilized a Constitutionally vague procedure that allowed Orders and Deficiency notices with contradictory requirements issued by the Court and signed by the same Court Clerk that failed to provide reasonable clarity that required that plaintiff guess at their meaning and differ as to their application.

## COMMENTS WITH RESPECT TO THE APPELLATE DIVISION DECISION

1. **THE APPELLATE DIVISION DEPRIVED THE PLAINTIFF OF HIS CONSTITUTIONAL RIGHT TO APPEAL AS STATED IN ARTICLE VI SECTION V SUBPART 2 OF THE NEW JERSEY CONSTITUTION (Pa007, Psa010, Pa012, Psa008, Psa013).**

Pursuant to Article VI section V subpart 2, Appeals may be taken to the Appellate Division of the Superior Court from the Law and Chancery divisions of the Superior Court and in such other causes as may be provided by law. Id. The right

of appeal that is guaranteed by the New Jersey Constitution must comply with basic notions of due process. State v. Bianco, 103 N.J.383, 391 (1986)

"[D]ue process is flexible and calls for such procedural protections as the particular situation demands. . . . Its flexibility . . . is a recognition that not all situations calling for procedural safeguards call for the same kind of procedure." Morrissey v. Brewer, 408 U.S. 471, 481 (1972)

To determine the process due [ ] based on established procedures, the Court must balance "the private interest ... affected by the official action[,] the risk of an erroneous deprivation of such interest[,] and ... the Government's interest." Mathews v. Eldridge, 424 U.S. 319, 335 (1976).

Here, the New Jersey Constitution carefully sets forth a procedure whereby Appeals may be taken to the Appellate Court from the Law Division by litigants. The Appellate Division denied the plaintiff of the right to Appeal due to its own error in providing the plaintiff with duplicate contradictory notices as to when his corrected brief and appendix were due. On September 4, 2024, at 12: 37 PM, the Appellate Court filed an Order that was signed by Joseph Orlando advising the plaintiff that his Appellate Brief and Appendices were due on September 16, 2024. **(Pa013, Pa007)**

Later that same day on September 4, 2024 at 4:05 PM, the Appellate Court posted an deficiency Notice that was *filed by the Court* and signed by Joseph

Orlando, advising the Plaintiff that his Brief and Appendices were due on September 19, 2024. **(Psa010, Pa012, Psa007).** Pursuant to the case jacket, the *filing party* for the first Order **(Notice)** and Second Deficiency Letter **(Notice)** was the "*Court"* ITSELF. **(Psa007)(Emphasis added).**

On September 17, 2024, while plaintiff was preparing his Brief and Appendices, he received a notification from the Appellate Division that his Appeal was dismissed on the Court own motion. **(Psa007).** The Appellate Division Judge and Joseph Orlando without properly coordinating with the Case Managers who are on the front line communicating with Appellants, dismissed the plaintiff's appeal accusing him of being non-compliant with the filing deadline. **(Psa008).**

Here, the plaintiff was in fact provided with a different deadline in the last deficiency letter **(notice)** communication from the Appellate Division that was *filed by the Court* itself. **(Psa007, Pa010).** With a swift stroke of his pen, Joseph Orlando who provided two contradictory communications to the plaintiff, quickly threw out the plaintiff's Appeal with another contradictory Order without utilizing the procedural safeguards set forth by Morrisey v Brewer. See Id 408 U.S at 481. The question: "what process was due for this particular situation?" was not asked by the Appellate Court, despite the risk of erroneous deprivation from the Court's procedure in providing two contradictory notices to the plaintiff. **(Psa010, Psa013).**

FILED, Clerk of the Supreme Court, 17 Oct 2024, 089878

The dismissal Order for not complying with **less time** that was outlined in the first communication signed by the court **at 12:37 PM on September 4, 2024** and the last deficiency Letter **granting more time** later in the day on September 4, 2024 at **4:05 PM** were both signed by the same Clerk i.e. Joseph Orlando. **(Pa010, Psa012)**

While the Appellate Court had an interest in clearing its calendar, Plaintiff has a similar and more compelling interest in his matter being heard to finality. In a United States Supreme Court case addressing the conflict between the Court's Calendar and the Plaintiff's Right to be Heard, the Hon. Judge Blackmun expressed that he did "not agree that terminating a claim that the State itself has mis-scheduled is a rational way of expediting the resolution of disputes." Logan v. Zimmerman Brush Co. et al., 455 U.S. 422 (1982).

As in Logan, the return date for filing of the plaintiff's corrected brief and Appendices was similarly mis-scheduled by the Appellate Division, because the plaintiff was provided with two different dates on which his corrected brief and appendices should be filed, and he was expressly told last by the **Notice** provided by Joseph Orlando that his Appeal would be dismissed *only* if he failed to refile within 15 days. **(Psa010, Psa012)**. It was dismissed before that time expired.

As stated by Judge Blackmun, dismissing plaintiff's appeal was not a rational way of expediting resolution of cases filed in the Appellate Division.

FILED, Clerk of the Supreme Court, 17 Oct 2024, 089878

2. **THE APPELLATE COURT DENIED THE PLAINTIFF OF HIS SUBSTANTIVE DUE PROCESS RIGHTS BY DISMISSING HIS APPEAL AFTER PROVIDING HIM WITH CONTRADICTORY NOTICES (Pas007, Psa008, Psa010-Psa013).**

"The minimum requirements of due process . . . are notice and the opportunity to be heard." Doe v. Poritz, 142 N.J. 1, 106 (1995). The first requirement is notice." State v. Gaitan, 209 N.J. 339 (2012).

Failure to give notice violates "the most rudimentary demands of due process of law." Peralta v. Heights Med. Ctr., Inc., 485 U.S. 80, 84, 108 S.Ct. 896, 899, 99 L.Ed.2d 75, 81 (1988). In Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950), the U.S. Supreme Court expressed that "when notice is a person's due, process which is a *mere gesture* is not due process. Id. at 315. The means employed must be such as one desirous of ***actually informing*** the absentee might reasonably adopt to accomplish it. Id. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected. Id

In Rosenberg v. Bunce, 214 N.J. Super. 300, 518 A.2d 1134 (App. Div. 1986) the Court ruled in a party's favor who was not provided with proper notice.

In Franzblau Dratch, PC v. Martin, 452 N.J. Super. 486, 491 (App. Div. 2017).

FILED, Clerk of the Supreme Court, 17 Oct 2024, 089876

The Appellate court found that the defendant demonstrated excusable neglect due to not receiving proper Notice. Id.

In Linden v. Gleffi, 6 N.J. 246, 252 (1951) the Court ruled in favor of the party who was not properly noticed. Id.

Where notice is defective, due process requires judgment in favor of the party that was not properly noticed. See Berger v. Paterson Veterans Taxi Serv., 244 N.J. Super. 200, 205-206 (App. Div. 1990).

Similar to the parties in the above cases who were not provided with proper notices, our plaintiff was also not provided with proper notice by the Appellate Court. As poignantly expressed by Justice Jackson in Mullane, *Statutory Notice may be inadequate, not because it fails to reach everyone, but because under certain circumstances it is not reasonably calculated to properly inform. 339 U.S at 319.*

In the case at bar, plaintiff was not provided with notice that could properly inform him of how to comply with filing his corrected brief and Appendices. The Appellate Division provided the plaintiff with defective notice because it provided the plaintiff with two contradictory notices with different dates with which to comply. **(Psa013, Psa010)**. The defective notice denied the plaintiff of substantive due process as required by Morrisey v Brewer, 408 U.S.471 (1972).

FILED, Clerk of the Supreme Court, 17 Oct 2024, 089878

The Appellate Division unjustly dismissed plaintiff's appeal without due process, because the last deficiency letter (**Notice**) filed *by the Court* and signed by Joseph Orlando, advised Plaintiff *that he had 15 days to perfect the appeal to prevent dismissal.* **(Psa010-012, Pa008).** *The Court* and Joseph Orlando who gave defective notice to plaintiff, dismissed plaintiff's appeal in 13 days instead of the 15 days' time frame set forth in the *last notice filed by the Court* and signed by Joseph Orlando. **(Psa010, Psa12, Psa007, Pa008).**

Thus, it is clear that while plaintiff was provided with so called notices, the notices *were defective because they were not capable of informing him of how to comply*, to protect his rights, thus he was denied of substantive due process.

### 3. THE APPELLATE DIVISION ERRED BY FAILING TO CORRECT AN ERROR THAT AFFECTED FAIRNESS, INTEGRITY AND THE REPUTATION OF JUDICIAL PROCEEDINGS (Pa007, Pa008, Pa0010-0012, Pa013)

The Court's "overarching constitutional responsibility [is] to guarantee the proper administration of justice." State v. Williams, 93 N.J. 39, 62, (1983). Pursuant to our Rules of Court, Appellate Judges have authority to correct errors that produce unjust results. See Rule 2:10-2. The United States Supreme Court has stated that a Court has discretion to correct errors that "seriously affect the fairness, integrity, or public

reputation of judicial proceeding." Rosales-Mireles v. United States, 138 S. Ct. 1897, 1906 (2018).

A constitutional error refers to a mistake or violation that occurs during a legal proceeding, which infringes upon the rights guaranteed by the New Jersey State Constitution or the United States Constitution. See State v Macon, 57 NJ 325 (1971). Errors that affect substantial rights ordinarily satisfies the fourth prong of plain error review, that the error affects "the fairness, integrity or public reputation of judicial proceedings." See Rosales-Mireles v. United States, 138 S. Ct. 1897, 1908 (2018).

In the case at bar, the Appellate Court's procedures created an error that caused an unjust result. Instead of correcting its error, the Appellate Division dismissed the plaintiff's case. The dismissal of the Plaintiff's Appeal due to lack of proper coordination between Judges and the Appellate Clerk who signs orders in the Appellate Division, may call into question the fairness and integrity of Appellate proceedings.

When the High Court does not lead by example and correct errors caused by its own procedures, how can the public be assured that it will properly dispense justice?

FILED, Clerk of the Supreme Court, 17 Oct 2024, 089878

## 4. THE PROCEDURE UTILIZED BY THE APPELLATE DIVISION DURING LITIGATION OF PLAINTIFF'S APPEALS WAS UNCONSTITUTIONAL (Psa007, Psa008, Pa010-Psa013, Psa014 )

The void-for vagueness doctrine reflects the principle that "a [procedure ] which either forbids or requires the doing of an act in terms so vague that [persons] of common intelligence must necessarily guess at its meaning and differ as to its application, violates essential requirements of due process of law." Connally v. General Construction Co., 269 U. S. 385, 391 (1926).

The requirement that government articulate its aims with a reasonable degree of clarity, that ensures that state power will be exercised only on behalf of policies reflecting an authoritative choice among competing social values, reduces the danger of caprice and discrimination in the administration of the laws, enables individuals to conform their conduct to the requirements of law, and permits meaningful judicial review. See, e. g., Kolender v. Lawson, 461 U. S. 352, 357-358 (1983); Grayned v. City of Rockford, 408 U. S. 104, 108-109 (1972); Giaccio v. Pennsylvania, 382 U. S. 399, 402-404 (1966).

The Appellate Division's procedure as outlined on its case jacket was unconstitutionally vague thus void because it left the litigants to guess at its meaning and differ as to its application. As already mentioned, the Court dismissed the Appeal based on plaintiff's alleged noncompliance, although the dismissal occurred prior to

the deadline stated in the *last Notice* provided to plaintiff by the same Clerk who signed and approved the last deadline to file his documents.**(Pa010-Pa013, Pa008).**

Note that the case jacket identifies the *filing party of the first Notice* **(the Order)** that was filed on September 4, 2024, as the *"Court."* **(Psa0013, Psa007).** Note also that the case jacket also identifies the filing party of the ***second notice*** **(the deficiency letter)** filed later that same day on September 4, 2024 at 4:05 PM, that was signed by Joseph Orlando, as the "*Court.*" **(Psa007, Pa010-Psa012)**

Here, only the second Notice (the deficiency Letter) as opposed by the first Notice (the Order) provided the plaintiff with meaningful instructions as to how to perfect his brief and Appendices. Here the Clerk was signing off on Court orders and the Court was filing the deficiency letters that the Clerk signed.

Robert RJ Norcia, Esquire, who previously served as a law clerk to the Hon. George S. Leone, J.A.D., in the Superior Court of New Jersey, Appellate Division, states as follows "[the] Clerk's Office serves as the gatekeeper to the Court and has a keen understanding of the Court Rules, and it holds the line on those Rules before letting a submission make its way to the panel of judges." **(Psa014)**

Because many attorneys view the Appellate Court Clerks in this manner as expressed by Robert RJ Norcia, plaintiff's counsel had no reason to believe that she was being misled or provided with inaccurate information by Joseph Orlando who signed off on the Second Notice providing additional time to file the corrected brief

and Appendices. The deficiency letter with the extended time frame of 15 days was the last notice that was served upon the plaintiff. **(Psa007, Psa010-Psa012).** The Court was listed *as the filer* of that notice. **(Psa010-012, Psa007).** If the Court itself is listed as the *filer* of all documents that provided instructions **(notice)** to the plaintiff, it is logical to conclude that the Court knows and agrees with the contents of ALL documents that it files. **(Psa007).**

The Appellate Division in our case without providing proper guidance, apparently wanted the plaintiff to *cherry pick* portions of the **First Notice (the Order)** and combine those portions with portions of the **Second Notice (the deficiency letter)** signed by Joseph Orlando to determine how to proceed. **(See Psa013, Psa010, Psa012).** Simply put, the Court left the plaintiff to guess, which was unreasonable as it placed the plaintiff at risk of an erroneous deprivation of his rights.

Due to the Constitutionally unsound Appellate procedures used in this case, Plaintiff was denied of meaningful Notice as to how to protect his rights during his appeal. The Appellate Division's procedure while *implicitly forbidding* plaintiff from complying with the 15-days' time frame granted to him by Joseph Orlando in the deficiency Letter **(Notice)** that was ***issued/filed last in time*** by the Court, also ***explicitly required him to*** Comply with the deficiency letter that directed how the brief and appendices were to be corrected. **(Psa010-Psa012, Psa007, Psa013).**

FILED, Clerk of the Supreme Court, 17 Oct 2024, 089878

This lack of precise articulation violated Constitutional norms as it did not provide any reasonable degree of clarity that would have allowed plaintiff to conform to any clearly defined conduct showing specific compliance with the requirement of any one of the two Notices that would allow meaningful judicial review.

This allowed discrimination in the administration of law as shown by the dismissal of the plaintiff's appeal.

## CONCLUSION

Based on the above, the Appellate Division erred by failing to have a system in place to prevent Deficiency Notices prepared by its Appellate Clerks from contradicting Orders written by Appellate Judges. The Appellate Court failed to Comply with N.J. Constitution Article VI, Section V Subpart 2 by denying the plaintiff his substantive filing his Appeal.

The Procedure utilized by the Appellate Division during litigation of the plaintiff's Appeal was unconstitutionally vague thus void because it required the litigant to guess at its meaning and differ as to its application.

The Appellate Division in this case departed from the Rules of Court by failing to correct an error that "seriously affected the fairness of a judicial proceeding

FILED, Clerk of the Supreme Court, 17 Oct 2024, 089878

because it dismissed the plaintiff's appeal after failing to provide him with proper notice, which denied him due process of law. Based on all the foregoing, the plaintiff's petition for certification should be granted.

## CERTIFICATION

I certify that this petition presents a substantial question and is filed in good faith and not for purposes of delay.

/s/ Cecile D. Portilla
CECILE D. PORTILLA, ESQUIRE

Dated: September 30, 2024

FILED, Clerk of the Supreme Court, 31 Jan 2025, 089878

SUPREME COURT OF NEW JERSEY
C-264 September Term 2024
089878

Angel Lopez,

Plaintiff-Petitioner,

v.

The Palisades LLC, Mr.
Handyman, Inc.,
RSP Enterprises NJ, L.L.C., ABC
Corporation 1-10
(Fictitious Corporation(s)),

Defendants.

ORDER

A petition for certification of the judgment in A-001267-23 having been submitted to this Court, and the Court having considered the same;

It is ORDERED that the petition for certification is denied.

WITNESS, the Honorable Stuart Rabner, Chief Justice, at Trenton, this 28th day of January, 2025.

Heather J. Baker
CLERK OF THE SUPREME COURT

CECILE D. PORTILLA, ATTORNEY AT LAW LLC
7 Glenwood Avenue, Suite 400
East Orange, NJ 07017
Phone (973) 676 5072 Fax (862) 520 3433
Attorney Id :021212005
Email: Portillalaw comcast.net

ANGEL LOPEZ

Plaintiff

v

THE PALISADES LLC, MR HANDYMAN, INC, RSP ENTERPRISES NJ, LLC., AND ABC CORPORATION 1-10 (FICTITIOUS CORPORATIONS)

Defendants

**SUPERIOR COURT OF NEW JERSEY APPELLATE DIVISION-A-001267-23**

Sat Below: Hon Peter G. Geiger, JSC
Superior Court Of New Jersey
Law Division: Bergen County
Docket NO: BER-L-5925-20

ANGEL LOPEZ, KAZUE KOIZUMI

Plaintiff

EDWARD PEC, THE PALISADES LLC, MR. HANDYMAN, INC., RSP ENTERPRISES NJ, L.L.C., and ABC CORPORATION 1-10 (FICTITIOUS CORPORATION(S).

Defendants

Sat Below: Hon Peter G. Geiger, JSC
Superior Court Of New Jersey
Law Division: Bergen County
Docket NO: BER-L-35[illegible]5-22

**CERTIFICATION OF CECILE D. PORTILLA, ESQUIRE IN SUPPORT OF MOTION TO ATTACH BRIEFS WRITTEN BY ATTORNEY CHRISTOPHER KAIOUNOS TO THE APPENDICES AND TO UPLOAD SEVERAL COURT NOTIFICATIONS SEPARATELY**

Cecile D. Portilla of full age with knowledge of the penalties of false swearing certify as follows:

1. I am an attorney at law of the State of New Jersey and the attorney for Angel Lopez.
2. I am the co-Attorney for Plaintiff Angel Lopez.
3. I am familiar with the facts of this case and as such able to make this certification.
4. The briefs written by Attorney Karounos are attached in the Appendices as shown by the Appendix index to show numerous statements that were made that affected the outcome of this case.
5. The briefs written by Attorney Karounos are important to help the Court understand the abusive name calling and mischaracterization to which Angel Lopez was subjected which we believe were apparently internalized by two Bergen County Judges who denied this disabled plaintiff of his due process right to meaningfully participate in his matter.
6. The Appellate Court is entitled to read the words in Attorney Karounos' brief to fully appreciate our case.
7. Additionally, the court notifications **(Pa953, Pa1727, Pa1731, Pa1735)** uploaded earlier, are helpful to the plaintiff's case, but they somehow turn sideways after uploaded to eCourts causing us to remove them from the Appendices to prevent the volumes from being rejected.

8. All other pages that have previously rotated were checked many times before reuploading.

9. While we had no choice but to place the regular documents that had previously rotated back in the appendices in their proper positions, we removed the notifications because they seem to be the pages that almost always rotate.

10. While the Court notifications are easier to read in the position to which they have rotated, the fact that they are bate stamped at the shorter end of the page scanned together with other documents, show that they were not scanned sideways but placed in alignment with all other 8 ½ by 11 plain paper documents that we use and scanned as one unit, and bate stamped at the bottom right corner.

11. We replaced the notifications with *intentionally left blank pages* to prevent the volumes from being rejected.

12. The Notification uploaded at Pa953 shows that Judge Thurber had granted plaintiff an adjournment for the July 2022 depositions despite the defendants contending that he refused to be present for his July deposition

13. The Court notification at Pa1731 shows that an Oral argument on a motion was scheduled via zoom as was requested by Eldridge Hawkins (Pa1729).

14. Pa1733 which is inside the Appendix shows that Attorney Cecile Person was named in person in Mr. Karounos' brief and summoned to appear in person at a motion despite her arrangement with co-counsel Eldrige Hawkins, Esquire to appear via zoom on behalf of the Plaintiff.
15. The Court Notification at Pa1735 shows that Cecile Portilla, Esquire was named in the Court Notification to specifically appear, while no other counsel was named because Attorney karounos desired her to do so.
16. The Court notification at Pa1727 shows that upon attorney Karounos demanding her presence *in person* the Court *obeyed him* and demanded that all parties appear in court room 335 on June 1, 2023.
17. The Court Notification attached at Pa953 is the only proof that we have that shows that Judge Thurber granted an adjournment to Angel Lopez in June 2022, despite the defendants' contention that he refused to comply with their request to depose him.
18. There is good cause to allow the briefs filed by Attorney Karounos in this case to be reviewed by the Appellate division for a just resolution of this matter.
19. There is good cause to allow the Court Notifications to be uploaded outside of the Appendices in the interest of justice.
20. There is good cause to grant this motion.

I certify that the above statements made by me are true. I am aware that if the above statements made by me are willfully false that I am subject to punishment.

/s/ Cecile D. Portilla
CECILE D. PORTILL, ESQUIRE

Dated: August 14, 2024

ORDER ON MOTION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.: A-001267-23
MOTION NO.: M-006834-23
BEFORE: PART L
JUDGE(S): THOMAS W. SUMNERS JR.

ANGEL LOPEZ
V
THE PALISADES LLC, MR. HANDYMAN, INC.,
RSP ENTERPRISES NJ, L.L.C., ABC CORPORATION 1-10
(FICTITIOUS CORPORATION(S)

MOTION FILED: 08/15/2024 BY: ANGEL LOPEZ
ANSWER(S) FILED: BY:

SUBMITTED TO COURT: August 29, 2024

ORDER

THIS MATTER HAVING BEEN DULY PRESENTED TO THE COURT, IT IS, ON THIS 3rd day of September, 2024, HEREBY ORDERED AS FOLLOWS:

MOTION BY APPELLANT

MOTION TO FILE AS WITHIN TIME CERTIFICATION TO ADD TRIAL BRIEF AND NOTIFICATIONS — DENIED AND OTHER

SUPPLEMENTAL:
Movant shall file a brief conforming to our court rules by September 16, 2024, or the appeal shall be dismissed on the court's motion and without further notice.

FOR THE COURT:

THOMAS W. SUMNERS JR., C.J.A.D.

BER-L-5926
BER-L-5926-20 BERGEN
ORDER - REGULAR MOTION
PM

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-001267-23 TEAM 02

ANGEL LOPEZ
V
THE PALISADES LLC, MR. HANDYMAN, INC.,
RSP ENTERPRISES NJ, L.L.C., ABC CORPORATION 1-10
(FICTITIOUS CORPORATION(S)

ORDER DISMISSING APPEAL

This matter being opened to the Court on its own motion and it appearing that the appellant has failed to file a timely, conforming brief;

It is HEREBY ORDERED that the above appeal is dismissed.

WITNESS, the Honorable Thomas W. Sumners, Jr., Chief Judge of the Appellate Division, at Trenton, this 17th day of September, 2024.

s/JOSEPH H. ORLANDO
JOSEPH H. ORLANDO
CLERK OF THE APPELLATE DIVISION

PM

BER-L-5926
BER-L-5926-20 BERGEN

RECEIVED, Clerk of the Supreme Court, 17 Oct 2024, 089878, RECEIVED

CECILE D. PORTILLA, ATTORNEY AT LAW LLC
7 Glenwood Avenue, Suite 400
East Orange, NJ 07017
Phone (973) 676 5072 Fax (862) 520 3433
Attorney Id :021212005
Portillalaw@comcast.net

October 17, 2024

Attn: Case Manager
Supreme Court of New Jersey
Richard J. Hughes Justice Complex
25 West Market Street
PO Box 006
Trenton, NJ 08625

**Re: Angel Lopez v Edward Pec et al.**
**Supreme Court Docket Number: 08987**

Dear Case Manager:

Please note that the option to upload Appellate Division Documents was blocked. Thus, we uploaded our documents as "Other and Miscellaneous."
The brief was uploaded as a Letter Brief as that was the only brief option available to us.

The Appendices were uploaded as follows:

Appendix Volume I of XV
Appendix Volume II of XV
Appendix Volume III of XV
Appendix Volume V of XV (Volume V was uploaded twice)
Appendix Volume V of XV
Appendix Volume VI of XV
Appendix Volume VII of XV
Appendix Volume VIII of XV
Appendix Volume IX of XV
Appendix Volume X of XV



Cecile D Portilla

RECEIVED, Clerk of the Supreme Court, 17 Oct 2024, 089878, RECEIVED

Appendix Volume XI of XV
Appendix Volume XII of XV
Appendix Volume XIII of XV
Appendix Volume XIV of XV
Appendix Volume XV of XV
Confidential Appendix Volume 1 of I
Letter Brief
Appendix Volume IV of XV

Please note that Appendix Volume IV of XV was uploaded last.

Thank you.

Respectfully submitted,

/s/ Cecile D. Portilla
CECILE D. PORTILLA, ESQUIRE

CC: All Attorneys of Record

RECEIVED, Clerk of the Supreme Court, 16 Jan 2025, 090218, CURED

# SUPREME COURT OF NEW JERSEY

| | |
|---|---|
| DR. MAVIS FAULKNOR<br><br>PLAINTIFF-APPELLANT<br><br>v<br><br>COUNTY OF HUDSON, MEADOWVIEW PSYCHIATRIC HOSPITAL, JOANNE D. REILLY, DR. EDWARD CARUSO, PAT SHIELS, DARICE TOON, GERALD DRASHELF, DR. ALEXANDER DELGA, ARLENE DEANO, RODERICK T. BALTIMORE, ELINOR GIBNEY, HEAD DOE, JOHN DOE AND HARRY (IDENTITIES UNKNOWN)<br><br>DEFENDANTS-RESPONDENTS | **Supreme Court of New Jersey. No: 090218**<br><br>**Appellate Division: Docket No: A-000692-21T2**<br><br><u>Civil Action</u><br>On Petition for Certification of the Final Judgment of The Appellate Division Issued December 16, 2024<br><br>Sat Below: Hon. Anthony V. D'Elia, JSC<br>Superior Court of New Jersey<br>Hudson County<br>HUD-L-4336-17<br>Consolidated With<br>HUD-L-3792-18<br><br>**Submitted: January 15,, 2025** |

# PETITION FOR CERTIFICATION

---

Cecile D. Portilla, Attorney at Law LLC
7 Glenwood Avenue, Suite 400
East Orange, NJ 07017
Phone (973) 676 5072 Fax (862) 520 3433
Attorney Id: 021212005
Portillalaw@comcast.net
portillalaw@gmail.com

RECEIVED, Clerk of the Supreme Court, 16 Jan 2025, 090218, CURED

# TABLE OF CONTENTS

STATEMENT OF THE MATTER INVOLVED 1

FACTUAL BACKGROUND 3

QUESTIONS PRESENTED 6

ERRORS COMPLAINED OF 6

REASONS WHY CERTIFICATION SHOULD BE GRANTED 7

**Point One**

**The Appellate Division Erred In Not Finding The Presence Of A Very Obvious And Exceptional Showing Of Error That Existed In This Case Thus Interference With The Two Court Rule By The Supreme Court Is Required** 7

Filing Dates of 39 Notices of Claims upon eCourts 9

**Point Two**

**The Appellate Division Erred In Not Finding That Rule 4:50-1 And Rule 4:49-2 of The New Jersey Rules Of Court Clearly Serve Different Purposes And Address Different Legal Mechanisms** 13

**Point Three**

**The Appellate Division Erred In Concluding That The Plaintiff's Request For Relief Under Rule 4:50-1, 2 And Rule 4:49-2 Warranted Application of the 20 Days Limitation of Rule 4:49-2** 14

RECEIVED, Clerk of the Supreme Court, 16 Jan 2025, 090218, CURED

**Point Four**

**Where Errors Do Not Fit Neatly Within The Subset of Rule 4:49-2 Or Rule 1:13 That Led To The Unjust Dismissal Of Multiple Counts Of The Plaintiff's Complaint The Appellate Division Has A Duty To Forge A Remedy For Unanticipated Errors** 15

**Point Five**

**The Appellate Court Had A Duty To Correct Errors That Fit Within The Definition Of Clerical Errors Without The Request Of The Plaintiff** 18

**Conclusion** 20

RECEIVED, Clerk of the Supreme Court, 16 Jan 2025, 090218, CURED

# TABLE OF AUTHORITIES

## CASES

Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). 2

Citibank, N.A. v. Russo, 334 N.J. Super. 346, 353 (App. Div. 2000) 15

Chi., Rock Island & Pac. Ry. Co. v. Union Pac. Ry. Co., 47 F. 15, 26 (C.C.D. Neb. 1891) 11

Court Investment Co., Court Invest. Co. v. Perillo, 48 N.J. 334 (1966) 15, 16

Daryl v. Pennsylvania Mfrs. Ass'n. Ins. Co., 114 N.J. 416, 426 (1989) 12

Hous. Auth. of Morristown v. Little, 135 N.J. 274, 286 (1994) 16

Iannone v. McHale, 245 NJ. Super. 17, 28 (1990) 2, 12

Lucas v. United States, 807 F.2d 414, 418 (5th Cir. 1986) 2, 12

McNair v. McNair, 332 N. J. Super. 195, 199 (App.Div.2000) 8

Midler v. Heinowitz, 10 N.J. 123, 128-29 (1952) 7

Romero v. Gold Star Distrib., LLC, 468 N.J. Super. 274 (App. Div. 2021) 14

RECEIVED, Clerk of the Supreme Court, 16 Jan 2025, 090218, CURED

Scarborough Apartments, Inc., v. City of Englewood, 9 N.J. 182 (1952)
Schulwitz v. Shuster, 27 N.J. Super. 554, 561 (App. Div. 1953) 14

State v Cohen, 73 N.J. 331 (1977) 14

Suter v. San Angelo Foundry & Mach. Co., 81 N.J. 150, 179 n. 1 (1979) (concurring opinion) 12

## NEW JERSEY COURT RULES

Rule 4:50-1,2 1, 5,6,7, 13,15

Rule 4:49-2 1, 5, 6,7, 13, 15

Rule 1:13-1 8

Rule 4:46-2 13

Rule 4: 42-2 15

Rule 1:12-1, 2 15

Rule 1: 7-4 15

## NEW JERSEY CONSTITUTION

Article 1, Paragraph 18 `15

## OTHER SOURCES

Felix S. Cohen, Transcendental Nonsense and the Functional Approach, 35 Colum. L. Rev. 809, 840 (1935). 11

Roscoe Pound, Law And Morals 65 (Rothman Reprints 1969) (1924). 11,12

RECEIVED, Clerk of the Supreme Court, 16 Jan 2025, 090218, CURED

# TABLE OF JUDGMENT ORDERS AND RULINGS

Appellate Division Decision 12/16/24 Pca010

RECEIVED, Clerk of the Supreme Court, 16 Jan 2025, 090218, CURED

# INDEX TO APPENDIX


| | |
|---|---|
| Notice of petition of Certification filed 12/28/2024 | Pca001 |
| Certification of Service of notes of petition filed 12/28/2024 | Pca004 |
| Original Copy of Notice of petition of Certification Dated 12/28/2024 | Pca007 |
| Opinion of the appellate Division 12/16/2024 | Pca010 |
| Order of Motion 05/10/2023 | Pca025 |
| Appellate Division Notice of Motion 04/21/2023 | Pca027 |
| Notice of Motion for Judicial Notice submitted 04/21/2023 | Pca031 |
| Certification in support of motion 04/21/2023 | Pca033 |
| Exhibit A to Certification in support of motion \|Dr. Edward Caruso 04/21/2023 | Pca037 |
| Order Granting summary judgments to defendants 06/03/2021 | Pca042 |
| Summary Judgement Opinion 06/30/2021 | Pca043 |
| Letter to the Court that Hawkins cannot see the order 06/14/2021 | Pca061 |
| Notice of Claim Date of Injury (DOI) July 26, 2018, Dated August 1, 2018, Filed 9/24/2018 | Pca062 |
| Notice of Claim DOI July 26, 2018, Dated August 1, 2018, Filed 10/16/2018 | Pca064 |
| Notice of Claim, Tort and Contract, DOI February 2017, June 2017 & July 27, 2017, Dated August 9, 2017 Filed 3/12/2019 | Pca066 |
| Notice of Claim, DOI July 26, 2018, Dated August 1, 2018, Filed 3/12/2019 | Pca070 |
| Notice of Claim, DOI September 26, 2018, Dated October 23, 2018, Filed 3/12/2019 | Pca072 |
| Notice of Claim, DOI October 10, 2018, Dated October 18, 2018, Filed 3/12/2019 | Pca074 |

RECEIVED, Clerk of the Supreme Court, 16 Jan 2025, 090218, CURED


Notice of Claim, DOI July 26, 2018, Dated November 21, 2018, Filed 3/12/2019 Pca077

Notice of Claim, Dated February 4, 2019, Filed 3/12/2019 Pca079

Notice of Claim, DOI July 26, 2018, Dated August 1, 2018, Filed 3/13/2019 Pca081

Notice of Claim, DOI: Feb, 2017, June 2017 & July 27, 2017, Dated August 9, 2017, Filed 5/22/2019 Pca083

Notice of Claim, DOI July 26, 2018, Dated August 1, 2018, Filed 5/22/2019 Pca087

Notice of Claim, DOI September 26, 2018, Dated October 23, 2018, Filed 5/22/2019 Pca089

Notice of Claim, DOI July 26, 2018, Dated August 1, 2018, Filed 5/22/2019 Pca091

Notice of Claim, DOI October 10, 2018, Dated October 18, 2018, Filed 5/22/2019 Pca093

Notice of Claim, DOI Feb, 2017, June 2017 & July 27, 2017, Dated August 9, 2017, Filed 5/24/2019 Pca096

Notice of Claim, DOI July 26, 2018, Dated August 1, 2018, Filed 5/24/2019 Pca100

Notice of Claim, DOI July 26, 2018 to November 19, 2018, Dated November 21, 2018,Filed 5/24/2019 Pca102

Notice of Claim, Dated February 4, 2019, Filed 5/24/2019 Pca104

Notice of Claim, Tort and Contract, DOI Feb, 2017, June 2017 & July 27, 2017, Dated 9, 2017, Filed 3/13/2019 Pca106

Notice of Claim, DOI July 26, 2018, Dated August 1, 2018, Filed 3/13/2019 Pca110

Notice of Claim, DOI October 10, 2018, Dated October 18, 2018, Filed 3/13/2019 Pca113

Notice of Claim and Opra Request, DOI July 26, 2018, Dated November 21, 2018, Filed 3/13/2019 Pca117

RECEIVED, Clerk of the Supreme Court, 16 Jan 2025, 090218, CURED


Notice of Claim and Opra Request, DOI July 26, 2018 to November 19, 2018, Dated November 21, 2018, **Filed 3/13/2019**

Notice of Claim, Dated February 4, 2019, Filed **3/13/2019**

Notice of Claim, DOI Feb, 2017, June 2017 & July 27, 2017, Dated August 9, 2017, Filed 3/30/2021 Pca124

Notice of Claim, DOI July 26, 2018, Dated August 1, 2018, Filed 3/30/2021 Pca128

Notice of Claim, Dated February 4, 2019, Filed 3/30/2021 Pca130

Notice of Claim, DOI September 26, 2018, Dated October 23, 2018, Filed 3/30/2021 Pca132

Notice of Claim, DOI October 18, 2018, Dated October 18, 2018, Filed 3/30/2021 Pca134

Notice of Claim, DOI July 26, 2018 to November 19, 2018, Dated November 21, 2018, Filed 3/30/2021

Exhibit A – Notice of Claim, DOI Feb, 2017, June 2017 & July 27, 2017, Dated August 9, 2017, Filed 7/1/2021 Pca139

Exhibit B – Notice of Claim, DOI July 26, 2018, Dated August 1, 2018, Filed 7/1/2021 Pca144

Exhibit C – Notice of Claim, DOI September 26, 2018, Dated October 23, 2018, Filed 7/1/2021 Pca147

Exhibit D – Notice of Claim, DOI October 10, 2018, Dated October 18, 2018, Filed 7/1/2021 Pca150

Exhibit E – Notice of Claim, Dated February 4, 2019, Filed 7/1/2021 Pca154

**RECEIVED**, Clerk of the Supreme Court, 16 Jan 2025, **090218**, CURED

**STATEMENT OF THE MATTER INVOLVED**

The Appellate Division decision of 12/16/24 in this matter would render Rule 4:50-1, 2 meaningless. Rule 4:50-1 offers several grounds for relief from final judgment on a motion to vacate, including subsection (a) mistake, inadvertence, surprise, or excusable neglect and section (f)'s (f) any other reason justifying relief from the operation of the judgment or order. Rule 4:50-2 provides the time frame within which a motion seeking relief under Rule 4:50-1 **must** be filed.

A careful review of Rule 4:50-1 shows that section (b) is the only provision that requires that Rule 4:49-1 be utilized in conjunction with Rule 4:50-1 if evidence later found was found in time to allow a regular motion for Reconsideration to be made. There are no case laws to date that has set any limits on the meaning of "***any time.***" The general principle in legal contexts is that when there are multiple time frames available, the broader or longer one typically applies to ensure fairness and avoid unnecessary complications. In New Jersey, the broader time limit always applies in legal proceedings or appeals, as per the rules set forth in the New Jersey Court Rules. For example, *a party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 20 days after service of the amended pleading, whichever period is longer, unless the court otherwise orders*. Rule 4:49-1.

The drafters of Rule 4:49-1 or Rule 4:50-1 did not contemplate

**RECEIVED**, Clerk of the Supreme Court, 16 Jan 2025, **090218**, CURED

***malfunction of a State Court's web site*** when those rules were drafted. If justice is the pole star, why would the plaintiff be required to foot the cost of an expensive appeal and subject herself to excessive delays when Rule 4:50-1, 2 allows a reasonable option? Inability to Physically See Documents that are filed in support of plaintiff's cause of action is a denial of access to our courts. In Iannone v. McHale, 245 NJ. Super. 17, 28 (1990) the Court expressed that the right of access to our courts should not be unduly infringed upon. Thus, the right to a remedy through open access to the courts is an important right guaranteed by state constitutions. See Lucas v. United States, 807 F.2d 414, 418 (5th Cir. 1986). A functional web based eCourts filing site allows access to our Courts.

Where substantive rights are being denied for bizarre or unanticipated reasons, the Supreme Court has the ability to devise remedies necessary to enforce substantive rights even where Congress fails to authorize them. See Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). The State of New Jersey's Court site must be functional and properly maintained by the State. Why should litigants be invited to spend money on Court system that has malfunctions where Judges cannot see documents? *This is tantamount to a bank teller telling a patron that he or she cannot see the monies that the patron deposited weeks earlier, then closes the account due to lack of funds, and expects the patron to go through a long drawn out appeal process to figure out what happened to his*

RECEIVED, Clerk of the Supreme Court, 16 Jan 2025, 090218, CURED

*monies that was in the bank's custody, then criticizes the patron for becoming frantic and trying to get a resolution immediately!*

The matter at bar clearly requires that the Supreme Court apply section Rule 1:13 and reinstate all counts of plaintiff's Complaint that were dismissed due to the ***inability of the judge to see documents that were clearly physically attached to the court site*** due to plaintiff's alleged ***failure to file notices of claims.*** *According to Sylvia Pressler, the Rule of Court shall be construed to secure a just determination, simplicity in procedure, fairness in administration, and the elimination of unjustifiable expense and delay. Simply put, the rules of court rules are supposed to be applied in a way that promotes fairness and efficiency in the legal process. (See)*

*Thus, if justice is the polė star*, the Supreme Court is required to correct this error and immediately reinstate all counts of plaintiff's complaint that were dismissed on the basis the "**no notices of claims were filed**" The definition of justice according to Cicero is to "*give to each his just due.*" "*Giving just due is not just giving remedies that are legally outlined* but ***doing that which is necessary to see that justice is served.***"

## FACTUAL BACKGROUND

Dr. Mavis Faulknor (Plaintiff) is an African American female with a doctoral degree in Nursing who was employed by Hudson County to work as an Advanced Practice Nurse (APN) at Meadowview Psychiatric Hospital. During plaintiff's

RECEIVED, Clerk of the Supreme Court, 16 Jan 2025, 090218, CURED

employment, the APN Act as enacted at that time, required that the APN have a Sponsor and an annual collaborative agreement and did not allow APNs to write prescriptions for medications or devices without a collaborating agreement with the sponsor. After an incident whereby the hospital staff restrained a patient without plaintiff's knowledge or consent, the white and Hispanic actors involved, cast the blame on the plaintiff who was written up. Plaintiff had no signed collaborative agreement on the incident date.

Upon plaintiff requesting an administrative Grievance hearing for the unjust write ups, the employer reported the incident to plaintiff's licensing board accusing her of incompetence and conduct unbecoming a public employee. After serving the defendants with several notices of claim (NOC) starting on August 9, 2017, plaintiff advised the defendants on 8/17/17, that she was no longer pursuing her grievance in the administrative forum and would take her matter to the Superior Court. On 8/17/17, the defendants conducted the hearing in absentia depriving plaintiff of the right to cancel her own hearing, thusly denying her of due process.

On June 3, 2021, the trial Court Judge dismissed ***Counts 7,10, 11, 15,19, 20 and all tort claims of the Complaint on the incorrect basis that no notices of claim were filed***. *The Trial Court failed to see that five notices of claims were filed in support of plaintiff's cross motion for summary judgment and that a total of 39 NOCs were filed from 2018 to 2022*. On 6/14/21, upon no order of dismissal seen by

RECEIVED, Clerk of the Supreme Court, 16 Jan 2025, 090218, CURED

plaintiff on eCourts, plaintiff contacted the Court on 6/14/2021 advising that there was no order noted upon the case jacket from which he could appeal.

The Undersigned Shall Be Blünt. The Superior Court of New Jersey **is aware of complaints of tampering of the web based eCourts filing system of New Jersey. Thus, based on information and belief, if Eldridge Hawkins, Esquire COULD NOT SEE the order for Summary** Judgment **attached to the web site on 6/3/2021, then based on credible information and belief, it was likely obscured to prevent him from seeing it, just as the 39 Notices of Claims that were attached to the case jacket were likely obscured from Judge D'Elia.**

On June 23, 2021, when Eldridge Hawkins could see an actual Order of dismissal on the web site, he immediately submitted a motion for reconsideration and venue change which were denied by the trial Judge on August 6, 2021. On 8/30/2021, a frustrated Plaintiff sought relief from the Assignment Judge via a motion to vacate and reconsider the previous orders of the current Judge pursuant to Rule 4:50-1,2 and Rule 4:49-2. The assignment Judge first noted that plaintiff's counsel had criticized another Hudson County Judge. The assignment Judge expressed that the plaintiff's request was untimely under Rule 4:49-2, and that his motion should be made to the Appellate Division as opposed to him. He basically disregarded Rule 4:50-1 as providing any basis for relief.

On December 16, 2025, the Appellate Court adopted the Assignment

RECEIVED, Clerk of the Supreme Court, 16 Jan 2025, 090218, CURED

judge's opinion and indicated that plaintiff' use of Rule 4:50-1, 2 was conjunctive to the use of Rule 4:49-2. The Appellate Court indicated that use of Rule 4:50-1,2 warranted compliance with the 20 days time frame of Rule 4:49-2, expressing that a motion to vacate was also under Rule 4:49-2. The Appellate Court did not mention the trial Court's dismissal of *the invasion of privacy Count and Count 7,10, 11, 15,19, 20 and dismissal of all tort claims without any determination on the merit, on the incorrect basis* that no notices of claims were filed.

## QUESTIONS PRESENTED

1. Whether The Two Court Rule Requires an Alteration In Finding By The Supreme Court Due To The Presence Of A Very Obvious And Exceptional Showing Of Error.
2. Whether The Appellate Division Erred in Concluding That Plaintiff's Request for Relief Under Rule 4:50-1, 2 And Rule 4:49-2 Required The Application Of The 20 Days Limitation Of Rule 4:49-2 Or The Time Frame Set By Rule 4:50-2
3. Whether Rule 4:50-1 and Rule 4:49-2 Of The New Jersey Rules Of Court Clearly Serve Different Purposes and Address Different Legal Mechanisms
4. Whether The Appellate Division Has a Duty to Forge A Remedy For Errors That Do Not Fit Neatly Within The Subset Of Rule 4:49-2 Or Rule 1:13 That Led To The Unjust Dismissal Of Multiple Counts Of The Plaintiff's Complaint

## ERRORS COMPLAINED OF

**(i)The Appellate Division Erred** in not finding the presence of a very obvious and exceptional showing of error that existed in this case thus interference with the two Court Rule by the Supreme Court is required; **(ii)The appellate Division Erred** in not finding that Rule 4:50-1,2 and Rule 4:49-2 of the New jersey rules of court clearly serve different purposes and address different legal mechanisms;

RECEIVED, Clerk of the Supreme Court, 16 Jan 2025, 090218, CURED

**(iii) The Appellate Division Erred** in concluding that the plaintiff's request for relief under Rule 4:50-1, 2 and Rule 4:49-2 warranted the application of the 20 days limitation of Rule 4:49-2;
**(iv) The Appellate Division Erred** not considering the matter de novo and Forging a remedy for this highly Unusual unanticipated error that did not fit neatly within the subset of rule 4:50-1,2 or 4:49-2 that led to the unjust dismissal of multiple counts of the plaintiff's complaint;
**(v) The Appellate Court Erred** in not Utilizing its Equitable Powers and applying Rule 1:13 -1 without the Request of the plaintiff to prevent injustice.

## REASONS WHY CERTIFICATION SHOULD BE GRANTED

This appeal presents issues of public importance. By not having a Court filing site where documents can be properly viewed by Judges, Citizens are denied access to the NJ Courts. The Order entered by the Appellate Division on 12/16/24, was inconsistent with our Court Rules, established Case Laws and the NJ Constitution.

### Point One

**The Appellate Division Erred In Not Finding The Presence Of A Very Obvious And Exceptional Showing Of Error That Existed In This Case Thus Interference With The Two Court Rule By The Supreme Court Is Required**

Under the two-court rule, appellate courts ordinarily should not undertake to alter concurrent findings of facts and credibility determinations made by two lower courts absent a very obvious and exceptional showing of error. Midler v. Heinowitz, 10 N.J. 123, 128-29, 89 A.2d 458 (1952). The Supreme Court may make a new and independent finding when there is such palpable error in the concurrent findings or such clear showing otherwise of a miscarriage of justice as that a new finding by us

RECEIVED, Clerk of the Supreme Court, 16 Jan 2025, 090218, CURED

is necessary to serve the essential ends of justice. Cf. Scarborough Apartments, Inc., v. City of Englewood, 9 N.J. 182 (1952).

The Clerical Error in this Case Was Exceptional. A court may correct a clerical error in judgment at ***any time*** without even the necessity of a formal motion when such an error is brought to its attention. See McNair v. McNair, 332 N. J. Super. 195, 199 (App.Div.2000). Rule 1:13-1 states as follows: "*Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight and omission may **at any time** be corrected by the court on its own initiative or on the motion of any party, and on such notice and terms as the court directs, notwithstanding the pendency of an appeal.*"

On June 3, 2021, the trial Court Judge dismissed multiple counts of the plaintiff's complaint on Summary judgment on the basis that plaintiff did not file any notice of claims when the case jacket showed thirty one filings **(39) of notices of claims upon the case jacket** including six **(6) notices of claims** filed at Summary Judgment. On June 3, 2023, Judge D'Elia stated as follow in his opinion: "***There was no notice of claim filed as required by N.J.S.A.59:8-8 against either the Defendant County of Hudson or Dr. Caruso. For this reason, any tort claims, however plead in the complaint, are dismissed.***"

Judge D'elia's then dismissed plaintiff's claim for invasion of privacy, as well as **Count 7, Count 10, Count 11, Count 15, Count 19, Count 20** and all tort

**RECEIVED**, Clerk of the Supreme Court, 16 Jan 2025, **090218**, **CURED**

claims on the clerical error that no notices of claims were filed. **See (Pca55-Pca57)**These counts were simply dismissed and **never addressed on their merits.** Judge D'Elia Engaged In Clerical Error incorrect because SIX (6) notices of claim were filed on Summary Judgment for his review and 39 Notice of claim were sitting on the case jacket that were filed between 2018 and 2021. **(Pca62-Pca156)**

**Filing Date of 39 Notices of Claims upon eCourts follows:**

- On 9/24/2018 the plaintiff filed *One Notice Of Claim* for date of injury 7/26/2018 with her Complaint **(Pca62-Pca138)**
- On 10/16/2018 the plaintiff filed *One Notice Of Claim* dated 7/26/18 with her amended complaint
- On March 12/2-19 the plaintiff filed *Six Notices Of Claim* for injury dates as follows:
  - (i) DOI-2/17/, 6/17 , 7/27/17,
  - (ii) 7/26/18,
  - (iii) 9/16/18.
  - (iv) 10/10/18.
  - (v) 7/26/18-11/19/18,
  - (vi) 2/4/19

  **(Pca62-Pca138)**
- On March 13, 2019 plaintiff filed a motion to file a 3rd Amended Complaint and attached *Six Notices Of Claim* for dates on injuries as follows:
  - (i) DOI-2/7, June 17, July 27, 2017;
  - (ii) 7/26/18;
  - (iii) 9/26/18-present;
  - (iv) 10/10/18;
  - (v) 7/26/18-11/19/18;
  - (iv) 2/4/19
- On 5/22/19 the plaintiff filed a motion to amend his complaint and attached *Seven Notices Of Claims* as follows:

RECEIVED, Clerk of the Supreme Court, 16 Jan 2025, 090218, CURED

(i) DOI-February 2017, June 2017, June 27, 2017;
(ii) DOI July 26, 2018;
(iii) DOI September 26 2018 to present;
(iv) DOI October 10, 2018;
(v) DOI July 26, 2018 -November 19, 2018;
(vi) DOI-September 26, 2018 to present (duplicate);
(vii) DOI October 10, 2018 (duplicate)

- On 5/24/19 the plaintiff upon receiving a deficiency notice again filed another motion to amend his complaint and attached seven(7) *Notices Of Claims* as follows :
  (i) DOI-February 2017, June 2017, June 27, 2017;
  (ii) DOI July 26, 2018;
  (iii) DOI September 26 2018-present;
  (iv) DOI October 10/10/2018;
  (v) DOI July 26, 2018 -November 19, 2018;
  (vi) DOI-September 26, 2018 to present ;
  (vii) One dated February 2019

- On 3/30/2021 the plaintiff filed a cross motion for summary judgment and attached *Six (6) Notices Of Claims* to his motion as follows:
  (i) DOI August 6, 2017;
  (ii) DOI July 26, 218,
  (iii) DOI September 26, 2018 to present;
  (iv) DOI October 10, 2018;
  (v) DOI July 26, 2018-November 19, 2018;
  (vi) One dated February 4, 2019 without mentioning a DOI.

- On 7/1/21 plaintiff filed five notices of claims in support of his motion for reconsideration:
  (i) DOI February 2017, June 2017, June 27, 2017;
  (ii) DOI July 26, 2018;
  (iii) DOI September 26 2018-present;
  (iv) DOI October 10/10/2018;

RECEIVED, Clerk of the Supreme Court, 16 Jan 2025, 090218, CURED

(v) One dated February 4, 2019 without mentioning a DOI.

Here, Notices of claims were filed by the plaintiff thirty nine (39) times that Judge D'Elia said were *never* filed. **(See)** Yet plaintiff was judged when she became upset and asked for transfer to another venue. The Plaintiff *could not understand why* multiple counts of her complaint were dismissed due to FAILURE to file ANY notices of claims!? Any reasonable plaintiff would have felt blindsided by such an incredulous accusation. What type of justice system allows this type of error to stand? "[E]very case presents a moral question to the court." Felix S. Cohen, Transcendental Nonsense and the Functional Approach, 35 Colum. L. Rev. 809, 840 (1935). This is such a case. The question is "did Judge D'Elia equitably dispense justice to Dr. Faulknor?"

In a justice system where law and equity are merged, there are always remedies. However, there must be willingness to acknowledge fault. It is known that the powers of a court of equity are as vast, and its processes and procedure as elastic, as all the changing emergencies of increasingly complex ... relations and the protection of rights can demand." See Chi., Rock Island & Pac. Ry. Co. v. Union Pac. Ry. Co., 47 F. 15, 26 (C.C.D. Neb. 1891)

Legal scholars have posited that a "unified system must reconcile its commitment to equity-or fairness, which is probably the most important principle of jurisprudence." See Roscoe Pound, Law And Morals 65 (Rothman Reprints 1969)

RECEIVED, Clerk of the Supreme Court, 16 Jan 2025, 090218, CURED

(1924). In Daryl v. Pennsylvania Mfrs. Ass'n. Ins. Co., the Court expressed that the needs of litigants and the judicial system are well served by the ***conscientious judge*** who is frankly ***willing to acknowledge and correct error*** in a way that shortcuts the consumption of time, expense, and resources involved in the appellate process. See Id at 114 N.J. 416, 426 (1989). In Daryl, the Appellate Division, belatedly recognized the problem of the effective date of an amendment to N.J.S.A. 39:6A-4, called for briefs from the parties, heard oral argument, and then confessed that it had erred in its first opinion. The Court expressed that **"[c]onfession of error is good not only for the soul but for an accurate view of the law."** Suter v. San Angelo Foundry & Mach. Co., 81 N.J. 150, 179 n. 1 (1979) (concurring opinion).

Inability to PHYSICALLY see DOCUMENTS that are filed in support of plaintiff's cause of action is a denial of access to our courts. The right of access to our courts should not be unduly infringed upon. Iannone v. McHale, 245 NJ. Super. 17, 28 (1990). The right to a remedy through open access to the courts is an important right guaranteed by state constitutions. See Lucas v. United States, 807 F.2d 414, 418 (5th Cir. 1986).

Moreover, the Supreme Court has the ability devise remedies necessary to enforce substantive rights even when Congress fails to authorize them. See Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). Judge D'Elia was dead wrong. Judge Jablonski did not correct Judge

RECEIVED, Clerk of the Supreme Court, 16 Jan 2025, 090218, CURED

D'Elia's wrong. The Appellate Court focused only on whether Judge Jablonski had jurisdiction. The notices of claims that were filed repeatedly due to their importance were ignored. Pursuant to Rule 4:46-2 documents that include pleading and affidavits on file are to be considered in rendering judgment. "Documents on file" as interpreted are not limited to those documents that were filed in support of the singular Summary judgment motion. Thus, the various certifications and the pleadings and amended pleadings with the multiple attached Notices of Claims were to be considered and clearly were not for whatever reasons.

**Point Two**

**The Appellate Division Erred In Not Finding That Rule 4:50-1 And Rule 4:49-2 of The New Jersey Rules Of Court Clearly Serve Different Purposes And Address Different Legal Mechanisms**

Rule 4:50-1 and Rule 4:49-2 of the New Jersey Rules of Court clearly serve different purposes and address different legal mechanisms Rule 4:50-1 pertains to relief from a judgment or order and can be invoked independently to address issues like mistake, inadvertence, surprise, or newly discovered evidence.

Thus, motions under Rule 4:50-1 require the time frame under Rule 4:50-2, since the relief is broader and can be used outside the narrower scope and time frame of Rule 4:49-2. It is unclear why the Appellate Division was trying to fit the plaintiff's motion exactly under the limited Rule 4:49-2 provision.

If the plaintiff had no recourse under Rule 4:49-2 since the 20 days had expired, the plaintiff still had a still recourse under Rule 4:50-1 based on the highly

RECEIVED, Clerk of the Supreme Court, 16 Jan 2025, 090218, CURED

unusual conditions that led to the dismissal of MULTIPLE COUNTS OF plaintiff's complaint CAUSING HER COUNSEL TO CRY FOWL.

A ['COURT'S] MISTAKE SUCH AS THIS, was a sufficient, valid just defense to the original cause of action stated in clear and unmistakable terms is a prerequisite to opening a judgment under Rule 4:50-1 (a) (f)." See Schulwitz v. Shuster, 27 N.J. Super. 554, 561 (App. Div. 1953).

## Point Three
## The Appellate Division Erred In Concluding That The Plaintiff's Request For Relief Under Rule 4:50-1, 2 And Rule 4:49-2 Warranted Application of the 20 Days Limitation of Rule 4:49-2

Rule 4:50-2 provides the time frame within which a motion seeking relief under Rule 4:50-1 **must** be filed. The rule states "[t]he motion shall be made within a reasonable time...." R. 4:50-2.... [A] reasonable time is determined based upon the totality of the circumstances.... See Romero v. Gold Star Distrib., LLC, 468 N.J. Super. 274 (App. Div. 2021). In State v Cohen, 73 N.J. 331 (1977), the Supreme Court of New Jersey emphasized that statutory construction should not be limited to literalisms or formal rules, but should consider the breadth of the legislation's objectives and the commonsense of the situation. In reviewing the plaintiff's matter, it is clear that the Appellate Division failed to consider commonsense of the situation. On September 24, 2021 plaintiff provided a proposed order to Judge

RECEIVED, Clerk of the Supreme Court, 16 Jan 2025, 090218, CURED

Jablonski that requested relief under "**Rule 4: 42-2; Rule 4:50- 1,2; Rule 4: 49-2; Rule 1:12-1, 2; Rule l: 7-4; NJ Constitution And Article 1, Paragraph 18" (Pa).**

Here, the Plaintiff sought to avail herself of the broader time limit of rule 4:50-1, 2 **or** Rule 4:49-1. The Appellate Division is familiar with the concept of Alternative pleadings. Simply put, Plaintiff sought relief under any rule that would afford her the best and the most relief. It was unreasonable for the Appellate Division to indicate that since plaintiff sought relief under Rule 4:50-1 2, and 4:49-1 she was limited to the 20 days afforded under Rule 4:49-1 when the provisions are not conjunctive to each other and the time frame under Rule 4:50-2 was endless. Rule 4:50-1 makes clear that All motions made under its provisions require a "reasonable time," frame under Rule 4:50-2, ***regardless*** of the motion's grounds. See Citibank, N.A. v. Russo, 334 N.J. Super. 346, 353 (App. Div. 2000).

The time frame in which plaintiff made her application for relief before judge judge Jablonski was reasonable because it was less than 30 days after the final order signed by Judge D'Elia. **(Pa)**

## Point Four
## Where Errors Do Not Fit Neatly Within The Subset of Rule 4:49-2 Or Rule 1:13 That Led To The Unjust Dismissal Of Multiple Counts Of The Plaintiff's Complaint The Appellate Division Has A Duty To Forge A Remedy For Unanticipated Errors

Even Errors of facts and law can be considered exceptional circumstances. In Court Investment Co., Court Invest. Co. v. Perillo, 48 N.J. 334 (1966) the

RECEIVED, Clerk of the Supreme Court, 16 Jan 2025, 090218, CURED

Court Investment Co., the Court expressed:

> *[n]o* ***categorization*** *can be made of the situations which would warrant redress under subsection (f). * * * [T]he very essence of (f) is its capacity for relief in exceptional situations. And in such exceptional cases its* ***boundaries are as expansive*** *as the need to achieve equity and justice.*

Court Investment Co., supra, 48 N.J. 334, 341

Relief under Rule 4:50-1(f) is available when "truly exceptional circumstances are present." Hous. Auth. of Morristown v. Little, 135 N.J. 274, 286 (1994) "The rule is limited to `situations in which, were it not applied, a grave injustice would occur" as occurred in the plaintiff's case. Id. In Daryl v. Pennsylvania Mfrs. Ass'n. Ins. Co., 114 N.J. 416, 426 (1989), the Court expressed that the needs of litigants and the judicial system are well served by the conscientious judge who is frankly willing to acknowledge and correct error in a way that shortcuts the consumption of time, expense, and resources involved in the appellate process. See Darel v. Pennsylvania Mfrs. Ass'n. Ins. Co., 114 N.J. 416, 426 (1989).

In Daryl, the Appellate Division, belatedly recognized the problem of the effective date of an amendment to N.J.S.A. 39:6A-4, called for briefs from the parties, heard oral argument, and then confessed that it had erred in its first opinion. The Court expressed that **"[c]onfession of error is good not only for the soul but for an accurate view of the law."** Suter v. San Angelo Foundry & Mach. Co.,

RECEIVED, Clerk of the Supreme Court, 16 Jan 2025, 090218, CURED

81 N.J. 150, 179 n. 1 (1979) (concurring opinion). On June 3, 2023, Judge D'Elia stated as follow in his opinion "***There was no notice of claim filed as required by N.J.S.A.59:8-8 against either the Defendant County of Hudson or Dr. Caruso. For this reason, any tort claims, however plead in the complaint, are dismissed.***" **(Pa1845, Pa1847).** Judge D'elia's then dismissed plaintiff's claim for invasion of privacy, as well Count 7, Count 10, Count 11, Count 15, Count 19, Count 20 and all tort claims on the basis that no notices of claims were filed! See **(Pa1834-Pa1849, See Pa616-Pa675). Judge D'Elia was dead wrong. Judge Jablonski did not correct Judge D'Elia's wrong. The Appellate Court simply went along! Five notices of claim were filed by the plaintiff in support of summary judgment. In fact, thirty one** (39) Notices of claim were filed on the case jacket from 2018 to 2022. (**(Pca62-Pca138)**

The Notices of claims were filed repeatedly **due to their importance to this case**. The foot notes of Plaintiff's Appellate Appendix index made numerous references to the notices of claims that were repeatedly missed or could not be seen by the Court. **(See).** The matter at bar clearly required that the Appellate Division apply section (f) of Rule 4:50-1 and reinstate all counts of plaintiff's Complaint that were dismissed due to the ***inability of the judge to see documents that were clearly physically attached to the court site*** on the date that the Court dismissed multiple valid counts due to failure to file notices of claims. Why did neither

RECEIVED, Clerk of the Supreme Court, 16 Jan 2025, 090218, CURED

the Appellate Division or Judge Jablonski *not see* the injustice of Judge D'Elia dismissing multiple counts on the basis that no notices of claims were filed after he stated that he too *searched and reviewed* the application. **(1T8-13 to 18)**

Since there was no logical explanation for a judge or his clerk not being able to see these documents causing such an unjust dismissal of multiple counts Rule 4:50-1(f) was clearly triggered.

## Point Five
## The Appellate Court Had A Duty To Correct Errors That Fit Within The Definition Of Clerical Errors Without The Request Of The Plaintiff

**Pursuant to Rule 1:1-2** of the New Jersey Rules of Court, the rules in Part I through Part VIII shall be construed to secure a just determination, simplicity in procedure, fairness in administration, and the elimination of unjustifiable expense and delay. Simply put, the rules of court rules are supposed to be applied in a way that promotes fairness and efficiency in the legal process. A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference. State v. Brown, 118 N.J. 595, 604, (1990).

The supreme Court may exercise original jurisdiction where findings rest on an undisputed record and not on matters of credibility, demeanor or personal view of the premises. See Baxter v. Fairmont Food Co., 74 N.J. 588, 601, 379 A.2d 225 (1977). See also Patton v. North Jersey Dist. Water Supply Comm'n, 93 N.J. 180, 188, (1983) The Appellate division failed to conduct a de novo review of a matter that consisted of an undisputed record. Neither Judge JaBlaonski nor the Appellate

RECEIVED, Clerk of the Supreme Court, 16 Jan 2025, 090218, CURED

Court had any duty to adopt Judge D'Elias errors. Whether or not records existed and were available for a Court's review are not errors of facts or laws to which the trial judge's discretion could be applied and adopted by any other judge. Contrary to the Appellate Divisions statement that "nothing had been learnt since Judge D'Alia order" something in fact had been learnt.

The Appellellate Division was not bound by Judge Jablonski's or Judge D'Elia's words nor is the Supreme Court. Judge Jabloski failed to Make Sufficient Reasons Under Rule 1:7(A) since Judge D'Alia's Orders threw out multiple counts of the Complaint on the basis that no notices of claims were FILED, and his stated reasons were not explicit. While the trial court maintains its discretion in how to provide an adequate statement of reasons, an adequate statement of reasons should acknowledge both timing and **merits**, which many trial courts have provided in motions to vacate on various grounds. In Re Trust, 399 N.J. Super. 237, 253(App. Div. 2006). The merits of many counts were not addressed in this case due to a clerical error. The Appellate Division has expressed that "when a trial court issues reasons for its decision, it `must state clearly [its] factual findings and correlate them with relevant legal conclusions, so that parties and the appellate courts [are] informed of the rationale underlying th[ose] conclusion[s]." Avelino-Catabran v. Catabran, 445 N.J. Super. 574, 594-95 (App. Div. 2016). Without such reasons, a reviewing court does not know whether the judge's decision is supported by the facts

and law or is the product of arbitrary action resting on an impermissible basis. See Monte, 212 N.J. Super. at 564-65.

When a trial court does not provide a statement of reasons that addressed the issues raised, the Appellate Court cannot determine whether the court's decision was an abuse of discretion or an incorrect conclusion of law. See In re Tr. Agreement Dated Dec. 20, 1961, ex rel. Johnson & Hoffman, Lienhard & Perry, 399 N.J. Super. 237, 253-54 (App. Div. 2006), aff'd, 194 N.J. 276 (2008). Judge Jablonski did not provide an adequate statement of reasons for his decision as the Appellate Div. had nothing to work with regarding the multiple counts that were thrown out by Judge D'Elia. By providing a mechanism for correction, Rule 1:13-1 helps uphold due process accorded under Article 1 para 1of the NJ Constitution, thereby safeguarding the fairness and integrity of the legal process.

**Conclusion**

For these reasons, the plaintiff requests Certification and reversal of the order granting Summary Judgment on the *counts that were dismissed on the basis that no notices of claims were filed* and enter judgment for Dr. Mavis Faulknor.

/s/ Cecile D. Portilla
CECILE D. PORTILLA, ESQ.

Dated: 01/15/2025

**ELDRIDGE HAWKINS LLC**
**Attorney At Law**
**Attorney ID No. 214731967**
**60 Evergreen Place Suite 510**
**East Orange, New Jersey 07018**
**Tel: (973) 676-5070**
**Fax: (973) 676-7356**
**Attorney for: DR. MAVIS FAULKNOR**

| | |
|---|---|
| **DR. MAVIS FAULKNOR**<br><br>**Plaintiff,**<br><br>**vs.**<br><br>**COUNTY OF HUDSON, MEADOWVIEW PSYCHIATRIC HOSPITAL, JOANNE D. REILLY, DR. EDWARD CARUSO, PAT SHIELDS, HEAD DOE, JOHN DOE AND HARRY (identities unknown),**<br><br>**Defendants.** | **SUPERIOR COURT OF NEW JERSEY LAW DIVISION: HUDSON COUNTY DOCKET NO.: HUD-L-003792-18**<br><br>**CIVIL ACTION**<br><br>**ORDER ~~RECUSING JUDGE D'ELIA PURSAUNT R.1:12-2~~**<br>DENYING RECUSAL |

This matter having been brought before this Court by Eldridge Hawkins, attorney for Plaintiff, on a motion to recuse Judge Delia for further handling of this case, and so an impartial judge should hear the motion to reconsider under R. 4:49-2 and R. 1:12-2 it is hereby on this 6 _____day of August 2021

**ORDERED** ~~that Judge D'Elia is hereby recused form adjudicating this matter.~~
Motion is denied for the reasons placed on the record.

XX OPPOSED

_____UNOPPOSED

Anthony V. D'Elia
Hon. Anthony V. D'Elia J.S.C

**ELDRIDGE HAWKINS LLC**
**Attorney At Law**
**Attorney ID No. 214731967**
60 Evergreen Place Suite 510
East Orange, New Jersey 07018
Tel: (973) 676-5070
Fax: (973) 676-7356
Attorney for: **DR. MAVIS FAULKNOR**

| | |
|---|---|
| **DR. MAVIS FAULKNOR**<br><br>**Plaintiff,**<br><br>**vs.**<br><br>**COUNTY OF HUDSON, MEADOWVIEW PSYCHIATRIC HOSPITAL, JOANNE D. REILLY, DR. EDWARD CARUSO, PAT SHIELDS, HEAD DOE, JOHN DOE AND HARRY (Identities unknown),**<br><br>**Defendants.** | **SUPERIOR COURT OF NEW JERSEY LAW DIVISION: HUDSON COUNTY DOCKET NO.: HUD-L-003792-18**<br><br>**CIVIL ACTION**<br><br>**ORDER**<br>~~**RECONSIDERING VACATING AND REVERSING THIS COURT'S ORDER OF JUNE 3, 2021 AND ENTERING SUMMARY JUDGMENT IN FAVOR OF THE PLAINTIFF AND AGAINST DEFENDANTS**~~<br>DENYING RECONSIDERATION |

This matter having been through it before this Court on notice of motion by Plaintiff's counsel for reconsideration of this June 3, 2021 order and for a reconsideration and amendment

and the Court having considered the matter and for good cause shown, it is

on this 6 day of August 2021 Ordered that the Motion is DENIED.

~~ORDERED that this court's order of June 3, 2021 is hereby reconsidered and vacated and reversed and it is further~~

~~ORDERED That summary judgment is hereby entered in favor of plaintiff Dr. Mavis Faulkner and against Defendants County of Hudson, Meadowview psychiatric hospital, and doctor Caruso on the following claims:~~

FILED, Clerk of the Appellate Division, November 17, 2021, A-000893-21
RECEIVED, Clerk of the Supreme Court, 31 Jan 2025, 090218, SUBMITTED IN ERROR

~~a) NJLAD hostile work environment~~

~~b) NJLAD retaliation~~

c) ~~NJLAD Wrongful discharge~~

d) ~~Breach of implied covenant of good faith and Fair dealing~~

~~e) Invasion of privacy~~

~~f) Misuse and abuse of process~~

g) ~~Defamation, liable, slander~~

h) ~~malicious prosecution under NJSA 2A:47A-1 Defacto Employee Entitlement~~

i) ~~constructive termination~~

j) ~~interference with Plaintiff's Beneficial Economic Position~~

~~And it is further~~

~~ORDERED that any remaining issues including damages shall be determined by the jury at the trial of this matter pursuant to a date set by this Court.~~

X OPPOSED

___ UNOPPOSED

*Anthony V. D'Elia*

Hon. Anthony V. D'Elia J.S.C

Motion is denied for the reasons placed on the record.

# SUPREME COUNT OF NEW JERSEY

| | |
|---|---|
| DR. MAVIS FAULKNOR<br><br>PLAINTIFF-APPELLANT<br><br>v<br><br>COUNTY OF HUDSON, MEADOWVIEW PSYCHIATRIC HOSPITAL, JOANNE D. REILLY, DR. EDWARD CARUSO, PAT SHIELS, DARICE TOON, GERALD DRASHELF, DR. ALEXANDER DELGA, ARLENE DEANO, RODERICK T. BALTIMORE, ELINOR GIBNEY, HEAD DOE, JOHN DOE AND HARRY (IDENTITIES UNKNOWN)<br><br>DEFENDANTS-RESPONDENTS | **Supreme Court of New Jersey. No: 090218**<br><br>**Appellate Division: Docket No: A-000692-21T2**<br><br><u>Civil Action</u><br>On Petition for Certification of the Final Judgment of The Appellate Division Issued December 16, 2024<br><br>Sat Below: Hon. Anthony V. D'Elia, JSC<br>Superior Court of New Jersey<br>Hudson County<br>HUD-L-4336-17<br>Consolidated With<br>HUD-L-3792-18<br><br>**Submitted: January 31, 2025** |

## BRIEF IN SUPPORT OF PETITION FOR CERTIFICATION

---

Cecile D. Portilla, Attorney at Law LLC
7 Glenwood Avenue, Suite 400
East Orange, NJ 07017
Phone (973) 676 5072 Fax (862) 520 3433
Attorney Id: 021212005
Portillalaw@comcast.net
portillalaw@gmail.com

# TABLE OF CONTENTS

STATEMENT OF THE MATTER INVOLVED 1

FACTUAL BACKGROUND 3

QUESTIONS PRESENTED 7

ERRORS COMPLAINED OF 8

REASONS WHY CERTIFICATION SHOULD BE GRANTED 8

Point One
The Appellate Division Erred In Not Finding The Presence Of A Very Obvious And Exceptional Showing Of a Clerical Error That Existed In This Case Thus Interference With The Two Court Rule By The Supreme Court Is Required (PSCa019-22; PSCa208; PSCa61-178; PSCa56-PSCa58) 9

Point Two
The Appellate Division Erred In Not Finding That Rule 4:50-1 And Rule 4:49-2 of The New Jersey Rules Of Court Clearly Serve Different Purposes And Address Different Legal Mechanisms (PSCa042; PSCa56-58; PSCa61-178) 14

Point Three
The Appellate Division Erred In Concluding That The Plaintiff's Request For Relief Under Rule 4:50-1, 2 And Rule 4:49-2 Warranted Application of the 20 Days Limitation of Rule 4:49-2 (PSCa189-198, PSCa191-192, PSCa016-021, PSCa199) 15

**Point Four**
**Even Where Errors Do Not Fit Neatly Within The Subset of Rule 4:49-2 Or Rule 1:13 That Led To The Unjust Dismissal Of Multiple Counts Of The Plaintiff's Complaint The Appellate Division Has A Duty To Forge A Remedy For Unanticipated Errors(PSCa010-24; PSCa202-209)** 16

**Point Five**
**The Appellate Court Had A Duty To Correct Errors That Fit Within The Definition Of Clerical Errors Without The Request Of The Plaintiff (PSCa56; PSCa58; Pa010-PSCa24)** 18

**Conclusion** 20

# TABLE OF AUTHORITIES

## CASES

Avelino-Catabran v. Catabran,
445 N.J. Super. 574, 594-95 (App. Div. 2016) 19

Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). 3

Citibank, N.A. v. Russo,
334 N.J. Super. 346, 353 (App. Div. 2000) 16

Chi., Rock Island & Pac. Ry. Co. v. Union Pac. Ry. Co.,
47 F. 15, 26 (C.C.D. Neb. 1891) 12

Court Investment Co., Court Invest. Co. v. Perillo,
48 N.J. 334 (1966) 16

Daryl v. Pennsylvania Mfrs. Ass'n. Ins. Co.,
114 N.J. 416, 426 (1989) 12, 17

Hous. Auth. of Morristown v. Little,
135 N.J. 274, 286 (1994) 16

Iannone v. McHale,
245 NJ. Super. 17, 28 (1990) 2, 13

In Re Trust,
399 N.J. Super. 237, 253(App. Div. 2006). 19

Leeds v Chase Manhattan Bank,
331 NJ Super 416, 420-21 (App. Div 2000) 20

Lucas v. United States,
807 F.2d 414, 418 (5th Cir. 1986) 2, 13

McNair v. McNair, 332 N. J. Super.
195, 199 (App.Div.2000) 9

Midler v. Heinowitz,
10 N.J. 123, 128-29 (1952) 9

Monte v Monte, 212 N.J.
Super. 557 (1986) 19

Patton v. North Jersey Dist. Water Supply Comm'n,
93 N.J. 180, 188, (1983) 20

Romero v. Gold Star Distrib., LLC,
468 N.J. Super. 274 (App. Div. 2021) 15

Scarborough Apartments, Inc., v. City of Englewood,
9 N.J. 182 (1952) 9

Schulwitz v. Shuster,
27 N.J. Super. 554, 561 (App. Div. 1953) 14

State v. Brown, 118 N.J. 595, 604, (1990) 18

State v Cohen, 73 N.J. 331 (1977) 15

Suter v. San Angelo Foundry & Mach. Co.,
81 N.J. 150, 179 n. 1 (1979) (concurring opinion) 12, 17

## NEW JERSEY STATUTES


NJLAD 4


## NEW JERSEY COURT RULES


Rule 4:50-1, 2 1, 2, 5,6,7, 8, 14, 15, 16, 18

Rule 4:50- (f) 16 ,17 , 18

Rule 4:49-2 1, 5, 6,7, 14, 15

Rule 1:13-1 2, 8 , 9

Rule 4:46-2 13

Rule 4: 42-2 15

Rule 1:12-1, 2 15

Rule l: 7-4 15, 19

Rule 1:1-2. 3, 18


## NEW JERSEY CONSTITUTION


Article 1, Paragraph 1, 18 `15


## OTHER SOURCES


Felix S. Cohen, Transcendental Nonsense and the Functional Approach, 35 Colum. L. Rev. 809, 840 (1935). 11

Roscoe Pound, Law And Morals 65 (Rothman Reprints 1969) (1924). 12

FILED, Clerk of the Supreme Court, 06 Jun 2025, 090218, AMENDED

# TABLE OF JUDGMENT ORDERS AND RULINGS

Appellate Division Decision 12/16/24 PSCa010

## TABLE OF CONTENTS TO APPENDIX


| | |
|---|---|
| Notice of petition of Certification filed 12/28/2024 | PSCa001 |
| Certification of Service of notes of petition filed 12/28/2024 | PSCa004 |
| Original Copy of Notice of petition of Certification Dated 12/28/2024 | PSCa007 |
| Opinion of the Appellate Division 12/16/2024 | PSCa010 |
| Order of Motion 05/10/2023 | PSCa025 |
| Appellate Division Notice of Motion 04/21/2023 | PSCa027 |
| Notice of Motion for Judicial Notice submitted 04/21/2023 | PSCa031 |
| Certification in support of motion 04/21/2023 | PSCa033 |
| Exhibit A to Certification in support of motion Dr. Edward Caruso 04/21/2023 | PSCa037 |
| Order Granting summary judgments to defendants 06/03/2021 | PSCa042 |
| Summary Judgement Opinion 06/03/2021 | PSCa043 |
| Letter to the Court that Hawkins cannot see the order 06/14/2021 | PSCa060 |

Notice of Claim Date of Injury (DOI) July 26, 2018, Dated August 1, 2018, Filed 9/24/2018 PSCa061

Notice of Claim DOI July 26, 2018, Dated August 1, 2018, Filed 10/16/2018 PSCa063

Notice of Claim, Tort and Contract, DOI February 2017, June 2017 & July 27, 2017, Dated August 9, 2017 Filed 3/12/2019 PSCa065

Notice of Claim, DOI July 26, 2018, Dated August 1, 2018, Filed 3/12/2019 PSCa069

Notice of Claim, DOI September 26, 2018, to present, Dated October 23, 2018, Filed 3/12/2019 PSCa071

Notice of Claim, DOI October 10, 2018, Dated October 18, 2018, Filed 3/12/2019 PSCa073

Notice of Claim, DOI July 26, 2018, Dated November 21, 2018, Filed 3/12/2019 PSCa076

Notice of Claim, Dated February 4, 2019, Filed 3/12/2019 PSCa078

Notice of Claim, DOI July 26, 2018, Dated August 1, 2018, Filed 3/13/2019 PSCa080

FILED, Clerk of the Supreme Court, 06 Jun 2025, 090218, AMENDED

Notice of Claim, DOI: Feb, 2017, June 2017 & July 27, 2017, Dated August 9, 2017, Filed 3/13/2019 PSCa082

Notice of Claim, DOI September 26, 2018 to present Dated October 23, 2018-Filed 3/13/2019 PSCa086

Notice of Claim, DOI October 10, 2018, Dated October 18, 2018, Filed 3/13/2019 PSCa088

Notice of Claim, DOI July 26, 2018 to November 19, 2018, Dated November 21, 2018, Filed 3/13/2019 PSCa091

Notice of Claim, Dated February 4, 2019 Filed 3/13/2019 PSCa093

Notice of Claim, Tort and Contract, DOI Feb, 2017, June 2017 & July 27, 2017, Dated August 9, 2017, Filed 5/22/2019 PSCa095

Notice of Claim, DOI July 26, 2018, Dated August 1, 2018, Filed 5/22/2019 PSCa099

Notice of Claim, DOI September 26, 2018 to Present Dated October 23, 2018, Filed 5/22/2019 PSCa101

Notice of Claim, DOI October 10, 2018 Dated October 18, 2018, Filed 5/22/2019 PSCa103

Notice of Claim DOI July 26,2018 –

November 19, 2018, Dated November 21 2018, Filed 05/22/2019 PSCa106

Notice of Claim, Dated February 4, 2019
Filed 05/22/2019 PSCa108

Notice of Claim, Tort and Contract, DOI Feb, 2017, June 2017 &
July 27, 2017, Dated August 9, 2017, Filed 05/24/2019 PSCa110

Notice of Claim and Entry, DOI July 26, 2018,
Dated August 1, 2018, Filed 05/24/2019 PSCa114

Notice of Claim, DOI September 26, 2018 to Present,
Dated October 23, 2018, Filed 05/24/2019 PSCa116

Notice of Claim, DOI October 10, 2018, Dated October 18, 2018,
Filed 05/24/2019 PSCa118

Notice of Claim and Opera Request, DOI July 26, 2018-
November 19, 2018, Dated November 21, 2018 Filed 05/24/2019 PSCa121

Notice of Claim, Dated February 4, 2019,
Filed 05/24/2019 PSCa123

Notice of Cross Notice of Motion, Filed 3/30/2021 PSCa125

Notice of Claim, Tort and Contract, DOI Feb, 2017, & July 27, 2017,
Dated August 9, 2017, Filed 3/30/2021 PSCa130

Notice of Claim, DOI July 26, 2018, Dated August 1, 2018, Filed 3/30/2021 PSCa139

Notice of Claim, DOI September 26, 2018 to Present, Dated October 23, 2018, Filed 3/30/2021 PSCa142

Notice of Claim, DOI October 10, 2018, Dated October 18, 2018, Filed 03/30/2021 PSCa145

Notice of Claim, Dated February 4, 2019, Filed 03/30/2021 PSCa149

Notice of Claim, DOI July 26, 2018- November 19, 2018, Dated November 21, 2018, Filed 03/30/2021 PSCa152

Second Certification of Eldridge Hawkins with list of exhibits, Filed 7/01/2021 PSCa154

**Notice of Claim, Tort and Contract, DOI Feb, 2017, June 2017 & July 27, 2017 Dated August 9, 2017 Filed 07/01/2021** **PSCa162**

Notice of claim, DOI July 26, 2018, Dated August 1, 2018, Filed 07/01/2021 PSCa167

Notice of claim, DOI September 26, 2018 to Present, Dated

October 23, 2018, Filed 07/01/2021 PSCa170

Notice of claim, DOI October, 10, 2018, Dated October 18, 2018, Filed 07/01/2021 PSCa173

Notice of claim, Dated February 4, 2019, Filed 07/01/2021 PSCa177

Notice of Motion to Vacate, Reconsider, and Amend the Judge's June 3, 2021, Dated June 23, 2021, Filed 06/23/2021 PSCa179

Notice of Motion to Vacate, Reconsider, and Amend the Judge's June 3, 2021, Dated June 23, 2021, Filed 07/01/2021 PSCa181

Certification of Eldridge Hawkins, Dated June 23, 2021, Filed 07/01/2021 PSCa183

Order Denying Reconsideration, Filed 08/06/2021 PSCa189

Notice of Motion to Reconsider the Previous Rulings of the Present Judge, Dated August 30, 2021, Filed 08/30/2021 PSCa191

Certification of Eldridge Hawkins, ESQ, Dated August 30, 2021, Filed 08/30/2021 PSCa195

Order Denied Transferring Venue and Reconsidering the

FILED, Clerk of the Supreme Court, 06 Jun 2025, 090218, AMENDED

Previous Rulings of the Present Judge, Dated September 24, 2021, Filed 09/24/2021 PSCa199

Transcript of Motion, Dated September 23, 2021 PSCa202

## STATEMENT OF THE MATTER INVOLVED

On 12/16/24, the Appellate Division entered judgment in this matter that essentially renders Rule 4:50-1, 2 meaningless. Rule 4:50-1 offers several grounds for relief from final judgment on a motion to vacate, including subsection (a) for mistake, inadvertence, surprise, or excusable neglect and under section (f) for any other reason justifying relief from the operation of the judgment or order.

A careful review of Rule 4:50-1 shows that section (b) is the only provision that requires that Rule 4:49-1 be utilized in conjunction with Rule 4:50-1 if evidence later found was timely to allow a regular motion for Reconsideration. The Court seemly applied the time frame of Rule 4:49-1 to Rule 4:50-1. Rule 4:50-2 provides the time frame within which a motion seeking relief under Rule 4:50-1 **must** be filed.

The general principle in legal contexts is that when there are multiple time frames available, the broader or longer one typically applies to ensure fairness and avoid unnecessary complications. In New Jersey, the broader time limit always applies in legal proceedings or appeals, as per the rules set forth in the New Jersey Court Rules. For example, *a party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 20 days after service of the amended pleading, whichever period is longer, unless the court otherwise orders.* Rule 4:49-1. The drafters of Rule 4:49-1 or Rule 4:50-1 did not contemplate malfunctions ***or interference with the State Court's web site*** when

those rules were drafted. Where Rule 4:50-1, 2 allows a reasonable option to protect rights, litigants such as the plaintiff should not be required to pay for an expensive appeal and subject herself to excessive delays as opposed to using Rule 4:50-1, 2.

Inability of lawyers and judges to view documents on an eCourt site that are necessary for litigation, is a denial of access to our courts. In Iannone v. McHale, 245 NJ. Super. 17, 28 (1990) the Court expressed that the right of access to our courts should not be unduly infringed upon. Thus, the right to a remedy through open access to the courts is an important right guaranteed by state constitutions. See Lucas v. United States, 807 F.2d 414, 418 (5th Cir. 1986). A functional web based eCourts filing site allows access to our Courts.

Where substantive rights are being denied for bizarre or unanticipated reasons, the Supreme Court has the ability to devise remedies necessary to enforce substantive rights even where Congress fails to authorize them. See Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). The State of New Jersey's Court site must be functional and properly maintained by the State.

Rule 1:13-1 allows relief that is not available under Rule 4:49-1 to Rule 4:50-1, because it allows *Clerical mistakes in judgments to be corrected **at any time*** There are no case laws to date that has set any limits on the meaning of "***any time.***" Rule 1:13-1 helps to safeguard the fairness and integrity of the legal process.

*According to Sylvia Pressler, the Rule of Court shall be construed to secure a just determination, simplicity in procedure, fairness in administration, and the elimination of unjustifiable expense and delay. Rule 1:1-2. Thus, if justice is the pole star*, the Supreme Court is required to correct the error that were made in his case and immediately reinstate all counts of plaintiff's complaint that were dismissed on the basis the "**no notices of claims were filed**"

The definition of justice according to Cicero is to "*give to each his just due.*" "*Giving just due is not just giving remedies that are legally outlined* but ***doing that which is necessary to see that justice is served.*** *" Simply put, the rules of court rules are supposed to be applied in a way that promotes fairness and efficiency in the legal process.*

## FACTUAL BACKGROUND

Dr. Mavis Faulknor (Plaintiff) is an African American female with a doctoral degree in Nursing who was employed by Hudson County to work as an Advanced Practice Nurse (APN) at Meadowview Psychiatric Hospital. During plaintiff's employment, the APN Act as enacted at that time, required that the APN have a Sponsor and an annual collaborative agreement and did not allow APNs to write prescriptions for medications or devices without a collaborating agreement with the sponsor. After an incident whereby the hospital staff restrained a patient without plaintiff's knowledge or consent, the white and Hispanic actors involved,

cast the blame on the plaintiff who was written up. Plaintiff had no signed collaborative agreement on the incident date.

*Plaintiff requested an Administrative Grievance Hearing* for the unjust disciplinary action. Plaintiff then served a Notice of Claim upon her employer on August 9, 2017 after consulting with her attorney who advised her of her right to file her Claims for NJLAD Violations in the Superior Court as opposed to airing her grievance in the Administrative setting. After serving the defendants with her Notice of claim plaintiff advised the employer via her attorneys letter that she no longer intended to air her grievance in the Administrative hearing as *she had chosen an alternative grievance path* in the New Jersey Superior Court.

Defendants *instead of Cancelling the grievance hearing that plaintiff had requested,* held the grievance hearing in absentia the next day on August 18, 2017 without plaintiff or her counsel. Defendants admitted at the grievance hearing that "plaintiff had requested private counsel" and "no longer wished to proceed with the disciplinary hearing scheduled for August 18, 2017. The Defendants found plaintiff guilty in absentia and imposed a 90 days suspension upon her.

On December 21, 2017, the employer exercised the utmost bad faith and reported plaintiff to her licensing board for "incompetency which relates adversely to patient care and safety" and advised the board that the plaintiff was suspended without pay for ninety days and that her discipline was in the process of being filed

with the New Jersey Civil Service Commission. Plaintiff perceived that her work environment had become hostile and sent the Employer a letter of resignation due to constructive discharge. After receiving the letter, the employer held further hearings in absentia suspending plaintiff and then terminated her a second time while she pursued her matter in the superior court.

On June 3, 2021, the trial Court Judge dismissed *the Count for* **invasion of privacy,** as well as **Count 10, 11, 15 and Tort Claims in Count 19** ***on the incorrect basis that no notices of claim were filed.*** ***(PSCa56-58).*** *The Trial Court failed to see that six (5) notices of claims were filed in support of plaintiff's cross motion for summary judgment and that a total of 37 NOCs were filed from 2018 to 2022.* **(PSCa130-154; PSCa61-178, PSCa56-58).** On 6/14/21, upon the plaintiff not seeing any of dismissal on eCourts from which he could seek relief, plaintiff contacted the Court on 6/14/2021 advising that there was no order noted upon the case jacket from which he could seek reconsideration. **(PSCa060)**

The Undersigned Shall Be Blunt. The Superior Court of New Jersey **is aware of complaints of tampering of the web based eCourts filing system of New Jersey and aware of complaints that documents that should be visible to lawyers and judges could not be seen. (See Certification of Counsel).** Thus, based on information and belief, if judge D'Elia did not see any of the thirty seven NOCs on eCourts maybe they were obscured so that he could not see them. Eldridge Hawkins,

Esquire could not SEE the order for Summary Judgment attached to the web site on 6/3/2021, which would lead one to conclude it was obscured to prevent him from seeing it. He has had inability viewing other documents on ecourts prior to June 3, 2021. The under signed has also been told on more than one occasion that her filed document could not be seen on the Court site. **(See Certification of Counsel).**

On June 23, 2021, after Eldridge Hawkins *could see* an actual Order of dismissal on the web site, he immediately submitted a motion for reconsideration and venue change that was corrected on July 1, 2021. **(PSCa179-183).** The motion was denied by the trial Judge on August 6, 2021. **(PSCa190).** On 8/30/2021, a frustrated Plaintiff sought relief from the Assignment Judge via a motion to vacate and reconsider the previous orders of the current Judge pursuant to Rule 4:50-1,2 and Rule 4:49-2. **(PSCa191-195).** The assignment Judge first noted that plaintiff's counsel had criticized another Hudson County Judge. **(PSCa204).** The assignment Judge expressed that the plaintiff's request was untimely under Rule 4:49-2, and that his motion should be made to the Appellate Division as opposed to him. He basically disregarded Rule 4:50-1 as providing any basis for relief. **(PSCa206-209)**

On December 16, 2025, the Appellate Court adopted the Assignment judge's opinion and basically indicated that the plaintiff's use of Rule 4:50-1, 2 was conjunctive to the use of Rule 4:49-2. **(PSCa015-023)**. The Appellate Court indicated that use of Rule 4:50-1,2 warranted compliance with the 20 days' time

frame of Rule 4:49-2, expressing that a motion to vacate was also under Rule 4:49-2. **(PSCa020-023).** The Appellate Court did not address Judge D'elia's dismissal of the Complaint Count for **invasion of privacy,** as well as **Count 10, Count 11, Count 15, Tort Claims in Count 19,** on the incorrect basis that no notices of claims were filed *without any determination on the merit.* **(PSCa10-24; PSCa56-58)**

## QUESTIONS PRESENTED

1. Whether The Two Court Rule Requires an Alteration in Finding By The Supreme Court Due To The Presence Of A Very Obvious And Exceptional Showing Of a Clerical Error.
2. Whether The Appellate Division Erred in Concluding That Plaintiff's Request for Relief Under Rule 4:50-1, 2 And Rule 4:49-2 Required the Application of the 20 Days Limitation of Rule 4:49-2 Or The Time Frame Set By Rule 4:50-2
3. Whether Rule 4:50-1 and Rule 4:49-2 Of The New Jersey Rules Of Court Clearly Serve Different Purposes and Address Different Legal Mechanisms
4. Whether The Appellate Division Has a Duty to Forge A Remedy For Errors That Do Not Fit Neatly Within The Subset Of Rule 4:49-2 Or Rule 1:13 That Led To The Unjust Dismissal Of Multiple Counts Of The Complaint.

## ERRORS COMPLAINED OF

**(i)The Appellate Division Erred** in not finding the presence of a very obvious and exceptional showing of a Clerical error that existed in this case thus interference with the two Court Rule by the Supreme Court is required; **(ii)The appellate Division Erred** in not finding that Rule 4:50-1,2 and Rule 4:49-2 of the New jersey rules of court clearly serve different purposes and address different legal mechanisms;
**(iii) The Appellate Division Erred** in concluding that the plaintiff's request for relief under Rule 4:50-1, 2 and Rule 4:49-2 warranted the application of the 20 days limitation of Rule 4:49-2;

(iv) **The Appellate Division Erred** in not considering the matter de novo and Forging a remedy for this highly Unusual unanticipated clerical error that did not fit neatly within the subset of rule 4:50-1,2 or 4:49-2 that led to the unjust dismissal of multiple counts of the complaint;

(v) **The Appellate Court Erred** in not Utilizing its Equitable Powers and applying Rule 1:13 -1 without the Request of the plaintiff to prevent injustice.

## REASONS WHY CERTIFICATION SHOULD BE GRANTED

This appeal presents issues of public importance. The Order entered by the Appellate Division on 12/16/24, was inconsistent with our Court Rules, established Case Laws, the NJ Constitution and New Jersey's Concept of justice. Also, by not having an eCourts filing site where documents can be consistently viewed and reviewed by attorneys and Judges, Citizens are denied access to the NJ Courts.

### Point One

**The Appellate Division Erred In Not Finding The Presence Of A Very Obvious And Exceptional Showing Of a Clerical Error That Existed In This Case Thus Interference With The Two Court Rule By The Supreme Court Is Required (PSCa019-22; PSCa208; PSCa61-178; PSCa56-PSCa58)**

A court may correct a clerical error in judgment at ***any time*** without even the necessity of a formal motion, when such an error is brought to its attention. See McNair v. McNair, 332 N. J. Super. 195, 199 (App.Div.2000). Rule 1:13-1 states as follows: "*Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight and omission may **at any time** be corrected*

*by the court on its own initiative or on the motion of any party, and on such notice and terms as the court directs, notwithstanding the pendency of an appeal.*" Id. The Supreme Court may make a new and independent finding when there is such palpable error in the concurrent findings or such clear showing otherwise of a miscarriage of justice as that a new finding is necessary to serve the essential ends of justice. Cf. Scarborough Apartments, Inc., v. City of Englewood, 9 N.J. 182 (1952). While under the two-court rule, the Supreme court ordinarily should not undertake to alter concurrent findings of facts and credibility determinations made by two lower courts, unless a very obvious and exceptional showing of error is found as exists in this case.Midler v. Heinowitz, 10 N.J. 123, 128-29 (1952). The Clerical Error in this Case was exceptional.

On June 3, 2021, the trial Court Judge dismissed multiple counts of the the plaintiff's complaint on Summary judgment on the basis that plaintiff did not file any notice of claims when the case jacket showed thirty seven filings **(37) of notices of claims upon the case jacket** including six **(6) notices of claims** filed at Summary Judgment. **(PSCa61-178; PSCa056-58).** On June 3, 2023, Judge D'Elia stated as follow in his opinion: "***There was no notice of claim filed as required by N.J.S.A.59:8-8 against either the Defendant County of Hudson or Dr. Caruso. For this reason, any tort claims, however plead in the complaint, are dismissed." (PSCa056).***

Judge D'elia's then dismissed plaintiff's claim for invasion of privacy, as well as **Count 10, Count 11, Count 15, Tort Claims in Count 19** and all tort claims on the clerical error that no NOCs were filed. **(See PSCa56-PSCa58)**. They were **never addressed on their merits**. Judge D'Elia made Clerical Error because six (6) notices of claims were filed on Summary Judgment and thirty (37) Notice of claim were attached on the case jacket that were filed between 2018 and 2021.

On September 24, 2018, a Notice of Claim was filed attached to the Complaint for date of injury (DOI) August 1, 2018 **(PSCa061).** On October 16, 2018 a Notice of Claim dated August 1,2028 for DOI July 26, 2018 was filed. **(PSCa063).** On March 12, 2019, the plaintiff in support of her motion to amend her Complaint, filed *Six Notices Of Claim.* **(PSCa065; PSCa069; PSCa071; PSCa073; PSCa076; PSCa078).** On March 13, 2019 the plaintiff upon receipt of a deficiency Notification again filed the *Six Notices Of Claim.***(PSCa080; PSCa082; PSCa086; PSCa088 ;PSCa091;PSCa093).** On 5/22/2019 plaintiff filed six notices of claims with the Court. **(PSCa095; PSCa099; PSCa101; PSCa103; PSCa106; PSCa108).**

On 5/24/19 the plaintiff upon receiving a deficiency notice filed another motion to amend his complaint and attached six (6) *Notices Of Claims.* **(PSCa110; PSCa114; PSCa116; PSCa118); PSCa121; PSCa123).** On 3/30/2021 the plaintiff filed a Cross Motion for Summary Judgment and attached *Six (6) Notices Of Claims.* **(PSCa130; PSCa139; PSCa142; PSCa145; PSCa149; PSCa152).** On July 1, 2021

the plaintiff filed five (5) notices of claims in support of his motion for reconsideration (**PSCa162; PSCa167; PSCa170; PSCa173; PSCa177**)

The Plaintiff *could not understand why* multiple counts of her complaint were dismissed due to FAILURE to file ANY notices of claims when thirty seven (37) were on eCourts!? Any reasonable plaintiff would have felt blindsided by such an incredulous accusation. What type of justice system allows this type of error to stand? It has been said that "every case presents a moral question to the court." Felix S. Cohen, Transcendental Nonsense and the Functional Approach, 35 Colum. L. Rev. 809, 840 (1935). This is such a case. The question is "did Judge D'Elia equitably dispense justice to Dr. Faulknor?"

In a justice system where law and equity are merged, there are always remedies. However, there must be willingness to acknowledge fault. It is known that the powers of a court of equity are as vast, and its processes and procedure as elastic, as all the changing emergencies of increasingly complex ... relations and the protection of rights can demand." See Chi., Rock Island & Pac. Ry. Co. v. Union Pac. Ry. Co., 47 F. 15, 26 (C.C.D. Neb. 1891)

Legal scholars have stated that a "unified system must reconcile its commitment to equity-or fairness, which is probably the most important principle of jurisprudence." See Roscoe Pound, Law And Morals 65 (Rothman Reprints 1969) (1924). In Daryl v. Pennsylvania Mfrs. Ass'n. Ins. Co., the Court expressed that the

needs of litigants and the judicial system are well served by the ***conscientious judge*** who is frankly ***willing to acknowledge and correct error*** in a way that shortcuts the consumption of time, expense, and resources involved in the appellate process. See Id at 114 N.J. 416, 426 (1989). In Daryl, the Appellate Division, belatedly recognized the problem of the effective date of an amendment to N.J.S.A. 39:6A-4, called for briefs from the parties, heard oral argument, and then confessed that it had erred in its first opinion. The Court expressed that **"[c]onfession of error is good not only for the soul but for an accurate view of the law."** Suter v. San Angelo Foundry & Mach. Co., 81 N.J. 150, 179 n. 1 (1979) (concurring opinion).

Inability to see (if Judge D'Elia could not see) DOCUMENTS that are filed in support of plaintiff's cause of action is a denial of access to our courts. The right of access to our courts should not be unduly infringed upon. Iannone v. McHale, 245 NJ. Super. 17, 28 (1990). The right to a remedy through open access to the courts is an important right guaranteed by state constitutions. See Lucas v. United States, 807 F.2d 414, 418 (5th Cir. 1986). Since there is a very likely problem with the Court site that may divest citizens of their rights, the Supreme Court has the ability to devise remedies necessary to enforce substantive rights even when Congress fails to authorize them. See Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). By providing a mechanism for correction, Rule 1:13-1 would have helped to uphold plaintiff's due process rights

accorded under Article 1 para 1of the NJ Constitution.

Here, Judge D'Elia was dead wrong and Judge Jablonski did not correct Judge D'Elia's wrong even though he said he conducted a "search and review." **(PSCa208).** The Appellate Court focused only on whether Judge Jablonski had jurisdiction. **(PSCa019-22).** The multiple notices of claims that were filed repeatedly due to their importance were ignored.

Moreover, pursuant to Rule 4:46-2 the pleading and affidavits on file are to be considered in rendering judgment. See Id. "Documents on file" as interpreted are not limited to those documents that were filed in support of the singular Summary judgment motion. The certifications, pleadings and amended pleadings with the attached NOCs were to be considered but were not, due to Judge D'Elia's clerical error.

**Point Two**

**The Appellate Division Erred In Not Finding That Rule 4:50-1 And Rule 4:49-2 of The New Jersey Rules Of Court Clearly Serve Different Purposes And Address Different Legal Mechanisms (PSCa042; PSCa56-58; PSCa61-178).**

Rule 4:50-1 and Rule 4:49-2 of the New Jersey Rules of Court clearly serve different purposes and address different legal mechanisms. Rule 4:50-1 pertains to relief from a judgment or order and can be invoked independently to address issues like mistake, inadvertence, surprise, or newly discovered evidence.

Motions under Rule 4:50-1 require the time frame under Rule 4:50-2, since the relief is broader and can be used outside the narrower scope and time frame of

Rule 4:49-2. The Appellate Division erred by trying to fit the plaintiff's motion exactly under the limited Rule 4:49-2 provision. Even if the plaintiff had no recourse under Rule 4:49-2, since the 20 days had expired, the plaintiff still had a still recourse under Rule 4:50-1 based on the highly unusual conditions that led to the dismissal of MULTIPLE COUNTS of plaintiff's complaint causing her counsel to cry foul.

A['COURT'S] MISTAKE SUCH AS THIS (not seeing multiple Notices Claims and dismissing Counts on the basis that they were ***never*** filed) was a sufficient, valid just defense to the original cause of action stated in clear and unmistakable terms and a prerequisite to opening a judgment under Rule 4:50-1 (a) (f)." See Schulwitz v. Shuster, 27 N.J. Super. 554, 561 (App. Div. 1953). **(PSCa042; PSCa56-58; PSCa61-178).**

**Point Three**

**The Appellate Division Erred In Concluding That The Plaintiff's Request For Relief Under Rule 4:50-1, 2 And Rule 4:49-2 Warranted Application of the 20 Days Limitation of Rule 4:49-2 (PSCa189-198, PSCa191-192, PSCa016-021, PSCa199)**

Rule 4:50-2 provides the time frame within which a motion seeking relief under Rule 4:50-1 **must** be filed. The rule states "[t]he motion shall be made within a reasonable time...." R. 4:50-2.... [A] reasonable time is determined based upon the totality of the circumstances.... See Romero v. Gold Star Distrib., LLC, 468 N.J. Super. 274 (App. Div. 2021). In State v Cohen, 73 N.J. 331 (1977), the Supreme Court of New Jersey emphasized that statutory construction should not be limited to

literalisms or formal rules, but should consider the breadth of the legislation's objectives and the commonsense of the situation. In reviewing the plaintiff's matter, it is clear that the Appellate Division failed to consider the commonsense of the situation. On September 24, 2021, plaintiff provided a proposed order to Judge Jablonski that requested relief under "**R. 4: 42-2; R. 4:50- 1,2; R.4: 49-2; R. 1:12-1, 2; R. l:7-4; NJ Constitution And Article 1, Par 18" (See PSCa199).**

Here, the Plaintiff sought to avail herself of the best option or broader time limit of rule 4:50-1, 2 or Rule 4:49-1. **(PSCa191).** The Appellate Division is familiar with the concept of Alternative pleadings. Simply put, Plaintiff sought relief under any either rule that would afford her the best and the most relief. **(See PSCa191-192).** It was unreasonable for the Appellate Division to indicate that since plaintiff sought relief under Rule 4:50-1 2, and 4:49-1 she was limited to the 20 days afforded under Rule 4:49-1 when the provisions are not conjunctive to each other and the time frame under Rule 4:50-2 was endless. **(See PSCa016-21).** Rule 4:50-1 makes clear that All motions made under its provisions require a "reasonable time," frame under Rule 4:50-2, ***regardless*** of the motion's grounds. See Citibank, N.A. v. Russo, 334 N.J. Super. 346, 353 (App. Div. 2000).

The time frame in which plaintiff made her application for relief before judge judge Jablonski was reasonable within the meaning of Rule 4:50-1because it was less than 30 days after the final order signed by Judge D'Elia. **(See PSCa189-198)**

## Point Four

**Even Where Errors Do Not Fit Neatly Within The Subset of Rule 4:49-2 Or Rule 1:13 That Led To The Unjust Dismissal Of Multiple Counts Of The Plaintiff's Complaint The Appellate Division Has A Duty To Forge A Remedy For Unanticipated Errors(PSCa010-24; PSCa202-209)**

Even Errors of facts and law can be considered exceptional circumstances. In Court Investment Co., Court Invest. Co. v. Perillo, 48 N.J. 334 (1966) the Court Investment Co., the Court expressed:

> *[n]o **categorization** can be made of the situations which would warrant redress under subsection (f). * * * [T]he very essence of (f) is its capacity for relief in exceptional situations. And in such exceptional cases its **boundaries are as expansive** as the need to achieve equity and justice.*

Id at 341.

Relief under Rule 4:50-1(f) is available when "truly exceptional circumstances are present." Hous. Auth. of Morristown v. Little, 135 N.J. 274, 286 (1994) "The rule is limited to `situations in which, were it not applied, a grave injustice would occur" as occurred in the plaintiff's case. Id. In Daryl v. Pennsylvania Mfrs. Ass'n. Ins. Co., 114 N.J. 416, 426 (1989), the Court expressed that the needs of litigants and the judicial system are well served by the conscientious judge who is frankly willing to acknowledge and correct error in a way that shortcuts the consumption of time, expense, and resources involved in the appellate process. See Darel v. Pennsylvania Mfrs. Ass'n. Ins. Co., 114 N.J. 416, 426 (1989).

In Daryl, the Appellate Division, belatedly recognized the problem of

the effective date of an amendment to N.J.S.A. 39:6A-4, called for briefs from the parties, heard oral argument, and then confessed that it had erred in its first opinion. The Court expressed that "**[c]onfession of error is good not only for the soul but for an accurate view of the law.**" Suter v. San Angelo Foundry & Mach. Co., 81 N.J. 150, 179 n. 1 (1979) (concurring opinion). On June 3, 2023, Judge D'Elia

***Inability of the judge to see documents that were clearly physically attached to the court site is exceptional, triggering*** Rule 4:50-1(f). The NOCs were filed repeatedly due to their significance. Neither the Appellate Division or Judge Jablonski saw the injustice of Judge D'Elia dismissing multiple counts on the basis that no notices of claims were filed after Judge Jablonski stated that he too ***searched and reviewed*** the application. **(PSCa010-24; PSCa202-209)**

Since there was no logical explanation for a judge not being able to see the NOCs, resulting in the unjust dismissals, Rule 4:50-1(f) was also triggered.

## Point Five
## The Appellate Court Had A Duty To Correct Errors That Fit Within The Definition Of Clerical Errors Without The Request Of The Plaintiff
**(PSCa56; PSCa58; Pa010-PSCa24)**

**Pursuant to Rule 1:1-2** of the New Jersey Rules of Court, the rules in Part I through Part VIII shall be construed to secure a just determination, simplicity in procedure, fairness in administration, and the elimination of unjustifiable expense and delay. Id. Simply put, the rules of court rules are supposed to be applied in a way that promotes fairness and efficiency in the legal process. A trial court's

FILED, Clerk of the Supreme Court, 06 Jun 2025, 090218, AMENDED

interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference. State v. Brown, 118 N.J. 595, 604, (1990).

The Appellate division failed to conduct a de novo review of a matter that consisted of an undisputed record. **(See Pa010-PSCa24)**. Neither Judge Jablonski nor the Appellate Court had any duty to adopt Judge D'Elia's clerical errors. **(PSCa56;PSCa58).** Whether or not records existed and were available for a Court's review are not errors of facts or laws to which the trial judge's discretion could be applied and adopted by any other judge. This was a clerical error that was correctable by the Appellate Division. The Appellellate Division was not bound by Judge Jablonski's or Judge D'Elia's words nor is the Supreme Court.

While it is recommended that a motion under Rule 4:50 should be made to the Judge who entered the final Order or Judgment, there is no rule that specifically requires this. Judge Jablonski was required to provide reasons under Rule 1:7-4 related to each Count of the complaint that was brought before him since Judge D'Alia's Orders threw out multiple counts of the Complaint on the basis that NO notices of claims were FILED. **(PSCa56, PSCa58)**

While the trial court maintains its discretion in how to provide an adequate statement of reasons, an adequate statement of reasons should acknowledge both timing and **merits**, which many trial courts have provided in motions to vacate on various grounds. In re Trust Created by Agreement Dated Dec. 20, 1961, 399 N.J.

Super. 237, 253 (App. Div. 2006), aff'd, 194 N.J. 276 (2008). The merits of many counts were not addressed in this case related to the clerical error. The Appellate Division has expressed that "when a trial court issues reasons for its decision, it `must state clearly [its] factual findings and correlate them with relevant legal conclusions, so that parties and the appellate courts [are] informed of the rationale underlying th[ose] conclusion[s]." Avelino-Catabran v. Catabran, 445 N.J. Super. 574, 594-95 (App. Div. 2016). Without such reasons, a reviewing court does not know whether the judge's decision is supported by the facts and law or is the product of arbitrary action. Monte v Monte, 212 N.J.557, 564-65 (1986).

When a trial court does not provide a statement of reasons that addressed issues raised, the Appellate Court cannot determine whether the court's decision was an abuse of discretion or an incorrect conclusion of law. In re Trust Created by Agreement Dated Dec. 20, 1961, 399 N.J. Super. 237, 253 (App. Div. 2006), aff'd, 194 N.J. 276 (2008).In Re Trust, 399 N.J. Super. 237, 253. Moreover, the supreme Court may exercise original jurisdiction where findings rest on an undisputed record and not on matters of credibility, demeanor or personal view of the premises asis the case here. See Baxter v. Fairmont Food Co., 74 N.J. 588, 601, (1977); See also Patton v. North Jersey Dist. Water Supply Comm'n, 93 N.J. 180, 188, (1983); Leeds v Chase Manhattan Bank, 331 NJ Super 416, 420-21 (App. Div 2000).

FILED, Clerk of the Supreme Court, 06 Jun 2025, 090218, AMENDED

## Conclusion

For these reasons, the plaintiff requests Certification and reversal of the order granting Summary Judgment on the *counts that were dismissed on the basis that no notices of claims were filed* and enter judgment for Dr. Mavis Faulknor.

/s/ Cecile D. Portilla
CECILE D. PORTILLA, ESQ. Dated: 01/15/2025

## CERTIFICATION PURSUANT TO R. 2:12-7(a)

I, Cecile D. Portilla, Esquire, as Petitioner's counsel, certify as follows: This petition for certification presents a substantial question and is filed in good faith and not for the purposes of delay. I certify that the foregoing statements made by me are true. I am aware that if same are willfully false, I may be subject to punishment.

/s/ Cecile D. Portilla
CECILE D. PORTILLA, ESQ. Dated: 01/30/25

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO: A-000692-21T2

| | | |
|---|---|---|
| DR. MAVIS FAULKNOR<br><br>PLAINTIFF-APPELLANT<br><br>vs.<br><br>COUNTY OF HUDSON<br>MEADOWVIEW PSYCHIATRIC<br>HOSPITAL, JOANNE D. REILLY<br>DR. EDWARD CARUSO, PAT SHIELS<br>HEAD DOE, JOHN DOE and HARRY<br>(identities unknown)<br><br>DEFENDANTS-RESPONDENTS | ) | CIVIL ACTION<br><br>Sat Below<br><br>Honorable Anthony V. D'elia<br>Docket No. Below: HUD-L-3792-18<br>Consolidated with: HUD-L-4336-17 |

**PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR LEAVE TO FILE AS WITHIN TIME AND TO ALLOW PAPER FILING AS AN OPTION**

ELDRIDGE HAWKINS, LLC
ATTORNEY AT LAW
ATTORNEY ID.NO: 214731967
60 EVERGREEN PLACE, SUITE 510
EAST ORANGE, NEW JERSEY 07018
PHONE (973) 675 FAX(973)676 7356
HWKLAW@AOL.COM

ELDRIDGE HAWKINS, ESQ.
CECILE D. PORTILLA, ESQ.
021212005: On the Brief

# TABLE OF CONTENTS


PROCEDURAL HISTORY 2

STATEMENT OF FACTS 4

LEGAL ARGUMENTS 7

POINT I 7

THE MOTION TO FILE AS WITHIN TIME IS BASED ON GOOD CAUSE AND SHOULD BE GRANTED 7

POINT II 9

THE MOTION TO ALLOW PAPER FILING AS AN OPTION TO ELECTRONIC FILING SHOULD BE GRANTED TO ACHIEVE THE ENDS OF JUSTICE 9

CONCLUSION 11

## CASES


Cimiluca v. Cimiluca,
245 N.J. Super. 149, 152 (App. Div. 1990) 7

Delaware Valley Wholesale Florist, Inc. v. Addalia
349, N.J. Super 228, 232 (App. Div. 2002) 7

Jansson v. Fairleigh Dickenson University,
198 N.J. Super. 190, 195 (App. Div. 1985) 8

Jersey City v. Hague, 18 N.J. 584 (1955) 9

N.J. Highway Auth. v. Renner,
18 N.J. 485, 495 (1955) 8

Romagnola v Gillepsie,
194 N.J. 596 (2008) 9

Viviano v. CBS,
101 N.J. 538, 550-551(1986) 7


## COURT RULES


Rule 1:1-2 7, 9, 10, 11

# APPENDIX INDEX


| | |
|---|---|
| Order on Motion denying Motion to file overlength brief (Filed 8/24/22) | Pa001 |
| Appellate Division Communication regarding freezing of electronic system with last entry 9/12/2022 | Pa002 |
| Appellate Division Communication 9/9/22 advising attorney to file a motion to file as within time | Pa003 |
| Certification of Cecile D. Portilla (filed 9/9/2022) | Pa004 |
| Notice of Motion to Extend Time to File (filed 9/9/2022) | Pa005 |
| Appellate Communication 9/12/2022 advising Case manager that appendix index did not Match submissions dated 9/12/2022 | Pa009 |
| Appellate Case Jacket for Faulknor v Hudson County A-692-21 | Pa010 |
| Adjournment request letter to trial Court by Attorney Dermondy Esq., for County requesting adjournment and advising Trial Court that briefing for Summary Judgment was extensive (dated April 9, 2021) | Pa017 |
| Deficiency letter from the Appellate Division Dated July 1, 2021 | Pa019 |

Substitution of Attorney 9/20/22 Pa023

Appendix document Pa01791 marked Deficient June 17, 2022 Pa024

Appendix document Pa01795 marked Deficient June 17, 2022 Pa025

ELDRIDGE HAWKINS, LLC
ATTORNEY AT LAW
ATTORNEY ID.NO: 214731967
60 EVERGREEN PLACE, SUITE 510
EAST ORANGE, NEW JERSEY 07018
PHONE (973) 675 FAX (973) 676 7356
HWKLAW@AOL.COM

Attorney for: Dr. Mavis Faulknor

September 20, 2022

Appellate Clerk
Superior Court of New Jersey
Appellate Division
Trenton, Newark New Jersey

**RE: DR MAVIS FAULKNOR v. COUNTY OF HUDSON, MEADOWVIEW PSYCHIATRIC HOSPITAL, JOANNE D. REILLY, DR. EDWARD CARUSO, PAT SHIELS**

Docket No.: A-000692-21T2

Dear Court and Clerk:

Please accept this letter brief and supplemental Certification of Cecile Portilla in further support of Plaintiff's motion to file her brief and appendices as within time and in support of her request to allow for PAPER FILING AS AN OPTION TO ELECTRONIC FILING.

The notice of motion to file as within time was already filed on September 9, 2022

## PROCEDURAL HISTORY

On August 24, 2022, Plaintiff's motion to file an overlength brief in support of her appeal was denied. (Pa001). Plaintiff's attorney was instructed by the Appellate Division to file Plaintiff's brief and appendix within 15 days of August 24, 2022. (Pa001). Thus, Plaintiff was required to file her brief and appendices on 9/8/2022 pursuant to the order of August 24, 2022. (Pa001)

The ecourts filing system froze while Plaintiff's attorney tried to use it on September 8, 2020. (Pa002). We kept trying to get the system to function, but it kept freezing and preventing us from submitting documents until after midnight. (Pa002). At approximately 12:02 AM on 9/09/2022(the early morning hours, after midnight on 9/8/2022), we sent communication to the Case Manager that we had difficulty with the electronic system. (Pa002).

On 9/9/2022, approximately after 8:00am, the case manager, advised Plaintiff's attorney to file a motion as within time. (Pa003). Upon seeing the communication from the Case manager, we quickly submitted a short certification to the Court along with the system generated notice of motion on 9/9/2022. (Pa004; Pa005).

Plaintiff's attorney, uploaded the appendices and brief on 9/9/2022. (See Pa10). Upon reviewing the brief on 9/10/22, it did not appear to be the last brief that the attorney had worked on, as such, Plaintiff's attorney uploaded another

brief based on the fact that a motion was already made for leave to file as within time. (See Pa010).

On September 12, 2022, Plaintiff's attorney upon noticing that the Appendix Index did not correspond to the appendices and brief that were submitted on September 9, 2022, sent another communication to the Appellate Court. (Pa009). On September 14, 2022, Plaintiff's attorney, in reliance on the pending motion for leave to file her brief and appendices as within time, submitted another brief and 10 appendices that matched said attorney's final appendix index. (See Pa010).

## STATEMENT OF FACTS

Plaintiff was required to submit a brief and her appendices in support of her appeal in the matter as captioned above by September 8, 2022 pursuant to an order from the appellate division. (Pa001) Plaintiff's attorney had significant problems with the voluminous documents (for indexing) that had required extensive briefing as even acknowledged by the defendants. (Supplemental Certification of Cecile Portilla; See Pa017). The documents were voluminous and were scrutinized repeatedly to remove duplicates as instructed by the case manager. (Supplemental Certification of Cecile D. Portilla).

Plaintiff removed hundreds of pages in duplicate items that had been submitted to the trial court repeatedly by the parties and revised the voluminous appendix index several times. (Supplemental Certification of Cecile D. Portilla). The last major problem encountered, was that certain particular documents, were noted rotated to a 90 to 180 degrees position on several filings. (Supplemental certification of Cecile Portilla). For this reason, Plaintiff's attorney is requesting that continued filings on this matter be allowed to be done on paper as opposed to electronic filing.

Plaintiff's attorney has a duty to ensure processing of correct submissions and has noted problems with documents that could only have occurred after the documents exited his computer and were in electronic transit to ecourts.

Documents that are rotated in the appendix after we specifically address the problem is a cause of great concern. We corrected this deficiency yet the problem keeps occurring in that the rotated documents in appendix index that were specifically addressed and corrected are still noted on ecourts with the same rotations after the documents left our computer. (Supplemental Certification of Cecile D. Portilla).

Appendices pages, Pa01791 and the Pa01795, that had been observed as rotated on previous filings with the Appellate Division, were identified by the case manager as being incorrectly scanned and identified as deficient by the case manager. (Pa020; Supplemental Certification Cecile Portilla; Pa024; Pa025). The documents were in fact all properly scanned. (Supplemental Certification of Cecile Portilla).

For example, on the deficiency notice dated July 1, 2022, the Appellate division advised Plaintiff's attorney that Pa001791 and Pa001795, that were filed on 6/17/2022, were incorrectly scanned. (Pa20). Careful examination of these documents, will show that the bate stamped numbers Pa01791 and Pa01795 on these two pages, properly appear at the bottom of each page. (See Pa024; Pa025). If these two pages were randomly turned sideways (horizontally) by Plaintiff's attorney, while scanning with the other documents that were in

their proper vertical positions, all documents being scanned would have jammed.

Significantly, Plaintiff's attorney ensured that documents that had rotated to 90- or 180-degrees positions on previous submissions, were in their proper vertical positions, prior to submitting the documents on ecourts. (Supplemental Certification of Cecile D. Portilla). These two pages from the June 17, 2022 appellate division filed Appendices, i.e., Pa01791; Pa01795 are attached here for the Court's review. (Pa024; Pa025). The appellate division date stamp is noted on the sides of these documents. (Pa024; Pa025).

These Previously submitted Pa01791 and Pa01795 are numbered in lighter ink under the previous bate stamps in the appendix supporting this brief, to prevent any confusion with the prior bate stamp numbers that existed on June 17, 2022. (Pa025; Pa024).

On September 12, 2022, to prevent a deficiency rejection related to "incorrect scanning," over which we had no control, Plaintiff's attorney removed the documents that were previously noted on ecourts on more than one occasions, in a 90 to 180 rotated position, and added foot notes regarding their REMOVAL, to allow the defendants to insert these documents in their own appendices, if they needed them. (Supplemental Certification of Cecile Portilla). These documents were not necessary for our brief. nor do they prevent the

Appellate Court from properly reviewing the case. (Supplemental Certification of Cecile D. Portilla).

## LEGAL ARGUMENT

## POINT I

## THE MOTION TO FILE AS WITHIN TIME IS BASED ON GOOD CAUSE AND SHOULD BE GRANTED

"Good cause is an amorphous term, that is, it is difficult of precise delineation. Its application requires the exercise of sound discretion in light of the facts and circumstances of the particular case considered in the context of the purposes of the Court Rule being applied." Delaware Valley Wholesale Florist, Inc. v. Addalia, 349 N.J. Super. 228, 232(App. Div.2002).

Our Court Rules are not ends in themselves, they are a means to achieving a functioning and just system. See, e.g., Viviano v. CBS, 101 N.J. 538, 550-51(1986) ("The Rules of procedure are not an end unto themselves, but a means of serving the ends of justice."); Cimiluca v. Cimiluca, 245 N.J. Super. 149, 152 (App. Div. 1990) ("Rules of procedure do not exist for their own sake, but as means to an end.").

Rule 1:1-2 specifies that our Court rules shall be construed to secure a just determination, simplicity in procedure, fairness in administration and the

elimination of unjustifiable expense and delay. Id. The Supreme Court in N.J. Highway Auth v. Renner, 18 N.J. 485, 495 (1955), emphasized that "justice is the polestar and our procedures must ever be molded and applied with that in mind." Id.

Several important factors have generally been considered in determining whether the rules should be relaxed. These include (1) the extent of the delay, (2) the underlying reason or cause, (3) the fault or blamelessness of the litigant, and (4) the prejudice that would accrue to the other party. Jansson v. Fairleigh Dickenson University, 198 N.J. Super. 190, 195 (App. Div.1985).

Upon applying these factors to the need for extra time in this case, the record clearly discloses that the delay is not extensive, since documents were in fact uploaded within hours of the 9/8/2022 deadline, although we later saw problems that required reupload.

The cause for the delay was based on the freezing of the electronic filing system. (Supplemental Certification of Cecile D. Portilla; Pa002). This was an exceptional circumstance that was not foreseeable by Plaintiff's attorney or staff. Plaintiff's attorney and staff are blameless, because they did not cause the electronic filing system to freeze. Plaintiff's attorney immediately communicated the problem to case management right after the system unfroze and waited for instructions. (Pa002). There will be no prejudice to the other

parties because the delay was brief. Moreover, the defendants have already previewed all our arguments in this case in the motion to file an oversized brief that was previously submitted.

Discovery was complete at the trial level.

**POINT II**

**THE MOTION TO ALLOW PAPER FILING AS AN OPTION TO ELECTRONIC FILING SHOULD BE GRANTED TO ACHIEVE THE ENDS OF JUSTICE**

"Unless otherwise stated, any rule may be relaxed or dispensed with by the court in which the action is pending, if adherence to it would result in an injustice." Rule 1:1-2(a). Determining whether relaxation of any rule is appropriate, requires an examination and balancing of the interests that are at stake. Romagnola v Gillepsie, 194 N.J. 596 (2008).

The guiding principle for interpretation and application of our Court rules is the achievement of procedural due process in the service of substantial justice on the merits. Jersey City v. Hague, 18 N.J. 584, 602 (1955).

In Romagnola, a unique circumstance existed that allowed relaxation of the rules. Id at 606. Similarly, a unique circumstance exists in our case requiring relaxation of the electronic filing rules. Here documents are not being received

by the Court in the manner in which they were prepared, after they exit our computers. (Pa024; Pa025; Supplemental Certification of Cecile D. Portilla).

The interests of proper receipt and proper review of a litigant's documents as submitted, and the overall affording of procedural due process to the Plaintiff are at stake in this matter. These interests are important. Rule 1:1-2 has been applied in many varied reasons. Thus, Plaintiff is requesting the relaxation of the electronic filing rule, to allow for paper filing of documents as needed, to ensure that the documents received are in the same condition in which they were submitted, in order to achieve the ends of justice.

The evidence shows that Plaintiff's documents are not being received in the manner submitted, by whatever method, after they exit the computer and land on ecourts. The documents identified as Pa01791; Pa01795 in the June 17, 2022 appendix, show that this is so. (Pa024; Pa025; Supplemental Certification of Cecile D. Portilla).

On July 1, 2022, the case manager identified Pa01791 and Pa01795 as being deficient, and identified them as improperly scanned, which was not the case. (Pa020; Pa024; Pa025; Supplemental Certification of Cecile D. Portilla). These documents were not improperly scanned. (Supplemental Certification of Cecile D. Portilla). These documents were noted to be sideways in the system

after being summitted to ecourts. (Supplemental Certification of Cecile D. Portilla).

Plaintiff's attorney sat with another attorney to discuss this unique problem with the rotation of documents that were corrected and resubmitted to ecourts, yet the rotation occurs after resubmission to ecourts. (Supplemental Certification of Cecile D. Portilla). These are exceptional situations that can be remedied by the Courts. Rule 1:1-2 can remedy this situation by relaxing the electronic filing rule and allowing paper filing of documents at Plaintiff's option. Rule 1:1-2 has been used for many varied reasons to help achieve the ends of justice.

## CONCLUSION

Based on all the foregoing, there is good cause for this motion requesting paper filing, and the Plaintiff's motion to file our brief and appendices as within time should be granted.

/s/ Eldridge Hawkins
ELDRIDGE HAWKINS, ESQ.

On the Brief
Cecile D. Portilla, Esq
021212020

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO: A-000692-21T2

DR. MAVIS FAULKNOR )
)
PLAINTIFF-APPELLANT ) CIVIL ACTION
)
)
)
vs. )
)
) Sat Below
)
) Honorable Anthony V. D'elia
COUNTY OF HUDSON ) Dkt. No:. Below : HUD-L-3792-18
MEADOWVIEW PSYCHIATRIC ) Consolidated with: HUD-L-4336-17
HOSPITAL, JOANNE D. REILLY )
DR. EDWARD CARUSO, PAT SHIELS )
HEAD DOE, JOHN DOE and HARRY ) **Supplemental Certification**
(identities unknown) ) of Cecile D. Portilla in support
) of Motion to File as within Time
DEFENDANTS-RESPONDENTS ) and to allow option of Paper
) filing of Documents
)

I. Cecile D. Portilla hereby certify as follows:

1. I am an attorney at law of the State of New Jersey.
2. I am familiar with the facts of this case and able to make this certification.
3. I assisted the attorney of record, in preparing the brief and appendices on this matter.

4. A communication was sent to the Case manager advising her that we had difficulty uploading documents on September 8, 2022 due to freezing of the system. (Pa002).

5. On September 9, 2022, the case manager advised us via communication to make a motion to file our brief and appendices as within time. (Pa003).

6. This certification supplements the very short certification that was previously submitted advising the Appellate Court that a malfunction had occurred. (Pa004).

7. The malfunction that occurred on 9/8/2022, was in the form of freezing of the efiling system, whereby we could not get the system to respond, and it would not allow us to enter any items. (Pa002).

8. The system somehow became responsive right after midnight at approximately 12:02 AM which actually took us into September 9, 2022.

9. Our brief and appendices were due on September 8, 2022. (Pa001).

10. We usually efile documents during evening hours because it is more convenient for us.

11. On September 9, 2022, Plaintiff's attorney filed Plaintiff's brief and Appendices along with the motion to file as within time.

12. On September 10, 2022, Plaintiff filed another brief on ecourts after noticing that the brief that was uploaded did not appear to be the last version of the brief that her attorney had prepared. (Pa010).

13. On September 12, 2022, Plaintiff sent another communication to the Appellate Court upon noticing that the Appendix index did not correspond to the brief and appendices that were submitted. (Pa002).

14. Plaintiff had significant problems with the index that supported our documents that had required extensive briefing as even acknowledged by the defendants. (See Pa017).

15. Plaintiff had removed numerous duplicate items that had been submitted to the trial court repeatedly by the parties.

16. The last major problem was that certain particular documents, were noted on ecourts to be rotated to 90 to 180 degrees. We rotated all documents to their proper positions prior upon becoming aware that prior submissions on ecourts were noted in this condition.

17 Documents that had rotated on previous submissions were identified as being "incorrectly scanned" by the case manager. (Pa020). These documents were in fact properly scanned.

18. On July 1, 2022, Plaintiff's attorney was sent a deficiency notice that his submissions were deficient in part because documents were noted sideways in the appendix. (Pa020).

19. The deficiency notice instructed Plaintiff's attorney to properly scan documents. The notice identified several documents that were rotated side-ways in the appendix. (Pa020).

20. Said attorney properly scanned all documents and had no control over documents that rotated sideways in the appendix.

21. Plaintiff's attorney made a note of all documents that had rotated to 90 or 180 degree angles after prior submissions, and placed them back in their proper vertical positions prior to refiling these documents on ecourts.

22. Specifically Pa01791 and Pa01795 of our previous appendices were noted to be rotated to 180 degrees upon viewing them on ecourts. (Pa024; Pa025).

23. On June 17, 2022 all documents were noted in their proper vertical positions prior to submitting the appendices to ecourts.

24. The same documents were noted to be rotated after multiple filings, thus to prevent the same deficiency, over which Plaintiff's attorney had no control, Plaintiff's attorney removed the documents that had previously rotated.

25. Plaintiff's attorney decided to add foot notes identifying the pages that were intentionally removed, to allow the defendants to insert these documents in their own appendices if they needed them.

26. The documents that we removed due to rotation problems, were not necessary for our brief nor did they prevent the Appellate Court from properly reviewing the case.

27. The documents that were previously corrected regarding the rotation of documents and resubmitted to ecourts had been noted with the same rotation problems after resubmission to ecourts.

28. We believe that these problems are occurring after they exit our computers and are in transit to ecourts.

29. Based on this, **our request to exercise the option as deemed necessary, to submit documents on paper, as opposed to electronic filing** is based on good cause.

30. Paper filing will allow the Appellate Division to have immediate hard copies of documents that correspond to the same hard copies in our possession.

31. There is also good cause to allow our brief and appendices to be filed as within time, as we had no control over the freezing of the electronic filing system when we tried to use it on 9/8/2022.

I certify that the above statements made above by me are true. I am aware that if they are willfully false that I am subject to punishment.

/s/ Cecile D. Portilla

Dated: September 20, 2022
CECILE PORTILLA, ESQ

COPY OF THE SAME SUPPLEMENTAL CERTIFICATION from **September 30, 2022** THAT WAS UPLOADED TO THE SUPREME COURT AND FILED **May 30, 2025** ATTACHED TO THE LOPEZ BRIEF AS EVIDENCE THAT LOPEZ AND FAULKNOR HAD THE SAME ISSUES ON ECOURTS

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO: A-000692-21T2

DR. MAVIS FAULKNOR

PLAINTIFF-APPELLANT

CIVIL ACTION

vs.

Sat Below

COUNTY OF HUDSON MEADOWVIEW PSYCHIATRIC HOSPITAL, JOANNE D. REILLY DR. EDWARD CARUSO, PAT SHIELS HEAD DOE, JOHN DOE and HARRY (identities unknown)

DEFENDANTS-RESPONDENTS

Honorable Anthony V. D'elia
Dkt. No:. Below : HUD-L-3792-18
Consolidated with: HUD-L-4 36-17

**Supplemental Certification of Cecile D. Portilla in support of Motion to File as within Time and to allow option of Paper filing of Documents**

I, Cecile D. Portilla hereby certify as follows:

1. I am an attorney at law of the State of New Jersey.
2. I am familiar with the facts of this case and able to make this certification.
3. I assisted the attorney of record, in preparing the brief and appendices on this matter.

4. A communication was sent to the Case manager advising her that we had difficulty uploading documents on September 8, 2022 due to freezing of the system. (Pa002).

5. On September 9, 2022, the case manager advised us via communication to make a motion to file our brief and appendices as within time. (Pa003).

6. This certification supplements the very short certification that was previously submitted advising the Appellate Court that a malfunction had occurred. (Pa004).

7 The malfunction that occurred on 9/8/2022, was in the form of freezing of the efiling system, whereby we could not get the system to respond, and it would not allow us to enter any items. (Pa002).

8. The system somehow became responsive right after midnight at approximately 12:02 AM which actually took us into September 9, 2022.

9. Our brief and appendices were due on September 8, 2022. (Pa001).

10. We usually efile documents during evening hours because it is more convenient for us.

11. On September 9, 2022, Plaintiff's attorney filed Plaintiff's brief and Appendices along with the motion to file as within time.

12. On September 10, 2022, Plaintiff filed another brief on ecourts after noticing that the brief that was uploaded did not appear to be the last version of the brief that her attorney had prepared. (Pa010).

13. On September 12, 2022, Plaintiff sent another communication to the Appellate Court upon noticing that the Appendix index did not correspond to the brief and appendices that were submitted. (Pa002).

14. Plaintiff had significant problems with the index that supported our documents that had required extensive briefing as even acknowledged by the defendants. (See Pa017).

15. Plaintiff had removed numerous duplicate items that had been submitted to the trial court repeatedly by the parties.

16. The last major problem was that certain particular documents, were noted on ecourts to be rotated to 90 to 180 degrees. We rotated all documents to their proper positions prior upon becoming aware that prior submissions on ecourts were noted in this condition.

17 Documents that had rotated on previous submissions were identified as being "incorrectly scanned" by the case manager. (Pa020). These documents were in fact properly scanned.

18. On July 1, 2022, Plaintiff's attorney was sent a deficiency notice that his submissions were deficient in part because documents were noted sideways in the appendix. (Pa020).

19. The deficiency notice instructed Plaintiff's attorney to properly scan documents. The notice identified several documents that were rotated side-ways in the appendix. (Pa020).

20. Said attorney properly scanned all documents and had no control over documents that rotated sideways in the appendix.

21. Plaintiff's attorney made a note of all documents that had rotated to 90 or 180 degree angles after prior submissions, and placed them back in their proper vertical positions prior to refiling these documents on ecourts.

22. Specifically Pa01791 and Pa01795 of our previous appendices were noted to be rotated to 180 degrees upon viewing them on ecourts. (Pa024; Pa025).

23. On June 17, 2022 all documents were noted in their proper vertical positions prior to submitting the appendices to ecourts.

24. The same documents were noted to be rotated after multiple filings, thus to prevent the same deficiency, over which Plaintiff's attorney had no control, Plaintiff's attorney removed the documents that had previously rotated.

25. Plaintiff's attorney decided to add foot notes identifying the pages that were intentionally removed, to allow the defendants to insert these documents in their own appendices if they needed them.

26. The documents that we removed due to rotation problems, were not necessary for our brief nor did they prevent the Appellate Court from properly reviewing the case.

27. The documents that were previously corrected regarding the rotation of documents and resubmitted to ecourts had been noted with the same rotation problems after resubmission to ecourts.

28. We believe that these problems are occurring after they exit our computers and are in transit to ecourts.

29. Based on this, our request to exercise the option as deemed necessary, to submit documents on paper, as opposed to electronic filing is based on good cause.

30. Paper filing will allow the Appellate Division to have immediate hard copies of documents that correspond to the same hard copies in our possession.

31. There is also good cause to allow our brief and appendices to be filed as within time, as we had no control over the freezing of the electronic filing system when we tried to use it on 9/8/2022.

I certify that the above statements made above by me are true. I am aware that if they are willfully false that I am subject to punishment.

/s/ Cecile D. Portilla

Dated: September 20, 2022
CECILE PORTILLA, ESQ

FILED, Clerk of the Supreme Court, 17 Nov 2025, 090218

SUPREME COURT OF NEW JERSEY
C-251 September Term 2025
090218

Dr. Mavis Faulknor,
Plaintiff-Petitioner,
v.
County of Hudson and
Dr. Edward Caruso,
Defendants-Respondents,
and
Meadowview Psychiatric,
Hospital,
Defendant,
and
Joanne D. Reilly, Pat
Shiels, Darice Toon,
Gerald Drashelf, Dr.
Alexander Delga, Arlene
Deano, Roderick T.
Baltimore, Alexander C.
Locatelli, Georgina
Pallitto, Elinor Gibney,
and Dr. Marian Bekhit,
Defendants.

O R D E R

A petition for certification of the judgment in A-000692-21 having been submitted to this Court, and the Court having considered the same;

It is ORDERED that the petition for certification is denied.

WITNESS, the Honorable Stuart Rabner, Chief Justice, at Trenton, this 12th day of November, 2025.

CLERK OF THE SUPREME COURT

ELDRIDGE HAWKINS, LLC
ATTORNEY AY LAW
60 Evergreen Place, Suite 510
East Orange, NJ 07018
Phone: (973) 676 Fax: (973) 676 7356
Attorney ID: 214731967
hwklaw@aol.com

March 13, 2022

Ms. Stacy Whitehead, Case Manager
Appellate Division
Superior Court of New Jersey
Hughes Justice Complex
25 West Market Street
P.O. Box 971
Trenton, New Jersey 08625

RE: Anthony Sutton v. Newark Beth Israel Et. Al
DOCKET NO: A-003715-20T4

Dear Ms. Whitehead:

Please be advised that we were forced to break down our appendices into 11 small volumes, because the system would not accept them as originally prepared. The volumes that are being rejected are the same volumes that were previously submitted to the Appellate Division, that were previously accepted without problems, from which we have removed multiple duplicate pages. The system is alerting us that the volume sizes are now too large despite our removal of numerous pages. It is unclear why removal of pages (as opposed to adding pages) would cause dramatic increase in megabytes.

Please also be advised, that volume five as per the computer, has pages that are rotated ninety degrees. These pages self-rotate back to the 90 degree positions each time we try to rotate them back to their proper positions.

We have no control over how the pages in volume five or other volumes will show up. The volumes were originally scanned into the computer by Mr. Hawkins. I observed Attorney Hawkins when he scanned the volumes. The pages were not turned sideways nor were they upside down when he scanned them. Our scanner is a relatively new leased equipment, that

is professionally maintained by the company that leased the equipment to us.

We have done everything in our power to do what was required of us.

Please accept the documents as submitted.

Thank you.

Very truly yours,

/s/ Cecile D. Portilla
Cecile D. Portilla, Esq.