ELDRIDGE HAWKINS, LLC
60 Evergreen Place, Suite 510
East Orange, NJ 07018
Attorney ID No. 214731967
(973) 676-5070 Fax: (973) 676-7356
hwklaw@aol.com

| | |
|---|---|
| **IN THE MATTER OF CECILE DELROSE PORTILLA, ESQUIRE**<br><br>**AN ATTORNEY AT LAW OF THE STATE OF NEW JERSEY**<br><br>**(0121212005)** | **UNITED STATES DISTRICT COURT DISTRICT OF NEW JERSEY**<br><br>**Civil Action No. 8:26-cv-09035-RMB** |

**APPENDIX OF RESPONDENT IN SUPPORT OF ORDER TO SHOW CAUSE WHY RECIPROCOL DISCIPLINE SHOULD NOT BE IMPOSED**

**VOLUME FOUR OF FIVE (Ra563-Ra730)**

_

**APPENDIX INDEX**

Certification of service of Suspension Order
dated July 14, 2026……………………………………………………………Ra001

Order of Suspension dated July 9, 2026…………………………………….Ra002

Alexandra Gitter's Notice of Motion for leave to file a
Reply June 18, 2026……………………………………………………… Ra004

Certification of Alexandra Gitter in Support of Motion to
to file a Reply Brief June 17, 2026……………………………………….Ra005

Reply Brief of Alexanda Gitter dated June 18, 2026……………………….Ra007

Email advising that Copy of Respondent' Opposition to OAE's
Petition for medical Exam was delivered to OAE and will be
Forwarded to DRB dated December 22, 2025……………… ……………..Ra025

June 10, 2025 letter with HIPAA form from OAE advising of
referral from the Supreme Court related to motions filed
on behalf of Lopez and Faulknor…………………………………………....Ra027

July 2, 2025 letter from Hawkins to Ms. Gitter advising her that he
represents Respondent…………………………………………………..…Ra032

July 2, 2025 letter from Gitter to Hawkins acknowledging ……..…(same)Ra032

receipt of his letter of representation.

August 6, 2025 Email entitled 'Interview' from Attorney Hawkins to Alexanda Gitter requesting copies of the Faulknor and Lopez Motion documents to determine if Respondent Authored them……………Ra034

August 7, 2025 email from Gitter to Hawkins advising him that the documents are the same as those available to Ms. Portilla on eCourts and to feel free to compare them to Ms. Portilla's Original documents w/o OAE printing hundreds of pages……………………………Ra036

August 14, 2025 letter to Ms. Gitter requesting discovery and advising that he needed discovery for substantive due process and that he did not know what he is defending officially………………………..Ra036

August 18, 2025 email form Gitter to Hawkins advising him that Respondent is being Investigated for Paranoia……………………………….Ra037

Alexandra Gitter's December 2, 2025 Petition for relief for medical and mental health examination and records…………………..…….Ra038

Certification of Chopra 11/26/2025 with *attachments*..…………………………………………..……………………..Ra041

*Attached Request for **Accommodation** in Upchurch and for Judicial Notice of previous July 2024 Appendices due to interference with current Appendices filed **2/27/2025** (See Ra570)*

*Attached Notice of Motion for **Accommodation** in Upchurch to paper file documents on eCourts filed 4/25/2025(See.Ra576)*

*Attached Notice of Motion to hold Faulknor's Petition in Abeyance Until the third Party Upload of Documents was properly investigated 2/13/25 (See Ra644)*

*__Attached__ Certification in Faulknor's case in Support of Motion for Accommodation in the Supreme Court to paper file Faulknor's documents on eCourts 4/29/2025 (See Ra646)*

*__Attached__ Complaint Against Essex County Prosecutor's Office FACS/Cyber Crime unit for Conversion and denial of equal Protection (See Ra815)* that *had Old NOC to show that six years SOL was met. Old NOC also had disclosures related to historical therapy for trauma caused by the cyber harassment that EPCO failed to investigate as agreed to do ECOP was not sued for the mental trauma as it did not cause my trauma (Ra842)*

*__Alleged__ Transcripts of OAE Dec 11, 2025 interview – (Not attached as we were not allowed to record the interview And taping was done on Chopra's personal Device and no neutral Court reporter was present)*

*__Attached__* Report of Dr. Ejiofor dated June 28, 2025 (See Ra170)

Certification of Cecile D. Portilla, Esquire in response to Chopra's Certification dated 12/09/2026……………………………..Ra071

****Certification of Dr. Ejiofor, APN regarding Cybercrimes affecting his practice, phones being controlled by others and tampering of his clients' prescriptions to different dosages including life threatening dosages……(**Ra805 replaced Ra152)**………..Ra152

Certification of Eldridge Hawkins, Esquire dated June 12, 2025……….. Ra156

Certification of Mario Portilla dated Nov 26, 2017……………………... Ra162

Certification of Ronald Morrison dated December 2, 2025…..……………..Ra166

Report of Dr. Ejiofor, APN stating that not only is Ms. Portilla Mentally competent, she is diligent and purposeful in her career dated 6/28/25……………………………….……...Ra170

Certification of Latoya Borum dated June 28, 2025………..,,……..…..Ra171

Witness Statement on behalf of Eldridge Hawkins sent to
the OAE September 28, 2025…………………………………..…..…..…..Ra177

Report of Computer Expert Richard Douglas
October 10, 2016……………………………………………………………Ra168
.
Certification of Richard Douglas 10/10/2016……………………….……… ….Ra197

Certification of Adam Portilla Feb 25,2026……………………………… …….Ra198

..*Attachment 1*-to Certification of Adam Portilla
Upside down Appellate Brief of Keri Payne……….. ……………..… …...Ra201

*Attachment 2*-to Certification of Adam Portilla Cover Page
Of Appendix of Carol Jakson demonstrating lack of active
Hyperlink first Appendix Cover page ………..……..………………..… .Ra204

*Attachment 3*-to Certification of Adam Portilla Cover Page
Of Appendix of Carol Jakson demonstrating active
Hyperlink triggered (little hand) on eCourts……………………………Ra207

*Attachment 4*-to Certification Geek Squad customer receipt
Wherein Geek quad Agent states he cannot see any active Hyperlinks
in Appendix in his computer while document is in the store……………....Ra210

Order by Timothy Ellis compelling exam and examination by
Medical doctor to determine Respondent's ability to
Practice law signed January 5, 2026……………………………………Ra212

Email to Ms. Gitter and Mr. Chopra January 14, 2026……….. ………Ra214

March 19, 2026 letter from Ms. Gitter to Benjamin with
proposed Order requesting that she assign counsel to
respondent…………………………………………………………..….Ra216

*Attached* Proposed Order……………….……………….…….….Ra218

Letter from Respondent to Judge Benjamin with copy
of Expert report of Dr. Ejiofor APN attached dated
March 19, 206 declining new counsel. ………………..………………..Ra219

*Exhibit A* to letter-Expert Report of Dr. Ejiofor

to letter from Respondent …………………………………….………..Ra222

Order signed by Judge Benjamin on April 4, 2026
Appointing counsel to Respondent…………………………………..… .Ra224

Brief[1] of Jay Rice asserting ADA Gateway factors
dated May 12, 2026……………………………………………… ..Ra225

Petition for Certification of Angel Lopez
filed October 24, 2024……………………………….…………… ...Ra231

Order denying Lopez Petition dated January 28,2025………………... .Ra258

Certification of Cecile D. Portilla filed in the Appellate
Division dated August 15, 2024 with concerns that Lopez
documents were rotating sideways/upside down and seeking relief
filing certain documents outside of the Appendices…… ……….…Ra259

Appellate Order denying relief regarding Lopez
documents dated August 29, 2024………………………… ..……….….Ra264

Order dismissing Lopez Appeal dated September 17, 2024…….………… ..Ra265

---

[1] **Brief of Nagel Rice, Esq attached to show that he asserted federal defenses of Portilla to the OAE and advised the OAE of need to Comply with the ADA.**

Letter to Supreme Court Case manager in Lopez case dated October 17, 2024 advising that documents had to be filed under miscellaneous as options for proper filing was not available……………………………………………Ra266

Petition for Certification of Dr. Faulknor dated January 16, 2025……………………………………………………Ra268

Order denying Judge D'Elia's recusal on 8/6/21 uploaded to the Supreme Court on January 31, 2025 by third party marked "**submitted in error"** by the Supreme Court Clerk"…………………………………………….…Ra297

Order denying reconsideration by Judge D'Elia on 8/6/21 uploaded to the Supreme Court on January 31, 2025 by third party marked "**submitted in error**" by the Supreme Court Clerk"……………. ………………………………………... Ra298

Amended Petition of Dr. Mavis Faulknor June 6, 2025……………………………………………………..… Ra300

Appellate Motion brief on behalf of Dr. Faulknor advising clerk of documents turning sideways and upside down in the Appellate division and requesting relief Sept 30, 2022………………..… Ra334

Supplemental Certification of Dr. Faulknor advising Appellate Clerk of the problems with documents on eCourt filed September 30, 2022………………………………………………… Ra350

Copy of the Faulknor Certification Appellate Certification that was filed Attached to Lopez motion brief filed on May 25, 2025………………………………………………………Ra357

Order dated November 12, 2025 denying Faulknor's petition……………..……Ra363

Letter to Appellate Clerk advising that Sutton's documents
were turning sideways and upside down on eCourt and
asking for relief March 13, 2022……………………………,,,….. ……Ra364

Appellate Order dismissing Faulknor and not
mentioning Rule 1:13-1 June 6, 2025…………………………...……….Ra366

Lopez Rule 4:50-1 Motion Brief with exhibits to Vacate and
Reconsider-uploaded Feb 2025, Amend April 2025
filed May 30,2025……………………………………………………… …..Ra380

Opposition brief to Partial Summary Judgment in
matter of Upchurch v City filed February 19, 2025…………………… ..Ra563

Screen shot of Appendices noted on eCourts in Upchurch
matter with names that Respondent did not give to documents
indicating unlawful interference dated Feb 19,2025………………… ….Ra568

Screen shot of Previously filed Appendices dated 7/10/2024
with names given to past and then present
Upchurch Appendices……………………………...…………………..Ra569

Request for **Accommodation** in Upchurch and for Judicial
Notice of previous July 2024 Appendices due to interference[2]
with current Appendices filed **2/27/2025**………………………………… Ra570

Notice of Motion for **Accommodation** in Upchurch to paper
file documents on eCourts filed 4/25/2025……………………….……...Ra576

Certification of Respondent in support of Request in Upchurch

---

[2] The Volumes of Appendices had different names from the names that were given to them on upload to eCourts.

for **Accommodation** to paper file documents on eCourts……………….Ra578

Request for **Accommodation** to OAE and DRB to allow
the Constitutional Issues to be resolved via Judicial review
Prior to surrendering sensitive medical information Feb 8, 2026 ……….**Ra589**

Proposed changes to the Workers' Compensation act
by Cecile D. Portilla, Esquire 9/12/24...................................................**Ra597**

Substantial Compliance by DSM-5-Turnover 2/17/26 Ra609

Exhibit B-Collateral witness list………………………………..……… **Ra612**

Amended Complaint filed against the Essex County
Prosecutor's Office dated September 16, 2025
(NO EMOTIONAL DISTRESS DAMAGES SOUGHT)
by Respondent……………………………………………………… Ra614

Certification of Cecile D. Portilla against Essex County
Prosecutor's Office July 7, 2025……………………………….…………..Ra640

Notice of Motion to hold Faulknor's Petition in Abeyance
Until the third Party Upload of Documents
was properly investigated 2/13/25…………………………….………….. Ra644

Certification in Support of Motion for Accommodation in the
Supreme Court to paper file Faulknor's documents on eCourts
4/29/2025……………………………………..…………………Ra646

Email to case manager in Lopez regarding problem with
Upload and intent to make **motion to vacate** and reconsider
Feb 11, 2025…………………………………………………………..Ra659

Certification allegedly of Portilla with the
word "CERTIFIED" not written by her regarding the petition
intent to reconsider the denial of Angel Lopez's petition

dated April 21, 2025…………………………………..……………..Ra660

*Exhibit* A- Supreme Court Case jacket……………………..…………..Ra665

*Exhibi*t B-Certification in support of Request
for Accommodation Request April 21, 2025
in Lopez case…………………………..…………….……………..Ra667

Email communication dated February 19, 2025 from
Paige Ennis advising Respondent that letter and copies
of documents were given to the Supreme Court Clerk…………………Ra679

Email communication from Respondent to Paige Ennis
advising of issues with the Lopez filing dated
February 20, 2025……………………………………………………….Ra681

January 9, 2025 communication to Judge Garder regarding
lack of receipt of Court Notifications after
Notice of Appearance filed………………………………………..Ra683

March 7, 2025 email from defense Counsel in Respondent's
case against Comcast showing that defense Counsel who
was formerly receiving Court Notification suddenly
stopped receiving Court Notifications…………………………..….….…..Ra685

Judge D'Elias decision in Faulknor v Hudson County
dated June 3, 2021 reflecting that he overlooked
(however caused or engineered) six notices of Claims
and Faulknor's CV ……………………………………………….……..Ra687

Cross Motion for Summary Judgment filed 3/30/2021…………..……..Ra691

Six Notices of Claims that Hawkins filed on 3/30/2021
on behalf of Faulknor in opposition to
Summary Judgment ……….. ……………………… …………..…Ra695-709

Cover letter to CV that Faulknor sent to the County on
September 2, 2014………………………………………………….……Ra710

Faulknor's CV that was filed in support of Summary
Judgment on 3/30/2021 that Judge D'Elia
could not see…………………………………………...………...…Ra711

APN Act upside down ………………………………..……..…....Ra728

Certification of Eldridge Hawkins in
support of motion for Reconsideration in Faulknor………………….… Ra731

Six Notices of Claims filed on behalf of Faulknor in Support
of Motion for Reconsideration on 7/1/2021………………….……Ra738-750

Hawkins letter communication to
Judge D'Elia on June 14, 2021Requesting that the
Order dismissing case on summary Judgment be filed
so that he can file his motion for reconsideration……………………Ra751

Order denying Reconsideration by Judge

D'Elia in Faulknor dated 8/6/2021………………………………..…Ra752

Order denying recusal of Judge D'Elia dated

August 6, 2021……………………………………………………….….Ra754

Order denying Hawkins Motion to Transfer Venue
in Faulknor matter September 24, 2021……………………......….Ra755

Order denying reconsideration of All Judge D' Elia's
prior rulings dated August 30, 2021……………………..………..Ra758

Police report #14045086 related to
the Respondent's home dated 12/11/2014…………………………… Ra762

Grievance and Request for Stay Pending Appeal
to Third Circuit Jan 28, 2026…………………………………………Ra764

Substantial Compliance of DSM-5 Turnover
letter Feb 17, 2026 ……………………………………………………Ra769
Attachment with List of names (See Ra612

Respondent's letter to Former Health +Care Employer
To discharge Patients to other agency for their safety 9/8/2013……….Ra772

Respondent's email letter to Former Health Care
Area Supervisor with concerns for Patient safety 4/30/2013……….….Ra775

Respondent's written Whistle Blower Complaint Against Maxim
to the OIG 9/23/2013………………………………………………..Ra776

Respondent's letter to OIG with Concerns related to Maxim
and Agent to assigned to investigate Maxim 12/10/2013…………………Ra785

Letter to Police Officer Romano regarding errors in police
report 7/16/2014…………………………………………………… Ra787

Proof of service to Officer Ramano 7/16/17………………………………Ra790

Mario Portilla's documents related to
early observations 8/7/2014…………………………...…………Ra791

Letter from Eldridge Hawkins to US
Attorney's Office August 29, 2014…………………………………………Ra796

Response to Respondent Portilla from USPS
Regarding mail theft and tampering January 20, 2015…………….…… Ra797

DOF Justice News- Maxin to pay $150 million for
false billings related to 2011 common practice false billing……………. .Ra798

Response from US DOJ to Respondent
with info for FBI with info for FBI related to
wiretaps, stalking hacking of computers and
mail tampering February 10, 2016…………………………………………Ra804

Certification of Dr. Ejiofor stating that his office phone and
Records were hacked and his phone fully controlled after he
Assisted Portilla 12/02/2025……………………………………….………Ra805

Letter from Portilla to US Attorney Dec 6, 2015 related
to wiretaps and And cyber harassment December 6, 2015…………………..Ra808

Proof of Service of Correspondence with Police Report
To Captain Sanabria on 11/29/21……………………………………………Ra810

Letter to Captain Sanabria from Portilla requesting
Status of Computers November 28 2021………………………………….. Ra811

Letter to Captain Sanabria seeking to know
status of computers……..10/18/16………………………………………… Ra814

****Correct March 3, 2025 copy of Portilla's
Complaint against the ECPO (replacement for Ra614)………………… ..Ra815

*****Note that plaintiff Portilla accused the ECPO
***of abandoning its rescue efforts* causing the cyber
crimes to worsen *making them liable***

********Portilla did not accuse the ECPO of the actual cyber crimes.She accused the EPCO of allowing it to happen by failing to act.***

**Portilla did not sue the ECOP for any emotional distress damages because in 2025 when the suit was brought she had no issues with emotional distress She sued the ECPO for injuries to her DAMAGED rights from the Denial of equal protection and related claims**

*******This OLD Notice of Claim dated April 2022***
was attached to the Amended Complaint solely to show that the 6 years SOL for conversion was satisfied against the County of Essex that *Chopra secretly retrieved* and attached to his certification. Chopra did not ask for explanations of statements made in the Notice of claim. He simply wrote parts of statements and came to conclusions………………Ra842

CECILE D. PORTILLA, ATTORNEY AT LAW LLC
7 Glenwood Avenue, Suite 400
East Orange, NJ 07017
Phone (973) 676 5072 Fax (862) 520 3433
Attorney Id: 021212005
Portillalaw@Gmail.com

February 19, 2025

Attn: Clerk
Hon. Mayra V Tarantino
Superior Court of New Jersey
Historic Courthouse
**470 Dr. Martin Luther King, Jr. Blvd.**
**Newark, New Jersey**

Upchurch v City of Orange et al
Docket No. ESX-L-6471-22
OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Dear Court, Clerk and Counsels:

Please accept this letter brief in Opposition to the Defendants Motion for Partial Summary Judgment as filed as within time. The return date was confused with the March trial date. There is no prejudice and there is substantial compliance.

## STATEMENT OF FACTS

Plaintiff hereby relies on her Statement of Material Facts hereto attached as the statement of Facts as if set forth herein

## PROCEDURAL HIOSTORY

Plaintiff adopts the Case jacket as her procedural History

**COUNTER ARGUMENT**

**POINT ONE**
**SUMMARY JUDGMENT STANDARD**

Pursuant to R. 4:46-2, a party is entitled to summary judgment where "there is no genuine issue as to any material fact ... and ... the moving party is entitled to a judgment or order as a matter of law." The movant bears the "burden to exclude any reasonable doubt as to the existence of any genuine issue of material fact" regarding the claims asserted. Judson v. Peoples Bank and Trust, 17 N.J. 67, 74 (1954) (citation omitted). Pursuant to the Supreme court should deny a summary judgment motion where the party opposing the motion has come forward with evidence that creates a 'genuine issue as to any material fact challenged."' Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520,529 (1995) (quoting R. 4:46-2(c)). When the evidence is so one sided that one party must prevail as a matter of law the trial court should not hesitate to grant summary judgment." Id. at 540 ( quotations omitted).

All inferences of doubt are drawn against the movant in favor of the opponent of the motion. The papers supporting the motion are closely scrutinized and the opposing papers indulgently treated, Templeton v. Borough of Glen Rock, 11 NJ. Super. 1, 4 (App. Div. 1950). And it is not to be concluded that palpably no genuine issue as to any material fact exists solely because the evidence opposing the claimed fact strikes the judge as being incredible. Judson 17 N.J at 75.

The plaintiff, as the party opposing the motion for summary judgment, must be accorded all favorable inferences. Judson v. Peoples Bank & Trust Co. of Westfield, supra, 17 N.J. at 75.

The Supreme Court also held that if exists a single, unavoidable resolution of the alleged disputed issue of fact, that issue should be considered insufficient to constitute a "genuine" issue of material fact for purposes of Rule 4:46-2. Anderson v Liberty Lobby, 477 U.S. 242, 250 (1986).

Here, there are material facts in dispute regarding Shannon Booker's and Kimberly Wiederhold's role in the reduction of Plaintiff's income well as well credibility issues that preclude the grant of summary judgment to the defendants.

**POINT TWO**
**ALL DEFENDANTS WERE INVOLVED IN THE TORTIOUS REDUCTION OF THE PLAINTIFF'S INCOME RETROACTIVE TO 2016**

The tort of interference with a business relation or contract contains four elements: (1) a protected interest; (2) malice—that is, defendant's intentional interference without justification; (3) a reasonable likelihood that the interference caused the loss of the prospective gain; and (4) resulting damages. MacDougall v. Weichert, 144 N.J. 380, 404, 677 A.2d 162 (1996).

Shannon Booker and Ms. Wiederhold must not be dismissed from the Complaint because they are being accused of tortious interference with the plaintiff's contract. All defendants aided and abetted in the tortious interference. Simply put, plaintiff was accusing the entire company of malfeasance since she sincerely believed that Inservco know about the practice of disable workers being forced into retirement to prevent Inservco and City of Orange from being responsible for them.

Plaintiff contends that the reduction in income was an INTENTIONAL ACT [to retaliate against her] after she complained about Shannon Booker and asked for her removal from her case.

The Court in looking at all reasonable inferences in the light most favorable to the plaintiff will find that after the plaintiff complained about Shannon Booker, the defendants strategized by having Nancy Fowlkes prepare the letter in retaliation to reduce the plaintiff's income as punishment as there was no legal justification for the reduction that remained until close to her retirement. Even after plaintiff was promoted to Captain SHE WAS EARNING LESS than an Lieutenant and less than the amount she was earning before the income was reduced by Inservco **(Pa653-Pa656; Pa0636; See Counterstatement of facts.)**

On June 21, 2017, plaintiff sent a letter to the management of Inservco complaining about Booker's act in discriminating against a disabled worker.**(Pa653-Pa656; Pa0636, See Pa569-facts and background, Count Eight, Pa0633)** On July 17, 2017, plaintiff received a response from Inservco Management changing Booker to Fowlkes. On July 19, 2018, Nancy Fowlkes acting as a co conspirator sent the plaintiff a letter advising her that her salary would be reduced retroactive to 2016 (Pa0636). **(Pa653-Pa656; Pa0636, See Pa569-facts and background, Count Eight, Pa633)** Plaintiff accused both Wiederhold and Booker of neglecting her care and causing her to be in pain and the disabled condition that she was and asked that both of them be removed from her care. **(Pa653-Pa656; Pa0636, Pa0633, Pa569-facts and background, Count Eight)**

Fowlkes was used to issue the punishment reduction in income against plaintiff who was a whistle Blower against Shannon Booker and the entire Company. **(Pa653-Pa656; Pa0636, See Pa569-facts and background, Count Eight, Pa633).** Fowlkes was used as the instrument to reduce the plaintiff's income unlawfully without justification *retroactively to 2016,* which plaintiff believed was an act of malice without justification causing her prospective loss in income that lasted continued until approximately prior to her retirement. **(Pa653-Pa656; Pa0636, Pa0633, Pa569-facts and background, Count Eight)**

Based on all the above, Summary Judgment cannot be granted to the defendants as such an act would not be in compliance with Summary Judgment standards.

/s/ Cecile D. Portilla
CECILE D. PORTILLA, ESQUIRE

Dated: February 19, 2025

New tab | eCourts Civil | NJ Courts | Enterprise Portal | eCourts Home | eCourts Civil Ca

https://portal.njcourts.gov/webcivilcj/CIVILCaseJacketWeb/pages/civilCaseSearch.faces

| | | | |
|---|---|---|---|
| 02/04/2025 | | The motion filed on 01/17/2025 was rescheduled to 02/14/2025. Oral argument has been requested. You will be notified if oral argument is scheduled. Do not come to the courthouse unless you are so notified. Re: MOTION PARTIAL SUMMARY JUDGMENT [LCV2025138918] | LCV2025276 |
| 02/10/2025 | | ADJOURNMENT REQUEST submitted by PORTILLA, CECILE, DELROSE of CECILE D PORTILLA, ATTORNEY AT LAW on behalf of DEBORAH UPCHURCH against CITY OF ORANGE AGENTS 1-10, INSERVCO INSURANCE COMPANY, CITY OF ORANGE, SHANNEL BOOKER, NANCY FOWLKES ET AL. | LCV2025310 |
| 02/11/2025 | | The "Trial" Proceeding for ESX-L-006471-22 scheduled for 03/17/2025 has been: "Adjourned-designated Trial Counsel Unavail". | LCV2025322 |
| 02/11/2025 | | The "Tr for 06/ | 322 |
| 02/11/2025 | | The mo been re courthc [LCV20 | 327 |
| 02/12/2025 | | COURT | 331 |
| 02/19/2025 | | OPPOSI PORTILI AGENTS OF ORA | 401 |
| 02/24/2025 | | REPLY E LLP on KIMBER | 442 |
| 02/25/2025 | | CLERK your op be prov | 452 |
| 02/25/2025 | | CLERK paper h prompt | 452 |
| 02/26/2025 | | CORRESPONDENCE submitted by HAWKINS, ELDRIDGE, T of ELDRIDGE HAWKINS on behalf of DEBORAH UPCHURCH against CITY OF ORANGE AGENTS 1-10, INSERVCO INSURANCE COMPANY, CITY OF ORANGE, SHANNEL BOOKER, NANCY FOWLKES ET AL. *LINKED FILING* | LCV2025460 |
| 02/27/2025 | | ADJOURNMENT REQUEST submitted by HAWKINS, ELDRIDGE, T of ELDRIDGE HAWKINS on behalf of DEBORAH UPCHURCH against CITY OF ORANGE AGENTS 1-10, INSERVCO INSURANCE COMPANY, CITY OF ORANGE, SHANNEL BOOKER, NANCY FOWLKES ET AL. | LCV2025474 |
| 02/27/2025 | | GENERAL CORRESPONDENCE submitted by CASAS, ANTONIO, JOSE of WINDELS MARX LANE & MITTENDORF LLP on behalf of INSERVCO INSURANCE COMPANY, SHANNEL BOOKER, NANCY FOWLKES, KIMBERLY ANN WIDERHOLD against DEBORAH UPCHURCH | LCV2025476 |

**Documents**

- Select All
- OPPOSITION TO MOTION
- Certification of Deborah Upchurch
- Appendix
- Volume 1
- Volume 2
- Volume 3
- Volume 4
- Volume 5
- Volume 6
- Volume 7
- Volume 8
- Exhibit C
- Statement of Material Facts
- Response to defendants statement of facts

**Linked Filings**

MOTION PARTIAL SUMMARY JUDGMENT - LCV2025138918

Cancel | Save/Print Selected Documents

Type here to search

New tab | Emotion | New tab | eCourts | eCourts | eCourts | KM_45 | KM_45 | KM_45 | KM_45

https://portal.njcourts.gov/webcivilcj/CIVILCaseJacketWeb/pages/civil/search.faces?cid=1

| | | | | |
|---|---|---|---|---|
| 05/24/2024 | | ✉ | The motion filed on 05/23/2024 will be decided on 06/20/2024. Do not come to the courthouse because no oral argument has been requested. The court's decision will be provided to you. Re: MOTION FOR SUMMARY JUDGMENT [LCV20241321949] | LCV20241 3 |
| 06/07/2024 | 📎 | ✉ | ADJOUR… PORTILL… AGENTS… POLICE… | |
| 06/07/2024 | | ✉ | The mo… courtho… provide… | |
| 07/10/2024 | 📎 | ✉ | GENERA… PORTILL… AGENTS… OF ORA… | |
| 07/10/2024 | 📎 | ✉ | CROSS … CECILE… OF ORA… ORANGE… | |
| 07/10/2024 | 📎 | ✉ | MOTION… PORTILL… AGENTS… OF ORA… | |
| 07/11/2024 | | ✉ | The mo… courtho… provide… | |
| 07/11/2024 | | ✉ | The motion filed on 07/10/2024 will be decided on 08/16/2024. Do not come to the courthouse because no oral argument has been requested. The court's decision will be … | LCV2024 |

**Documents**

- [ ] Select All
- [ ] MOTION FOR SUMMARY JUDGMENT
- [ ] Proposed Order
- [ ] Statement of Material Facts
- [ ] Brief/Letter Brief
- [ ] CERTIFICATION OF CECILE D. PORTILLA, ESQUIRE
- [ ] CERTIFICATION OF DEBORAH UPCHURCH
- [ ] APPENDIX INDEX
- [ ] Part 1 Pa0001-Pa0077
- [ ] Part 2 Pa0078-Pa0224
- [ ] Part 3 Pa0225-Pa0371
- [ ] Part 4 Pa0372-Pa0478
- [ ] Part 5 Pa0479-Pa0578
- [ ] Part 6 Pa0579-Pa0654
- [ ] Part 7 Pa0655-Pa674
- [ ] Part 8 Pa0675-Pa0800
- [ ] ECOURTS BROKEN ON 7/9/2024 PREVENTING FILING OF DOCUMENTS

**Linked Filings**

CROSS MOTION FOR SUMMARY JUDGMENT - LCV20241948512

Cancel | Save/Print Selected Documents

90°F Sunny | Search

CECILE D. PORTILLA, ATTORNEY AT LAW LLC
7 Glenwood Avenue, Suite 400
East Orange, NJ 07017
Phone (973) 676 5072 Fax (862) 520 3433
Attorney Id: 021212005
Portillalaw@gmail.net

ELDRIDGE HAWKINS LLC, Attorney at Law
Attorney ID No. 214731967
60 Evergreen Place, Suite 510
East Orange, New Jersey 07018
Tel: (973) 676-5070 Fax: (973) 676-7356
Email: hwklaw@aol.com
**ATTORNEYS FOR THE PLAINTIFF**

| | |
|---|---|
| DEBORAH UPCHURCH<br><br>Plaintiff<br><br>v.<br><br>INSERVCO INSURANCE SERVICES, INCORPORATED (AKA) PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY, CITY OF ORANGE, ORANGE POLICE DEPARTMENT, CHRISTOPHER HARTWYK, NANCY FOLKES, SHANELL BOOKER, KIMBERLY ANN WEIDERHOLD SYLVIA BACAAN, CITY OF ORANGE AGENTS (1-10), INSERVCO AGENTS (1-10) JOHN DOES (1-10), JANE DOES (1-10) ABC CORPORATIONS (1-4) (FICTITIOUS PARTIES identities unknown)<br><br>Defendants | SUPERIOR COURT OF NEW JERSEY ESSEX COUNTY: LAW DIVISION<br><br>DOCKET NO: ESX-L-6471-22<br><br>**REQUEST FOR JUDICIAL NOTICE OF DOCUMENTS THAT WERE PREVIOUSLY FILED ON 7/10/2024, THAT ARE BATE STAMPED Pa001-Pa800 IN OPPOSITION TO SUMMARY JUDGMENT**<br><br>**AND OUR REQUEST THAT THE COURT DISREGARDS ALL DOCUMENTS IDENTIFIED AS <u>VOLUMES ONE TO VOLUMES EIGHT</u> THAT WERE FILED ON 2/19/2025, AS THEY WERE NOT UPLOADED BY THE UNDERSIGNED ATTORNEY, WHO IS A WHISTLE BLOWER AGAINST AN FBI AGENT, WHO LIKELY UPLOADED THEM, WHO HAS BEEN COMMITTING CRIMES ON ECOURTS TO SABOTAGE THE UNDERSIGNED'S WORK IN RETALIATION**<br><br>**Pursuant to NJRE 201 (b)4,(c)(b)** |

Cecile D. Portilla of full age with knowledge of the penalties for false swearing certify as follows:

1. I am an attorney at law of the State of New Jersey and the Attorney for Deborah Upchurch.
2. I am familiar with the facts of this case and able to make this certification.
3. We are requesting that the Court take Judicial Notice of previously filed documents which we have hereto attached pursuant to NJRE 201 **(b) 4(c)(b).**
4. Please be aware that the volumes identified as **Volume One to Volume Eight** that were filed on 2/19/2025 in the above captioned matter, were NOT uploaded by us.
5. **We reject Volume One through Volume Eight as unauthorized and Not validly** filed documents, and renew our request for paper filing accommodation to prevent these crimes upon us.
6. Pursuant to NJRE 201 **(b) 4,** the court may judicially notice a fact, including records of the court in which the action is pending, and of any other Court of this State or Federal Court sitting for this state.
7. The undersigned is a 2013 Whistle Blower against an FBI Agent who threatened retaliation.
8. The acts of retaliation over the years, have been *extreme* and outrageous.
9. I am entitled to Whistle Blower Protection.
10. I have made multiple previous complaints to the Court Administration.
11. I recently made a motion at the Supreme Court Level in which I also reiterated my request for paper filing to prevent Crimes against this Whistle Blower.
12. **Paper filing is considered reasonable accommodation in this advanced cyber age.**

13. **The ability of others to file documents on our behalf without our consent, is a denial of access to Courts and denial of our due process rights in violation of Article 1 para 1 of the New Jersey Constitution, and fraud upon the Court among other violations.**

14. We have filed a Notice of Claim against the FBI.

15. I have reported many strange occurrences to the Court regarding multiple invalid failures to prosecute notifications on our case jackets in various counties.

16. *The ability of others to send out failures to prosecute notifications on eCourts is evidence that those who are committing these crimes are doing it from eCourts itself! Simply put, they have penetrated the administrative component of the eCourts system.*

17. I have reported problems with documents being rearranged in the ACMS system to cause our documents that were filed first in time to numerically appear as if they were filed ***after*** our adversaries.

18. *The ability of others to interfere with the ACMS system, is also conclusive proof that these acts are being committed by individuals who have direct ability to interfere with the administrative component of eCourts.*

19. I have made many trips to Trenton to report my observations to Administration.

20. We have reported filing difficulties that includes: **multiple system exception errors**; repeatedly being blocked from efiling; documents upside down, sideways,



Ra572

blackened, redacted, hyperlinks activated, numbers erased, tampered and other acts of interference.

21. We have reported to the Court administration that others have caused documents that are filed on eCourts to disappear (are not visible) after they are filed until the next day.

22. When eCourts displays these documents the next day, the documents are *not* the same.

23. I have reported multiple situations where I have been told on more than one occasion,

that my documents that I filed on eCourts could not be seen by an attorney.

24. I have reported several situations where the Judge and staff appeared to have not been able to see our documents and ruled against us in error.

25. On January 31, 2025, others uploaded documents to the Supreme Court that did not even match the required submission, which shows that there is crime at every level of eCourts.

26. Simply put, others who are not Judges are able to influence the outcome of litigation.

27. The previously filed **"Pa"** Exhibits, that we downloaded from eCourts on 2/19/2025, and immediately reuploaded without scanning them on 2/19/2025 to support our opposition, *were not identified as volumes.*

28. **Pa001-Pa800** that are now attached, were previously filed in Support of and in Opposition to Summary Judgment by the plaintiff on 7/10/2024.

29. Because **Pa001-Pa800 were previously filed with the court on a similar matter**, we request that the Court accept them **in lieu of volumes one through eight** that were not uploaded by us.

30. This request is based on good cause and not for the purpose of delay.

I certify that the above statements made by me are true. I am aware that if any of the foregoing statements are willfully false that I am subject to punishment.

/s/ Cecile D. Portilla
CECILE D. PORTILLA, ESQUIRE

Dated: February 26, 2025

Cc: Paige Ennis

Michelle M. Smith, Clerk of the Superior Court

P.S.

- I am aware that the FBI has told others, including the West Orange Police, that I am "Psychotic." Any such diagnosis was done at the instruction of FBI Agents.
- A few years ago, when my doctor became aware of what was told to the police, he wanted to set the record straight. All his calls to the police were ***blocked.***
- The plaintiff's brief in the *Portilla v Maxim* case was tampered on eCourts.
- I felt it necessary to make these clarifications because the FBI placed me on notice on 2/26/2025 as to their intent to convey to others that I have a mental problem.
- I am a perfectly healthy Professional Registered Nurse and Lawyer, who saw fraud and reported it. I went the extra mile to contact the OIG and report my concerns about the Special agent who was assigned to investigate the problem that I reported.
- I recently had to return medical records of another individual to her doctor, because I knew that the doctor ***did not*** ***write certain words*** that were written in his report.

I had to leave my home and go to Mr. Hawkins' office to scan this document because the FBI disallowed me from using my printer

*Additional Certified facts by Cecile D. Portilla, Esquire*

CECILE D. PORTILLA, Attorney at Law LLC
Glenwood Avenue, Suite 400
East Orange, NJ 07017
Phone (973) 676 5072
Fax (862) 520 3433
Attorney Id: 021212005
Email:portillalaw@gmail.com
**Attorneys for Deborah Upchurch**

ELDRIDGE HAWKINS, ESQ
ELDRIDGE HAWKINS, LLC
Attorney ID No. 214731967
60 Evergreen Place, Suite 510
Tel: (973) 676-5070
Fax: (973) 676-7356
Email: hwklaw@aol.com

| | |
|---|---|
| DEBORAH UPCHURCH<br>Plaintiff<br><br>v<br><br>CITY OF ORANGE TOWNSHIP ET. AL<br><br>Defendants | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: ESSEX COUNTY<br><br>DOCKET NO: ESX-L-6471-22<br><br>Civil Action<br><br>**NOTICE OF MOTION FOR ACCOMMODATION TO PAPER FILE DOCUMENTS ON ECOURTS**<br><br>**PURSUANT TO NJ CEPA; NJSA 10:1-2, NJSA 10:5-12 (d) (e) (f)** |

**TO:**

***All Counsels of Record***

**PLEASE TAKE NOTICE** that on 5/23/2025, the undersigned attorney for Plaintiff Deborah Upchurch, will move before the Superior Court of New Jersey for an Order to Accommodate this Whistle Blower attorney, in being allowed to paper file documents on eCourts on behalf of the plaintiff.

**PLEASE TAKE FURTHER NOTICE** that in support of this Motion, the undersigned will rely on the attached Certification of Counsel. A proposed form of Order is attached hereto.

**PLEASE TAKE FURTHER NOTICE** that the undersigned does not require Oral Argument unless there is opposition to the Motion.

Cecile D. Portilla
CECILE D. PORTILLA, ESQUIRE

Dated: April 25, 2025

Cecile D. Portilla, Attorney At Law LLC
Glenwood Avenue, Suite 400
East Orange, NJ 07017
Phone (973) 676 5072 Fax (862) 520 3433
Attorney Id: 021212005
Email:portillalaw@gmail.com
**Attorneys for Deborah Upchurch**

ELDRIDGE HAWKINS LLC
Attorney ID No. 214731967
60 Evergreen Place, Suite 510
Tel: (973) 676-5070
Fax: (973) 676-7356
Email: hwklaw@aol.com

| | |
|---|---|
| DEBORAH UPCHURCH<br>Plaintiff<br><br>v<br><br>CITY OF ORANGE TOWNSHIP ET. AL<br><br>Defendants | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: ESSEX COUNTY<br><br>DOCKET NO: ESX-L-6471-22<br><br><u>Civil Action</u><br><br>**CERTIFICATION OF CECILE D. PORTILLA IN SUPPORT OF REQUEST FOR ACCOMMODATION TO PAPER FILE DOCUMENTS ON ECOURTS**<br><br>**PURSUANT TO NJ CEPA; NJSA 10:1-2, NJSA 10:5-12 (d) (e) (f)** |

***Pursuant to N.J.S.A. 10:1-2:***

> ***All persons within the jurisdiction of this state shall be entitled to the full and equal accommodations, advantages, facilities and privileges of any places of public accommodation, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. <u>Id.</u>***

***Pursuant to <u>Ptaszynski v. Uwaneme</u>, 371 N.J.Super, 333 (App. Div. 2004):***

> ***The Superior Court of New Jersey, is a place of Public Accommodation within the meaning of the NJLAD. <u>Id.</u>***



Cecile D. P[illegible]

Cecile D. Portilla of full age with knowledge of the penalties of false swearing hereby certify as follows:

1. I am an attorney at law of the State of New Jersey and the co-counsel for Deborah Upchurch.
2. I am familiar with the facts of this case and able to make this certification.
3. I am a 2013 whistle Blower against an FBI Agent who has threatened to destroy my law practice, cause me to work for free and become homeless.
4. I am entitled to Whistle Blower protection.
5. Based on information and belief, this Agent has been unlawfully accessing Court documents and tampering them. I have put Courts, Court Clerks and law enforcement on Notice.
6. Over the years, I have gathered enough evidence to substantiate my statements that there is ***unlawful administrative access to eCourts by these agents.***
7. In January 2025, I was able to obtain conclusive proof that others perceived to be the FBI Agent (and those assisting him), have ***direct unlawful administrative access to the Supreme Court's electronic site*** and were uploading documents to eCourts.
8. On January 31, 2025, those perceived to be FBI Agents uploaded several documents entitled "Exhibit" purportedly from the Appellate Division to the Supreme Court on the matter of Dr. Mavis Faulknor v County of Hudson #



Cecile D. Portilla

090218, for the clear purpose of sabotaging Dr. Faulknor's Petition for Certification.

9. The documents that were uploaded from the Appellate Division to the Supreme Court's eCourt on January 31, 2025, by perceived FBI Agents, did not even match the documents that they purported to accompany as *they had different Appellate Division date stamps* from the Brief and Appendices.

10. *Multiple* unjustified failures to prosecute notifications are being sent out in the Superior Court by these persons, perceived to be FBI Agents, to harass us, causing us to file a Notice of Claim against the Superior Court as we were repeatedly required to pay the motions costs to get dismissed defendants reinstated.

11. These perceived Federal Agents are removing email addresses from case docket sheets to prevent court notifications from being sent to us and other lawyers, rearranging documents in the ACMS and causing our documents to appear as if they are filed after the documents filed by other attorneys.

12. Only persons with ***direct unlawful administrative access***, can make changes to Court docket sheets in such an outrageous manner.

13. These acts are *crimes* against the courts.

14. One defense attorney on my personal case against Comcast, recently contacted

Attorney Eldridge asking that he send documents directly to her, as she was no longer receiving communications from eCourts.

15. The defense attorney found it strange that eCourts *suddenly stopped sending her court notifications to her on my personal matter.*

16. We have also found ourselves *suddenly not receiving notification* from ecourts on various matters.

17. Even though the perceived FBI Agents clearly hate Co-Counsel Attorney Hawkins for assisting me with matters related to my 2013 whistle blowing, they hate the undersigned *much more*, and as such, have removed my name as attorney of record from multiple docket sheets of my clients' cases, and substituted Attorney Hawkins' name as the attorney of record to harass me.

18. Only persons with ***direct administrative access to eCourts*** can make these types of changes.

19. These unlawful changes made to the docket sheets without our knowledge, have caused interference with Court notifications not being received by either of us.

20. We have had cases dismissed because (based on information and belief), the Judge and Court staff *could not see* documents that were uploaded and filed on a Court's web site.

21. I have been told on two occasions that an attorney *could not see* my submissions that were attached to the Superior Court's web site.



Ra581

22. Thus, we believe that our documents are being blocked from view on the Court site as desired by these agents.

23. When I down load documents from eCourts that are filed by defendants, the documents have the actual names that the defendants gave to them.

24. For example, a document filed as "**defendant's brief**" or defendant's "**Exhibit A**" will retain those names when downloaded to my computer.

25. In contrast, when documents filed by the undersigned are downloaded, they do not have the names that we gave to them. They are identified by strange ***numbers*** or ***codes*** which clearly indicate that crimes are occurring upon eCourts.

26. The number of typos, grammar errors, ebonics and patios in my briefs over the years since my whistle blowing activity shocks the conscience.

27. These attacks and acts of interferences are occurring in multiple Courts and are done with the intent to falsely declare me incompetent and unfit in retaliation for my whistleblowing.

28. I even received a fake Court Order from an Administrative law Judge's email address back in approximately 2014.

29. Upon asking the judge the reason for sending an order of dismissal that contradicted the settlement agreement between the parties, the Judge denied sending the Order.

30. Upon asking one attorney to explain one of his multiple *motions to compel my compliance* in another matter, the attorney could not provide any explanation.

31. I believe that these persons are collecting all these falsely created documents that reflect my alleged deficiency for unlawful reasons.

32. I feel so strongly about the unlawful acts by alleged government agents especially the crimes upon our courts, that I am sending a letter to the New Jersey legislature proposing that our Constitution be amended to change the definition of ***TREASON*** to include ***unlawful cyber accessing and interference with Court Documents and Court Orders by any person.***

33. *Rearranging documents in the ACMS, removing or adding exhibits, blackening or blurring words, uploading, deleting paragraphs, creating hyperlinks, turning documents upside down on eCourts causing Appellate documents to be thrown out can dictate the outcome of litigation.*

34. *Blocking judges and clerks from seeing documents on eCourts are acts that can dictate the outcome of litigation.*

35. *In other words, these criminals by their interference can determine who wins or loses a case.*

36. *Determining who should prevail on lawsuits and Court matters, is a* ***judicial function*** *pursuant to Article VI of the New Jersey Constitution.*

37.*Because the Judiciary is the third branch of government, these acts upon the Court and Court Documents clearly amount to a* ***Hostile takeover,*** *or the usurping of the authority of the Third Branch of our Government.*

38.*Simply put, it is* ***TREASON.***

39.*Exactly what types of human beings are so full of themselves that they think that they* ***can get away*** *with hacking Court documents?*

40.*I have been studying the Constitution and Federal Law since the harassment started, and I have found no law to date that provides immunity to FBI Agents who* ***commit crimes*** *upon the Courts and American citizens.*

41.*Because these perceived Agents have* ***direct administrative access to eCourts****, it may be difficult for the IT department of the Courts to identity who they are.*

42.These persons have absolutely no respect for our Courts, people's rights or people's privacy.

43.I am compelled to mention that Attorney Eldridge Hawkins assisted me with matters related to my whistle blowing and has become a victim.

44.On one occasion, I met with Attorney Hawkins in his office and wrote words on a yellow pad that I did not want to verbalize orally.

45. I recall saying that I knew that the walls have ears thus I will "write the words as opposed to saying them."

46. I even asked him to hold the yellow pad upside down to prevent any mysterious camera that was inside the ceiling from capturing my words.

47. Days later, perceived FBI Agents advised me of the words that were written on a yellow pad in Attorney Hawkins' Office.

48. Thus, it is clear to me that these person(s) **broke in** to Attorney Hawkins office, either by bypassing the security camera or asking the owner of the building to let them, in order read my written communication to Eldridge Hawkins, Esquire.

49. Approximately two years ago, I consulted with another lawyer in his private offices in Morristown on a private matter. I intentionally did not take my cell phone with me. Days later, these perceived FBI Agents were able to basically let me know the contents of my private communication in another attorney's private office!

50. While it is very convenient to eFile, the interference is creating a hardship, as persons hell bent on retaliation since 2013, ***have unlawful administrative access to eCourts*** and are making changes to our documents.

51. This justifies the need for whistle blower protection and accommodation.

52. The United States Supreme Court has expressed that whistleblowing plays an especially important role in protecting the public welfare. See Murray v UBS Securities, 601 U.S. 23 (2024).

53. These persons *broke into my home and stole documents; placed my doctor under surveillance and hacked his office computers seeking fruit of the poisonous tree to have his license taken away as punishment for helping me.*

54. *These persons broke into the law office of the attorney who assisted me with my whistle blowing case and orchestrated multiple Audits upon his Law offices to harass him as punishment for helping me.*

55. *They even knew when the Audits would take place.*

56. *Based on information and belief, this Federal Agent also unlawfully accessed H&R Block and injected a bogus multimillion dollars write off in my tax documents, which I would not have been able to explain to the IRS had the accountant not caught it.*

57. *Based on information and belief these Agents blocked my request to my student loan carrier for a reduction in my monthly repayment amount, and provided my carrier with* ***false information****, causing the carrier to triple the monthly payments amounts to cause me hardship.*

58. *My Uber driver who delivers my mail to prevent FBI mail theft, was identified as* ***deceased*** *in the credit reporting system when he tried to purchase a new car.*

59. *His* ***deceased status*** *prevented him from buying the car he desired.*

60. *My Uber driver has asked me "what is the purpose of having a Court" if these persons can do all these things and get away with it?*

61. CEPA, like [LAD], seek to protect the civil lights of citizens. See Kolb v.

Bums, 320 N.J. Super. 467,477 (App. Div.1999).

62. Both the NLAD and CEP A make it illegal for any person to take reprisals against another because that person has opposed any practices that are injurious to others. Abbamont v. Piscataway Twp. Bd. of Educ., 138 N.J. 405,431 (1994); Dzwonar v. McDevitt, 177 N.J. 451,461 (2003).

63. I make this request pursuant to New Jersey CEPA, since I blew the whistle in role of a health care provider to protect low-income minority patients from unlawful acts.

64. The Health Care agency where I functioned as the *Director of Clinical Services*, was billing for performing patient assessments and received payment for some assessments that were NEVER done but falsified.

65. The Business Manager, as opposed to the *Director of Clinical Services*, was allowed to review the Nurses Notes to determine compliance by the Nursing staff.

66. I reported Medicaid/Medicare Fraud as part of the same matter and was later compelled to blow the whistle against the Federal Agent assigned to investigate the matter after it became crystal clear that he was trying to let the health care agency slide.

67. This request is also made pursuant to NJSA 10:1-2, NJSA 10:5-12 (d) (e) (f)

68. This request for Accommodation is based on good cause and not for the purpose of delay.

69. It is my understanding that I am not required to file a motion to support a request for accommodation.

70. A grant of this request would allow the undersigned to resubmit the current brief and Appendices on paper.

71. I still want to reserve the option to efile on other occasions due to convenience.

I certify that the above statements made by me are true. I am aware that if any of the foregoing statements are willfully false that I am subject to punishment.

/s/ Cecile D. Portilla
CECILE D. PORTILLA, ESQUIRE

Dated: April 21, 2025

ELDRIDGE HAWKINS LLC
Attorney At Law
Attorney ID No. 214731967
60 Evergreen Place, Suite 510
East Orange, New Jersey 07018
Tel: (973) 676-5070 Fax: (973) 676-7356
Email: hwklaw@aol.com

February 8, 2026

Disciplinary Review Board
R.J. Hughes Justice Complex
25 Market Street Trenton, New Jersey 08625

Timothy Ellis, Chief Ethics Counsel
Disciplinary Review Board
R.J. Hughes Justice Complex
25 Market Street Trenton, New Jersey 08625

OAE
Alexandra Gitter, Deputy Ethics Counsel
Johanna Barba, Director, OAE
Office of Attorney Ethics
840 Bear Tavern Road
Ewing, New Jersey 08625

**RE:**

**In The Matter of Cecile D. Portilla, Esq.**
**Docket No. DRB-XIV-2025-0257E**

**Request For Accommodation Under N.J.S.A. 34:19-1 Et Seq., and Request for Removal of Dr. Reeves as The Examining Physician**

Dear Members of the OAE and DRB:

Please accept this correspondence as a formal request for accommodation under the New Jersey Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19-1 et seq., on behalf of Ms. Cecile D. Portilla. As you are aware, Ms. Portilla is a 2013 whistleblower who reported child endangerment and Medicare/Medicaid fraud while serving as a Director of Nursing at a Private Health Care Agency.

Her disclosures implicated not only the private healthcare entity involved, but also a federal agent assigned to investigate the matter, whose handling of the case raised serious

concerns. Based on her direct observations, Ms. Portilla reasonably believed that the Health Care Agency was not being properly monitored by the person responsible for the oversight, allowing the misconduct and patient neglect to continue into 2013, despite Maxim's prior federal settlement agreement which included a mandatory period of continued monitoring.

Her report was made in good faith, in the interest of patient safety and compliance with federal law. CEPA protects employees who disclose such misconduct, including misconduct by government officials. Following her disclosures, Ms. Portilla experienced a pattern of retaliation that persisted for years.

## I. Request for Accommodation Regarding Medical Records and HIPAA Forms

Ms. Portilla respectfully requests that, if she is compelled to turn over medical records or a HIPAA authorization, such materials not be placed in any electronic system. This request is grounded in documented cybersecurity interference affecting several medical providers.

Over the past several years, Ms. Portilla has invested substantial resources in her own cybersecurity protection. While she has made such investment, she cannot guarantee the safety of the communication systems being used by others. As shown, there is still evidence of interference on eCourts, after she has repeatedly reported concerns with its systems since 2022.

Multiple independent witnesses—including Dr. Ejiofor and another physician with robust cybersecurity systems—have personally observed irregularities affecting their equipment while handling matters related to Ms. Portilla

Given this history, Ms. Portilla cannot, in good conscience, permit her HIPAA forms or medical records to be transmitted electronically. Should the courts ultimately deny her pending constitutional challenge, she will comply under protest, but only through hand-delivery with explicit instructions prohibiting electronic storage or transfer.

## II. Evidence of Interference and the Need for Safeguards

The OAE is already aware that Ms. Portilla is a "special victim." Mr. Chopra has acknowledged concerns regarding interference with medical providers' records as he indicated that he read a certification containing such information on eCourts.

Dr. Ejiofor certified that his office equipment was unlawfully accessed. Another physician reported difficulty controlling his cursor while drafting documents related to her case.

Additionally, Ms. Portilla previously discovered that an MRI referral form—intended for a knee injury—had been altered to list "Anxiety and Depression" as the purpose of the test. The referring physician confirmed he did not write that. This raises legitimate concerns about the integrity of her medical records.

These incidents are not speculative. They are corroborated by independent witnesses and are consistent with the pattern of retaliation she has endured since her whistleblowing activity.

**III. Clarifying the Source of eCourts Interference**

It is essential to correct any misconception that the irregularities occurring on eCourts originate from Ms. Portilla's devices or from any "hacker" using her computers as a point of entry. The evidence demonstrates the opposite.

Let us be unequivocal: the anomalies affecting eCourts cannot be performed from Ms. Portilla's computer, nor from any device under her control. Her access credentials do not permit her to:

- alter case jackets,
- modify ACMS arrangement,
- remove her name from docket sheets
- change docket sequencing,
- generate multiple erroneous "failure to prosecute" notices, or
- create active hyperlinks in filed documents after submission.

These actions require administrative-level permissions within the judiciary's internal systems. They are not functions available to attorneys, nor can they be executed through ordinary cyber intrusion into a private attorney's device.

The nature of the anomalies themselves proves this. They involve:

1. changes to official court records,
2. perceived blocking of documents on eCourts causing them to be repeatedly overlooked by staff.
3. post-filing modification of documents stored on judiciary servers,

4. removal of her name from case jackets
5. alterations that appear only after documents are uploaded into the court's system.

These are actions that can only be performed by individuals with internal access or by actors exploiting vulnerabilities within the judiciary's own infrastructure. They implicate systemic or administrative-level failures—not any conduct by Ms. Portilla.

Multiple independent witnesses, including Dr. Ejiofor, Richard Douglas, and another physician with advanced cybersecurity systems—have observed interference affecting their own equipment when handling matters related to Ms. Portilla. This further confirms that the source of the interference is external to Ms. Portilla, and not originating from her devices, network, or conduct.

To suggest otherwise is not only technically impossible, it diverts attention from what should be the OAE's primary concern: the integrity of the judiciary's electronic systems and the possibility that individuals with unauthorized access are manipulating filings in a manner that prejudices an attorney under investigation.

**IV. Retaliatory Conduct and Attempts to Intimidate Ms. Portilla**

Over the years, individuals whom Ms. Portilla reasonably perceives to be retaliating against her for her whistleblowing have taken deliberate steps to convince her that the OAE "knew who they were" and was aligned with them. These communications were designed to intimidate her, undermine her confidence, and create the impression that the very agency charged with regulating attorneys was somehow aware of—or complicit in—the harassment she was experiencing.

These attempts at psychological pressure are consistent with the broader pattern of retaliation she has endured since reporting misconduct involving a federal agent. They further underscore the need for heightened safeguards, transparency, and neutrality in the OAE's handling of her matter.

**V. Concerns Regarding Surveillance and Mischaracterization**

During her ethics interview, Ms. Portilla described early post-whistleblowing experiences involving unexplained surveillance. For example, when she attempted to borrow a phone at a gas station in Morristown—a location she had never visited—the attendant emerged

with a phone before she even asked. This suggests that third parties were monitoring her movements and influencing others.

Ms. Portilla provided witnesses to the acts of interference including Eldridge Hawkins, Esquire and Ronald Morrison. Ronald Morrison was an important witness whom Ms. Gitter said that she would contact but failed to do so.

Deputy Ethics Counsel Gitter has already stated in an August 18, 2025, email that Ms. Portilla was being investigated for **"apparent paranoia." (Exhibit A).** Eldridge Hawkins, Esquire, made clear that upon seeing evidence to the contrary, he had no basis to believe that Ms. Portilla was paranoid. Even if Ms. Portilla is paranoid, that does not affect her ability to practice law. Even if she is suspicious, she has had just cause.

Because Ms. Gitter has already stated that she is investigating Ms. Portilla for Apparent Paranoia, her request for all medical records over a ten-year period under these circumstances' functions as a pretext for perceived disability discrimination, in violation of:

N.J.S.A. 10:1-2

N.J.S.A. 10:5-4 and 10:5-4.1

N.J.S.A. 10:5-12(d), (e), (f)

Compelling disclosure of private psychiatric communications constitutes an irreparable invasion of privacy. Once breached, such confidentiality cannot be restored—even if Ms. Portilla ultimately prevails on appeal.

## VI. Statutory and Constitutional Concerns Regarding Rule 1:20-12(b)

The Legislature enacted N.J.S.A. 30:4-27.1 et seq. to protect individuals from facing involuntary psychiatric procedures. No comparable statute exists for orthopedic, immunological, cardiologic, dermatologic or other conditions. The Legislature recognized the unique stigma and potential for abuse in mental-health-related inquiries.

Rule 1:20-12(b) provides:

> *"Whenever the Director presents evidence which reasonably brings into question the capacity of an attorney to practice law... the Board shall direct that the attorney submit to such medical examination as may be appropriate..."*

This rule requires:

1. Evidence,
2. Presented to the Board related to **capacity**
3. Before any medical examination is ordered.

Due process under the Fourteenth Amendment and Article I, Paragraph 1 of the New Jersey Constitution requires objective standards for determining "capacity." If each OAE member applies a different subjective definition, the rule becomes unconstitutionally vague.

We therefore request:

- Disclosure of the evidence presented to the Board that allegedly calls Ms. Portilla's ***capacity into question.***
- Clarification of the ***standard used*** to determine "capacity " before a medical examination is warranted.

A doctor's report cannot serve as the predicate evidence required before a doctor is appointed.

Chief Ethics Counsel Ellis stated on February 6, 2026 that N.J.S.A. 30:4-27.1 et seq. does not apply to the OAE. If so, Rule 1:20-12(b) creates a subclass of citizens—attorneys—who are denied statutory protections afforded to all others. This violates equal protection.

We are seeking relief via an injunction and asking the Third Circuit to determine whether Rule 1:20-12(b) is unconstitutional.

**VII. Request for Removal of Dr. Reeves**

Deputy Ethics Counsel Gitter copied Dr. Reeves on communications regarding Ms. Portilla. This creates a risk of bias, particularly given the subjective nature of psychiatric evaluations. Dr. Reeves now anticipates evaluating someone already labeled "paranoid," which undermines neutrality.

We were informed that attorneys are typically offered a panel of three physicians. That option appears to have been denied here. Given the OAE's stated intent to investigate "paranoia," and its refusal to consider contrary evidence from witnesses such as Ronald Morrison, Dr. Ejiofor, Richard Douglas, and Mario Portilla, the selection of Dr. Reeves is inappropriate.

Should the courts ultimately require disclosure of records, we request assignment of a different, unbiased physician.

**VIII. Additional Context**

Ms. Portilla's letter to President Trump was not irrational. She has also petitioned the New Jersey Legislature **(Exhibit B)** regarding systemic issues affecting her Workers' Compensation clients. She believes—correctly—that she has a constitutional right to petition her government. Her actions reflect civic engagement, not instability.

Both Ms. Portilla and the undersigned perceive the current actions as retaliatory. If she is compelled to turn over records, such turnover is involuntary, under extreme duress, and solely due to the threat of suspension.

**IX. Conclusion**

There is no emergency. Ms. Portilla should be permitted to obtain judicial review of the constitutionality of Rule 1:20-12(b) before being forced to surrender sensitive medical information.

For all the reasons stated above, we respectfully request:

1. Accommodation under CEPA prohibiting electronic transmission or storage of Ms. Portilla's medical records or HIPAA forms.

2. Disclosure of the evidence and standards used to invoke Rule 1:20-12(b).

3. Removal of Dr. Reeves and assignment of a neutral physician should an examination ultimately be required.

Respectfully submitted,

/s/ Eldridge Hawkins
ELDRIDGE HAWKINS, ESQ.

/s/ Cecile D. Portilla
CECILE D. PORTILLA, ESQUIRE

*Authored by Co-Counsel*

cc: Rajesh Chopra, Investigator
Office of Attorney Ethics
840 Bear Tavern Road
Ewing, New Jersey 086

**ELDRIDGE HAWKINS LLC**
**Attorney At Law**
**Attorney ID No. 214731967**
60 Evergreen Place, Suite 510
East Orange, New Jersey 07018
Tel: (973) 676-5070
Fax: (973) 676-7356
Email: hwklaw@aol.com

September 12, 2024

Craig Coughlin, Speaker of the General Assembly
Senator Nicholas P. Scutari, Senate President
Michael Venezia, State Assemblyman
Carmen Theresa Morales, Assemblywoman
Britnee N. Timberlake, Senator

The Office of Legislative Services
State House Annex
125 West State Street
P.O. Box 068
Trenton, NJ 08625-0068

**RE: PROPOSED CHANGES TO THE WORKERS' COMPENSATION ACT OF NEW JERSEY (NJSA 34:15-1 ET SEQ) BY CECILE D. PORTILLA, RN, BSN, ESQUIRE (FORMER CLNC)**

Dear Legislators:

As a former chairman of the New Jersey State Assembly Law, Public Safety and Defense Committee and a Civil Rights Lawyer, I submit to you for your consideration the following proposed legislative changes suggested by Cecile D. Portilla, RN, BSN, Esquire for the Benefit of the Public and specifically the Employees of New Jersey.

## INTRODUCTION

Ms. Portilla is an Attorney and a bachelor's prepared Registered Nurse. She is also a former Legal Nurse Consultant.

After working with a client (Police Captain Deborah Upchurch) who was injured by multiple work-related accidents, whose condition was aggravated by the excessive and unreasonable delays caused by the Workers' Compensation Carrier ending the client's Law Enforcement Career, Ms. Portilla felt that a new bill needed to be introduced to the New Jersey's Legislature.

Ms. Upchurch was in fact her Municipal Employer's former Worker's Compensation liaison who worked closely with an adjuster processing claims and understood how poorly employees injured in the line of duty were treated. She filed a complaint against one adjuster accusing her of seeking to force injured employees into retirement, so that the company would not become responsible for their injuries.

Ms. Cecile Portilla, who has adequate Worker's Compensation Experience, realized that the way Workers' Compensation is administered by employers often endanger employees' health because of the adversarial nature of Workers' Compensation Litigation.

The Workers' Compensation statute enacted NJSA 34:15-1 et seq at NJSA 34:15-15 requires the employer to furnish the employee with the treatment required.

Subsection C of the 2005 New Jersey Institute for Continuing Legal Education (NJICLE) manual provided to new Attorneys state as follows:

> ***The petitioner's attorney must understand that the Respondent controls the choice of physician. The employee does not have freedom to choose a doctor, and the employer seldom allows an employee to go to whomever they want. An employer is responsible for payment for authorized treatment only. If an employee goes to other than an authorized treatment, he or she does so at his or her own expense.***

The entire statement is not true even though this is what is being taught to New Jersey lawyers entering the practice.

NJSA 34:15-15 does not state how the necessary treatment required is to be obtained. It appears as though the law has been interpreted and taught exactly as stated in the 2005 NJICLE manual.

NJSA 34:15-19 states as follows:

> Examination of employee as to physical condition; X-rays. After an injury, the employee, if so requested by his employer, must submit himself for physical examination and X-ray at some reasonable time and place within this state, and as often as may be reasonably requested, to a physician or physicians authorized to practice under the laws of this state. If the employee requests, he shall be entitled to have a physician or physicians of his own selection present to participate in such examination. The refusal of the employee to submit to such examination shall deprive him of the right to compensation during the continuance of such refusal. When a right to compensation is thus suspended no compensation shall be payable in respect of the period of suspension. On request, the workmen's compensation bureau may examine the X-ray for the purpose of determining the amount of disability due, if any.

While NJSA 34:15-19 requires that the employee submits to an examination as requested by the employer, the statute does not state that the Respondent has the right to choose the treating doctor after completion of the initial examination, although judicial acquiescence makes it so.

NJSA 34:15-19 in fact is *unconstitutionally void for vagueness* because it does not clearly indicate who has the right to identify the treatment provider and *allows the public to guess at its meaning and differ as to its interpretation.*

NJSA 34:15-19 in fact creates a conflict between the employees' *liberty* right to choose his/her own doctor and the employer's need to protect *property* by determining how its money should be spent.

Attorney Portilla recognized the inherent conflict in the employer wanting to protect the employer's pocketbook as opposed to the health and welfare of the employee.

To protect itself and its monies, employers engage in practices that clearly endanger the health and safety of injured employees. In one particular circumstance, Ms. Upchurch, who was the Workers' compensation Liaison for her Municipal employer, was not provided with the treatment required in a timely fashion destroying her health and her career.

Upon Ms. Upchurch complaining to the employers' treating doctor in 2015 that she had severe unrelieved pain to her back related to the same incident, the doctor advised her that *he only had authority to treat her neck. The doctor actually wrote those words in his notes.* Simply put, his hands were tied and the money that he was receiving from the insurer for

his services meant more to him than his Hippocratic oath. This doctor quicky discharged Ms. Upchurch, contending that she had achieved Maximum Medical Improvement (MMI) for her neck and rushed her back to work in her injured condition with both her neck and her back still in severe pain.

Upon Ms. Upchurch going back to her employer in 2015 and requesting more treatment, the employer refused to provide further treatment.

Ms. Upchurch's neck that was allegedly at MMI, had not really been given proper treatment. It should be mentioned that this same doctor who determined that the neck was at MMI, was the same doctor who failed to do a timely MRI of her neck after one of Ms. Upchurch's prior work-related injuries in 2006.

Ms. Upchurch was forced to file a motion to compel further treatment of her neck. After Ms. Upchurch's 2015 motion to compel, the new treating doctor for the neck retained by the employer recommended neck surgery. After Ms. Upchurch had labs drawn in December of 2015, provided her urine sample, and prepared for the surgery, the doctor advised her that the employers' Insurance carrier was questioning his recommendations and was delaying its approval of the recommended neck surgery that HE *the respondent's doctor* deemed necessary.

After her neck surgery, that the employer delayed by six months, Ms. Upchurch had to go back to court again in 2017 to compel treatment to her back. By the time Ms. Upchurch's back (that the first doctor said that *he had no authority to treat*) was given attention four (4) years after she slipped and fell twice in the employer's icy parking lot; four (4) years after being denied treatment and told by one Respondent's doctor in 2014 to do *home exercises* for the pain; after multiple complaints of severe unrelieved pain radiating down her thighs, legs and into her toes with numbness and tingling; after numerous delays and protracted litigation in the Worker's Compensation Court, Ms. Upchurch's condition had worsened significantly. The back injury that could possibly have been conservatively managed had it been given immediate attention, resulted in herniated discs with severe nerve root involvement that now required surgery warranting placement of artificial devices inside Ms. Upchurch's body.

Due to a poorly drafted and subjectively interpreted Workers' Compensation Act, Policewoman Deborah Upchurch, who was promoted to Police Captain in 2018, remained Captain in name only, as she was never able to assume her duties as Police Captain due to the excessive delays and the Insurer's interference with her treatments causing her to become permanently disabled.

Ms. Upchurch was advised by one doctor that had it not been for her employer's excessive delays in providing her with treatments for her work-related injuries she would not be in the condition that she is today.

These stories are endless:

- Employers refusing to answer claim petitions within 35 days as specified by the Act (delaying treatment);
- Employers failing to respond to an employee's need for treatment request for numerous months after a request is made (delaying treatment);;
- Employers scheduling IME need for treatment examinations up to seven months away although that Act requires them to provide the report within 30 days (delaying treatment);
- Doctors who consistently find that nothing is wrong with injured employees and sending them back to work in their injured condition (delaying treatment);;
- Three (3) minutes Orthopedic IME examination by a Respondent's doctor;
- IME Doctor refusing to accept a copy of petitioner's MRI showing unresolved lumbar and cervical herniations and bulges;
- A Nine (9) minutes Psychiatric IME via phone without ever seeing the employee's face;
- Doctor lying under oath that he saw a petitioner's face whom he interviewed by phone;
- A psychiatric expert telling petitioner at her IME that he does not need to hear anything from her because he already had a folder given to him by the employer with all the information that he needed;
- Doctor documenting falsely that petitioner squatted after petitioner did not squat and told doctor that she could not squat;
- Doctors routinely attributing herniated discs to age/degenerative changes after work related falls;
- Respondents' attorney asking if Ms. Portilla was a new attorney because she requested default against employer after the Respondent took almost seven months to file an answer to a claim petition.

By the time some petitioners get any type of treatment, the treatment is meaningless, and the employers are able to replace broken employees with new employees with younger and stronger backs, knees and necks etc.

The Workers' Compensation law allows for the employee to be able to pay for their own treatment if not given the same by the employer. However, herein lies a major problem of constitutional magnitude.

> Clearly the employee does not have the financial wherewithal of the employer, nor the insurance coverage (nor should he or she, as such Workers' Compensation law is to compensate the employee for the employers' negligence and or failure to supervise which makes the employer liable, not the employee)

However, if one reviewed the practices as acknowledged and taught by the NJICLE, one may understand why the wording and the interpretation of the Workers' Compensation statute is against the following New Jersey provisions:

Article 1, para 1, 7, 9, 18.

Under NJSA 34:15-1 a petitioner is entitled to a jury trial only to determine willfulness. Said provision is directly contradictory of Article 1 para 9.

The need for New Jersey Judges to empanel **Juries** for Workers' Compensation trials to determine permanency based on the value of the case is great, as the current system is contrary to Article 1 para 9 of the New Jersey Constitution.

NJSA 34:15-1 when read in pari materia with the other provisions such as NJSA 34:15-22, clearly shows that Jury trials are intended to be held in certain matters (clearly differentiating and unlawfully redefining the language of the right to a jury which should be inviolate in all matters) that are contested or disputed.

Analyzing whether an employee willfully caused his/her injuries ***preventing compensation*** requires competent evidence and credible determination in a manner similar to determining whether there is competent and credible evidence that an employee has no permanent disability (Zero disability) after an injury ***preventing compensation.***

Article 1 para 9 of the New Jersey Constitution states as follows:

> The right of trial by jury shall remain **inviolate**; but the Legislature may authorize the trial of civil causes by a jury of six persons. The Legislature may provide that in any civil cause a verdict may be rendered by not less than five-sixths of the jury. The Legislature may authorize the trial of the issue of mental incompetency without a jury.

Id.

Thus, injured employees have a constitutional right to grieve under paragraph 18 of the New Jersey Constitution and the same right to grieve before a **Jury for proper permanency determinations** under Article 1 paragraph 9 as any other litigant.

The New Jersey Legislature in its infinite wisdom created the place of public accommodation law which mandates that all public be given equal access to the privileges rights and accommodations of all places of public accommodation, which includes the Workers' Compensation Court which does not allow litigants the equal **right to a jury**

**trial** regarding permanency to which all other litigants and other Courts permit based upon the value of the damages.

Petitioners and Respondents entering a settlement conference or a trial without a Jury are being denied public accommodation and equal protection of laws. Petitioners in a non-jury forum are *faced with Respondents' expert reports'* where Respondents' experts in an overwhelming majority of cases accord petitioners' **disabilities at Zero or some Negligible Number**. (See Attachment 1-with a settlement offer that most petitioners cannot refuse)

The New Jersey Supreme Court rules self-define and excuse exceptions to Article 1 para 9 without legal Authority to limit certain cases to judicial determination without juries based upon the value in dispute. This standard is problematical as who is to determine the value of the matter in dispute when it comes to an injury?

The Workers' Compensation Court is in violation of the New Jersey Constitution Article 1 para 9, because of the limitations that are set forth in NJSA 34:15-1 et seq. Simply put, the right to the jury trial is **inviolate**. Thus, this should not be taken away unless with the consent of all parties. By not using a jury, the final arbiters on permanency determinations are in fact doctors, which is unconstitutional.

Evaluating permanency should be no different than any other determination in other civil courts. The jury should be able to weigh the evidence and determine the facts and credibility to arrive at a just conclusion.

In 2014, a Florida Court described that State's Workers' Compensation Law as follows:

> "This system of redress does not comport with any *notion of natural justice*, and its result is *repugnant to fundamental fairness* because it relegates a severely injured worker to a legal twilight zone of economic and familial ruin," **(See attachment 2)**

Read more at: https://www.miamiherald.com/news/local/community/miami-dade/article1979743.html#storylink=cpy

Just as described by the Florida Court, another client (MP) was subjected to fundamental unfairness and financial ruin after multiple work-related falls that ended her career as a Nurse's Aide. MP who speaks creole, was not provided with a translator at her workers' Compensation settlement proceeding. MP signed an agreement for a few pennies on the dollar, without full understanding, and without her lawyer advising her of the interplay between Social Security and her receipt of Workers' Compensation benefits.

Months after receiving the meager settlement, the Division of Social Security stopped

MP's income leaving her without any means of supporting herself, then reduced it after it was resumed. Due to her injuries and the inadequate treatment provided by her employer, MP now has difficulty performing activities of daily living, uses a walker for support and was forced to seek therapy on her own paid for by Medicaid. MP was not using a walker and had no obesity related pains from inactivity prior to her multiple work-related injuries. The legislature in creating the Workers' Compensation Act certainly could not have intended to impose this type of injustice and misery upon the citizens of New Jersey.

An employee's **ADVERSARY** should have NO INPUT as to whether employees have pain, whether their pain is real, whether their pain is justified, whether they should be able to tolerate a little pain, whether they should expect to have some pain, whether they are faking it or how their pain should be managed prior to obtaining treatment. **Credibility determinations of doctors and litigants regarding permanent disability and continued symptoms are** within the purview of a **jury** and should be addressed *after necessary treatments are rendered without any delays.*

It is unconscionable and inhumane for any employer to allow an employee to live with unrelieved lumbar pain for years rated by Ms. Upchurch up to a 10/10 on the Visual Analog Scale (VAS), caused by multiple witnessed accidents, then hire lawyers and doctors to challenge the employee's need for treatment after several requests for treatment are made.

It is inconceivable that reasonable legislators intended that injured employees be required to go through an entire trial of a motion before a judge of compensation in order to receive treatment for a work-related injury. An employee could simply die from their injuries while waiting for a trial to conclude.

In Ms. Upchurch's case, she requested a trial of her motion for treatment to her neck after the employer ***refused to authorize the surgery that was recommended*** by its own treating doctor. An act that allows employers and their Insurers to control their doctors in such a fashion violates employees' rights under Article 1 para 1 and 18 of the New Jersey Constitution and cannot stand. Even worse than Constitutional violations are the physical consequences of the delayed treatment upon an employee's body.

Pursuant to the America Association for Orthopedic Surgeons "*delaying surgery months or years may result in worse outcomes and less recovery than when surgery is performed sooner*." **(See Attachment 3).** This seems to explain why today, Ms. Upchurch still has severe pain in her neck, even after her C6-C7 Anterior Cervical Discectomy and Interbody Fusion that was grudgingly allowed by the employer in 2016.

After Ms. Upchurch reinjured her neck and back from two falls at work in February 2014, and complained of severe pain to her neck and back, the employer's doctor on February 17, 2014, performed X-rays without follow up MRIs. Regarding Ms. Upchurch's Cervical X-rays, the doctor commented that "*these are very good looking X-*

*rays for a 48 year old individual,"* and that Ms. Upchurch's lumbar X-rays were normal. Despite Ms. Upchurch's complaints of severe pain in her neck and back, the Respondent's doctor documented that Ms. Upchurch had reached MMI without any treatment and discharged her back to work with her injuries.

On April 9, 2014, two months after the alleged MMI, Ms. Upchurch was forced to seek care from a private Chiropractor to deal with her 10/10 neck pain, her 9/10 back pain and accept the injustice that the New Jersey's Workers' Compensation Act imposed upon her.

Regarding her back: Even after Ms. Upchurch received the Decompressive Lumbar Laminectomy and Discectomy with nerve root intervention at L3-L4, after ***excessive and unreasonable delays*** spanning years, the insurer could not wait for the treating physician to complete his post-surgical evaluations and properly discharge her from his care. Approximately one week prior to a scheduled follow up appointment with the surgeon, the insurer called the doctor's office and cut off all further appointments and treatments that were being provided to Ms. Upchurch, advising the doctor that he would NOT be paid for any further treatments that he provided to her.

These are some of the reasons why employers and their insurers should not be involved in treatment decisions of injured employees. There is no expectation that the **Adversaries** of other litigants will take an active role in the treatment decisions of their injuries. Why should Workers' Compensation litigants as opposed to others, be placed at the mercy of their **Adversaries** and denied public accommodation and equal protection?

***As a Nurse, Ms. Portilla was taught that Pain is a warning of an underlying <u>injury</u> or <u>tissue damage.</u> Ms. Portilla was also taught, that "pain is whatever the patient says that it is, wherever the patient says it is."***

***It is Ms. Portilla's sincere belief that <u>Proper treatment</u> of an <u>injury</u> usually resolves the pain.***

Captain Deborah Upchurch's description of her present complaints is palpable and vivid:

> *Thigh pain in both legs. Left big toe pain that sometimes hinders walking and left foot. I cannot stand for long periods (back begins to hurt while rooking meals). I cannot sit for long periods (As a doctoral candidate attending classes). I cannot lift or carry (makes grocery shipping difficult; sometimes I have groceries delivered) Sometimes laying down causes pain in my lower back, I have to keep adjusting to find comfort. After surgery, pain immediately shifted from left side to right side, pain is pretty constant ( daily) it just varies on the intensity.*

> ***Sometimes the pain hits and my knees buckle with no warning.*** *Inservco Insurance company stopped all medical treatment in January 2019. I had an appointment scheduled, and they decided that there would be no more treatment. It is difficult to carry out necessary, day-to-day activities (cooking, cleaning, laundry). The pain intensity varies, sometimes dull, sometimes sharp sometimes mild sometimes intense. Periodically, there is a burning sensation in my lower back. Sometimes I feel tightening in my lower back on the right side. I use the heating pad for pain relief. Sometimes I take over the counter medications (I would not say that I like taking meds, but sometimes I have no choice). Sometimes use bed rest to relieve my discomfort.* ***I do not lead a normal life.*** *I can't hold my neck back and look up. I can't style my hair in a ponytail and sit up in bed with my head on the headboard as this causes neck pain. I cannot sit up in bed or on the floor with my legs folded (Indian style) and study. The bent over position causes neck pain.* ***My neck will only turn so far; then I have to turn my upper body.***

Excerpt of the Affidavit of Deborah Upchurch

As a consequence of the personal knowledge of the former Workers' Compensation Liaison, and the experience of Counsel Portilla, it has been clearly shown that the system as written and practiced is controlled by the employer who has the gold as opposed to employee who has not. This in and of itself is a disparity of constitutional magnitude that should not control an employee's rights to *life, liberty and the pursuit of happiness* and their general *health and wellbeing*.

Please review the attached document -Counts **Three** and Count **Four** of a Reply Brief in a Summary Judgment matter pending before the Superior Court that addresses other Constitutional safeguards of Article 1 para 1 of which Employees are divested under the Current Worker's Compensation act. See Deborah Upchurch v Inservco Insurance Services, ESX-L-6471-22 **(Attachment 4)**

## REASONS WHY URGENT CHANGES ARE NECESSARY

- The current system allows excessive, unreasonable delays prior to treatment being rendered causing aggravation and worsening of injuries, unimagined pain and suffering and endangerment of the health, safety and wellbeing of injured employees.

- Workers' Compensation is an Adversarial Process. One Adversary (employer) should not be placed in the position to determine what is best for the other adversary (the employee)
- The current system encourages privacy violations and denial of substantive and procedural due process rights of injured employees.
- The Current system encourages fraud, lies and abandonment of the Hippocratic Oath.
- The settlement awards that employees are pressured into accepting are unjust because they are facilitated by Respondents' doctors who overwhelmingly find that employees **have zero or negligible disability when this is often not the case.**
- The current system denies employees of equal protection, substantive and procedural due process and denies them of public accommodation.
- A judge having to make a decision based on a Zero (0) % disability finding by Respondent's Doctor and a Forty (40) % disability finding by a Petitioner's Doctor cannot reasonably make an equitable determination.
- Reasons as set forth in Count Three and Count Four of the Upchurch Reply brief attached.

**PROPOSED CHANGES TO THE WORKERS' COMPENSATION ACT OF THE STATE OF NEW JERSEY**

1. An employee should be allowed to freely choose his/her treatment doctor who he/she believes has his/her best interest at heart.
2. Only an employee's doctor should determine the employee's treatment needs so that necessary treatments are *immediately rendered without any delay*.
3. The burden of Workers' Compensation should be borne by all employers or the public at large by taxing each and every employer based upon a percentage of their payroll. If necessary, the public may be required to supplement the funds necessary to effectuate the New Worker's Compensation laws in the State.
4. All doctors are required to accept and treat employees injured in the line of duty and be appropriately compensated for their services.
5. The system should be managed by the State of New Jersey similar to the Medicare/Medicaid system.

6. ***A jury trial*** should be offered to all Workers' Compensation Litigants to determine permanency, and a STATE FUND created as funded by employers and employees to finance the pay outs of Workers' Compensation awards.

If these changes ae incorporated into a bill that is passed into Law, Ms. Portilla requests that the New Law be identified as the ***Deborah Upchurch Law***.

/s/ Eldridge Hawkins
ELDRIDGE HAWKINS, ESQUIRE

*Morrissey v Brewer, 408 US 471 (1972) requires an independent entity (a Jury) to make the substantive due process determinations after reviewing all evidence.*

**ELDRIDGE HAWKINS LLC**
**Attorney At Law**
**Attorney ID No. 214731967**
**60 Evergreen Place, Suite 510**
**East Orange, New Jersey 07018**
**Tel: (973) 676-5070 Fax: (973) 676-7356**
**Email: hwklaw@aol.com**

February 17, 2026

Joy Baker, Clerk of the Supreme Court
R.J. Hughes Complex
25 West Market Street
Trenton, NJ 08625

Alexandra Gitter, Deputy Ethics Counsel
Office of Attorney Ethics
840 Bear Tavern Road, Suite 1
Ewing NJ 08625

**RE: IN THE MATTER OF CECILE D. PORTILLA, ESQUIRE**
**DOCKET NO.: DRB-XIV-2025-0257E**

**SUBSTANTIAL COMPLIANCE BY -DSM-5 TURNOVER**

Dear Ms. Gitter:

As you are aware, we filed an emergency motion for injunction today in the Third Circuit Court of Appeals. **(Exhibit A- See attached proof of filing)**

While we await the decision from the Court, we are also providing a list of collateral witnesses whose observations are relevant to any mental-health evaluation involving Ms. Portilla.

The DSM-5 is the standard used by psychiatrists Nationwide to determine whether a patient's observations is actual or imagined.

DSM-5 requires that the people around the patient be interviewed as to their own observations to prevent misdiagnosis of the patient.

Standard psychiatric practice, as reflected in widely used diagnostic frameworks and professional guidelines, recognizes that information from individuals who interact regularly with a patient is important in forming an accurate assessment. Accordingly, we are supplying the names and addresses of individuals with direct knowledge of Ms. Portilla's behavior, functioning and history, as well as their own observations.

We are also appealing to Ms. Baker, as a voice of reason, because we believe she can appreciate the fact that no evaluator can reliably assess concerns such as suspiciousness or misinterpretation of events without considering the observations of people who interact with the individual in question.

Collateral information is a routine and expected component of responsible psychiatric evaluation, and we are providing this list to facilitate that process.

We believe that providing the DMS-5- collateral list is considered substantial compliance with the Order of January 5, 2026.

Please note that we are providing addresses, rather than telephone numbers, so that the witnesses can give accurate reports in person.

We request that any interviews be conducted in person and that the witnesses be contacted by mail. I can also advise each witness in person of his/her interview date.

We also intend to record all interviews and interactions with Dr. Reeves. The Workers' Compensation Act permits such recordings in matters related to psychiatric workplace injury or employment-related conditions. We believe this situation falls within that scope.

We have attached a witness list and the statements that are currently available. **(Exhibit B-Witness list with statements 1-6)**

Respectfully submitted

/s/ Eldridge Hawkins
ELDRIDGE HAWKINS, ESQUIRE

Enclosure: Witness list with six Statements

Cc:

Johanna Jones, Director of the OAE
Timothy Ellis, Chief Ethics Counsel
Rajesh Chopra, Investigator

# EXHIBIT B

# COLLATERAL WITNESSES

Mario Portilla
3 Ardmore Road
West Orange, NJ 07052

Ronald Morrison
280 Park pl Apt.2210
Irvington N.J. 07111

Latoya Borum
17-19 Ellis Street
Irvington, NJ 07111

Udoka Ejiofor, APN
135 Evergreen Place, Suite 800
East Orange. NJ 07018

Eldridge Hawkins, Esquire
60 Evergreen Place
East Orange, NJ 07018

Richard Douglas
University Hospital IT Department

Adam Portilla
3 Ardmore Road
West Orange, NJ 07052

ELDRIDGE HAWKINS LLC
Attorney At Law
Attorney ID No. 214731967
60 Evergreen Place, Suite 510
East Orange, New Jersey 07018
Tel: (973) 676-5070 Fax: (973) 676-7356
Email: hwklaw@aol.com

CECILE D. PORTILLA, ATTORNEY AT LAW LLC
7 Glenwood Avenue, Suite 400
East Orange, NJ 07017
Phone (973) 676 5072 Fax (862) 520 3433
Attorney Id :021212005
portillalaw@gmail.com

| | |
|---|---|
| **CECILE D. PORTILLA, ESQUIRE, CECILE D. PORTILLA, ATTORNEY AT LAW LLC**<br><br>**PLAINTIFF (S)**<br><br>**v.**<br>**COUNTY OF ESSEX, ESSEX COUNTY PROSECUTOR'S OFFICE, HEATHER CASSIDY, DETECTIVE MULLINGS, CAPTAIN DAVID SANABRIA, ESSEX COUNTY CYBER CRIMES UNIT(FACTS UNIT)**<br>**JANE DOE 1-5, JOHN DOE 1-5 (fictitious parties, names unknown)**<br><br>**DEFENDANT (S)** | **SUPERIOR COURT OF NEW JERSEY COUNTY OF ESSEX: LAW DIVISION**<br><br>**DOCKET No.: ESX-L-1684-25**<br><br>**CIVIL ACTION**<br><br>**AMENDED COMPLAINT** ***(Federal Claims removed, Plaintiffs Clarified)*** **AND JURY DEMAND AND DEMAND FOR INSURANCE INFORMATION**<br>***Notice that Exhibits A-E were filed with the Complaint***<br><br>**NOTICE ADVISING DEFENDANTS TO SEND ALL HARD COPIES OF DOCUMENTS TO LEAD COUNSEL ELDRIDGE HAWKINS, ESQUIRE** |

Cecile D. Portilla, Esquire and Cecile D. Portilla, Attorney at Law LLC (Plaintiffs) by way of Complaint against the defendants says:

## PARTIES

1. Cecile D. Portilla, Esquire is an Attorney at Law of the State of New Jersey and the Owner of Cecile D. Portilla, attorney at Law, LLC.
2. Cecile D. Portilla, Attorney at Law, LLC is located at 7 Glenwood Avenue, Suite 400 East Orange, New Jersey in the same building where the Essex County Cyber Crime Unit was located in 2016.
3. Captain David Sanabria, was the Captain at the Essex County Cyber Crimes Unit that told plaintiff that the unit could check out her computer.
4. Heather Cassidy was the Detective at the Essex County Cyber Crimes Unit that called and advised plaintiff to bring her Computers to the Cyber Crime Unit.
5. Detective Mullings is the employee at the Essex County Cyber Crime Unit to whom plaintiff give her Computers in 2016 who advised plaintiff that the examination of her computers would take a while.
6. The Cyber Crimes Unit (FACTS Unit) in Essex County, New Jersey investigates cybercrimes.
7. The Cyber Crimes Unit (FACTS Unit) investigates computer fraud, and the use of the Internet and other technology in crimes.
8. This unit is staffed by an Assistant Prosecutor, a Lieutenant of Detectives, and several Detectives.
9. Essex County Prosecutor's Office is the Prosecutor's Unit for the County of Essex
10. Essex County is a County located in North Jersey where plaintiff resides and has her law Offices.



HA

11. Essex County Prosecutor's Office, Heather Cassidy, Captain Sanabria, Detective Mullings and the Cyber Crimes Unit (FACTS Unit) in Essex County are places of Public Accommodation.

## STATEMENT OF FACTS

1. Cecile Portilla, is an African American woman, of dark complexion and of Jamaican National Origin.
2. Ms. Portilla is a Registered Nurse and an Attorney.
3. In 2013, Ms. Portilla, had reported Maxim Health Care Facility for Medicaid fraud and endangerment of patient safety, that she had observed in her capacity as the Director of Nursing for Maxim, for which she was terminated.
4. The Federal Special Agent that was assigned to investigate the Medicare/Medicaid and billing Fraud was the same Agent who was previously assigned on another matter in 2009-2011 when a previous and similar allegation was reported against Maxim.
5. Ms. Portilla was forced to express her concerns to the OIG against the Federal Special Agent who was assigned to investigate the Federal Complaints against Maxim after she perceived that he had no interest in the investigation and wanted to let Maxim slide this time.
6. The Special Federal Agent had threatened to destroy Ms. Portilla's legal career, to make her homeless and to make her work for free.

7. When Ms. Portilla sued Maxim in 2015, Neither Ms. Portilla nor her attorney had access to eCourts, thus documents in the Maxim case were uploaded by Case Management.

8. The documents uploaded on the Maxim matter were uploaded in a strange and incompetent appearing fashion, and her attorney's certification is noted upside down.

9. Plaintiff quickly became aware that she was being followed everywhere that she went when various vehicles and the same faces started to become familiar.

10. Soon after, plaintiff started to observe things that she did know were even possible.

11. In early about 2014, Ms. Portilla became aware that her phones, emails, computers, fax machines and printers were being fully controlled by others.

12. Ms. Portilla became aware that she had lost the ability to communicate with others and that incoming and outgoing calls were being intercepted and aborted.

13. Ms. Portilla became aware that phone numbers of incoming calls were being erased from the call logs on her phones and that her emails were being read before she read them.

14. Plaintiff's phones even her land lines were being used to by others to make calls.

15. Plaintiff's cell phones were making calls by themselves when left on a table or desk.

16. Plaintiff would miss multiple calls, as individuals would silence her phone remotely when it rang, while it was in her possession.



HS

17. Ms. Portilla became aware emails were disappearing from her in box, lap top and desk top computers.

18. The voice mail of her land line was removed by others and her land line was being answered by them.

19. Others were writings words in her text area of her cell phone remotely.

20. Ms. Portilla's computers were all freezing and fighting her.

21. Any flash drive inserted in her computers would become immediately busy for long periods and all computers (new or old) would give an alert that there was a problem with the port in which the flash drive was inserted.

22. Her word files developed strange short cuts; some word files had the internet explorer logo attached to them.

23. Her printers were in error modes, being powered down remotely and developing all types of carriage jams.

24. Ms. Portilla's business email to have duplicate and she could not log out of email that forced her to "keep session active."

25. Phone numbers of businesses, insurance companies, numbers of other attorneys and even the Superior Court of New Jersey were all "not in service" when she tried to make calls to those numbers.

26. Her regular mail was being opened and her business and trust account mail for the first time showed up in strange resealable envelopes and did not always arrive.

27. Her Certified mail receipts were not being returned to her and letters not getting to their destination.

28. Ms. Portilla's clients could not be reached for months unless she went knocking on their doors.

29. Each time that she used her electronic tooth brush, a picture of someone using an electronic tooth brush would appear on her comcast internet home page.

30. Each time Ms. Portilla she sat on her bed to use the computer at her bed side, a picture of a mattress would be displayed on her comcast internet homepage.

31. In 2015, Ms. Portilla noticed that each time she walked by a desk top computer that was in sleep mode, the computer would suddenly wake up, displaying multiple ads related to anti-viral software.

32. In 2015, the event viewer logs of certain computers showed remote access and monitoring of her computers by external users.

33. Plaintiff was receiving multiple calls incoming from "USA" and a pop up in her text that said "FBI" as if to scare her.

34. There were strange displays, strange apps not installed by her; poor operation of all computers; devices appearing not to be hers, and homepage changes.

35. In approximately 2015, Ms. Portilla, starting looking closely at her computer settings as well as the computer settings of the computer that belonged to her then 13 years-old son.

36. As per the computers, they were on proxy settings. The proxy settings would reset themselves after she tried to change them.

37. Approximately 2015, Ms. Portilla took both computers to Geek Squad.

Case 2:25-cv-02267-JXN-JSA  Document 2-11  Filed 04/06/25  Page 9 of 63 PageID: 148
ESX-L-001684-25  03/03/2025 3:49:44 PM  Pg 7 of 26  Trans ID: LCV2025508228

38. Upon arriving at Geek Squad, the settings would be noted to be normal. On returning home, the proxy settings would reappear.

39. Between 2014 to 2017, Ms. Portilla filed multiple police reports regarding the cybercrimes and harassment with the West Orange department and one with the Morristown Police department.

40. Upon her Magellan GPS being repeatedly hacked and misdirecting her with multiple bogus addresses, plaintiff found her way to the Essex County prosecutor's office in Newark where she was told that the Cyber Crimes Unit was located in East Orange.

41. Ms. Portilla reached out to the Essex County Cyber Crime Unit that was located at 7 Glenwood Avenue in East Orange and spoke to Captain Sanabria who advised her that he could look at her computers.

42. Ms. Portilla left paperwork under their door and asked for HELP.

43. In 2016, Ms. Portilla was advised by Detective Heather Cassidy to bring her computers into the Prosecutors office for forensic examination of the devises.

44. According to Heather Cassidy, the help was being offered out of "professional courtesy."

45. In early 2016, Ms. Portilla complied and took two of her lap top computers to the Essex County Cyber Crime Unit, handing them over to Detective Mullings.

46. Ms. Portilla advised the Prosecutor's Office that she believed that Maxim Health Care Services and an Individual with the initials of GF (a Special Federal Agent-AKA FBI) were responsible for the cybers crimes against her.

47. On taking the Computers from her, Detective Mullings told Ms. Portilla, that the investigation would take a while.

48. Ms. Portilla, in reliance on those words, waited patiently for the results of the forensic examination while continuing to endure cyber hell and terror.

49. In 2017, Ms. Portilla a correspondence under the door of the FACTS outlining the continued acts of cyber terror to which she was being subjected hoping that would get the FACTS unit to act fast. **(Exhibit A)**

50. Ms. Portilla kept knocking on the door of the Cyber Crime Unit for many months hoping to get an answer regarding the forensic examination without avail.

51. On November 29, 2021, Ms. Portilla wrote a letter by hand to Captain David Sanabria.

52. The letter was received by Michelle Jones on behalf of Heather Cassidy and Captain Sanabria.

53. Neither Heather Cassidy nor Captain Sanabria reached out to the plaintiff.

54. Ms. Portilla detailed her continued suffering, indicating that her business had slowed down due to the hacking crimes and advising them that she was being hacked even while using the Court web sites and that her submissions are being tampered.

55. While Ms. Portilla waited for word from the defendants, she lost meaningful, productive and private use of her phones, fax machines, computers and printers that were fully controlled by the cyber criminals.

56. Ms. Portilla became plagued with: *access denied* to her own files; page unresponsive alerts; server unavailable; guest modes; downgrade attack to server and fax forwarding on.

57. Ms. Portilla became plagued with email forwarding on; administrative permission required to access folder alerts.

58. Ms. Portilla became plagued with remote access connection manager entered the running state; file recently shared; guest drivers admin; guest drivers operational; roaming files; large amounts of temporary files; virtual ports; system exception errors; make file accessible for web viewing; file unavailable

59. Ms. Portilla became plagued with file is corrupt and cannot be opened; error 8s; files cannot be saved due to external alteration in volume; error encountered while removing private application data

60. Ms. Portilla became plagued by strange printers installing themselves to her computers; her printers icons disappearing from her computers forcing her to reinstall them; old files being forced opened while she prepares new documents.

61. Pages were disappearing while she typed; and forced extensive computer updates in the middle of her work causing the devices to be inaccessible before she could use them.

62. Plaintiff became plagued by relentless freezing of computers and constant fax communication errors.

63. Strange devices to search and recover deleted files, and advised that changes were made to files after she last saved.

64. Despite Geek maintaining her computers, not finding any signs of hacking and returning them to factory settings the crimes continued.

65. Plaintiff had difficulty controlling her cursors; the font types and font sizes of words changing from one paragraph to another while she typed.

66. Upon reviewing her documents that she had uploaded on eCourts, plaintiff would notice that words, sentences or paragraphs were added or deleted from her documents; wrong statutes, wrong rules, date and grammar changes.

67. Ms. Portilla noted that there were constant pop-up ads in her email displaying computers and phones and anti-viral software

68. Particular ads will remain next to her emails for hours as if mocking her.

69. Ms. Portilla in order to avoid the intense hacking, cyber sodomy, virtual rape, harassment and mental torment, was forced out of her house and office to use library computers and printers.

70. Ms. Portilla, who is being followed, would leave her phones and car at home, was forced to take buses or taxis to a public -libraries to do her work.

71. Upon going to the same library more than two times or so, the word apps on the library computers would start freezing and fighting her.

72. When problems followed her to a particular library that was an indication that she had to find a different library in a different city.

73. Ms. Portilla who is being followed was bouncing between libraries and Staple stores seeking computers and phones to use , where ever she could find them, throughout New Jersey and New York.



TK

Case 2:25-cv-02267-JXN-JSA Document 2-11 Filed 04/06/25 Page 13 of 63 PageID: 152
ESX-L-001684-25 03/03/2025 3:49:44 PM Pg 11 of 26 Trans ID: LCV2025508228

74. A picture of a rotating New Jersey Transit bus would affix itself to her email sign in page to let her know that others were aware that she took a bus or train to the city that day.

75. The most pronounced picture next to her inbox was a picture of the movie "The X-FILES"

76. One day upon showing up at a pay phone, that she had used on two prior occasions, the pay phone was no longer there after walking a long distance to get there.

77. Plaintiff started going into businesses places such as 7/11s, grocery stores, doctors' offices, gas stations, emergency rooms, department stores, liquor stores, banks and other places to borrow phones, and was asking strangers that she met on the streets, to please allow her to use their phones.

78. The grammar errors and mistakes in her briefs were so pronounced that plaintiff would study each page before printing, scanning and uploading

79. After reviewing the uploads to eCourts after having access to eCourts, plaintiff was baffled that errors that she had corrected in her documents were still there, as well as broken language, wrong statutes, wrong rules, wrong numbers, missing paragraphs, fades outs, wrong exhibits.

80. It was only in 2025, that Ms. Portilla became FULLY aware, that some documents that were being unloaded to the eCourt sites were not actually coming from her computers, but were being tampered, changed and ***customized*** elsewhere before the final upload by others.

81. In late 2024, plaintiff had observed that after removing a page 17 from one document and adding that page 17 as page two of another document, the printer refused to acknowledge the new page two as page two, but insisted on identifying the second page only as page 17.

82. Not believing her eyes, plaintiff called a technician from the Company that leased her the printer who made the same observation, and could not explain what was happening.

83. On January 31, 2025, individuals perceived by plaintiff to be hostile individuals hell bent on retaliation, got reckless and uploaded documents in her name to Supreme eCourts to sabotage her client's case.

84. Some of the documents that were uploaded by the individuals did not even match the required documents.

85. Prior to and in 2022, Ms. Portilla had followed up with the FACTS Unit routinely to get the results of the forensic examination.

86. She called the FACTS Unit multiple times then went in person numerous to ask for the results of the investigation without any return communication.

87. On many occasions when she went in person to the Facts Unit, to obtain the results of the forensic examination she left messages.

88. On April 28, 2022, upon no word from the FACTS unit for six (6) years, plaintiff filed a notice of claim against defendants: Essex County, Essex County Prosecutor's Office, Heather Cassidy, Captain David Sanibria, Essex County

Facts unit (Cyber Crime Unit) and Detective Mullings accusing them of unlawfully seizing her computers. **(Exhibit B)**

89. After no response from anyone regarding her Notice of claim that was sent via certified mail and hand delivery plaintiff became aware that her property was stolen and that the individuals under this Count were involved in the Conspiracy to deprive her of her Civil Rights.

90. Plaintiff is still suffering due to the control that these hostile persons have over her devices.

91. For example, in 2014, plaintiff travelled to Pennsylvania to ensure that Comcast was served with a Complaint (ESX-L-7496-24) related to the Cybercrimes in her life.

92. The hostile persons maliciously powered down her cell phone, her i-pad and her lap computer at the same time to block her from researching an issue while in Pennsylvania.

93. Plaintiff believes that the cyber criminals became emboldened after the Essex County Cyber Crime Unit (FACTS Unit) **CONVERTED** her computers and abandoned her.

94. The individuals, convinced that they are above the law, and ***enabled*** by the Essex County defendants' failure to assist Ms. Portilla, went an extra mile and hacked H&R Block and fraudulently injected a multimillion dollars cost into her 2022 Federal tax documents for the sole purpose of ***setting her up***, had it not been caught by her accountant.

95. Undeterred by the lack of intervention, **denial of public accommodation** and lack of interest by law enforcement to prevent the crimes against her, the hostile individuals caused Ms. Portilla's tax payment to the State of New Jersey for 2022 to disappear, seeking to impose the hardship upon her that they had promised since 2013, in retaliation for blowing the whistle against the Special Federal Agent.

96. There is no doubt that County of Essex, Essex County Prosecutor's Office, Heather Cassidy, Captain Sanabria, Detective Mullings and the Cyber Crimes Unit (FACTS Unit) (collectively the Essex County Defendants) unlawfully **CONVERTED** Plaintiff's Computers after she demanded their return and placed them on Notice since April 2022 that she had considered them **unlawfully seized.**

97. Each individual defendant agreed, aided and abetted to receive, use and not return and **CONVERT** the plaintiff's computers that were taken to the Essex County Cyber Crime Unit (FACTS Unit) and delivered to Detective Mullings in 2016.

98. **See Exhibits A-E in additional support of the facts.**

**COUNT ONE**

**CONVERSION, ARTICLE 1 PARA 1 NEW JERSEY CONSTITUTION**

**(ALL DEFENDANTS)**

1. Plaintiff repeats the above and below paragraphs as if fully set forth at length herein.

2. In April 2022, the County of Essex, the Essex County Prosecutor's Office, Heather Cassidy, Captain David Sanibria, Essex County Facts unit (Cyber Crime Unit) and

Case 2:25-cv-02267-JXN-JSA Document 3-11 Filed 04/06/25 Page 17 of 63 PageID: 156
ESX-L-001684-25 03/03/2025 9:49:44 PM Pg 15 of 28 Trans ID: LCV2025508228

Detective Mullings engaged in **Conversion** and unlawful deprivation of Ms. Portilla's Computers that was handed to them in 2016.

3. The defendants kept plaintiff's computers without plaintiff's permission to keep her property beyond the time that reasonable experts would take to conduct a forensic examination.
4. Because plaintiff wrote a Notice of Claim against the defendants in April 28, 2022 and accused the defendants of unlawfully seizing her property, yet she was still ignored, the defendants made their intent to Convert her property crustal clear. **(See Exhibit B).**
5. All individual defendants have a duty to enforce the law and to correct any misappropriation of plaintiff's properties by any of their co-workers.
6. Said duty to obey the law was not obeyed by any defendant.
7. Ms. Portilla's right to own and protect property is guaranteed under the New Jersey Constitution.
8. The failure of Defendant Heather Cassidy, David Sanabria, Essex County FACT Unit (Cyber Crime Unit) Detective Mullings, Essex County and Essex County's Prosecutor's Office to return Ms. Portilla' Computers is also a violation of her rights to property in violation of **Article 1 para 1** of the New Jersey Constitution.
9. Due to the Conversion of her property, plaintiff was divested of her rights to own and defend property as guaranteed under Article 1 para 1 of the New Jersey Constitution and was harmed and injured

**WHEREFORE,** Plaintiff requests judgment against Defendants jointly, individually, and severally for compensatory damages, past and future, punitive damages and any other relief that the Court deems fair and just.

## COUNT TWO
## BREACH OF CONTRACT, BREACH OF THE IMPLIED PROMISE OF GOOD FAITH AND FAIR DEALING, TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIP

1. Plaintiff repeats the above and below paragraphs as if fully set forth at length herein.
2. A social contract exists between plaintiff and her Essex County Government.
3. By paying her taxes, Essex County implicitly agreed to provide plaintiff with services that are accorded to all tax paying citizens with identified needs.
4. The Cyber Crimes Unit (FACTS Unit) in Essex County, investigates cybercrime on behalf of the Community.
5. Plaintiff is a member of the Essex County Community.
6. Heather Cassidy advised the plaintiff to bring her Computers to the FACTS Unit after she identified that Citizen Portilla had a need.
7. Upon Essex County and the Cyber Crime Unit offering to provide service upon Ms. Portilla's computers, to which she was entitled as part of the overall social contract with her government, plaintiff accepted and relied on the offer to her detriment.

Case 2:25-cv-02267-JXN-JSA Document 2-11 Filed 04/06/25 Page 19 of 63 PageID: 158
ESX-L-001684-25 03/03/2025 3:49:44 PM Pg 17 of 26 Trans ID: LCV2025508228

8. By failing to provide the services as offered from Essex County through its Cyber Crime Unit (FACTS Unit), Essex County Breached the Contract with Citizen Portilla.

9. Defendant Heather Cassidy, David Sanabria, and Detective Mullings by refusing to perform the work and refusing to return her computers acted in bad faith thusly depriving plaintiff of the fruit of her tax dollars as well as her property.

10. Defendant Heather Cassidy, David Sanabria, and Detective Mullings by refusing to perform the work that was entrusted to them and by refusing to return plaintiff's computers, tortiously interfered with plaintiff's contract to receive valuable service from her County Government that all citizens are entitled to receive upon an identified need.

11. Due to the Breach of Contract and the tortious interference, plaintiff was harmed and damaged.

**WHEREFORE,** Plaintiff requests judgment against Defendants jointly, individually, and severally for compensatory damages, past and future, **punitive damages** and any other relief that the Court deems fair and just.

## COUNT THREE

**NJSA 10:1-2; NJSA 10:5-4; NJSA 10:5-12 (d) ( e) NJSA 10:6-2(c ) ARTICLE 1 PARA 1, 5 NEW JERSEY CONSTITUTION.**

**(ALL DEFENDANTS)**

1. Plaintiff repeats the above and below paragraphs as if fully set forth at length herein.

2. Plaintiff's rights to non discriminatory services in public places are protected Under NJSA 10:1-2; NJSA 10:5-4; NJSA 10:5-12 (d) ( e) (f )

3. The NJLAD was enacted to protect Ms. Portilla's health and safety and to help fulfill rights afforded to her under the New Jersey Constitution Article 1 pars. I, 7.

4. By agreeing to assist Ms. Portilla, the defendants agreed to help protect her right to property, privacy and free speech.

5. The defendants interfered with her property rights causing a violation under Article 1 para 1, para 5.

6. Because defendant Mullings, Defendant Sanabria and Cassidy acted jointly to not return Ms. Portilla's property which was protected under Article 1 para of the New Jersey Constitution and no one made any effort to correct the behavior of the other they are liable to plaintiff as Peper v Princeton, 77 NJ 55 (1979).

7. The defendants provided Ms. Portilla with ***unequal*** and ***hostile*** services in violation NJSA 10:5-12 (d) (e) (f)

8. Because the individual defendants acted under color of law to deprive Ms. Portilla of her rights, privileges , and immunities secured by the Constitution and laws, they are all liable to her under NJSA 10:6-2 (c ).

9. Due to the Actions of the defendants , Ms. Portilla was harmed and her righst have been injured.

WHEREFORE, Plaintiff requests judgment against Defendants jointly, individually and severally for compensatory damages, past and future, punitive damages and any other relief that the Court deems fair and just.

**COUNT FOUR**
**NEW JERSEY CONSTITUTION ART 1 PARA 1,5, 18, 20, 22**
**(ALL DEFENDANTS)**

1. Plaintiff repeats the above and below Counts and paragraphs as if fully set forth at length herein.

2. Pursuant to Article 1 para 1 of the New Jersey Constitution, Private property shall not be taken for public use without just compensation which was violated by the Essex County defendants.

3. The defendants violated Article 1 para 20 of the New Jersey Constitution, when they took plaintiff's computer for public use without just compensation as of April 2022 when she demanded their return and they refused to return them to her.

4. One of the Computers was a brand new computer that was used approximately three times.

5. Plaintiff's right to petition her county Government is protected under Article 1 para 18 of the New Jersey Constitution.

6. Plaintiff's petition to Essex County was denied when the defendants failed to provide forensic examination services to her as promised after they received her petition.
7. In fact, on February 28, 2025, the hostile persons who are exerting control over plaintiff's equipment, enabled and emboldened, blocked her from filing a certification with the Court regarding their unlawful acts. (See Exhibit C)
8. The defendants violated Article 1 par 5 of the New Jersey Constitution because they refused to help plaintiff due to her race and national Origin after they recognized that she indeed had a problem.
9. Upon plaintiff computers and phones being given unlawful interference and controlled by others, she became a victim of crime within the meaning of Article I para 22.
10. Article 1 para 22 required plaintiff who is a victim of a crime be be treated with fairness, compassion and respect by the criminal justice system.
11. By unfairly holding on to plaintiff's business computers after she requested them back in 2022, Essex County failed to treat a victim of crimes with fairness.
12. Plaintiff reported the cyber crimes against her to the Essex County "FACTS Unit" (Cyber Crimes Unit) since 2016.
13. The defendants who are a part of the criminal justice system failed to treat plaintiff with fairness and compassion and respect after offering a forensic examination that they had no intention of providing to her.

14. Heather Cassidy, Captain David Sanibria, assured plaintiff that they would conduct a forensic examination on her computers to investigate any crime and did not do so ***showing utter disrespect for an attorney victim of crime.***

15. Defendants were aware that plaintiff deserved respect because Heather Cassidy advised her in 2016 that the help was being offered out of professional courtesy.

16. As a direct consequence of the actions of the defendants plaintiff's rights under New Jersey Constitution Art 1 Para 1,5, 18, 20, 22 were injured.

**WHEREFORE,** Plaintiff requests judgment against Defendants jointly, individually, and severally for compensatory damages, past and future, <u>punitive damages</u> and any other relief that the Court deems fair and just.

## COUNT FIVE

## VIOLATIONS OF NEW JERSEY CONSTITUTION BROUGHT PURSUNAT TO PEPER VS PRINCETON 77 NJ 55 (1978)

## (ALL DEFENDANTS)

1. Plaintiff repeats the above and below Counts and paragraphs as if fully set forth at length herein.

2. Peper v Princeton stands for the principle that the New Jersey Constitution protects all persons who are being denied of equal protection due to membership to any class (not just the historical discrete class of persons).

3. Upon plaintiff blowing the Whistle against Maxin Health Care Services and then the Federal Special Agent, she became a member of a class of Whistle Blowing persons.

4. As a member of a Whistle Blower class of persons whose rights are being violated by the defendants, causing her to be harmed and injured, Plaintiff's cause of actions are allowed to be brought directly under the Constitution pursuant to <u>Peper v Princeton.</u>

**WHEREFORE**, Plaintiff requests judgment against Defendants jointly, individually, and severally for compensatory damages, past and future, <u>punitive damages</u> and any other relief that the Court deems fair and just.

## <u>COUNT SIX</u>

## <u>UNLAWFUL SEIZURE OF PROPERTY, VIOLATION OF NEW JERSEY'S CONSTITUTION ARTICLE 1 PARA 7</u>

1. Plaintiff repeats the above and below Counts and paragraphs as if fully set forth at length herein.

2. Article 1 para 1 of the New Jersey's Constitution prevented unlawful seizure of Ms. Portilla's Computers.

3. Property may be considered seized if held onto by law enforcement for an unreasonable period of time.

4. The Essex County Defendants have had plaintiff's Computers since 2016 which is an unreasonable period of time to hold on to a Citizen's property.

5. Upon the Essex County defendants refusing to return plaintiff's computers to her after they received her Notice of Claim dated April 28, 2022, her computers were considered seized.

6. The Essex County Prosecutor's Office has had plaintiff's property for nine years without showing how her computers were instrumentalities of ***crimes committed by her, and without charging her with any crimes.***

7. Based on information and belief, Essex County has no warrant to seize plaintiff's property upon any showing of probable cause that her computers would lead to evidence of crime being committed by her.

8. Moreover, to seize Ms. Portilla's Computers without a warrant, Essex County must show exigent circumstances.

9. A new Computer bought in 2016 will lose value after nine years as it will become outdated by new technology.

10. Plaintiff had documents saved in her other computer that she has been disallowed from accessing due to the failure of Essex County to return her Computers to her, thus those documents have also been seized.

11. By refusing to return Ms. Portilla's Computers after she demanded their return on April 28, 2022, the Essex County defendants unlawfully seized Ms. Portilla's Computers in violation of New Jersey's Constitution Article 1 para 7.

10. Due to the unlawful seizure, the defendants denied plaintiff the right to be secure in her computers and papers in violation of Article 1 para 7 when they refused to conduct a forensic examination on her behalf causing the criminals who were

attacking her equipment to be so emboldened that *they ramped up their terror and waterboarded* her with cyber crimes for the last 9 years of her life.

11. Due to the unlawful seizure, the defendants denied plaintiff the right to be secure in her computers and papers in violation of Article 1 para 7 because they Converted property that plaintiff owned and had a right to defend.

12. Due to the unlawful seizures, plaintiff was harmed and damages and sustained serious injuries to her Constitutional rights.

**WHEREFORE**, Plaintiff requests judgment against Defendants jointly, individually, and severally for compensatory damages, past and future, **punitive damages** and any other relief that the Court deems fair and just.

**COUNT SEVEN**

**VIOLATONS OF THE CONSTITUTION AND STATUTES BROUGHT PURSUANT TO NJSA 10:6-2 (c ) UNDER COLOR OF STATE LAW**

**(ALL DEFENDANTS)**

1. Plaintiff repeats the above and below Counts and paragraphs as if fully set forth at length herein.

2. The violations of the above cited statutes and constitutional protections by defendants also allows relief under NJSA 10:6-2 ( c).

3. When as here said actions are perpetrated under color of state law which deprives a party plaintiff as has been done herein of substantive due process, equal

Case 2:25-cv-02267-JXN-JSA Document 2-11 Filed 04/06/25 Page 27 of 63 PageID: 166
ESX-L-001584-25 03/03/2025 3:49:44 PM Pg 25 of 28 Trans ID: LCV2025508228

protection and other statutory and civil rights causes of actions are also are maintainable under the Civil Rights Acts of New Jersey.

4. The Civil Rights acts of New Jersey protects the public including the plaintiff from alleged official acts done under color of state laws by an Entity purporting to have said rights to act who acts in violation of basic constitution and statutory protections protected by NJ Constitution and state statutes.

5. By denying plaintiff of public accommodation and equal protection that are to be afforded to ALL persons, the defendants violated the New Jersey Constitution and NJSA 10:6-2 (c) under color of law,

**WHEREFORE** plaintiff requests entry of an award for monetary damages both past and future, both compensatory and punitive, along with costs, interest and attorneys fees and any and all other relief including equitable provided under NJSA 10:6-2.

Dated:. April 3, 2025

/s/Eldridge Hawkins
ELDRIDGE HAWKINS, ESQUIRE

Dated: ] April 3, 2025

/s/Cecile D. Portilla
CECILE D. PORTILLA, ESQUIRE

## DESIGNATION OF TRIAL COUNSEL

Pursuant to R. 4:25, Eldridge Hawkins, Esq., is hereby designated as trial counsel for the above matter.

Dated: April 3, 2025

/s/Eldridge Hawkins
ELDRIDGE HAWKINS, ESQUIRE

Dated: April 3, 2025

/s/Cecile D. Portilla
CECILE D. PORTILLA, ESQUIRE

**CERTIFICATION PURSUANT TO R. 4:5-1**

I hereby certify that the matter in controversy in the within action is not the subject of any other action other pending in any Court or any pending arbitration proceeding is contemplated. I further certify that there is no other party, who should be joined in this action.

Dated: April 3. 2025

/s/Eldridge Hawkins
ELDRIDGE HAWKINS, ESQUIRE

Dated: April 3. 2025

/s/Cecile D. Portilla
CECILE D. PORTILLA, ESQUIRE

**REQUEST FOR JURY TRIAL**

Plaintiffs request a jury trial as to Article V11 of the United States Constitution and Article 1, paragraph 9 of the New Jersey Constitution.

Dated: April 3, 2025

/s/Eldridge Hawkins
ELDRIDGE HAWKINS, ESQUIRE

Dated: April 3, 2025

/s/Cecile D. Portilla
CECILE D. PORTILLA, ESQUIRE

ELDRIDGE HAWKINS LLC
Attorney At Law
Attorney ID No. 214731967
60 Evergreen Place, Suite 510
East Orange, New Jersey 07018
Tel: (973) 676-5070 Fax: (973) 676-7356
Email: hwklaw@aol.com
Attorneys for: PLAINTIFFS

CECILE D. PORTILLA, ATTORNEY AT LAW LLC
7 Glenwood Avenue, Suite 400
East Orange, NJ 07017
Phone (973) 419-2325 Fax (973) 669 3268
Attorney Id :021212005
Portillalaw@gmail.com
Attorney for: PLAINTIFF

| | |
|---|---|
| **CECILE D. PORTILLA, ESQUIRE, CECILE D. PORTILLA, ATTORNEY AT LAW LLC**<br>**PLAINTIFFS**<br><br>**COUNTY OF ESSEX, ESSEX COUNTY PROSECUTOR'S OFFICE, HEATHER CASSIDY, DETECTIVE MULLINGS, CAPTAIN DAVID SANABRIA, ESSEX COUNTY CYBER CRIMES UNIT(FACTS UNIT) JANE DOE 1-S, JOHN DOE 1-S (fictitious parties, names unknown)**<br><br>**DEFENDANT (S)** | **SUPERIOR COURT OF NEW JERSEY LAW DIVISION, ESSEX COUNTY**<br><br>**DOCKET NO: ESX-L-1684-25**<br>**CIVIL ACTION**<br><br>**CERTIFICATION OF CECILE D. PORTILLA, ESQUIRE** |

Cecile D. Portilla of full age with knowledge of the penalties of false swearing hereby certify as follows:

1. I am the plaintiff in the within matter.
2. I am familiar with the facts of this case and able to make this certification.

3. I am an attorney at law of the State of New Jersey.

4. I am also a Licensed Registered Nurse.

5. I was formerly employed by a Home Care Agency in New Jersey in the Capacity of the Director of Clinical Services.

6. I blew the whistle against the Health Care Agency related to Child Neglect and Medicare/ Medicaid fraud.

7. The initial Whistle blowing later resulted in an additional ***complaint against a Government Agent.***

8. The Government Agent threatened me with retaliation, to make me work for free and to make me homeless.

9. Soon after, I became AWARE that I was being followed, and that all my phones, including my landlines, had become totally useless.

10. I was forced to use pay phones, public libraries and make house calls to communicate with her clients.

11. My printers and computers were being controlled and I was barely able to do my work.

12. I reached out to the Essex County Prosecutor's Office when it became virtually impossible to use my computers and printers.

13. Captain Sanabria advised me that his Office could help me.

**14. I believed him.**

15. Heather Cassidy contacted us and advised me to bring my computers into the Essex County Prosecutor's Office.

16. Heather Cassidy advised me that my computers would be examined as a matter of **"professional Courtesy."**

17. Upon being called by Heather Cassidy via phone to bring the Computers into the Prosecutors' Office to be checked, I complied and took my computers the Essex County Prosecutor's office.

18. The Computers were received by Detective Mullings.

19. Detective Mullings advised me that the examination of my computers would take a long time.

20. After not receiving word for a very long time, I started to inquire into the status of my computers.

21. I made multiple trips to the Prosecutor's Office to get the status of my computers.

22. After no one responded, in early April 2022, I asked that my Computers be returned to me.

23. When no one responded to the early April 2022 request, it became clear to me that my computers were converted by the Essex County Prosecutor's office.

24. On April 28, 2022, I filed a Notice of Claim against Essex County Prosecutor's Office, the County of Essex, the Cyber Crime Unit and the named individual defendants. **(See Exhibit B).**

25. The Notice of Claim was timely filed within 90 days after I asked for the return of my computers and was ignored by the County of Essex Prosecutor's office.

26. Attached as Exhibit B is a true and correct copy of the Notice of Claim that was filed against Essex County Prosecutor's Office, the County of Essex, the Cyber Crime Units Unit and the named individual defendants. **(Exhibit B)**

27. Even after I filed the Notice of claim NO ONE contacted me and offered to return my computers to me.

28. Attached as Exhibit A is a true and correct copy of the Amended Complaint (without any federal Count) that was presented to the District Court, that I had advised the District Court Judge that I would file in the State Court if my Complaint was remanded to the Superior Court. **(Exhibit A)**

29. Attached as Exhibit C is a true and correct copy of the case jacket of the within complaint. **(Exhibit C)**

I Certify that the above statements made by me are true. I am aware that if any of the foregoing statements are willfully false that I am subject to punishment.

/s/ Cecile D. Portilla
CECILE D. PORTILLA, ESQUIRE

Dated: July 7, 2025



Cecile D. Portilla

FILED, Clerk of the Supreme Court, 29 Apr 2025, 090218

**CECILE DELROSE PORTILLA, Esq.**
**CECILE D PORTILLA, ATTORNEY AT LAW**
**7 GLENWOOD AVE STE 400**
**EAST ORANGE, NJ, 07017**
**973-676-5072**
**PORTILLALAW@COMCAST.NET**
**PORTILLALAW@GMAIL.COM**
**Attorney Bar ID: 021212005**

SUPREME COURT OF NEW JERSEY

APP. DIV. # **A-000692-21**

SUPREME COURT # **090218**

Dr. Mavis Faulknor,
Plaintiff-Petitioner,
v.
County of Hudson,
Defendant-Respondent,
and
Meadowview Psychiatric, Hospital, and Dr. Edward Caruso,
Defendants,
and
Joanne D. Reilly, Pat Shiels, Darice Toon, Gerald Drashelf, Dr. Alexander Delga, Arlene Deano, Roderick T. Baltimore, Alexander C. Locatelli, Georgina Pallitto, Elinor Gibney, and Dr. Marian Bekhit,
Defendants.

NOTICE OF MOTION
MOTION MISCELLANEOUS

FILED, Clerk of the Supreme Court, 29 Apr 2025, 090218

MOTION TO HOLD MATTER IN ABEYANCE IN THE INTEREST OF JUSTICE UNTIL A DECISION IS MADE REGARDING GRANTING THE PLAINTIFF'S COUNSEL'S REQUEST FOR ACCOMMODATION IN BEING ABLE TO PAPER FILE HER DOCUMENTS AS SHE IS A WHISTLE BLOWER AGAINST THE FBI WHOSE DOCUMENTS ON ECOURTS ARE BEING TAMPERED AND GIVEN UNLAWFUL INTERFERENCE (NOW INCLUDING FRAUDULENT UPLOADS) DIRECTLY ON THE COURT SITE AFTER BEING FILED ON ECOURTS, BY THOSE PERCEIVED TO BE HOSTILE FBI AGENTS SEEKING TO RETALIATE AGAINST PLAINTIFF'S ATTORNEY.

NEW JERSEY HAS EXPRESSED THAT THE RIGHT TO ACCESS OUR COURTS SHOULD NOT BE INFRINGED UPON. IANNONE V. MCHALE, 245 NJ. SUPER. 17, 28 (1990).

Attorney for MAVIS FAULKNOR

Dated: 02/13/2025

S/ CECILE DELROSE PORTILLA

## SUPREME COURT OF NEW JERSEY

| | |
|---|---|
| DR. MAVIS FAULKNOR<br><br>PLAINTIFF-APPELLANT<br><br>v<br><br>COUNTY OF HUDSON, MEADOWVIEW PSYCHIATRIC HOSPITAL, JOANNE D. REILLY, DR. EDWARD CARUSO, PAT SHIELS, DARICE TOON, GERALD DRASHELF, DR. ALEXANDER DELGA, ARLENE DEANO, RODERICK T. BALTIMORE, ELINOR GIBNEY, HEAD DOE, JOHN DOE AND HARRY (IDENTITIES UNKNOWN)<br><br>DEFENDANTS-RESPONDENTS | **Supreme Court of New Jersey. No: 090218**<br><br>**Appellate Division: Docket No: A-000692-21T2**<br><br>Civil Action<br>On Petition for Certification of the Final Judgment of The Appellate Division Issued December 16, 2024<br><br>Sat Below: Hon. Anthony V. D'Elia, JSC<br>Superior Court of New Jersey<br>Hudson County<br>HUD-L-4336-17<br>Consolidated With<br>HUD-L-3792-18<br><br>**Clarification**<br>**Submitted: April 29, 2025** |

## CERTIFICATION IN SUPPORT OF MOTION REQUEST FOR ACCOMMODATION TO PAPER FILE DOCUMENTS ON ECOURTS

## PURSUANT TO NJ CEPA, NJSA 10:1-2, NJSA 10:5-12(d)(e)(f)

Cecile D. Portilla, Attorney at Law LLC
7 Glenwood Avenue, Suite 400
East Orange, NJ 07017
Phone (973) 676 5072 Fax (862) 520 3433
Attorney Id: 021212005
portillalaw@gmail.com

Cecile D. Portilla of full age with knowledge of the penalties of false swearing hereby certify as follows:

1. I am an attorney at law of the State of New Jersey and the co-counsel for Dr. Mavis Faulknor.
2. I am familiar with the facts of this case and able to make this certification.
3. I am a 2013 whistle Blower against an FBI Agent who has threatened to destroy my law practice, make me work for free, and cause me to become homeless.
4. I am entitled to whistle blower protection.
5. Based on information and belief, this Agent has been unlawfully accessing court documents on eCourts and tampering them. I have put Courts, Court Clerks and law enforcement on Notice.
6. Over the years, I have gathered enough evidence to substantiate my statements that there is ***unlawful administrative access to eCourts***
7. In January 2025, I was able to obtain conclusive proof that others perceived to be the FBI Agent (and those assisting him), have ***direct unlawful administrative access to the Supreme Court's electronic site*** and were uploading documents to ecourts.
8. On January 31, 2025, those perceived to be FBI Agents uploaded several documents entitled "Exhibit" purportedly from the Appellate Division to the

Supreme Court for the clear purpose of sabotaging Dr. Faulknor's Petition for Certification. **(Pa001, Pa003)**

9. The documents that were uploaded from the Appellate Division to the Supreme Court's eCourt on January 31, 2025, by perceived FBI Agents, did not even match the documents that they purported to accompany, as *they had different Appellate Division date stamps* from the Appellate Brief and Appendices that they purported to accompany.

10. Two of the Exhibits attached hereto as Exhibit A and Exhibit B, that were marked uploaded in error by the case manager, were certainly NOT uploaded in error, but were uploaded to maliciously influence the outcome of the Petitioner's matter. **(Pa001, Pa003)**

11. The entire upload of documents from the Appellate Division to the Supreme Court on January 31, 2025, appeared negligent as all the documents (excluding the three exhibits) were identified as "Appellate Division Brief" before they were properly identified by Supreme Court case manager.

12. It was clear to the undersigned that the upload in its entirety was not her knowing and voluntary act.

13. Please also note Exhibit C from Best Buy's Geek Squad Computer Services, showing that the Computer Expert from Geek Squad was unable to find any

hyperlinks in our documents that were submitted to the Appellate Court as the hyperlinks were activated after being uploaded to eCourts. **(Pa006)**

14. The hyperlinks were not activated at the Best Buy Store and were not activated in our Offices. **(Pa006).**

15. Hyperlinks are maliciously activated on eCourts by perceived FBI Agents to trigger deficiency rejections of our documents by the Case Managers. **(Pa006)**

16. The January 31, 2025, upload of documents from the Appellate Division to the Supreme Court, mirrored a 2017 upload of documents in the trial Court in support of Summary Judgement on my personal matter.

17. In 2017, multiple documents in support of Summary Judgment on my personal case, were allegedly uploaded by the case management, since neither Attorney Hawkins nor the undersigned had access to eCourts at that time.

18. Those documents were also all identified by the same name after being uploaded and appeared haphazard on the Court site.

19. In 2017, someone also sent a communication to Judge Carey, that was not relevant to the case (but obviously important to the sender) , informing him that Attorney Eldridge Hawkins had asked another judge to recuse himself/ herself.

20. *Multiple* unjustified failures to prosecute notifications are being sent out in the Superior Court by these persons perceived to be FBI Agents, to harass us,

causing us to file a Notice of Claim against the Superior Court. We were repeatedly required to pay the motions costs to get defendants reinstated.

21. These perceived Federal Agents are removing email addresses from case docket sheets to prevent court notifications from being sent to us and other lawyers; rearranging documents in the ACMS and causing our documents to appear as if filed after the documents filed by other attorneys.

22. Only persons with ***direct unlawful administrative access***, can make changes to Court docket sheets in such an outrageous manner.

23. These acts are *crimes* against the courts.

24. One defense attorney on my personal case against Comcast, recently contacted my attorney Attorney Eldridge requesting that he send documents directly to her, as she was no longer receiving communications from eCourts.

25. The defense attorney for Comcast found it strange that eCourts *suddenly stopped sending her notifications on my personal matter.*

26. We have also found ourselves *suddenly not receiving notification* from ecourts on various matters.

27. Even though the perceived FBI Agents hate Co-Counsel Attorney Hawkins for assisting me with matters related to my 2013 whistle blowing, they hate the undersigned *much more*, and as such, have removed my name from multiple

causing us to file a Notice of Claim against the Superior Court. We were repeatedly required to pay the motions costs to get defendants reinstated.

21. These perceived Federal Agents are removing email addresses from case docket sheets to prevent court notifications from being sent to us and other lawyers; rearranging documents in the ACMS and causing our documents to appear as if filed after the documents filed by other attorneys.

22. Only persons with ***direct unlawful administrative access***, can make changes to Court docket sheets in such an outrageous manner.

23. These acts are *crimes* against the courts.

24. One defense attorney on my personal case against Comcast, recently contacted my attorney Attorney Eldridge requesting that he send documents directly to her, as she was no longer receiving communications from eCourts.

25. The defense attorney for Comcast found it strange that eCourts *suddenly stopped sending her notifications on my personal matter.*

26. We have also found ourselves *suddenly not receiving notification* from ecourts on various matters.

27. Even though the perceived FBI Agents hate Co-Counsel Attorney Hawkins for assisting me with matters related to my 2013 whistle blowing, they hate the undersigned *much more*, and as such, have removed my name from multiple

docket sheets and substituted his name as the attorney of record on multiple cases of my clients to harass me.

28. These unlawful changes made to the docket sheets without our knowledge, have caused interference with Court notifications not being received by either of us.

29. We have had cases dismissed because (based on information and belief), the Judge and Court staff *could not see* documents that were uploaded and filed on a Court's web site.

30. I have been told on two occasions that an attorney *could not see* my submissions that were attached to the Superior Court's web site.

31. Thus, we believe that our documents are being blocked from view on the Court site as desired by these agents.

32. I have down loaded documents from eCourts that are filed by defendants that have the actual names of documents given by the defendants. For example, "**defendant's brief**" or Defendant's "**Exhibit A**" will retain those names when downloaded to my computer.

33. In contrast, when documents filed by the undersigned are downloaded, they do not have the names that we gave to them. They are identified by strange ***numbers*** or ***codes*** which clearly indicate that crimes are occurring upon eCourts.

FILED, Clerk of the Supreme Court, 29 Apr 2025, 090218, AMENDED

34. The number of typos, grammar errors, Ebonics and Patios in my briefs over the years since my whistle blowing activity shocks the conscience.

35. These attacks and acts of interferences are occurring in multiple Courts and are done with the intent to falsely declare me incompetent and unfit in retaliation for my whistleblowing.

36. I even received a fake Court Order from an Administrative law Judge's email address back in approximately 2014. Upon asking the judge the reason for sending an order of dismissal that contradicted the settlement agreement between the parties, the Judge denied sending the Order.

37. Upon asking one attorney to explain one of his multiple *motions to compel my compliance* in another matter, the attorney could not provide any explanation.

38. I feel so strongly about the unlawful acts by alleged government agents especially the crimes upon our courts that I am sending a letter to the New Jersey legislature proposing that our Constitution be amended to change the definition of ***Treason*** to include ***unlawful cyber accessing and interference with Court Documents and Court Orders by any person.***

39. *Rearranging documents in the ACMS, removing or adding exhibits, blackening or blurring words, uploading, deleting paragraphs, creating hyperlinks, turning documents upside down on eCourts causing Appellate documents to be thrown out can dictate the outcome of litigation.*

40. *Blocking judges and clerks from seeing documents on eCourts are acts that can dictate the outcome of litigation.*

41. *In other words, these criminals by their interference can determine who wins or loses a case.*

42. *Determining who should prevail on lawsuits and Court matters is a **judicial function** pursuant to Article VI of the New Jersey Constitution.*

43. ***Because the Judiciary** is the third branch of government, these acts upon the Court and Court Documents clearly amount to a **Hostile takeover** or the usurping of the authority of the Third Branch of our Government.*

44. *Simply put, these are acts of **TREASON.***

45. *Exactly what types of human beings are so full of themselves that they think that they **can get away** with hacking Court documents?*

46. *I have been studying the Constitution and Federal law since the harassment started and I have found no law to date that provides immunity to FBI Agents who **commit crimes** upon the courts and citizens.*

47. ***Because these perceived Agents have direct administrative access to eCourts**, it may be difficult for the IT department of the Courts to identity who they are.*

48. These persons have absolutely no respect for our Courts, people's rights or people's privacy.

49. I am compelled to mention that Attorney Eldridge Hawkins assisted me with matters related to my whistle blowing and has become a victim.

50. On one occasion, I met with Attorney Hawkins in his office and wrote words on a yellow pad that I did not want to verbalize orally.

51. I recall saying that I knew that the walls have ears, thus I will "write the words as opposed to saying them."

52. I even asked him to hold the yellow pad upside down to prevent any mysterious camera that was inside the ceiling from capturing my words.

53. Days later, perceived FBI Agents advised me of the words that were written on a yellow pad in Attorney Hawkins Office.

54. Thus, it is clear to me that these person(s) broke in to Attorney Hawkins office, either by bypassing the security camera or asking the owner of the building to let them in. There was no way for these persons to know my words that were written on the yellow pad without physically picking up the yellow pad and looking at the words.

55. Two years ago, I consulted with another lawyer in his private offices in Morristown on a private matter. I intentionally did not take my cell phone with me. Days later, these perceived FBI Agents were able to basically let me know the contents of my conversation made in another attorney's private office!

56. While it is very convenient to eFile, the interference is creating a hardship, as persons hell bent on retaliation since 2013, ***have unlawful administrative access to eCourts*** and are making changes to our documents.

57. This justifies the need for whistle blower protection and accommodation.

58. Based on my Whistle Blower status, and threatened REVENGE, by those who are convinced that they are ABOVE the law, I request accommodation in being allowed to paper file my documents.

59. These persons *broke into my home and stole documents; placed my doctor under surveillance and hacked his office computers, seeking fruit of the poisonous tree to try and have his license taken away as punishment for helping me.*

60. *These persons broke into the law office of the attorney who assisted me with my whistle blowing case and orchestrated multiple Audits upon his Law offices to harass him as punishment for helping me.*

61. *Based on information and belief, these FBI Agents also unlawfully accessed H&R Block and injected a bogus multimillion dollars write off in my tax documents, which I would not have been able to explain to the IRS had the accountant not caught it.*

62. *This was clearly an act to have the undersigned falsely prosecuted.*

63. *Based on information and belief they also provided false information to my Student Loan carrier and blocked my request for a reduction in my monthly*

*loan repayment amount, causing the carrier to triple the monthly payments amounts to cause me hardship.*

64. *My Uber driver who delivers my mail to prevent FBI mail theft, was fraudulenty identified as **deceased** in the credit reporting system when he tried to purchase a new car.*

65. *My Uber driver's alleged "**deceased**" status prevented him from buying the car he desired.*

66. *My Uber driver has asked me "what is the purpose of having a Court" if these persons are able to commit these acts against the Court?*

67. CEPA, like [LAD], seek to protect the civil rights of citizens. See Kolb v. Burns, 320 N.J. Super. 467,477 (App. Div.1999).

68. Both the NLAD and CEP A make it illegal for any person to take reprisals against another because that person has opposed any practices that are injurious to others. Abbamont v. Piscataway Twp. Bd. of Educ., 138 N.J. 405,431 (1994); Dzwonar v. McDevitt, 177 N.J. 451,461 (2003).

69. I make this request pursuant to New Jersey CEPA, since I blew the whistle in role of a health care provider to protect low-income minority patients from unlawful acts.

70. The Health Care agency where I previously functioned as the Director of Clinical Services, was billing for performing patient assessments and received

payment for some assessments that were falsified because they were NEVER done.

71. The Business Manager, as opposed to the Director of Clinical Services was allowed to review the Nurses Notes to determine compliance by Nursing staff.

72. I reported Medicaid/Medicare Fraud as part of the same matter and was later compelled to blow the whistle against the Federal Agent assigned to investigate the matter after it became crystal clear that he was trying to let the Health Care Agency slide.

73. The United States Supreme Court has expressed that whistleblowing plays an especially important role in protecting the public welfare. See Murray v UBS Securities, 601 U.S. 23 (2024).

74. This request is also made pursuant to NJSA 10:1-2, NJSA 10:5-12 (d) (e) (f)

75. I would still reserve the option to efile.

76. This motion is based on good cause and not for the purpose of delay.

I certify that the above statements made by me are true. I am aware that if any of the foregoing statements are willfully false that I am subject to punishment.

/s/ Cecile D. Portilla
CECILE D. PORTILLA, ESQUIRE

Dated: April 28, 2025

Gmail

Cecile Portilla <portillalaw@gmail.com>

**eCourts Supreme Communication - ANGEL LOPEZ V. THE PALISADES LLC, MR. HANDYMAN, INC., RSP ENTERPRISES NJ, L.L.C., ET AL. (089878)**

1 message

**SupremeCTeNotices.Mailbox@judiciary.state.nj.us**
<SupremeCTeNotices.Mailbox@judiciary.state.nj.us>

Tue, Feb 11, 2025 at 6:34 AM

eCOURTS SUPREME ELECTRONIC NOTIFICATION

Case title: ANGEL LOPEZ V. THE PALISADES LLC, MR. HANDYMAN, INC., RSP ENTERPRISES NJ, L.L.C., ET AL.
Supreme Court docket #: 089878
Appellate Division docket #: A-001267-23
Filing Party: ANGEL LOPEZ
Case manager: ANGEL MARTINEZ JIMENEZ
Phone number: 609-815-2955

An eFiling Communication related to the above listed matter has been entered by PLAINTIFF's attorney, CECILE DELROSE PORTILLA , as follows:

**Case Manager: Please note that i will complete the certification of no confidential personal identifiers related to the partial upload last evening, but my filing was given interference causing me to cut the appendix that was inflated in MG size in two parts just to get it to pass through the system to comply with the date deadline. I will be reuploading a revised Appendix and Brief and making a motion to vacate, reconsider and file my documents as within time later today. Cecile D. Portilla, Esquire**

THIS NOTICE HAS BEEN ELECTRONICALLY SENT TO:

PLAINTIFF'S ATTORNEY (ATTORNEY OF RECORD): CECILE DELROSE PORTILLA , ESQ.

PLAINTIFF'S ATTORNEY (CO-COUNSEL): ELDRIDGE T HAWKINS , ESQ.

**Participating parties:**

This eCourts Supreme Communication can also be accessed by registered eCourts Supreme users through the eCourts login page on the Judiciary's website.

Users of eCourts Supreme are required to complete a first-time user registration.

Please do not reply to this message. This email is an automated notification and is unable to receive replies.

AMENDED

SUPREME COURT OF NEW JERSEY: 089878

| | |
|---|---|
| Angel Lopez<br>Plaintiff<br><br>v<br><br>The Palisades LLC, Mr. Handyman, Inc, RSP Enterprises NJ, LLC., and ABC Corporation 1-10 (Fictitious Corporations)<br>Defendants | Superior Court of New Jersey Appellate Division-A-001267-23<br><br>On Petition for Certification of the Final Judgment of the Appellate Division Issued on September 17, 2024<br><br>Sat Below: Hon Peter G. Geiger, JSC BER-L-5926-20 |
| Angel Lopez, Kazue Koizumi<br>Plaintiffs<br>v<br>Plaintiff Edward Pec, The Palisades LLC, Mr. Handyman, INC., RSP Enterprises NJ, L.L.C., and ABC Corporation 1-10 (Fictitious Corporation(s )<br><br>Defendants | Superior Court of New Jersey Appellate Division-A-001267-23<br><br>On Petition for Certification of the Final Judgment APP. DIV: Issued 9/17/24<br>Sat Below: Hon Peter G. Geiger, JSC: BER-L-3575-22<br><br>***CERTIFIED OF CECILE D. PORTILLA IN SUPPORT OF MOTION FOR RECONSIDERATION OF THE DENIAL OF PETITION FOR CERTIFICATION***<br><br>**Date Submitted: April 21, 2025** |

CECILE D. PORTILLA, Attorney At Law LLC
7 Glenwood Avenue, Suite 400
East Orange, NJ 07017
Phone (973) 676 5072 Fax (862) 520 3433
Attorney Id: 021212005
Email: portillalaw@gmail.com

ELDRIDGE HAWKINS LLC, Attorney At Law
Attorney ID No. 214731967
60 Evergreen Place, Suite 510
East Orange, New Jersey 07018
Tel: (973) 676-5070 Fax: (973) 676-7356 Email: hwklaw@aol.com



cecile d Portilla

AMENDED

Cecile D. Portilla of full age with knowledge of the penalties for false swearing state as follows:

1. I am an attorney at Law of the State of New Jersey and the attorney for Angel Lopez.
2. I am familiar with the facts of this case and able to make this certification.
3. I have been having all types of filing and uploading problems that I have reported repeatedly to the Court's Administration, Clerks, Judges and law enforcement over the years.
4. I am a 2013 Whistle blower against an FBI agent who threatened retaliation.
5. The FBI Agent made it very clear that he would be causing interferences with my law practice.
6. I have made many trips to Trenton to report problems and to seek solutions.
7. I am entitled to whistle blower protection.
8. On 2/10/2025, I started my upload of documents that was given interference.
9. My first document was posted on 2/10/2025 when my documents were due.
10. On 2/10/2025, I was forced to split an Appendix that was less than 200 pages, that should not have been over 40 megabytes causing rejection when I tried to access the system.
11. As shown, after I added the appendix to the brief in the later filing, the entire document could be uploaded as one and was under 25 megabytes.

AMENDED

12. Since my first document was intentionally caused to be submitted on 2/11/2025 due to interference, although I uploaded it on 2/10/25, I decided that there was no point in rushing the remainder of the documents.

13. The interference occurs at all levels of the eCourts system.

14. The very fact that individuals (suspected of being the same FBI Agent and those assisting him) can send out multiple failures to prosecute notifications on our case jackets to harass us, shows that they have penetrated the administrative component of eCourts.

15. The fact that this person and friends are able to rearrange documents in the ACMS system at the Trail level, shows clear penetration of the administrative component of eCourts.

16. The fact that these individuals are able to remove my name from case jackets at the trial level as the attorney of record. and place another attorney's name in my place, emphasizes my point that there is unlawful administrative access to eCourts by these individuals.

17. I have been requesting permission to paper- file my documents for years.

18. The deficiency notification that triggered this Certification was noted in my spam folder on Friday March 7, 2025.

19. The motion was not made for purposes to cause delay



Ra662

AMENDED

20. Judges, lawyers, litigants and our entire Court system can benefit and make changes based on adequate disclosure of information that others are trying to cover up.

21. Because the issues are of great public importance, an overlength brief and certification are warranted in this case as well as allowing the reconsideration of the petitioner's matter.

22. The motion was uploaded timely on 2/10/2025, and we have no control over the things that are occurring on New Jersey's Web based eCourts filing system after our documents are uploaded. **(Exhibit A)**

23. We also believe that the Certification in support of our motion for reconsideration was switched on March 12, 2025, as there is no other explanation for it being missing.

24. Thus, the Court should accept the undersigned's motion for *reconsideration, motion to file as within time* and for *relaxation of the rules*. **(See the undersigned Certified Request for Accommodation attached separately and as 'Exhibit B' out of an abundance of caution)**

25. This motion is based on good cause and not for the purpose of delay.

I certify that the above statements made by me are true. I am aware that if the above statements are willfully false, I am subject to punishment.

Cecile D. Portilla
CECILE D. PORTILLA, ESQUIRE

Dated: April 21, 2025

RECEIVED, Clerk of the Supreme Court, 12 Mar 2025, 089878, RECEIVED 

# EXHIBIT A

**RECEIVED,** Clerk of the Supreme Court, 12 Mar 2025, **089878, RECEIVED**

**AMENDED**

New Jersey Courts
Independence • Integrity • Fairness • Quality Service

File New Case | My Case List | Logout |
You are currently logged in as **CECILE DELROSE PORTILLA** (02:

**Home**
**My Profile**
Update Email/Address
Update Password/Security Question Section
**Search**
Case Search
**Quick Reference**
Schedule of Fees
FAQs
Common Filing Deficiencies
Court Rules
**Support**
609-815-2955
Option 3
or
SupremeCteFiling.mailbox@njcourts.gov

## My Case List

**Filter case list to show** CLOSED IN SUPREME cases

**Filter by** **For** Find

| SUPREME COURT DOCKET # | CASE TITLE | CASE TYPE | APP. DIV. DOCKET # | SUBMITTED BY | SUBMITTED DATE | CASE STATUS | OPERAT |
|---|---|---|---|---|---|---|---|
| 089878 | ANGEL LOPEZ V. THE PALISADES LLC, MR. HANDYMAN, INC., RSP ENTERPRISES NJ, L.L.C., ET AL. | CIVIL | A-001267-23 | CECILE DELROSE PORTILLA | 09/19/2024 | CLOSED IN SUPREME | |

| FILING TYPE | DATE SUBMITTED | FILING PARTY - FILING ATTORNEY | FILING ID | POSTED DATE | eFILING STATUS | OPERAT |
|---|---|---|---|---|---|---|
| ADD DOCUMENT | | ANGEL LOPEZ - CECILE D PORTILLA, ATTORNEY AT LAW CECILE DELROSE PORTILLA | 1052615 | 02/14/2025 | DRAFT | |
| ADD DOCUMENT | 02/13/2025 | ANGEL LOPEZ - CECILE D PORTILLA, ATTORNEY AT LAW CECILE DELROSE PORTILLA | 1052598 | 02/13/2025 | ACCEPTED | |
| ADD DOCUMENT | 02/13/2025 | ANGEL LOPEZ - CECILE D PORTILLA, ATTORNEY AT LAW CECILE DELROSE PORTILLA | 1052571 | 02/13/2025 | ACCEPTED WITH DEFICIENCY | |
| ADD DOCUMENT | 02/11/2025 | ANGEL LOPEZ - CECILE D PORTILLA, ATTORNEY AT LAW CECILE DELROSE PORTILLA | 1052504 | 02/11/2025 | ACCEPTED | |
| ADD DOCUMENT | 02/11/2025 | ANGEL LOPEZ - CECILE D PORTILLA, ATTORNEY AT LAW CECILE DELROSE PORTILLA | 1052502 | 02/10/2025 | ACCEPTED | |
| ADD DOCUMENT | 12/10/2024 | THE PALISADES LLC - BRANDON J. BRODERICK, ESQ. LLC CHRISTOPHER THEODORE KAROUNOS | 1051050 | 12/10/2024 | ACCEPTED | |
| ADD DOCUMENT | 12/10/2024 | RSP ENTERPRISES NJ, L.L.C. - HOAGLAND LONGO MORAN DUNST & DOUKAS AMELIA ROSE LYTE | 1051041 | 12/10/2024 | ACCEPTED | |
| ADD DOCUMENT | 10/17/2024 | ANGEL LOPEZ - CECILE D PORTILLA, ATTORNEY AT LAW CECILE DELROSE PORTILLA | 1050056 | 10/17/2024 | ACCEPTED | |
| ADD DOCUMENT | 10/17/2024 | ANGEL LOPEZ - CECILE D PORTILLA, ATTORNEY AT LAW CECILE DELROSE PORTILLA | 1050055 | 10/16/2024 | ACCEPTED | |
| ADD DOCUMENT | 09/30/2024 | ANGEL LOPEZ - CECILE D PORTILLA, ATTORNEY AT LAW CECILE DELROSE PORTILLA | 1049876 | 09/30/2024 | ACCEPTED | |
| NEW CASE | 09/19/2024 | ANGEL LOPEZ - CECILE D PORTILLA, ATTORNEY AT LAW CECILE DELROSE PORTILLA | 1049765 | 09/19/2024 | ACCEPTED | |

| SUPREME COURT DOCKET # | CASE TITLE | CASE TYPE | APP. DIV. DOCKET # | SUBMITTED BY | SUBMITTED DATE | CASE STATUS | OPERAT |
|---|---|---|---|---|---|---|---|
| 089461 | GLORIA FLORES V. JEANETTE PAGE-HAWKINS, ROBERT D. JACKSON, ESSEX COUNTY CITIZEN SERVICES/WELFARE DEPARTMENT, ESSEX COUNTY, ET AL. | CIVIL | A-002333-22 | CECILE DELROSE PORTILLA | 05/20/2024 | CLOSED IN SUPREME | |
| 087460 | SPECIAL POLICE ORGANIZATION OF NEW JERSEY, ET AL. V. CITY OF NEWARK, ET AL. | CIVIL | A-004168-19 | CECILE DELROSE PORTILLA | 08/15/2022 | CLOSED IN SUPREME | |

1 10 Records/Page 3 Records -- 1 - 3 Displayed

**OPERATION**

Click **EDIT** to update case information and documents.

Click **DELETE** to delete a case or a document in DRAFT status.

Click **VIEW** to review case information and documents.

Click **PRINT** to generate a FILING SUMMARY report.

Click **COMMUNICATION** to send a message to the Clerk's Office regarding the case.

Click to view/collapse case filing details.

**eFILING STATUS**

**DRAFT** Filing has not been submitted to the Clerk's Office. All associated party information and documents may be edited or deleted.

**SUBMITTED** Filing has been submitted to the Clerk's Office and is under review

**ACCEPTED** Filinghas been reviewed and accepted by the Clerk's Office.

© Copyright NJ Judiciary 2012

AMENDED

# EXHIBIT B

**(Request for Accommodation pursuant to NJ CEPA, NJSA,10:1-2, NJSA 10:5-12 (d) (e) (f))**

AMENDED

# SUPREME COURT OF NEW JERSEY: 089878

| | |
|---|---|
| Angel Lopez<br>Plaintiff<br>v<br><br>The Palisades LLC, Mr. Handyman, Inc, RSP Enterprises NJ, LLC., and ABC Corporation 1-10 (Fictitious Corporations)<br>Defendants | Superior Court of New Jersey Appellate Division-A-001267-23<br><br>On Petition for Certification of the Final Judgment of the Appellate Division Issued on September 17, 2024<br><br>Sat Below: Hon Peter G. Geiger, JSC BER-L-5926-20 |
| Angel Lopez, Kazue Koizumi<br>Plaintiffs<br>v<br>Plaintiff Edward Pec, The Palisades LLC, Mr. Handyman, INC., RSP Enterprises NJ, L.L.C., and ABC Corporation 1-10 (Fictitious Corporation( s )<br>Defendants | Superior Court of New Jersey Appellate Division-A-001267-23<br><br>On Petition for Certification of the Final Judgment APP. DIV: Issued 9/17/24<br><br>Sat Below: Hon Peter G. Geiger, JSC: BER-L-3575-22<br><br>**CERTIFICATION OF CECILE D PORTILLA, ESQ IN SUPPORT OF REQUEST FOR ACCOMMODATION TO PAPER FILE DOCUMENTS PURSUANT TO NJCEPA, NJSA 10:1-2, NJSA 10:5-12 (d) (e) (f)**<br><br>**Date Submitted: April 21, 2025** |

CECILE D. PORTILLA, ATTORNEY AT LAW LLC
7 Glenwood Avenue, Suite 400
East Orange, NJ 07017
Phone (973) 676 5072
Fax (862) 520 3433
Attorney Id: 021212005
Email: portillalaw@gmail.com

AMENDED

Cecile D. Portilla of full age with knowledge of the penalties of false swearing hereby certify as follows:

1. I am an attorney at law of the State of New Jersey and the co-counsel for Angel Lopez.
2. I am familiar with the facts of this case and able to make this certification.
3. I am a 2013 whistle Blower against an FBI Agent who has threatened to destroy my law practice, cause me to work for free and become homeless.
4. I am entitled to Whistle Blower protection.
5. Based on information and belief, this Agent has been unlawfully accessing Court documents and tampering them. I have put Courts, Court Clerks and law enforcement on Notice.
6. Over the years, I have gathered enough evidence to substantiate my statements that there is ***unlawful administrative access to eCourts by these agents.***
7. In January 2025, I was able to obtain conclusive proof that others perceived to be the FBI Agent (and those assisting him), have ***direct unlawful administrative access to the Supreme Court's electronic site*** and were uploading documents to eCourts.
8. On January 31, 2025, those perceived to be FBI Agents uploaded several documents entitled "Exhibit" purportedly from the Appellate Division to the Supreme Court on the matter of Dr. Mavis Faulknor v County of Hudson #



Ra668

090218, for the clear purpose of sabotaging Dr. Faulknor's Petition for Certification.

9. The documents that were uploaded from the Appellate Division to the Supreme Court's eCourt on January 31, 2025, by perceived FBI Agents, did not even match the documents that they purported to accompany as *they had different Appellate Division date stamps* from the Brief and Appendices.

10. *Multiple* unjustified failures to prosecute notifications are being sent out in the Superior Court by these persons, perceived to be FBI Agents, to harass us, causing us to file a Notice of Claim against the Superior Court as we were repeatedly required to pay the motions costs to get dismissed defendants reinstated.

11. These perceived Federal Agents are removing email addresses from case docket sheets to prevent court notifications from being sent to us and other lawyers, rearranging documents in the ACMS and causing our documents to appear as if they are filed after the documents filed by other attorneys.

12. Only persons with ***direct unlawful administrative access***, can make changes to Court docket sheets in such an outrageous manner.

13. These acts are *crimes* against the courts.

14. One defense attorney on my personal case against Comcast, recently contacted



Lucile S Caell

AMENDED

Attorney Eldridge asking that he send documents directly to her, as she was no longer receiving communications from eCourts.

15. The defense attorney found it strange that eCourts *suddenly stopped sending her court notifications to her on my personal matter.*

16. We have also found ourselves *suddenly not receiving notification* from ecourts on various matters.

17. Even though the perceived FBI Agents clearly hate Co-Counsel Attorney Hawkins for assisting me with matters related to my 2013 whistle blowing, they hate the undersigned *much more*, and as such, have removed my name as attorney of record from multiple docket sheets of my clients' cases, and substituted Attorney Hawkins' name as the attorney of record to harass me.

18. Only persons with ***direct administrative access to eCourts*** can make these types of changes.

19. These unlawful changes made to the docket sheets without our knowledge, have caused interference with Court notifications not being received by either of us.

20. We have had cases dismissed because (based on information and belief), the Judge and Court staff *could not see* documents that were uploaded and filed on a Court's web site.

21. I have been told on two occasions that an attorney *could not see* my submissions that were attached to the Superior Court's web site.

AMENDED

22. Thus, we believe that our documents are being blocked from view on the Court site as desired by these agents.

23. When I down load documents from eCourts that are filed by defendants, the documents have the actual names that the defendants gave to them.

24. For example, a document filed as "**defendant's brief**" or defendant's "**Exhibit A**" will retain those names when downloaded to my computer.

25. In contrast, when documents filed by the undersigned are downloaded, they do not have the names that we gave to them. They are identified by strange ***numbers*** or ***codes*** which clearly indicate that crimes are occurring upon eCourts.

26. The number of typos, grammar errors, ebonics and patios in my briefs over the years since my whistle blowing activity shocks the conscience.

27. These attacks and acts of interferences are occurring in multiple Courts and are done with the intent to falsely declare me incompetent and unfit in retaliation for my whistleblowing.

28. I even received a fake Court Order from an Administrative law Judge's email address back in approximately 2014.

29. Upon asking the judge the reason for sending an order of dismissal that contradicted the settlement agreement between the parties, the Judge denied sending the Order.



Ra672

AMENDED

30.Upon asking one attorney to explain one of his multiple ***motions to compel my compliance*** in another matter, the attorney could not provide any explanation.

31.I believe that these persons are collecting all these falsely created documents that reflect my alleged deficiency for unlawful reasons.

32.I feel so strongly about the unlawful acts by alleged government agents especially the crimes upon our courts, that I am sending a letter to the New Jersey legislature proposing that our Constitution be amended to change the definition of ***TREASON*** to include ***unlawful cyber accessing and interference with Court Documents and Court Orders by any person.***

33.*Rearranging documents in the ACMS, removing or adding exhibits, blackening or blurring words, uploading, deleting paragraphs, creating hyperlinks, turning documents upside down on eCourts causing Appellate documents to be thrown out can dictate the outcome of litigation.*

34. *Blocking judges and clerks from seeing documents on eCourts are acts that can dictate the outcome of litigation.*

35. *In other words, these criminals by their interference can determine who wins or loses a case.*

36.*Determining who should prevail on lawsuits and Court matters, is a* ***judicial function*** *pursuant to Article VI of the New Jersey Constitution.*

AMENDED

37.*Because the Judiciary is the third branch of government, these acts upon the Court and Court Documents clearly amount to a* ***Hostile takeover****, or the usurping of the authority of the Third Branch of our Government.*

38.*Simply put, it is* ***TREASON.***

39.*Exactly what types of human beings are so full of themselves that they think that they* ***can get away*** *with hacking Court documents?*

40.*I have been studying the Constitution and Federal Law since the harassment started, and I have found no law to date that provides immunity to FBI Agents who* ***commit crimes*** *upon the Courts and American citizens.*

41.*Because these perceived Agents have* ***direct administrative access to eCourts****, it may be difficult for the IT department of the Courts to identity who they are.*

42.These persons have absolutely no respect for our Courts, people's rights or people's privacy.

43.I am compelled to mention that Attorney Eldridge Hawkins assisted me with matters related to my whistle blowing and has become a victim.

44.On one occasion, I met with Attorney Hawkins in his office and wrote words on a yellow pad that I did not want to verbalize orally.

45. I recall saying that I knew that the walls have ears thus I will "write the words as opposed to saying them."



Ra674

AMENDED

46. I even asked him to hold the yellow pad upside down to prevent any mysterious camera that was inside the ceiling from capturing my words.

47. Days later, perceived FBI Agents advised me of the words that were written on a yellow pad in Attorney Hawkins' Office.

48. Thus, it is clear to me that these person(s) **broke in** to Attorney Hawkins office, either by bypassing the security camera or asking the owner of the building to let them, in order read my written communication to Eldridge Hawkins, Esquire.

49. Approximately two years ago, I consulted with another lawyer in his private offices in Morristown on a private matter. I intentionally did not take my cell phone with me. Days later, these perceived FBI Agents were able to basically let me know the contents of my private communication in another attorney's private office!

50. While it is very convenient to eFile, the interference is creating a hardship, as persons hell bent on retaliation since 2013, ***have unlawful administrative access to eCourts*** and are making changes to our documents.

51. This justifies the need for whistle blower protection and accommodation.

52. The United States Supreme Court has expressed that whistleblowing plays an especially important role in protecting the public welfare. See Murray v UBS Securities, 601 U.S. 23 (2024).

AMENDED

53.These persons *broke into my home and stole documents; placed my doctor under surveillance and hacked his office computers seeking fruit of the poisonous tree to have his license taken away as punishment for helping me.*

54.*These persons broke into the law office of the attorney who assisted me with my whistle blowing case and orchestrated multiple Audits upon his Law offices to harass him as punishment for helping me.*

55.*They even knew when the Audits would take place.*

56.*Based on information and belief, this Federal Agent also unlawfully accessed H&R Block and injected a bogus multimillion dollars write off in my tax documents, which I would not have been able to explain to the IRS had the accountant not caught it.*

57.*Based on information and belief these Agents blocked my request to my student loan carrier for a reduction in my monthly repayment amount, and provided my carrier with* ***false information****, causing the carrier to triple the monthly payments amounts to cause me hardship.*

58.*My Uber driver who delivers my mail to prevent FBI mail theft, was identified as* ***deceased*** *in the credit reporting system when he tried to purchase a new car.*

59.*His* ***deceased status*** *prevented him from buying the car he desired.*

60.*My Uber driver has asked me "what is the purpose of having a Court" if these persons can do all these things and get away with it?*

61.CEPA, like [LAD], seek to protect the civil lights of citizens. See Kolb v.

Burns, 320 N.J. Super. 467,477 (App. Div.1999).

62.Both the NLAD and CEP A make it illegal for any person to take reprisals against another because that person has opposed any practices that are injurious to others. Abbamont v. Piscataway Twp. Bd. of Educ., 138 N.J. 405,431 (1994); Dzwonar v. McDevitt, 177 N.J. 451,461 (2003).

63.I make this request pursuant to New Jersey CEPA, since I blew the whistle in role of a health care provider to protect low-income minority patients from unlawful acts.

64.The Health Care agency where I functioned as the *Director of Clinical Services*, was billing for performing patient assessments and received payment for some assessments that were NEVER done but falsified.

65.The Business Manager, as opposed to the *Director of Clinical Services*, was allowed to review the Nurses Notes to determine compliance by the Nursing staff.

66.I reported Medicaid/Medicare Fraud as part of the same matter and was later compelled to blow the whistle against the Federal Agent assigned to investigate the matter after it became crystal clear that he was trying to let the health care agency slide.

67.This request is also made pursuant to NJSA 10:1-2, NJSA 10:5-12 (d) (e) (f)

AMENDED

68. This request for Accommodation is based on good cause and not for the purpose of delay.

69. It is my understanding that I am not required to file a motion to support a request for accommodation.

70. A grant of this request would allow the undersigned to resubmit the current brief and Appendices on paper.

71. I still want to reserve the option to efile on other occasions due to convenience.

I certify that the above statements made by me are true. I am aware that if any of the foregoing statements are willfully false that I am subject to punishment.

/s/ Cecile D. Portilla
CECILE D. PORTILLA, ESQUIRE

Dated: April 21, 2025

Gmail

Cecile Portilla <portillalaw@gmail.com>

## eCourts Appellate-Communication = A-000692-21 = DR. MAVIS FAULKNOR VS. COUNTY OF HUDSON, MEADOWVIEW PSYCHIATRIC HOSPITAL, JOANNE D. REILLY, DR. EDWARD CARUSO, PAT SHIELS, DARICE TOON, GERALD DRASHELF, DR. ALEXANDER DELGA, ARLENE DEANO, RODERICK T. BALTIMORE, ELINOR GIBNEY, HEAD DOE, JOHN DOE AND HARRY (IDENTITIES UNKNOWN)

**njedatanotices.mailbox@judiciary.state.nj.us** <njedatanotices.mailbox@judiciary.state.nj.us> Wed, Feb 19, 2025 at 11:00 AM

An eCourts Appellate Communication was entered by court on the case below:

Case Title: DR. MAVIS FAULKNOR VS. COUNTY OF HUDSON, MEADOWVIEW PSYCHIATRIC HOSPITAL, JOANNE D. REILLY, DR. EDWARD CARUSO, PAT SHIELS, DARICE TOON, GERALD DRASHELF, DR. ALEXANDER DELGA, ARLENE DEANO, RODERICK T. BALTIMORE, ELINOR GIBNEY, HEAD DOE, JOHN DOE AND HARRY (IDENTITIES UNKNOWN)
Docket #s: (Appeal &/or Trial Court) A-000692-21
Case manager: PAMELA MARSH
Phone number: 609-815-2950

**Comments:**

CECILE D PORTILLA: I am in receipt of the letter addressed to both myself and Michelle Smith, Clerk of the Superior Court. The document copies have been given to the case manager in Supreme. Thank you, Paige Ennis

**NOTICE HAS BEEN ELECTRONICALLY MAILED TO:**

| APPELLANT ATTORNEY NAME | APPELLANT ATTORNEY EMAIL |
|---|---|
| CECILE DELROSE PORTILLA | PORTILLALAW@COMCAST.NET; PORTILLALAW@GMAIL.COM |

| RESPONDENT ATTORNEY NAME | RESPONDENT ATTORNEY EMAIL |
|---|---|
| CINDY N VOGELMAN | CVOGELMAN@CHASANLAW.COM; CNVOGELMAN@GMAIL.COM; MANNESE@CHASANLAW.COM(cvogelman@chasanlaw.com) |
| PRISCILLA E SAVAGE | |
| ROBERT D KRETZER | MICKEY_SKIP@YAHOO.COM; SH@LAMBKRETZER.COM; KG@LAMBKRETZER.COM |
| MICHAEL L DERMODY | |
| MICHAEL L DERMODY | |
| MICHAEL L DERMODY | |
| MICHAEL L DERMODY | |
| MICHAEL L DERMODY | |
| MICHAEL L DERMODY | |
| MICHAEL L DERMODY | |
| MICHAEL L DERMODY | |

Login to eCourts Appellate to view the case and documents. You will need a valid User ID (NJ Attorney Bar ID) and

associated password to login.

Please do not reply to this message, this email is an automated notification, which is unable to receive replies. We are happy to help you with any questions or concerns you may have. Please contact the case manager listed above.

Gmail

Cecile Portilla <portillalaw@gmail.com>

## eCourts Appellate-Communication = A-000692-21 = DR. MAVIS FAULKNOR VS. COUNTY OF HUDSON, MEADOWVIEW PSYCHIATRIC HOSPITAL, JOANNE D. REILLY, DR. EDWARD CARUSO, PAT SHIELS, DARICE TOON, GERALD DRASHELF, DR. ALEXANDER DELGA, ARLENE DEANO, RODERICK T. BALTIMORE, ELINOR GIBNEY, HEAD DOE, JOHN DOE AND HARRY (IDENTITIES UNKNOWN)

**njedatanotices.mailbox@judiciary.state.nj.us** <njedatanotices.mailbox@judiciary.state.nj.us> Thu, Feb 20, 2025 at 5:16 PM

An eCourts Appellate Communication was entered by Appellant Attorney: CECILE DELROSE PORTILLA on the case below:

Case Title: DR. MAVIS FAULKNOR VS. COUNTY OF HUDSON, MEADOWVIEW PSYCHIATRIC HOSPITAL, JOANNE D. REILLY, DR. EDWARD CARUSO, PAT SHIELS, DARICE TOON, GERALD DRASHELF, DR. ALEXANDER DELGA, ARLENE DEANO, RODERICK T. BALTIMORE, ELINOR GIBNEY, HEAD DOE, JOHN DOE AND HARRY (IDENTITIES UNKNOWN)
Docket #s: (Appeal &/or Trial Court) A-000692-21
Case manager: PAMELA MARSH
Phone number: 609-815-2950

**Comments:**

Thank you, Ms. Ennis. Re: Angel Lopez v The Palisades et al A-001267-23 #089878 We received your communication, however, Dr. Faulknor's case profile was used only as a Comparison (although there are grave problems with her case) to show that her case jacket at the Supreme level differs from Angel Lopez's case jacket at the same Supreme level. Angel Lopez case profile at the Supreme level does NOT allow us to file the "certification of no confidential personal identifiers in the system." The Faulknor case allows that option. We had to upload that form as Miscellaneous on Lopez's matter which should not be case. Upon calling the Division, I was advised that without that certification, his submission would be automatically rejected. On 2/11/2025, we filed a Motion for Reconsideration of the dismissal of his Petition for Certification. We are worried that his case will be rejected due to matters over which we have no control. Angel Lopez's Case Manger should be contacted. Note also, that the Certification of Service dated 2/11/2025 and 2/13/2025 in Lopez's case, do not mention any of the Defense Counsel's names. The names of all defense Counsels are in the system. We are troubled! Cecile D. Portilla, Esquire

**NOTICE HAS BEEN ELECTRONICALLY MAILED TO:**

| | | |
|---|---|---|
| **APPELLANT ATTORNEY:** | **CECILE DELROSE PORTILLA** | **(PORTILLALAW@COMCAST.NET; PORTILLALAW@GMAIL.COM)** |

| **RESPONDENT ATTORNEY NAME** | **RESPONDENT ATTORNEY EMAIL** |
|---|---|
| **CINDY N VOGELMAN** | **(CVOGELMAN@CHASANLAW.COM; CNVOGELMAN@GMAIL.COM; MANNESE@CHASANLAW.COM; cvogelman@chasanlaw.com)** |
| **PRISCILLA E SAVAGE** | |
| **ROBERT D KRETZER** | **(MICKEY_SKIP@YAHOO.COM; SH@LAMBKRETZER.COM; KG@LAMBKRETZER.COM)** |
| **MICHAEL L DERMODY** | |
| **MICHAEL L DERMODY** | |
| **MICHAEL L DERMODY** | |
| **MICHAEL L DERMODY** | |

MICHAEL L DERMODY

MICHAEL L DERMODY

MICHAEL L DERMODY

MICHAEL L DERMODY

Login to eCourts Appellate to view the case and documents. You will need a valid User ID (NJ Attorney Bar ID) and associated password to login.

Please do not reply to this message, this email is an automated notification, which is unable to receive replies. We are happy to help you with any questions or concerns you may have. Please contact the case manager listed above.

CECILE D. PORTILLA, ATTORNEY AT LAW LLC
7 Glenwood Avenue, Suite 400
East Orange, NJ 07017
Phone (973) 676 5072 Fax (862) 520 3433
Attorney Id: 021212005
Portillalaw@comcast.net
portillalaw@gmail.com

January 9, 2025

Via Courier and eCourts
Attn: Clerk
Honorable Robert Gardner, JSC
Superior Court of New Jersey
County of Essex
470 Dr. MLK. Jr. Boulevard
Newark, New Jersey 07103

**RE: ERICA NAZARIO V MANFRED K, OBI ET AL**
**DOCKET NO: ESX-L-5200-23**

Dear Clerk:

Please be aware that someone has been removing Eldridge Hawkins Esquire's name from case jackets for receipt of Court notifications on multiple cases that we share, including this case. Attorney Hawkins always took time to forward court notifications to the undersigned regarding our schedules.

The court notification on this case related to the Case Management Conference scheduled for 1/8/2025 was not sent to Mr. Hawkins by eCourts and thus, not forwarded to me by Mr. Hawkins as customary.

Eldridge Hawkins, Esquire is the trial attorney on this case. He made his notice of appearance on January 30, 2024. As the attached exhibits will show, he was sent Court Notifications between January 2024 through March 2024.

After March 2024, ALL Court notifications on this case to Attorney Eldridge Hawkins **stopped completely without our knowledge or consent.**

This has occurred in multiple cases that we handle together. Thus, this is not a coincidence.

Defense attorney Macela Owens, Esquire who appeared on September 11, 2024 after Mr. Hawkins, is in fact getting court notifications on this case. Why did Mr. Hawkins' Court notifications stop?

ESX-L-008200-23 01/09/2025 9:21:14 AM Pg 2 of 2 Trans ID: LCV2025573387

We had previously alerted the Superior Court Administration in various counties of unauthorized unsanctioned activities on eCourts, which include *multiple invalid failures* to prosecute *notifications* being sent out by individuals on eCourts *after answers are filed*. (See Example: *Dillingham v City of Plainfield* -UNN-L-2902-23 from January 2024 to December 2024)

Be aware that the '609' number that was added to eCourts for reporting of concerns goes into "call failure" when dialed, which we also do not believe is a coincidence.

We will direct this concern to the Ombudsman with the hope that someone can help to stop these very disturbing problems on eCourts.

We have been reporting these concerns since 2022. Maybe you can pass this along to someone who will listen and do something.

Thank you.

Respectfully submitted,

/s/ Cecile D. Portilla
CECILE D. PORTILLA, ESQUIRE

Enclosures-6 Exhibit Pages

CC: Michelle M. Smith, Clerk
The Ombudsman

# RE: Portilla v. Comcast, et al. (Essex Co., NJ)

From: Leslie Greenspan (lgreenspan@tlgattorneys.com)
To: hwklaw@aol.com; Brianna.Vollman@thompsonhine.com
Cc: jswann@tlgattorneys.com
Date: Friday, March 28, 2025 at 10:40 AM EDT

Counsel: I am still not receiving electronic filings in this case. I am still trying to figure out why that is. Can you please email me copies of your filings for the time being, until I can begin receiving electronic notices again?

Thank you,
Leslie

**From:** Leslie Greenspan
**Sent:** Friday, March 7, 2025 4:17 PM
**To:** Eldridge Hawkins, Esq. <hwklaw@aol.com>; Vollman, Brianna <Brianna.Vollman@thompsonhine.com>
**Cc:** Jacqueline Swann <jswann@tlgattorneys.com>
**Subject:** Portilla v. Comcast, et al. (Essex Co., NJ)

Counsel:

I just learned today that I have not been receiving court notices in this case for the past week or so. I believe I have rectified this, but in an abundance of caution, can we please agree to email each other any filings on this case for now?

Thank you,

Leslie

TLG TUCKER LAW GROUP

**Leslie Miller Greenspan, Esquire**

Ten Penn Center

1801 Market Street, Suite 2500

Philadelphia, PA 19103

215-875-0609 (phone)

215-982-2271 (direct)

215-559-6209 (fax)

lgreenspan@tlgattorneys.com

Please consider the environment before printing this e-mail.

This electronic transmission and any documents accompanying this electronic transmission may contain privileged and confidential attorney-client information, and are intended for the confidential use of the recipient(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or copying of this electronically transmitted information is strictly prohibited. If you have received this electronic transmission in error, please notify the sender immediately by sending a return message, and destroy the message you received. Thank you.

Dr. Mavis Faulknor,

Plaintiff,

v.

County of Hudson, Meadowview Psychiatric Hospital, Joanne D. Reilly, Dr. Edward Caruso, Pat Shiels, Darice Toon, Gerald Drashelf, Dr. Alexander Delga, Arlene Deano, Head Doe, John Doe and Harry (identities unknown),

Defendants,

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION: HUDSON COUNTY

DOCKET NO. HUD-L-3792-18

Judge Anthony V. D'Elia

Civil Action

**OPINION**

**(a) Granting Defendants County of Hudson; Meadowview Psychiatric Hospital & Dr. Caruso's Summary Judgment dismissing Plaintiff's Complaint with Prejudice; and**
**(b) Denying Plaintiff's cross-motion for Summary Judgment**

**DATE OF DECISION:** June 3, 2021
**DED: 2/28/21**
**TRIAL: 6/14/21**
**NO. OF DISCOVERY DAYS: 762**

**PRELIMINARY STATEMENT**

The present matter comes before this Court as motions filed by Defendants County of Hudson ("the County"), Meadowview Psychiatric Hospital ("Meadowview"), and Dr. Edward Caruso ("Caruso") to dismiss Plaintiff, Dr. Mavis Faulknor's ("Faulknor") Fourth Amended Complaint pursuant to R. 4:46-2.

Faulknor was an advanced practice nurse (A.P.N.) at Meadowview from March 12, 2015 until the fall of 2018. She obtained a doctorate in nursing in June of 2017. She applied for her position with Meadowview (which is owned by Hudson County) in February 2015 and submitted her resume with that application. She cannot recall whether she submitted her C.V. (which she claims contains her entire work history) with the application. She was assigned to work under Dr. Caruso and recalls complaining about a number of work-related issues before, and possibly after, June of 2017.

opposition to corporate action which violated a clear mandate of public policy, and not for some other reason. House v. Carter-Wallace Inc. 232 N.J. Super 42, 54 (App. Div. 1989).

Based upon this motion record, there is no specific or concrete evidence from which a jury could reasonably conclude that Defendants violated any clear mandate of public policy.

**INVASION OF PRIVACY**

In her Complaint, Plaintiff also vaguely alleges that her constitutional rights were violated in that there was an invasion of her privacy and the Defendant's actions cast her in a false light.

This allegation sounds in tort. There was no notice of claim filed as required by N.J.S.A. 59:8-8 against either the Defendant County of Hudson or Dr. Caruso. For this reason, any tort claims, however plead in the complaint, are *dismissed*.

**PLAINTIFF'S CLAIMS CONTAINED IN COUNTS 6, 8, 9, 17, AND 21 OF THE COMPLAINT**

In Counts 6, 8, 9, 17 and 21, the Plaintiff alleges various violations of the New Jersey Civil Rights Statute, N.J.S.A. 10:6-2. The Court hereby adopts and incorporates the legal reasoning and arguments contained in Defendant, Hudson County's brief at pgs. 28 through 31 in *dismissing* said counts.

**PLAINTIFF'S COMPLAINT IN PARAGRAPH 3, 6 AND 9 OF THE 6TH COUNT OF THE COMPLAINT**

For the reasons expressed in the Defendant, County of Hudson's brief, at pgs. 31 through 33, Count 4 of complaint and paragraph 3, 6 and 9 of Count 6 are *dismissed*.

**COUNT 5 ALLEGING MISUSE AND ABUSE OF PROCESS CLAIMS**

In Count 5 of her Complaint, Plaintiff alleges the tort of misuse and abuse of process. In this action, Plaintiff must establish that the Defendants made an improper, illegal misuse of process or otherwise prevented the use of adequate due process with an ulterior motive or

or beliefs by others (and the Plaintiff herself) that the allegations made by the Defendants were false, defamatory and unprivileged publications to third parties.

**PLAINTIFF'S CLAIMS FOR MALICIOUS PROSECUTION**

In Counts 10, 11, 15 and 19, Plaintiff asserts claims for malicious prosecution and statutory claims permitting professionals to sue for malicious complaints. N.J.S.A. 2A: 47A-1.

Plaintiff did not serve tort claim notices as required under Title 59. Any tort claims contained in the above counts are dismissed for that reason alone.

Moreover, malicious prosecution, in the civil context, requires a showing that the original filing was instituted without reasonable and probable cause; that it was actuated by malice and malicious motive, and that it ended in favor of the Plaintiff; resulting in a "special grievance" to the Plaintiff. Paul v. Nat'l Educ. Ass'n 189 N.J. Super 265 (Law Div. 1983), aff'd. 195 N.J. Super 426 (App. Div. 1984).

In light of the Court's finding that Plaintiff has not provided a factual record which could lead a reasonable jury to find that the original disciplinary actions filed by the employer were instituted without reasonable and probable cause or were actuated by malice or malicious motive, then these claims must also be dismissed.

**PLAINTIFF'S CLAIMS IN COUNT 12 OF THE COMPLAINT**

In Count 12 of the Complaint, Plaintiff cites to two statutes. The first refers to "de facto" officers and employees. That statute permits any person who has held any office or has performed the duties of particular office, to be paid the compensation authorized for that office for the time the position is held when duties were performed. N.J.S.A. 49:9-6.

Based upon this motion record, the Court concludes there is no genuine issue of material fact regarding whether this statute is applicable in this case. It is not. The Plaintiff was

## CONCLUSION

For the reasons expressed herein, the Court grants Defendants County of Hudson, Meadowview Psychiatric Hospital and Dr. Edward Caruso's motions for summary judgment dismissing Plaintiff's Complaint and denies Plaintiff's cross-motion for summary judgments.

So ordered,

Hon. Anthony V. D'Elia, J.S.C.

**ELDRIDGE HAWKINS LLC**
**Attorney At Law**
**Attorney ID No. 214731967**
60 Evergreen Place, Suite 510
East Orange, New Jersey 07018
Tel #: (973) 676-5070
Fax #: (973) 676-7356
Attorney for: **PLAINTIFF, DR. MAVIS FAULKNOR**

| | |
|---|---|
| **DR. MAVIS FAULKNOR**<br><br>**Plaintiff,**<br><br>**vs.**<br><br>**COUNTY OF HUDSON, MEADOWVIEW PSYCHIATRIC HOSPITAL, JOANNE D. REILLY, DR. EDWARD CARUSO, PAT SHIELS, DARICE TOON, GERALD DRASHELF, DR. ALEXANDER DELGA, ARLENE DEANO, RODERICK T. BALTIMORE, ELINOR GIBNEY, HEAD DOE, JOHN DOE AND HARRY (identities unknown),**<br><br>**Defendants.** | **SUPERIOR COURT OF NEW JERSEY LAW DIVISION: HUDSON COUNTY DOCKET NO.: HUD-L-3792-18**<br><br>**CIVIL ACTION**<br><br>**CROSS NOTICE OF MOTION FOR ORDER ENTERING SUMMARY JUDGMENT IN FAVOR OF DR. MAVIS FAULKNOR AND AGAINST DEFENDANTS AS DEMONSTRATED BELOW AS TO THE VARIOUS CAUSES OF ACTION** |

Plaintiff hereby moves before this Court on April 16, 2021 at 9:00am or as soon thereafter as this matter may be heard on Cross Notice of Motion of Eldridge Hawkins, Esq. on behalf of Plaintiff, Dr. Mavis Faulknor for:

1. Summary Judgment against Defendants Hudson County, Meadowview Hospital, and Dr. Caruso N.J.S.A. 10:5-12 (d) (e) + (r) for retaliation against Plaintiff for her objections of disparate treatment for her having complained of race disparate treatment between White and Black patients treatment at the Hospital and the

treatment she herself was given as compared to her White and Asian counter parts (who did not grieve or complain or seek legal Counsel)

2. Summary judgment in favor of Dr. Mavis Faulknor and against Defendants Hudson County, Meadowview Psychiatric Hospital and Dr. Edward Caruso for violating Plaintiff's NJLAD retaliation rights as alleged in the 4th Amended Complaint in Counts One, Twelve, Thirteen, Eighteen, Nineteen and Twenty-One and it is further

3. Summary Judgment in favor of Plaintiff Dr. Mavis Faulknor and against Defendants Hudson County, Meadowview Psychiatric Hospital on the 3rd, 6th, 8th, 17th 19th and 21st Counts of the 4th Amended Complaint alleging violation Plaintiff's rights under N.J.S.A.10:6-2 (c) in that said Defendants violated Plaintiff's constitutional and statutory rights under color of State Law by engaging in a County and Hospital wide custom and policy of violating Plaintiff's rights under the Civil Service statute, code and regulations which resulted inter alia in the wrongful termination of Plaintiff Faulknor on the Civil Service record of employment at Defendant Meadowview Psychiatric Hospital, Hudson County and it is further

4. 4.Summary Judgment in favor of Plaintiff, Mavis Faulknor and against Defendant Hudson County, Meadowview Psychiatric Hospital, and Dr. Edward Caruso under Count Thirteen of the Complaint alleging NJLAD hostile work environment and constructive termination and it is further

5. Summary Judgment in favor of Plaintiff and against Defendants Hudson County, Meadowview Psychiatric Hospital and Dr. Edward Caruso for breach of Plaintiff's implied covenant of good faith and fair dealing as alleged in Count II and it is further

6. Summary Judgment in favor of Plaintiff and against Defendant Dr. Edward Caruso for interference with Plaintiff's beneficial economic interest as alleged in Count Two and is further

7. Summary Judgment in favor of Plaintiff and against Defendants Hudson County, Meadowview Psychiatric Hospital and Dr. Edward Caruso for misuse and abuse of process as pled and proven under Count Five and it is further

8. Summary Judgment is hereby entered in favor of Plaintiff Faulknor and against Defendants Hudson County, Meadowview Psychiatric Hospital for violating Plaintiff's rights under N.J.S.A. 40A:9-6; N.J.S.A. 36:11-56.8 and N.J.S.A. 10:5-12 (a) (d) (e) as pled and proved under County Twelve of the 4th Amended Complaint and it is further

9. Summary Judgment is hereby entered in favor for Plaintiff and against Defendants Hudson County, Meadowview Psychiatric Hospital for violating Plaintiff's rights under N.J.S.A. 40A:9-6 as pled in Count Twelve and it is further

10. Summary Judgment in favor of Plaintiff, Dr. Mavis Faulknor and against Defendants Hudson County, Dr. Edward Caruso for violating Plaintiff's rights under Count Ten and Eleven and Nineteen, Count Seven alleging N.J.S.A. 2A:47A-1 violations and for all other issues not decided by this Court to be determined by the jury in a trial of this matter to be determined and noticed by this Court.

**BASED UPON THE FOLLOWING REASONS:**

1. R. 4:46-1,2 allow for this relief
2. The issues are not in dispute entitle Plaintiff to Summary Judgment
3. As for the attached.

4. All discovery has been completed and the trial date is May 10, 2021 and an adjournment of the trial date may be required to accommodate this Adjournment of the Motion of Summary Judgment. The defendants' counsel have not objected to this request and if necessary, an adjournment of the trial date which will also accommodate Dr. Caruso's late filling.

Respectfully,

Eldridge Hawkins, Esq.

EH/rw

ELDRIDGE HAWKINS LLC
Attorney At Law
Attorney ID No. 214731967
60 Evergreen Place, Suite 510
East Orange, New Jersey 07018
Telephone: (973) 676-5070
Facsimile: (973) 676-7356

August 9, 2017

Via Regular & Certified Mail RRR#
7016 1370 0000 4421 6392
Clerk
County of Hudson
Administrative Building Annex
567 Pavonia Avenue
Jersey City, New Jersey 07306

Re: DR. MAVIS FAULKNOR
NOTICE OF CLAIM, TORT AND CONTRACT
DOI: Feb, 2017, June 2017 & July 27, 2017

Dear Clerk:

Kindly accept this my notice of Claim, filed on behalf of Dr. Mavis Faulknor who complains as follows:

1) She is a fully qualified Doctor of Nursing, whom the management and staff resist giving her the respect that is due, by resisting to call her "Doctor."

2) She, a tan in color woman of Jamaican national origin has been treated woefully different than the Caucasian and Asian employees at Meadowview Psychiatric Hospital.

3) On August 22, 2015, she was told she had been hired as non-classified and thereafter told she was only entitled to 12 days' vacation as non-classified.

4) In March 2017, she was told by Charu, she was owed $52,710 in overtime.

5) Plaintiff, on July 24, 2017, was advised by Ms. Reilly that there was a mistake and she would be getting paid for the overtime she put in. Defendants know she is entitled to at least the same treatment of the male physician since

(4)

her inception of employment and have intentionally deprived her of same.

6) Plaintiff, on July 26, 2017, was advised she was not going to receive the $52,710.00 because her position was made classified and she would be exempt and she would be given 20 days' vacation and unionized.

7) It appears as though this is a custom and practice of treatment for the Brown skinned management at Defendant Hospital (Dr. Faulknor), as well as Diana Stevens and possibly others.

8) It appears as though Defendants have violated:

a) Labor Board provisions in that they have not paid Plaintiff the time and one half to which she is entitled as they had admitted.

b) The Union agreement and County policies which require someone declared "classified" or non-exempt to receive overtime pay of 1½ times per hour.

c) 42USCA 1981, 1983, 1985, 1988, N.J.S.A. 10: 6-2 ( c), as depriving Plaintiff of her substantive due process, equal protection, property right, all done under color of State law.

d) N.J.S.A. 10: 5- 12 a, d, e in that the evidence demonstrates the actions have been directed against "Blacks" as opposed to the Whites and Asians, and with regard to Dr. Faulknor, there is disparity based upon gender (male , female).

e) PERC provisions.

f) Possibly New Jersey RICO which is being investigated.

g) Title 59 with regard to negligent training, breach of implied covenant of good faith and fair dealing and reckless, intentional inflictions of severe emotional distress.

It has also been brought to my attention that since August 22, 2015, she has been doing the same job duties as the two male physicians and getting paid $59,000.00 less each year. She was also not being paid the overtime as the two male physicians. Thus, she is actually being deprived on an on-going basis of $86,972.00 annually (based upon differential between males and time and one half which they get and she does not).

Additionally, she is owed benefits and vacation accordingly. Thus, for the past two years she is owed approximately $200,000 plus for disparate pay.

This continued disparate pay and benefits will increase my client's damage tremendously on a daily basis.

Demand is made that she immediately be given parity in pay and treatment to the males in the equivalent job duties with increase in pay and payment of her owed back pay, overtime and benefits. Attorney's fees presently are under $5,000.00.

A Complaint is being prepared to be filed to cover the period since she first became employed fulltime on August 23, 2015. Once the Compliant is filed, the attorney's fees will increase at $600.00 per hour and $2, 400.00 per hour out of office appearance. She reports that because since the summer of 2016, she had objected to a White patient being given preferential and disparate treatment (4 times meal being brought in) over everyone else, she has been treated in a hostile fashion. Dr. Caruso defended the differential treatment. He has also given notice to Dr. Faulknor that she should not be intervening in other disciplines at the Hospital.

I look to hear from County counsel immediately if a lawsuit is desired to be avoided.

It is expected that Plaintiff will pursue her grievances pertaining to her discipline in a Court of law as allowed by N.J.S.A. 10: 5- 13, 27.

The present claim is in the amount of $350,000.00 which includes, the overtime owed, compensation and benefits lost, defamation, libel and slander, because of the untrue filed allegations that she engaged in acts demonstrating:

1) Neglect
2) Incompetence
3) Insubordination
4) Conduct unbecoming, etc.

This does not include attorney's fees or punitive damages. It is expected that this damage amount will increase should defendants' continue on their present course to find her guilty of administrative disciplinary charge filed against her to which she also objects as being defamatory, invasion of privacy and abuse fo process.

Please investigate and report back to me ASAP.

Respectfully submitted,

ELDRIDGE HAWKINS, ESQ.
EH/bj
Enclosures
Cc: Michael Dermody, Esq.
Dr. Mavis Faulknor

**ELDRIDGE HAWKINS LLC**
**Attorney At Law**
**Attorney ID No. 214731987**
**60 Evergreen Place, Suite 510**
**East Orange, New Jersey 07018**
**Telephone: (973) 676-5070**
**Facsimile: (973) 676-7356**
**Attorney for: Dr. Mavis Faulknor**

**August 1, 2018**

**VIA REGULAR AND CERTIFIED MAIL**
**RRR 7016 3010 0000 8655 7977**
**Clerk, Hudson County**
**257 Cornelison Avenue 4th Floor**
**Jersey City, New Jersey 07302**

**Meadowview Psychiatric Hospital**
**Ms. Joanne Reilly, Building 10**
**595 County Avenue**
**Secaucus, New Jersey 07094**

**Hudson County Counsel's Office**
**567 Pavonia Avenue**
**Jersey City, New Jersey 07306**

**RE: DR. MAVIS FAULKNOR V. HUDSON COUNTY**
**NOTICE OF CLAIM AND ENTRY OF APPEARANCE**
**DOI: JULY 26, 2018**

**Dear Clerk:**

**Be advised that the undersigned represents the above captioned who has been served with a Preliminary Notice of Disciplinary Action which was issued by Joanne Reilly upon the apparent complaint of Dr. Alexander Delgra arising from an apparent statement of Dr. Delgra that Dr. Faulknor has to be "cleared" before she comes back to work off of suspension. A review of the attachments failed to demonstrate any violation as alleged.**

**I expect to be adding this information into the pending law suit as further evidence of discrimination – retaliation. However, at this time, for everyone's purposes please enter my appearance and plea of not guilty with regards to the Hearing date of September 17, 2018.**

**It has also been brought to my attention that Dr. Delgra has failed his Board Certification test and should not even be allowed to be seeing patients at the Defendant**

...rity has the Hospital allowed Dr. Delgra to ... tients or supervise Dr. Faulknor?

...lete Discovery demonstrating all proofs both inculpatory and ...egations therein. It is noticed that Dr. Delgra also admits to raising ... Faulknor. Has Dr. Delgra been given any discipline? I understand ... raises his voice to those whom he desires.

...s amount to misuse and abuse of process, violations of N.J.S.A. ...titution Article I para 1, 18; 42 USCA 1981, 1982, 1983, 1985, 1986, ...actions are not only negligent but reckless and intentional. Plaintiff ...efamed and violated as prohibited by N.J.S.A. 2A:47A-1.

...is in the amount $2,500,000.

...ur response to my herein request.

Very truly yours,

Eldridge Hawkins, Esq.

...avis Faulknor
...exander Delgra

**ELDRIDGE HAWKINS LLC**
**Attorney At Law**
**Attorney ID No. 214731967**
**60 Evergreen Place, Suite 510**
**East Orange, New Jersey 07018**
**Tel #: (973) 676-5070**
**Fax #: (973) 676-7356**
**Attorney for: Plaintiff, Dr. Mavis Faulknor**

**October 23, 2018**

**VIA REGULAR & CERTIFIED MAIL**
**RRR#7014 1200 0002 2892 9257**
**Hudson County Clerk's Office**
**257 Cornelison Avenue 4th Floor**
**Jersey City, New Jersey 07302**

**RE: DR. MAVIS FAULKNOR**
**NOTICE OF CLAIM (corrected)**
**DOCKET NO.: HUD-L-3792-18**
**DOI: SEPTEMBER 26, 2018 TO PRESENT**

**Dear Clerk:**

**Kindly accept this my updated Notice of Claim filed on behalf of Dr. Mavis Faulknor and against the County of Hudson, Meadowview Psychiatric Hospital, Joanne Reilly, Dr. Mariam Bekhit, Medical Director, Darice Toon for filing this latest Preliminary Notice of Disciplinary Action which purportedly is signed on September 26, 2018 by Joanne Reilly, Hospital Administrator and Darice Toon, Director as parties on said "Recommendation for Disciplinary Action".**

**The Preliminary Notice has thereon a Notice that a departmental hearing if desired will be held November 5, 2018 and she must notice the County within five (5) days of receipt of said notice. This notice was received by the undersigned on October 22, 2018 with the envelope posted on October 17, 2018, which is indicative that the date signed by Joanne Reilly is false and the she is engaging in an attempt at fraudulently dating said document. This will all be brought out either in deposition or trial.**

**The subject matter of the discipline is 1998 to 2007 employment allegedly left off her employment application. This presents lots of questions like: "Why is this being brought up now, after Plaintiff complained of several improprieties and sued. Was it not important before? Was it not legally relevant, but desperation set in"?**

**I ask, by what authority, does anyone believe they may serve my client with yet another Notice of Disciplinary Action, after she is no longer employed for actions that took place before she was employed. I suggest further disciplining as you have done is further**

(34)

defamation, libel, slander (casting in a false light and abuse and misuse of process by improper and bad faith utilization of this completely irrelevant discipline to simply make my client look bad to help Defendants give excuse for their malicious actions against Dr. Faulknor.

It is Dr. Faulknor's intention to file a supplementary proceeding to the already filed new compliant with amendments which had been joined with the old Complaint. Pursuant to N.J.S.A. 10:5-13, 27, & 38 she chooses to have all of her grievances heard in the Superior Court Law Division. A reminder that my fees are $800.00 per hour in office and out of office is $2400.00 per one half day or less. You must know that everything Defendants do will be added into the proceedings and Defendants burden is getting heavier almost by the day. The maliciousness being able to be proven now as against all Defendants makes the possibility of punitive amounts to reach $30,000,000 to $50,000,000. All Defendants are put on notice to notify their individual insurers for their liability against each individually. The County is not allowed to expend tax payers' money to defend punitive damages resulting from malicious conduct which evidence now over abounds. I can assure you that my attorney's fees are expected to be more than what you probably could have settled the entire matter for less than one year ago. By the way, please look at Page 7 of her resume at the top. That position indeed was listed there. You are hereby noticed pursuant to R.1:4-8 to immediately withdraw said Discipline Action as well same employment was included as proven by your own submissions. Should you not adjourn the hearing date of November 5, 2018, 28 days to allow for the proper defense to be submitted by Dr. Faulknor or immediately dismiss all charges with Notice of Dismissal to all necessary entities. The undersigned upon successful dismissal of these charges shall hold each liable for the expense of defending same and attach a copy of this notice and my application for fees and cost.

Very truly yours,

Eldridge Hawkins, Esq.

CC: Joanne Reilly
Dr. Mariam Bekhit
Darice Toon
Mr. Dermody, Ms. DeGregorio et al.

Attachments

EH/mj

**ELDRIDGE HAWKINS LLC**
**Attorney At Law**
**Attorney ID No. 214731967**
**60 Evergreen Place, Suite 510**
**East Orange, New Jersey 07018**
**Telephone: (973) 676-5070**
**Facsimile: (973) 676-7356**
**Attorney for: Dr. Mavis Faulknor**

**October 18, 2018**

**VIA REGULAR AND CERTIFIED MAIL**
**RRR 7017 1000 0000 9889 6481**
**Clerk, Hudson County**
**257 Cornelison Avenue 4th Floor**
**Jersey City, New Jersey 07302**

**VIA REGULAR AND CERTIFIED MAIL**
**RRR 7014 1200 0002 2992 9301**
**Meadowview Psychiatric Hospital**
**Roderick T. Baltimore, Hearing Officer**
**595 County Avenue**
**Secaucus, New Jersey 07094**

**Hudson County Counsel's Office**
**Michael Dermody, Esq.**
**567 Pavonia Avenue**
**Jersey City, New Jersey 07306**

**RE: DR. MAVIS FAULKNOR V. HUDSON COUNTY**
**NOTICE OF CLAIM**
**DOI: OCTOBER 10, 2018**

**Dear Mr. Baltimore, Ms. Gibney and Clerk of Hudson County:**

**You have just joined your co-defendants in yet another step in the invidious agreement to discipline Plaintiff Dr. Mavis Faulknor, cause Faulknor's discharge and to further aide and abet Defendants by after Plaintiff's forced Constructive Discharge and notification of same and Plaintiff's clear statement that there was no intent to further pursue the Disciplinary Action, you have issued this 120 day suspension in spite of said notice to you.**

36

I submit, That all Defendants' agreement including Elinor Gibney to issue a 120 days' suspension (less than termination) is an unsuccessful attempt to counter Plaintiff's wrongful termination allegation.

There was absolutely no legal authority for your October 10, 2018 letter. As previously stated N.J.S.A. 10:5-13, 27, 38 procedures are being pursued in the newly filed Complaint which in addition to her no longer being an employee obviates the entire disciplinary action.

Your statement: "further disciplinary infractions may result in termination", ipso facto, res ipsa loquitur demonstrates the frivolous invidiousness and pretextual untruth of the entire letter.

The Notice of Claim is now $12,500,000 which includes punitive damages for the malicious notification of statutory authority under Color of Law to:

1. Defame, libel, slander, and cast Plaintiff into a false light;
2. Misuse and abuse of process;
3. Violations and abuse of Civil Service Law;
4. Violations of N.J.S.A. 10:6-2 (c);
5. Violations of 42 USCA 1981, 1983, 1985, 1986;
6. Violations as stated in the prior filed Complaints with this action being further evidence of bad faith, reckless and wanton disregard for Plaintiff, her Rights, and her reputation.

Your most recent service and filing of the Final Notice of Disciplinary Action reported to the Civil Service Commission is another act which must be added into another Amended Complaint.

I submit. There is no justifiable reason to discipline someone who is no longer an employee. This is especially so since the employee's counsel pointed out to Defendant's counsel N.J.S.A. 10:5-13, 27, 38 which makes the Superior Court Law Division the exclusive jurisdiction for Plaintiff's grievance of Defendant's actions to be heard. You were so previously noticed. If County Counsel did not forward to you a copy of my letter which I wrote in response to his forwarding letter to me which included your September 18, 2018 letter to him, I do so now.

I am sure, all necessary Defendant parties agreed for Baltimore's letter of October 10, 2018 to be sent out to Dias and Hawkins.

Very truly yours,

Eldridge Hawkins, Esq.

CC: Joanne Reilly
Darica Toon
Elinor Gibney

EH/mj

**ELDRIDGE HAWKINS LLC**
**Attorney At Law**
**Attorney ID No. 214731967**
**60 Evergreen Place, Suite 510**
**East Orange, New Jersey 07018**
**Telephone: (973) 676-5070**
**Facsimile: (973) 676-7356**
**Attorney for: Dr. Mavis Faulknor**

**November 21, 2018**

**VIA REGULAR AND CERTIFIED MAIL**
**RRR 7018 0680 0001 3388 1505**
**Clerk, Hudson County**
**257 Cornelison Avenue 4th Floor**
**Jersey City, New Jersey 07302**

**RE: DR. MAVIS FAULKNOR V. HUDSON COUNTY**
**NOTICE OF CLAIM AND OPRA REQUEST**
**DOI: JULY 26, 2018 – NOVEMBER 19, 2018**

**Dear Clerk:**

**On or about November 19, 2018 Dr. Mavis Faulknor received a letter from Alexander L. Locatelli; an alleged Hearing Officer who advised Dr. Faulknor that a disciplinary hearing was convened to consider 4 charges against Dr. Faulknor pertaining to her pre-employment resume allegedly not mentioning her alleged employment with WIC Nutrition Specialist employment from September 23, 1996 to May 31, 2007. (who represents the Hudson County Meadowview Psychiatric Hospital).**

**Assistant County Counsel Giordano Pallitto gave sworn testimony. In addition to introducing documents. The "testimony" went on to say that the employee's failure to disclose the WIC employment application in or about February 10, 2015 "would have in all likelihood prevented her from getting the position she now holds".**

**Hearing Officer Locatelli "ORDERED" that employee Mavis Faulknor shall be terminated from employment.**

**Said actions by those named in the papers submitted amount to further abuse and misuse of the Civil Service process by utilizing said disciplinary process after Plaintiff's employment termination notice was received by Defendants, and most specifically after Plaintiff had filed multiple Notices of Claims and lawsuits alleging various Civil Rights and discrimination violations against Defendants. Said actions of Defendant's also constituted malicious prosecution; violations of the NJ Constitution, Article 1, Paragraph 5, 18 et al N.J.S.A. 10:6-2 (c) and other continue causes of action outlined in the previously filed Complaints in this matter including N.J.S.A. 10:5-12 (d) (e) and N.J.S.A. 2A:47A-1.**

Defendants have no legal authority to discipline and conduct hearings against Dr. Faulknor after she was terminated in house administrative proceedings when Dr. Faulknor gave notice that all of her grievance appeals were being pursued in NJ Superior Court pursuant to N.J.S.A.10:5-13, 27, 38 and Hennessey v. Winslow Township said proceedings were instituted for pure harassment, malicious retaliation in order to provide "cover" and defense for the ongoing claims in the lawsuit and in attempts to coerce Plaintiff to drop her litigation because of the continued onslaught of filings with the State which continues to threaten her professional credential status.

Because of the continued malicious and apparent ongoing conspiracy of all Defendants and their agents which continued to grow in actions and parties, same continue to have a defamatory effect on Plaintiff causing her an unlawful invasion of privacy. The claim presently is $25,000,000.

Additionally the attorney's fees are apparently climbing almost as much as the Hudson County Defendants' disciplinary actions against Plaintiff is increasing.

Defendants have failed to supervise and train their subordinates in the legalities of what they have been doing to Plaintiff. In fact, now Assistant County Counsel Georgina Pallitto has apparently felt left out to the extent she went to the point of testifying herself on alleged facts for which she apparently could find no other to testify, as she did as if she had direct knowledge of the alleged incidents mentioned herein.

Very truly yours,

Eldridge Hawkins, Esq.

CC: Michael Dermody, Esq.
Jacqueline DeGregorio, Esq.
All other Defendant counsel

EH/mj

ELDRIDGE HAWKINS LLC
Attorney At Law
Attorney ID No. 214731987
60 Evergreen Place, Suite 510
East Orange, New Jersey 07018
Telephone: (973) 676-5070
Facsimile: (973) 676-7356
Attorney for: Dr. Mavis Faulknor

February 4, 2019

VIA REGULAR AND CERTIFIED MAIL
RRR 7014 1200 0002 2882 8356
Clerk, Hudson County
257 Cornelison Avenue 4th Floor
Jersey City, New Jersey 07302

RE: DR. MAVIS FAULKNOR V. HUDSON COUNTY
HUD-L-3792-18
NOTICE OF CLAIM

Dear Clerk:

On January 14, 2019, I received the original of the enclosed copy of a January 10, 2019 cover letter with exit interview forms demonstrating my client, Dr. Mavis Faulknor was purportedly interviewed on December 19, 2017 by Churulata Kachalla. It was unsigned by my client.

Did such an interview actually take place? I notice the form says she has twenty (20) sick days remaining and one (1) compensation day remaining because she worked an Holiday September 3, 2018. The form also indicates that the termination date is March 28, 2019. Would someone please explain why an exit interview form would be filled out on December 19, 2018 for a termination date of March 28, 2019.

It should now be noted that this Notice of Termination by the County of Hudson now makes it not in dispute whether or not Plaintiff was terminated. This is the Notice of Claim for wrongful termination with notice to all parties on the most recently filed notices of claim to be advised that all are considered aiders and abettors, co-conspirators and principals in the County of Hudson's plans to engage in:

1. Breach my clients beneficial economic position;
2. Abuse and misuse the Civil Service process;
3. Professional malicious prosecution;
4. Retaliation (unlawful) for all of the reasons stated in the attached prior notices;

44

5. Wrongful termination by negligence, recklessness, wanton, intentional, purposeful, malicious failure to properly hire, supervise and train all personnel who inspired and agreed to cause these results;
6. Violations of N.J.S.A. 10:1-2; N.J.S.A. 10:5-1 et seq.;
7. Violations of N.J.S.A. 10:6-2 (c);
8. Libel, slander, defamation, and professional wrongful prosecution which have caused her unlimited unspecified per se damages.

You are put on notice that amendments shall be made to the previously remanded to NJ Superior Court lawsuit, to include the actions that have taken place since the last amendment was filed to include Defendants' apparent non-stop harassment of my client.

Getting down to the point, the actions of all Defendants individually and jointly have been so egregious with no apparent let up or any sign of repentance, that you are hereby noticed that demand is hereby made for payment of the entire policy limits of all parties who are to turn these notices over to their personal insurers.

Payment of each Defendant's full policy limits of $2,500,000 or more is hereby demanded which will be accepted in full settlement of all claims by Plaintiff for each Defendant including attorneys' fees. Said payment must be agreed to be made within the next thirty (30) days. The demand will be thusly withdrawn and we can go to trial and let the Jury determine the damages quantum. This demand is made now because the Defendants have now admitted their termination was based upon untrue information.

Very truly yours,

Eldridge Hawkins, Esq.

EH/mj

CC: Michael Dermody, Esq.
Gregory Francis Kotchick, Esq.
Jacqueline DeGregorio, Esq.
Francis D. Engracia, Esq.
Thomas Hart, Esq.
Aldo Russo, Esq.
Murphy Durkin
All individually named Defendants

*Mavis Faulknor*

78 Kenmore Avenue
Newark, NJ 07106

Phone: (201) 618-1472
E-mail: mavfau@verizon.net

September 2, 2014

Ms. Alice Agecha, RN, MSN, PMHNP-BC
Chief Nursing Officer
County of Hudson
Meadowview Psychiatric Hospital
595 County Avenue –Building 10
Secaucus, NJ 07094

Dear Ms. Agecha,

I am interested in pursuing the Family Health Nurse Practitioner position that is currently available with your organization. I am confident that my strong clinical experience, knowledge of nursing, communication skills, and ability to work effectively under pressure will make me a valuable addition to Meadowview Psychiatric Hospital.

I have a Master's of Science in Nursing. I am board certified as a Family Health Nurse Practitioner, with an Advanced Practice Nurse license in the State of New Jersey. I am CDS and DEA approved.

Enclosed is my resume for your perusal. I look forward to speaking with you in the near future to schedule an interview at your convenience, during which I hope to share with you in detail how my skills as a Family Health Nurse Practitioner can be of benefit to your organization. Thank you for your consideration of my application.

Sincerely,

*Mavis Faulknor*
Mavis Faulknor, MSN, CDE, RD, RN, APN-C
Family Nurse Practitioner

Enclosure

**Mavis C. Faulknor RD., RN., CDE., MSN., APN-C**
**Family Nurse Practitioner/Nurse Educator**
7880 Kenmore Avenue, Newark, NJ 07106
Home: 973 399 3393; Cell: 201 618 1472
Email: mavfau@verizon.net

**Education:**

**Doctoral Candidate-Nursing,** University of Buffalo, School of Nursing 103 Wende Hall, 3435 Main Street, Buffalo, NY 14214-8012. 09/ 013 - Currently

**M.S. Nursing-Family Health Nurse Practitioner (FHNP),** University of Medicine and Dentistry (Now Rutgers University), School of Nursing, 65 Bergen Street, Newark, NJ, 07102. Graduated 05/2012.

**Certification of Completion/Standard Teacher License-Teacher of Health Occupations,** Brookdale Community College- Career Technical Education Alternate Route Teacher Program, Brookdale Community College, 765 Newman Springs Road, Lincroft, NJ 07738. Completed June 7, 2013.

**A.S. and Diploma in Nursing,** Trinitas School of Nursing, Union County College, 12 West Jersey Street, Elizabeth, NJ,07202. Graduated 05/2003

**Dietetic Internship Certificate,** University of Medicine and Dentistry, 65 Bergen Street, Rm. 157, NJ 07102, Newark, NJ, 07102. [900 hours supervised experience in surgery, medicine, ICU, nutrition support, geriatrics, pediatrics, rehabilitation, public health, dental health, diabetes mellitus and clinical management]. Completed 05/1993.

**M.S. Nutrition,** Hunter College, City University of New York, 695 Park Avenue, NY, 10021. Graduated 01/1992.

**B.S. Nutrition and Food Science,** Hunter College, City University of New York, 695 Park Avenue, NY, 10021. Graduated 06/1989.

**Diploma in Dietetics and Nutrition (Honors),** University of Technology (formerly The College of Arts, Science and Technology (CAST)), 237 Old Hope Road, Kingston 6, Jamaica W.I. Graduated 03/1985.

**Licensure:**

Advanced Practice Nurse (APN-C) N.J. License # 26NJ00421400
Advanced Practice Nurse,–New York (N Pl n Family Health) License#: F338391-1
Registered Professional Nurse (RN) N.J. License # 26NR11201600
Registered Professional Nurse (RN) N.Y. License # 614 9017-1
Registered Dietitian (RD# 0071705)
Teacher of Health Occupations N.J. License # 906428

**Certifications:**

- Certified Family Nurse Practitioner (# F01130005) – January 2013-Currently
- CPR Instructor Certification- January 2008-currently, American Heart Association Core Instructor Course. Certified to teach Basic Life Support for Health Care Providers
- Certified Instructor for Nurse Aide's Training-April 2008-currently, New Jersey Department of Health and Senior Services
- Certified Evaluator for Nurse Aide's Skills Evaluation, New Jersey Department of Health and Senior Services-April 2008-currently.
- Certified Medication Aide Instructor, New Jersey Department of Health and Senior Services –July 2009-currently.
- Certified Diabetes Educator (CDE #2092-0575) – December 2009-currently.

**Honors and Awards:**

- AmeriGroup Healthy Hero Award, 2008
- Kellogg Academic scholarship, Trinitas School of Nursing, 2003
- Employee of the month, City of Newark, 2003
- Dean's list 1988 & 1989, CUNY, Hunter College.
- Recognition for volunteer contribution by Newark Pre-school, Head Start Council Inc., 1997.
- Certificate of Appreciation, The New York State Department of Health, Metropolitan New York Regional Office for promoting the well-being of mothers and children, 07/1994.
- Certificate of Appreciation for contributions to Metropolitan Hospital, NY, 1992
- Hospital HMO weight control program, May 1991

**Clinical Experience for FHNP:**

**Family Health APN Role Practicum, 01/2012- 05/2012: Atlantic Health Systems, CVS Minute Clinic, 178 Morris Avenue, Springfield, NJ, 07081, Clinical Preceptor: Olubusayo Remi-Johnson, RN, APN, DNP.**

- Provided primary care health services to families of various social, economic and ethnic backgrounds.
- Conducted interventions for disease prevention and health promotion, as well the treatment of various diseases and disorders in an ambulatory clinic setting.

**Family Health APN Theory and Practicum: Child Health, 09/2011-12/2011: PEDIDOCS, Irvington Pediatric Associates. P.A Irvington, NJ, Clinical Preceptor: Bernier Loureden MD.**

- Provided well-child care including immunizations, anticipatory guidance, and health.
- Promotion to a primarily underserved African American pediatric population in an urban pediatric clinic.
- Managed acute illnesses and chronic disease exacerbations for infants, children and adolescents while incorporating psychosocial skills.

**Family Health APN Theory and Practicum: Women's Health, 05/2011 – 08/2011: University of Medicine and Dentistry, University Hospital (UMDNJ), Obstetrics and Gynecology, Newark, NJ, Clinical Preceptor: Imelda Gulmary, APN, MPH.**

- Provided peri-natal care for pregnant and postpartum women in acute care, emergency room and ambulatory gynecology-oncology setting. The women cared for ranged from menarche to climacteric; and included routine prenatal care in uncomplicated and complicated pregnancies and the assessment and management of common health problems in women.

**Primary Care of Adult and the Aged 1 clinical, 01/2011 – 05/2011: Atlantic Health Systems, CVS Minute Clinic, 178 Morris Avenue, Springfield, NJ 07081, Clinical Preceptor: Agnicha Muzeau, RN, APN.**

- Managed patients in a primary care sub-urban ambulatory clinic setting by providing health promotion, health maintenance and treatment of acute and chronic illnesses.

**Primary Care of the Adult and Aged 11 clinical, 09/2010-12/2010: East Orange Medical Practice-Internal Medicine, 108 Munn Avenue, East Orange, NJ 07018, Clinical Preceptor: Robert A. Clarke. MD**

- Managed acute illnesses and chronic complex, multi-system disease processes in a predominantly low-income African American and Hispanic population.
- Counseled clients regarding health risks factors, smoking cessation, stress management, physical activity and disease management.

**Advanced Health Assessment clinical, 05/2010-08/2010 – UMDNJ-University Hospital, Newark, NJ, Clinical Faculty: Susan Wiedaseck, Assistant Professor, CNM, RN, DNP.**

- Conducted physical assessments to patients of various ages, socio-economic in an acute care hospital setting.
- Practiced advanced assessment skills by collecting subjective and objective data and the performance of adult physical and mental status assessments.

**Employment Experience:**

**09/23 – Presently: Director, Nursing Program. Hudson County Community College, 870 Bergen Avenue, Jersey City, NJ 07306.**

- Responsible for the overall administration of the Nursing Program.
- Guidance and supervision of nursing faculty.
- Teach a minimum of 10 credits of nursing
- Develop clinical and simulation lab exercises; and coordinates nursing clinicals.
- Participate in curriculum development and revisions.
- Participate in division activities such as curriculum development, academic advisement and contribute to the college community through committee work, extra-curricular activities, meetings, student advisement, new course development, textbook selection and recruitment activities.

**07/2013- September 16, 2013: Advanced Practice Nurse (APN-C), Manager of Transition Care Services, Christ Hospital/Care Point. 176 Palisade Avenue, Jersey City, NJ 07306.**

- Conducted health assessments and education on disease specific disorders (core measures).
- Promoted hospital readmission reduction. Exercise responsibility for the medical care of patients.
- Participation in interdisciplinary team meetings and provision of direct patient care.
- Collaborated with primary care physicians and specialists to monitor patient's quality of life.

**03/2013-Presently: Adjunct Volunteer Instructor, Department of interdisciplinary Studies, UMDNJ (Now Rutgers University) School of Health Related Professions, 65 Bergen Street, PO Box 1709, Newark, NJ 07101.**

- Teach in the Health Science Career Program in the following courses: Anatomy and Physiology I &II, Medical Terminology, Emergency and Clinical Care, Dynamics of Healthcare in Society, Medical Math, Scientific Principles of Nutrition, Health Promotion, and other such activities as assigned by the Chair of the department or the Dean.

**01/13-04/13 : Adjunct Instructor Certified Medication Aide, Essex County College, 303 University Avenue, Newark, NJ 07102.**

- Instruct students for the Certified Medication Aide Program, a NJ Department of Health and Senior Services approved program for current certified nurse aides, homemaker/home health aides and personal care assistants.
- Teach students how to administer medications under the delegation of a registered professional nurse.
- Prepare students to take the certification examination for Medication Aide.

**09/12 – 06/2013: Teacher of Health Occupations, Orange High School, 400 Lincoln Street, Orange, NJ 07050**

- Developed syllabi for Introduction to Health Careers, Dynamics/Medical Terminology 1, Emergency and Clinical Care/Medical Terminology 11.
- Responsible for teaching introduction to Health, Dynamics/Medical Terminology 1, Emergency and Clinical Care/Medical Terminology 11 & Anatomy and Physiology.
- Health Occupations Students of America (HOSA) advisor for students.
- Attends faculty meetings, and other related meetings.
- Curriculum development and program planning for implementation of Certified Nurse Assistant (CNA) Program.

**09/11-06/12: Teacher, Health Occupations, Essex County Vocational Technical Schools-Newark Tech Campus, 90 West Market Street, Newark, NJ 07102.**

- Developed syllabi for Nursing 1 and 11
- Responsible for teaching Nursing 1 and Nursing 11 as a part of the Health Science Academy.
- Health Occupations Student of America (HOSA) advisor to students.
- Prepare and place orders according to budget allocation.
- Attends faculty meetings, and other related meetings.

**04/08-Presently, Nursing and Nutrition Instructor, Best Care Training Institute, 68 South Harrison Street, East Orange, NJ 07108.**

- Conduct nursing and nutrition instruction to vocational nursing students preparing to become Licensed Professional Nurses (LPNs) and Certified Nurse Assistants (CNAs) in clinical and classroom settings.

**03/10-02/01/11, Director of Health Services, The Leaguers Inc.
405 -425 University Avenue, Newark, NJ 07102.**

- Managed, coordinated and assured the provision of comprehensive health, mental health, dental, nutrition and disabilities services for the Head Start and Early Head Start Programs;
- Promoted preventative health services and early intervention as well as health and safety practices.
- Planned and coordinated health, nutrition and first aid and other in-service training to center staff.
- Assured that child health records were maintained at assigned sites.
- Selected, trained, assigned work to, and evaluated subordinate staff.
- Planned and facilitated Head Start and Early Head Start Advisory Health Committee and performed all other related duties.

**04/2009-02/2014, On-Call Registered Nurse, Canterbury Village, 33 Mount Pleasant Avenue, West Orange, New Jersey 07052.**

- Responsible for the direction and provision of healthcare services to residents of the facility.
- In conjunction with the administrator, responsible for developing and implementing written objectives, standards of practice, policies and procedures, as well as education and training to subordinate nursing staff.
- Covered and performed duties of the DON during absences.

**09/2011- Presently:** Contracted Diabetes Educator/Facilitator (New Jersey), Healthy Interactions, INC. 351 W. Hubbard Street., Chicago, IL 60654.

- Provides sessions for patients, health consumers, caregivers, healthcare professionals and/or other individuals as needed with the use of American Diabetes Association (ADA) approved evidenced-based diabetes mellitus "Conversation Maps."
- Applies facilitation skills during diabetes mellitus education sessions.
- Participates in training sessions via webinars on how to be successful in the role of a Diabetes Educator/Facilitator. Participated in extensive training on the use of the diabetes "Conversation Maps" to make a difference in the lives of diabetes mellitus patients/clients and families.

**09/96 – 05/07, Nutrition Program Coordinator (WIC), Newark Department of Health and Human Services, Women, Infants and Children (WIC) Program, Newark, New Jersey.**

- Planned, organized, directed and supervised all aspects of the WIC Program.
- Prepared grant proposals and budgets.
- Conducted need assessments and participant's satisfaction surveys.
- Facilitated program audits.
- Developed policies and procedures.
- Supervised a staff of twenty-eight (28) ranging from clerks to health professionals.

**09/03 -09/07, Charge Nurse, Category 1 (Baylor), Genesis Eldercare Westfield, 1515 Lambert's Mill Road, Westfield, New Jersey 07090.**

- Provided nursing care in sub-acute and long term care units. Collaborated with the Nursing Supervisor daily, exchanged information regarding customer (patient) care, customer condition and all matters affecting customer wellbeing (i.e., admission, discharges, transfers out of or within the building), and made recommendations regarding the nursing process.
- Ensured that a consistently high quality level of care was delivered.
- Made rounds and reinforced the training and orientation of nursing personnel.
- Verified unit staffing and delegated assignments to other nurses and certified nursing assistants.
- Ensured the completion of delegated assignments.

**06/00 – 2003, Nutrition Consultant, New York University, School of Education, Head Start Quality Improvement Center, Region 11, 726 Broadway, 5th Floor, New York, New York 10003.**

- Provided consultation in the area of nutrition and health to Early Head Start and Head Start Programs.
- Provided training in small groups, seminars, workshops and large groups.
- Performed on-site technical assistance to promote adherence with Federal guidelines of the Head Start Program.
- Developed techniques for introducing new foods to children.
- Planned and developed nutritional menus that integrated ethnic preferences.
- Developed and implemented effective staff and parent nutrition education and training programs.

HUD-L-003752-18 03/30/2021 1:06:39 PM Pg 5 of 40 Trans ID: LCV2021836670

**09/00 – 01/01, Adjunct Nutrition Instructor,** Christ Hospital, School of Nursing, 176 Palisade Avenue, Jersey City, New Jersey 07308

- Taught nursing students in the area of nutrition from (Nursing 1-6), which included medical surgical, pediatrics, obstetrics, and psychiatry nursing.
- Facilitated student learning in the area of nutrition during nursing clinical.
- Participated in faculty planning sessions.

**01/98 – 06/99, Nutrition Consultant,** Babyland Family Services, Inc., 755 South Orange Avenue, Newark, New Jersey 07106.

- Provided consultation in the area of nutrition services according to the Head Start Nutrition Performance Standards.
- Conducted staff in-service training.
- Planned nutrition education for staff, parent and children.
- Participated in menu planning and review.
- Assisted in interpreting and meeting health, sanitation and safety standards related to nutrition.
- Assessed the nutrition status and special needs of children.
- Provided the food service department with direction in purchasing, storage, preparation, service and in the setting up of an efficient inventory record system.

**06/99-12/2007, Nutrition Consultant,** Newark Pre-school Council Inc.-Head Start Program, 10 Park Place, Newark, New Jersey 07102.

- Provided nutrition consultation in the area of nutrition and food service to meet the Head Start Program Performance Standards.
- Planned and provided nutrition education for staff, parents and children.
- Conducted menu planning to ensure compliance with the Child and Adult Food Program (CACFP). Conducted nutrition screening, assessment and interventions for Head Start children.

**06/00 – 02/10, Nutritionist Consultant,** The Leaguers Inc. Head Start Program, 303-309 Washington Street, Newark, NJ 07102. .

- Provided consultation in the area of nutrition to meet the Head Start performance standards in the area of nutrition.
- Planned and conducted nutrition education training for staff, parent and children.
- Performed menu planning to meet the age- appropriate menu planning components for the Child and Adult Care Food Program (CACFP).
- Conducted staff in-service training sessions.

**01/94 – 09/96, Director of Women, Infants and Children (WIC) Program,** Bronx Lebanon Hospital Center, 1695 Eastchester Road, Bronx, New York 10458.

- Administered all aspects of the supplemental food program for Women, Infants and Children. This included daily program operations, staff supervision and training, fiscal management, vendor operations, writing of annual budgets, nutrition education and outreach plans.

02/96 – 06/96, Adjunct Lecturer, Lehman College, The City University of New York, 250 Bedford Park Blvd. West New York, Bronx, New York 10468

- Developed syllabus development for Community Nutrition Education Course.
- Lectured in Community Nutrition Education to undergraduate students.
- Arranged for fieldwork placement of students in community nutrition programs.

09/93 – 12/93, Dietician in Charge of Clinical Nutrition Services, Nutrition Management Services at St. Vincent de Paul Nursing Home, 900 Intervale Avenue, Bronx, New York 10459.

- Staff supervision and in-service training.
- Attended interdisciplinary care plan meetings.
- Conducted nutrition assessments, interventions and provided nutrition counseling.
- Documented nutrition intervention according to the minimum data set standard (MDS) and attended decubitus ulcer rounds and interdisciplinary meetings.

06/90 – 07/92, Staff Dietitian, Metropolitan Hospital, Health and Hospital Corporation, Nutrition and Food Service Department, 1901 First Avenue, New York, New York10029.

- Performed nutrition screenings and assessments.
- Conducted Patient charting using the SOAP format.
- Attended biweekly interdisciplinary team meeting.
- Provided nutrition education and counseling to patients and family members

**Significant Accomplishments:**

- Implementation of caseload strategies/outreach activities in the City of Newark Department of Health and Human Services, WIC Program which resulted in an increased caseload from 9,000 monthly (1996) to enrollment of 14,049 monthly (2006).

- Participated in the planning and integration of the WIC/LEAD initiative into the WIC Program as a part of the one-stop services provided in the City of Newark WIC Program 2009-2007.

- Facilitated one of the funded projects in the City of Newark, Department of Health and Human Services, and WIC Program in response to the RFP annual disbursement of funds to reduce black infant mortality by the State of New Jersey Department of Health and Senior Services. "Reduce Stress for Babies Best" – ongoing project to 2007.

- Implemented "WIC Moms Reading for Love" literacy initiative for participants of the WIC Program with the aim of encouraging reading by children at an early age-2003.

- 2005-Invited graduation speaker at the 2005 State of New Jersey Department of Health and Senior Services, WIC Program, Dietetic Internship Program-2005.

- Facilitate and guided University of Medicine and Dentistry of New Jersey (UMDNJ) and Montclair University students to obtain Public Health Community Nutrition to fulfill requirements to become Registered Dietitians 1999-2007.

- Committee member of the UMDNJ social marketing campaign "Calcium In Lead Out"- Healthful Life Project which promoted adequate dietary calcium intake in children between the ages of 1 and 8. (2000-2001).

- Invited panel/presenter for the City of Newark, WIC Program at Rutgers University Institute of Ethnicity, Culture and Modern Experience "Cultures: Nutrition and Urban Youth" - 2003.

- Provided training and technical assistance in the area of Head Start Health and Nutrition Services in New York and New Jersey to promote effective implementation and compliance with the National Head Start Nutrition and Health Performance Standards.

- Conducted staff training- in-services/workshops to WIC Program employed on a monthly basis to meet Federal and State WIC Program grant requirements. 1996-2007.

- Board member/health advisory committee member for various community based organizations in the City of Newark and surrounding service area. 1996-Presently.

**Editorial Reviews/Positions. Grant Review Panels:**

- Participated in the development of the Request for Proposal (RFP) guidelines/criteria for the annual disbursement of funds to reduce black infant mortality in the State of New Jersey as a selected member of the State of New Jersey Black Infant Mortality Reduction Advisory Council-1999.

- Technical Nutrition Reviewer-United States Department of Agriculture (USDA)-Food and Nutrition Service, Educator's Handbook "Loving Your Family-Feeding their Future"- Nutrition through the Food Stamp Program-2006.

**Grant Funding Applications Approved:**

Successful submission of many USDA discretionary grant requests/applications for funding to enhance WIC Program services to the residents of the City of Newark and the surrounding service area, these include:

- Federal Fiscal Year (FFY) 1998- Obtained WIC Pediatric Health Mobile secondary to a "WIC Mobile on Wheels" United States Department of Agriculture (USDA) discretionary grant application request for funding. The mobile currently serves residents in all five (5) wards of the City of Newark and has contributed to an increase in the WIC Program caseload.
- This project was highlighted in the media (TV) on "Positively Black" by Mr. Noble with recording by Ms. Pat Battle of News Channel 4.
- FFY 2000 –Obtained USDA funding in the amount of $176,633 for the implementation of aggressive outreach activities in the city of Newark, WIC Program.
- FFY 2002- Obtained USDA WIC Program discretionary funding to promote access to WIC Program benefits and services for the provision of non-traditional WIC Program service hours during weekends and extended service hours on weekdays.
- FFY 2003- Obtained funding in the amount of $115,950 for "Extended Hours and Outreach" for the City of Newark, WIC Program.

- FFY 2004 – Obtained additional funding for the City of Newark WIC Program to continue the provision of non-traditional service hours to promote access to WIC Program services by low income clients/applicants who work and attend school and experienced difficulty accessing WIC Program benefits and services during traditional service hours.
- FFY 2007-Obtained USDA discretionary grant funding in the amount of $136,000.00 for "Obesity prevention and intervention initiative" in the City of Newark WIC Program.

**Professional Organizations and Committees:**

- American Diabetes Association-Current
- Newark Partnership for Lead Safe Children, Committee member-2010
- National Association of WIC Directors-2007
- State of New Jersey Department of Health and Senior Services Advisory Council on Black Infant Mortality Reduction. 1998-1999.
- Fellow of Ford Foundation-Leadership Newark class of 2000 - 2002.
- Pre-school Council Head Start Inc. Health Advisory Committee.1996-2007
- Leaguers Inc. Head Start Health Advisory Committee.
- Newark Immunization Executive Council Member.
- Babyland Family Services Inc.
- Early Head Start Health Advisory Committee 1998-2000.
- Welfare to Work of Essex County committee member 1997-1999
- Board Member Gateway Maternal and Child Health Consortium Inc. 2002-2007

**Other Community Service:**

- Invited speaker, Leadership Newark Public Policy Summit, "Rebuilding the Dream that is Newark," November 2013.
- Preceptor for Montclair State University students-*Michael Patracuolla, Constance Chukwurka, Noreen Lewars* and *Victoria Stewart* during clinical experience for Applied Nutrition in the Lifecycle course-1996-1997.
- Healthy Snacking for Children-Babyland Family Services Inc. Annual training-08/19998.
- Nutrition and You presentation to the parents support group at Babyland Family Services Center Inc. 02/1998.
- Selected Black Infant Mortality Reduction Advisory Council member-Assisted in the making of recommendations in the areas of; Education and awareness; cultural competency and program services in an effort to reduce black infant mortality in New Jersey.-05/1999.
- Good Nutrition throughout the Lifespan presentation to participants at the Second Grandparents Conference, New Hope Baptist Church, Newark, NJ-10/1998.
- Participated in Leadership Newark Neighborhood Building Neighborhoods - A neighborhood based participatory planning process for duplication in the City of Newark.-06/ 2000, Rochester, New York.
- Preceptor for University of Medicine and Dentistry of New Jersey, Dietetic internship student-Paula Clinton for pediatric and obstetric rotations. 2002
- Implementation of literacy program "WIC Mons Reading for Love in Newark WIC Program." 05/2003.

**09/11-06/12: Teacher, Health Occupations,** Essex County Vocational Technical Schools-Newark Tech Campus, 90 West Market Street, Newark, NJ 07102.

- Developed syllabi for Nursing 1 and 11
- Responsible for teaching Nursing 1 and Nursing 11 as a part of the Health Science Academy.
- Health Occupations Student of America (HOSA) advisor to students.
- Prepare and place orders according to budget allocation.
- Attends faculty meetings, and other related meetings.

**04/08-Presently, Nursing and Nutrition Instructor,** Best Care Training Institute, 68 South Harrison Street, East Orange, NJ 07108.

- Conduct nursing and nutrition instruction to vocational nursing students preparing to become Licensed Professional Nurses (LPNs) and Certified Nurse Assistants (CNAs) in clinical and classroom settings.

**03/10-02/01/11, Director of Health Services,** The Leaguers Inc.
405 -425 University Avenue, Newark, NJ 07102.

- Managed, coordinated and assured the provision of comprehensive health, mental health, dental, nutrition and disabilities services for the Head Start and Early Head Start Programs;
- Promoted preventative health services and early intervention as well as health and safety practices.
- Planned and coordinated health, nutrition and first aid and other in-service training to center staff.
- Assured that child health records were maintained at assigned sites.
- Selected, trained, assigned work to, and evaluated subordinate staff.
- Planned and facilitated Head Start and Early Head Start Advisory Health Committee and performed all other related duties.

**04/2009-03/2014, On-Call Registered Nurse,** Canterbury Village, 33 Mount Pleasant Avenue, West Orange, New Jersey 07052.

- Responsible for the direction and provision of healthcare services to residents of the facility.
- In conjunction with the administrator, responsible for developing and implementing written objectives, standards of practice, policies and procedures, as well as education and training to subordinate nursing staff.
- Covered and performed duties of the DON during absences.

**09/2011-**
**Presently: Contracted Diabetes Educator/Facilitator (New Jersey),** Healthy Interactions, INC. 351 W. Hubbard Street., Chicago, IL 60654.

- Provides sessions for patients, health consumers, caregivers, healthcare professionals and/or other individuals as needed with the use of American Diabetes Association (ADA) approved evidenced-based diabetes mellitus "Conversation Maps."
- Applies facilitation skills during diabetes mellitus education sessions.
- Participates in training sessions via webinars on how to be successful in the role of a Diabetes Educator/Facilitator. Participated in extensive training on the use of the diabetes "Conversation Maps" to make a difference in the lives of diabetes mellitus patients/clients and families.

**09/96 – 05/07, Nutrition Program Coordinator (WIC),** Newark Department of Health and Human Services, Women, Infants and Children (WIC) Program, Newark, New Jersey.

- Planned, organized, directed and supervised all aspects of the WIC Program.
- Prepared grant proposals and budgets.
- Conducted need assessments and participant's satisfaction surveys.
- Facilitated program audits.
- Developed policies and procedures.
- Supervised a staff of twenty-eight (28) ranging from clerks to health professionals.

**09/03 -03/07, Charge Nurse, Category 1 (Baylor),** Genesis Eldercare Westfield, 1515 Lambert's Mill Road, Westfield, New Jersey 07090.

- Provided nursing care in sub-acute and long term care units.
  Collaborated with the Nursing Supervisor daily, exchanged information regarding customer (patient) care, customer condition and all matters affecting customer wellbeing (i.e., admission, discharges, transfers out of or within the building), and made recommendations regarding the nursing process.
- Ensured that a consistently high quality level of care was delivered.
- Made rounds and reinforced the training and orientation of nursing personnel.
- Verified unit staffing and delegated assignments to other nurses and certified nursing assistants.
- Ensured the completion of delegated assignments.

**06/00 – 2003, Nutrition Consultant,** New York University, School of Education, Head Start Quality Improvement Center, Region 11a, 726 Broadway, 5th Floor, New York, New York 10003.

- Provided consultation in the area of nutrition and health to Early Head Start and Head Start Programs.
- Provided training in small groups, seminars, workshops and large groups.
- Performed on-site technical assistance to promote adherence with Federal guidelines of the Head Start Program.
- Developed techniques for introducing new foods to children.
- Planned and developed nutritional menus that integrated ethnic preferences.
- Developed and implemented effective staff and parent nutrition education and training programs.

**09/00 – 01/01, Adjunct Nutrition Instructor,** Christ Hospital, School of Nursing, 176 Palisade Avenue, Jersey City, New Jersey 07308

- Taught nursing students in the area of nutrition from (Nursing 1-6), which included medical surgical, pediatrics, obstetrics, and psychiatry nursing.
- Facilitated student learning in the area of nutrition during nursing clinical.
- Participated in faculty planning sessions.

**01/98 – 06/99, Nutrition Consultant,** Babyland Family Services, Inc., 755 South Orange Avenue, Newark, New Jersey 07106.

- Provided consultation in the area of nutrition services according to the Head Start Nutrition Performance Standards.
- Conducted staff in-service training.
- Planned nutrition education for staff, parent and children.
- Participated in menu planning and review.
- Assisted in interpreting and meeting health, sanitation and safety standards related to nutrition.
- Assessed the nutrition status and special needs of children.
- Provided the food service department with direction in purchasing, storage, preparation, service and in the setting up of an efficient inventory record system.

**06/99-12/2007, Nutrition Consultant,** Newark Pre-school Council Inc.-Head Start Program, 10 Park Place, Newark, New Jersey 07102.

- Provided nutrition consultation in the area of nutrition and food service to meet the Head Start Program Performance Standards.
- Planned and provided nutrition education for staff, parents and children.
- Conducted menu planning to ensure compliance with the Child and Adult Food Program (CACFP). Conducted nutrition screening, assessment and interventions for Head Start children.

**06/00 – 02/10, Nutritionist Consultant,** The Leaguers Inc. Head Start Program, 303-309 Washington Street, Newark, NJ 07102.

- Provided consultation in the area of nutrition to meet the Head Start performance standards in the area of nutrition.
- Planned and conducted nutrition education training for staff, parent and children.
- Performed menu planning to meet the age- appropriate menu planning components for the Child and Adult Care Food Program (CACFP).
- Conducted staff in-service training sessions.

**01/94 – 09/96, Director of Women, Infants and Children (WIC) Program,** Bronx Lebanon Hospital Center, 1695 Eastchester Road, Bronx, New York 10468.

- Administered all aspects of the supplemental food program for Women, Infants and Children. This included daily program operations, staff supervision and training, fiscal management, vendor operations, writing of annual budgets, nutrition education and outreach plans.

**02/96 – 06/96, Adjunct Lecturer,** Lehman College, The City University of New York, 250 Bedford Park Blvd. West New York, Bronx, New York 10468

- Developed syllabus development for Community Nutrition Education Course.
- Lectured in Community Nutrition Education to undergraduate students.
- Arranged for fieldwork placement of students in community nutrition programs.

**09/93 – 12/93, Dietician in Charge of Clinical Nutrition Services,** Nutrition Management Services at St. Vincent de Paul Nursing Home, 900 Intervale Avenue, Bronx, New York 10459.

- Staff supervision and in-service training.
- Attended interdisciplinary care plan meetings.
- Conducted nutrition assessments, interventions and provided nutrition counseling.
- Documented nutrition intervention according to the minimum data set standard (MDS) and attended decubitus ulcer rounds and interdisciplinary meetings.

**06/90 – 07/92, Staff Dietitian,** Metropolitan Hospital, Health and Hospital Corporation, Nutrition and Food Service Department, 1901 First Avenue, New York, New York10029.

- Performed nutrition screenings and assessments.
- Conducted Patient charting using the SOAP format.
- Attended biweekly interdisciplinary team meeting.
- Provided nutrition education and counseling to patients and family members

**Significant Accomplishments:**

- Implementation of caseload strategies/outreach activities in the City of Newark Department of Health and Human Services, WIC Program which resulted in an increased caseload from 9,000 monthly (1996) to enrollment of 14,049 monthly (2006).

- Participated in the planning and integration of the WIC/LEAD initiative into the WIC Program as a part of the one-stop services provided in the City of Newark WIC Program 2009-2007.

- Facilitated one of the funded projects in the City of Newark, Department of Health and Human Services, and WIC Program in response to the RFP annual disbursement of funds to reduce black infant mortality by the State of New Jersey Department of Health and Senior Services. "Reduce Stress for Babies Best" – ongoing project to 2007.

- Implemented "WIC Moms Reading for Love" literacy initiative for participants of the WIC Program with the aim of encouraging reading by children at an early age-2003.

- 2005-Invited graduation speaker at the 2005 State of New Jersey Department of Health and Senior Services, WIC Program, Dietetic Internship Program-2005.

- Facilitate and guided University of Medicine and Dentistry of New Jersey (UMDNJ) and Montclair University students to obtain Public Health Community Nutrition to fulfill requirements to become Registered Dietitians 1999-2007.

- Committee member of the UMDNJ social marketing campaign "Calcium In Lead Out"- Healthful Life Project which promoted adequate dietary calcium intake in children between the ages of 1 and 8. (2000-2001).

- Invited panel/presenter for the City of Newark, WIC Program at Rutgers University Institute of Ethnicity, Culture and Modern Experience "Cultures: Nutrition and Urban Youth" - 2003.

- Provided training and technical assistance in the area of Head Start Health and Nutrition Services in New York and New Jersey to promote effective implementation and compliance with the National Head Start Nutrition and Health Performance Standards.

- Conducted staff training- in-services/workshops to WIC Program employed on a monthly basis to meet Federal and State WIC Program grant requirements. 1996-2007.

- Board member/health advisory committee member for various community based organizations in the City of Newark and surrounding service area. 1996-Presently.

**Editorial Reviews/Positions, Grant Review Panels:**

- Participated in the development of the Request for Proposal (RFP) guidelines/criteria for the annual disbursement of funds to reduce black infant mortality in the State of New Jersey as a selected member of the State of New Jersey Black Infant Mortality Reduction Advisory Council-1999.

- Technical Nutrition Reviewer-United States Department of Agriculture (USDA)-Food and Nutrition Service, Educator's Handbook "Loving Your Family-Feeding their Future"- Nutrition through the Food Stamp Program-2006.

**Grant Funding Applications Approved:**

Successful submission of many USDA discretionary grant requests/applications for funding to enhance WIC Program services to the residents of the City of Newark and the surrounding service area, these include:

- Federal Fiscal Year (FFY) 1998- Obtained WIC Pediatric Health Mobile secondary to a "WIC Mobile on Wheels" United States Department of Agriculture (USDA) discretionary grant application request for funding. The mobile currently serves residents in all five (5) wards of the City of Newark and has contributed to an increase in the WIC Program caseload.
- This project was highlighted in the media (TV) on "Positively Black" by Mr. Noble with recording by Ms. Pat Battle of News Channel 4.
- FFY 2000 –Obtained USDA funding in the amount of $176,633 for the implementation of aggressive outreach activities in the city of Newark, WIC Program.
- FFY 2002- Obtained USDA WIC Program discretionary funding to promote access to WIC Program benefits and services for the provision of non-traditional WIC Program service hours during weekends and extended service hours on weekdays.
- FFY 2003- Obtained funding in the amount of $115.950 for "Extended Hours and Outreach" for the City of Newark, WIC Program.

- FFY 2004 – Obtained additional funding for the City of Newark WIC Program to continue the provision of non-traditional service hours to promote access to WIC Program services by low income clients/applicants who work and attend school and experienced difficulty accessing WIC Program benefits and services during traditional service hours.
- FFY 2007-Obtained USDA discretionary grant funding in the amount of $136,000.00 for "Obesity prevention and intervention initiative" in the City of Newark WIC Program.

**Professional Organizations and Committees:**

- American Diabetes Association-Current
- Newark Partnership for Lead Safe Children, Committee member-2010
- National Association of WIC Directors-2007
- State of New Jersey Department of Health and Senior Services Advisory Council on Black Infant Mortality Reduction. 1998-1999.
- Fellow of Ford Foundation-Leadership Newark class of 2000 - 2002.
- Pre-school Council Head Start Inc. Health Advisory Committee.1996-2007
- Leaguers Inc. Head Start Health Advisory Committee.
- Newark Immunization Executive Council Member.
- Babyland Family Services Inc.
- Early Head Start Health Advisory Committee 1998-2000.
- Welfare to Work of Essex County committee member 1997-1999
- Board Member Gateway Maternal and Child Health Consortium Inc. 2002-2007

**Other Community Service:**

- Invited speaker, Leadership Newark Public Policy Summit, "Rebuilding the Dream that is Newark," November 2013.
- Preceptor for Montclair State University students-*Michael Patracuolla, Constance Chukwurka, Noreen Lewars* and *Victoria Stewart* during clinical experience for Applied Nutrition in the Lifecycle course-1996-1997.
- Healthy Snacking for Children-Babyland Family Services Inc. Annual training-08/19998.
- Nutrition and You presentation to the parents support group at Babyland Family Services Center Inc. 02/1998.
- Selected Black Infant Mortality Reduction Advisory Council member-Assisted in the making of recommendations in the areas of: Education and awareness; cultural competency and program services in an effort to reduce black infant mortality in New Jersey.-05/1999.
- Good Nutrition throughout the Lifespan presentation to participants at the Second Grandparents Conference, New Hope Baptist Church, Newark, NJ-10/1998.
- Participated in Leadership Newark Neighborhood Building Neighborhoods - A neighborhood based participatory planning process for duplication in the City of Newark.-06/ 2000, Rochester, New York.
- Preceptor for University of Medicine and Dentistry of New Jersey, Dietetic Internship student-Paula Clinton for pediatric and obstetric rotations. 2002
- Implementation of literacy program "WIC Mons Reading for Love in Newark WIC Program." 05/2003.

- Role model and mentor for the National Black Child Development Institute, Newark's Entering the College Zone Program. 2003-2007.
- Letter of Support for Babyland Early Head Start Program, U.S. Department of Health and Human Services application. – Approved 2000.
- Letter of Support to Northern New Jersey Maternal Child Health Consortium for application to the March of Dimes Community Grants to solicit funding for paraprofessional training on stress reduction and the prevention of adverse perinatal outcomes. - Approved 09/2005.
- Meal preparation and its impact on eating and child development presentation. Newark Preschool Council Head Start.09/2006.
- Food Supplies-What to keep for Emergencies? Newark Pre-school council Head Start presentation-01/2007.
- Participation in the Center for Medicare and Medicaid Services research project "Assessing Colorectal Cancer Knowledge and Improving Screening Rates among Older Minorities in the City of Newark. Train the trainer program. UMDNJ Division of Academic Medicine, Geriatrics and Community Program. 03/2007.
- Food Safety and Sanitation. Newark Preschool Council Head Start Pre-service training. 01/2008.
- Child Nutrition and Obesity Prevention. Newark Preschool Council Head Start Program presentation -03/2008.
- Purchasing and Preparing Foods-Shop Smart for Disease Prevention and Health Promotion- Newark Preschool Council Head Start pre-service training. 07/2008.
- Meal Service and the Head Start Performance Standards. New York University Head Start Quality Improvement Training for Jersey City Child Development Centers.-09/2009.
- Medication Administration in Childcare Settings. Leaguers Inc. Head Start and Early Head Start Programs Pre-service training. 09/2010.
- Handling Emergencies in Head Start and Early Head Start Programs. Leaguers Inc. Leaguers Inc. Head Start and Early Head Start Programs. 09/2010.
- Invited graduation speaker. Best Care Training Institute and School of Practical Nursing. 09/2011.

**References:** Furnished upon request.

# New Jersey APN Applicable Statutes

**Statutes Specific To APNs in which we are included:**

- 1. **NJ Board of Nursing Statutes:**

**45:11-45. Short title**

This act shall be known and may be cited as the "Advanced Practice Nurse Certification Act."1991,c.377,s.1; amended 1999, c.85, s.4.

**45:11-46. Certification required**

7. a. (1) No person shall practice as an advanced practice nurse or present, call or represent himself as an advanced practice nurse unless certified in accordance with section 8 or 9 of P.L.1991, c.377 (C.45:11-47 or 45:11-48).

(2) Nothing in this act shall be construed to limit, preclude, or otherwise interfere with the practices of other persons licensed by appropriate agencies of the State of New Jersey, provided that such duties are consistent with the accepted standards of the person's profession and the person does not represent himself as an advanced practice nurse. b. No person shall assume, represent himself as, or use the title or designation advanced practice nurse or the abbreviation "A.P.N." or any other title or designation which indicates or implies that he is an advanced practice nurse unless certified pursuant to section 8 or 9 of P.L.1991, c.377 (C.45:11-47 or 45:11-48).

c. Whenever the titles or designations "nurse practitioner," "clinical nurse specialist" or "nurse practitioner/clinical nurse specialist" occur or any reference is made thereto in any law, contract or document, the same shall be deemed to mean or refer to the title or designation "advanced practice nurse."

1991,c.377,s.7; amended 1999, c.85, s.5.

**45:11-47. Certification requirements**

8. a. The New Jersey Board of Nursing may issue a certification as an advanced practice nurse to an applicant who fulfills the following requirements:

(1) Is at least 18 years of age;

(2) Is of good moral character;

(3) Is a registered professional nurse;

(4) Has successfully completed an educational program, including pharmacology, approved by the board; and

(5) Has passed a written examination approved by the board.

b. In addition to the requirements of subsection a. of this section, an applicant for renewal of a certification as an advanced practice nurse shall present satisfactory evidence that, in the period since the certification was issued or last renewed, all continuing education requirements have been completed as required by regulations adopted by the board.

c. The board may accept, in lieu of the written examination required by paragraph (5) of subsection a. of this section, proof that an applicant for certification holds a current certification in a state which has standards substantially equivalent to those of this State.

1991,c.377,s.8; amended 1999, c.85, s.6.

**45:11-49 Permitted duties of advanced practice nurse:**

10. a. In addition to all other tasks which a registered professional nurse may, by law, perform, an advanced practice nurse may manage preventive care services, and diagnose and manage deviations from wellness and long-term illnesses, consistent with the needs of the patient and within the scope of practice of the advanced practice nurse,by:

(1) initiating laboratory and other diagnostic tests;

(2) prescribing or ordering medications and devices, as authorized by subsections b. and c. of this section; and

(3) prescribing or ordering treatments, including referrals to other licensed health care professionals, and performing specific procedures in accordance with the provisions of this subsection.

b. An advanced practice nurse may order medications and devices *in the inpatient setting,*

subject to the following conditions:

(1) the collaborating physician and advanced practice nurse shall address in the joint protocols whether prior consultation with the collaborating physician is required to initiate an order for a controlled dangerous substance;

(2) the order is written in accordance with standing orders or joint protocols

105

developed in agreement between a collaborating physician and the advanced practice nurse, or pursuant to the specific direction of a physician;

(3) the advanced practice nurse authorizes the order by signing his own name, printing the name and certification number, and printing the collaborating physician's name;

(4) the physician is present or readily available through electronic communications;

(5) the charts and records of the patients treated by the advanced practice nurse are reviewed by the collaborating physician and the advanced practice nurse within the period of time specified by rule adopted by the Commissioner of Health and Senior Services pursuant to section 13 of P.L.1991, c.377 (C.45:11-52);

(6) the joint protocols developed by the collaborating physician and the advanced practice nurse are reviewed, updated and signed at least annually by both parties; and

(7) the advanced practice nurse has completed six contact hours of continuing professional education in pharmacology related to controlled substances, including pharmacologic therapy and addiction prevention and management, in accordance with regulations adopted by the New Jersey Board of Nursing. The six contact hours shall be in addition to New Jersey Board of Nursing pharmacology education requirements for advanced practice nurses related to initial certification and recertification of an advanced practice nurse as set forth in N.J.A.C.13:37-7.2 and 13:37-7.5.

c. An advanced practice nurse may prescribe medications and devices *in all other medically appropriate settings*

subject to the following conditions: *(law that follows is same as 1-7, above).*

(8) the advanced practice nurse has completed six contact hours of continuing professional education in pharmacology related to controlled substances, including pharmacologic therapy and addiction prevention and management, in accordance with regulations adopted by the New Jersey Board of Nursing. The six contact hours shall be in addition to New Jersey Board of Nursing pharmacology education requirements for advanced practice nurses related to initial certification and recertification of an advanced practice nurse as set forth in N.J.A.C.13:37-7.2 and 13:37-7.5.

d. The joint protocols employed pursuant to subsections b. and c. of this section shall conform with standards adopted by the Director of the Division of Consumer Affairs pursuant to section 12 of P.L.1991, c.377 (C.45:11-51) or section 10 of P.L.1999, c.85 (C.45:11-49.2), as applicable.

e. (Deleted by amendment, P.L.2004, c.122.)

L.1991,c.377,s.10; amended 1999, c.85, s.7; 2004, c.122, s.2.

- 2. Health Care Quality Act: HMO Law: P.L. 1997, c.192

Excerpt relevant to inclusion of APNs: "Health care provider means an individual or entity which, acting within the scope of its licensure or certification, provides a covered service defined by the health benefit's plan. Health care provider includes but is not limited to, a physician and other health care professionals licensed pursuant to Title 45 of the Revised Statutes. " (See Rules which implement this statute and spell out which APNs can be PCPs in accompanying document titled Regulations).

- 3. An Act Concerning Public School Pupils and Amending N.J.S.18A:40-4. Public Schools To Accept Physical Examinations Done By APNs: P.L. 1997, c. 48.

N.J.S.18A:40-4 is amended to read as follows: The medical inspector, or the nurse or Licensed medical and health care personnel under the immediate direction of the medical inspector, shall examine every pupil to learn whether any physical defect exists, or in lieu thereof the medical inspector may accept the report of such an examination by a physician licensed to practice medicine and surgery within the State or by a nurse practitioner/clinical nurse specialist certified by the New Jersey Board of Nursing working in collaboration with a physician licensed to practice medicine and surgery within the State.

4. Two Amendments To Labor Laws Include APNs (both became law in 2004):

✓ Working Paper Physicals: Section 8 of P.L.1940, c.153 (C.34:2-21.8) is amended to read as follows: (3) A statement of physical fitness, signed by a medical inspector employed by the applicable board of education, or any other physician licensed to practice medicine and surgery, or advanced practice nurse, setting forth that such minor has been thoroughly examined by such medical inspector, or such other physician licensed to practice medicine and surgery, or advanced practice nurse, that he either is physically fit for employment in occupations permitted for persons under 18 years of age, or is physically fit to be employed under certain limitations, specified in the statement.

✓ Temporary Disability Claims: Limitation of benefits. Notwithstanding any other provision of the "Temporary Disability Benefits Law," P.L.1948, c.110 (C.43:21-25 et seq.), no benefits shall be payable under the State plan to any person (d) for any period during which the claimant is not under the care of a legally licensed physician, dentist, optometrist, podiatrist, practicing psychologist, advanced practice nurse, or chiropractor, who, when

Ra730

requested by the division, shall certify within the scope of the practitioner's practice, the disability of the claimant, the probable duration thereof, and, where applicable, the medical facts within the practitioner's knowledge;

ctt: 4/20/11



HUD-L-003792-18 03/30/2021 1:06:39 PM Pg 23 of 40 Trans ID: LCV2021830670